# 24-2682

# United States Court of Appeals
# for the Second Circuit

---

FRANCIS PAUL QUINN, JR., and LORI ANN QUINN,

*Plaintiffs-Appellants,*

v.

THE CITY OF NEW YORK and
THE NEW YORK CITY DEPARTMENT OF TRANSPORTATION,

*Defendants- Third-Party-Plaintiffs-Appellees,*

CONSOLIDATED EDISON, INC.,

*Third-Party-Defendant.*

---

On Appeal from the United States District Court
for the Southern District of New York

---

## APPELLANTS' BRIEF

---

**NAPOLI SHKOLNIK PLLC**
APARNA S. PUJAR
360 Lexington Avenue, 11th Floor
New York, NY 10017
Tel: (212) 397-1000
E-mail: JNapoli@NapoliLaw.com

*Attorneys for Plaintiffs-Appellants*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................... iii

JURISDICTIONAL STATEMENT .......................................................................1

OVERVIEW ...............................................................................................................1

STATEMENT OF THE CASE .................................................................................3

ISSUES PRESENTED ...............................................................................................7

STANDARD OF REVIEW .......................................................................................8

SUMMARY OF ARGUMENT ................................................................................11

ARGUMENT ............................................................................................................14

   I.   THE CITY DID NOT MEET ITS RULE 56(C) BURDEN TO SHOW THAT
QUINN WOULD BE UNABLE TO PROVE THAT THE CITY
AFFIRMATIVELY CAUSED OR CREATED THE DANGEROUS
CONDITION THROUGH A BOTCHED REPAIR .............................................14

   II.  THE ISSUE OF WRITTEN NOTICE IS A QUESTION OF FACT FOR
THE JURY ..............................................................................................................18

     A.  The Big Apple Map shows the defect that caused Quinn's accident .........18

     B.  The maintenance repairs and orders constitute written acknowledgement
20

i

III.  THE DISTRICT COURT ABUSED ITS DISCRETION BY DENYING QUINN DISCOVERY ..............................................................................26

A.   The district court mischaracterized Quinn's requests as unsupported. .........30

B.   The district court's failure to address Quinn's discovery requests violated procedural fairness .........................................................................................30

IV. THE CASE SHOULD BE REMANDED BACK TO THE DISTRICT COURT TO A DIFFERENT JUDGE THAN JUDGE BUCHWALD..................32

CONCLUSION .......................................................................................37

# TABLE OF AUTHORITIES

## Cases

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ....................................... 9, 26

*Aurora Loan Services, Inc. v. Posner, Posner & Associates*, 513 F.Supp.2d 18

 (S.D.N.Y. 2007). ...................................................................................18

*Bennett v. Bascom*, 788 F. App'x 318 (6th Cir. 2019) ..............................................18

*Berger v. United States,* 87 F.3d 60 (2d Cir. 1996). ................................................26

*Bey v. City of New York*, 999 F.3d 157 (2d Cir. 2021) ..............................................8

*Brown v City of NY*, 95 NY2d 389 (2000) ...............................................................5

*Bruni v. City of New York,* 2 NY3d 319 (2004) ......................................................20

*Catlin v. Sobol*, 93 F.3d 1112, 1116 (2d Cir. 1996) ..................................................10

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ..........................................................9

*Com. Cleaning Servs., L.L.C. v. Colin Serv. Sys., Inc.,*

271 F.3d 374 (2d Cir. 2001). .....................................................................26

*Culbertson v. Triumph Constr. Corp.*, No. 159608/2019, 2023 WL 5628204 (Sup.

 Ct. New York Cty. Aug. 31, 2023).......................................................29

*Cruz v City of NY*, 218 AD2d 546 (1st Dept 1995)………………………………12

*Giannulo v. City of New York*, 322 F.3d 139 (2d Cir. 2003) ............................... 9, 18

*Gormley v. County of Nassau,* 150 AD2d 342 ........................................................12

*Marvel Characters, Inc. v. Simon*, 310 F.3d 280 (2d Cir. 2002)...............................9

*Parente v. Metro. Transp. Auth.*, 10 CIV. 5913 LTS DCF, 2012 WL 1813077

    (SDNY May 16, 2012)............................................................24

*Principal Nat'l Life Ins. Co. v. Coassin*, 884 F.3d 130 (2d Cir. 2018). ....................8

*Reilly v. NatWest Mkts. Group, Inc.*, 181 F.3d 253 (2d Cir. 1999).........................33

*Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77 (2d Cir.

    2004). ...........................................................................10

*Springs Mills, Inc. v. Ultracashmere House, Ltd.*, 724 F.2d 352 (2d Cir. 1983) .....33

*Trebor Sportswear Co., Inc. v. The Limited Stores, Inc.*, 865 F.2d 506 (2d Cir.

    1989) .............................................................................27

*United States v. Robin*, 553 F.2d 8 (2d Cir. 1977) ........................................ 32,33,37

*United States v. Sum of $185,336.07 U.S. Currency Seized from Citizen's Bank

    Acct. L7N01967*, 731 F.3d 189 (2d Cir. 2013).........................................8

*Vacold, L.L.C. v. Cerami*, 545 F.3d 114 (2d Cir. 2008).............................................9

*Webster v. City of New York*, No. 19 Civ. 5638 (KPF), 2021 WL 3913556 (S.D.N.Y.

    Sept. 1, 2021) ............................................................... 22,23,24

*Zinz v Empire City Subway Co., Ltd.*, 2014 US Dist LEXIS 147247

 (SDNY Oct. 14, 2014) ........................................................... 22,23,24,29

## Statutes

NYC Administrative Code § 7-201...........................................................3, 11,15,22

28 U.S. C. § 1291 ..............................................................................1

28 U.S.C. § 1332(a) ...........................................................................1

Fed. R. Civ. P. 56(a) .......................................................................8, 9

Fed. R.Civ. P.11 ...............................................................................6

## Rules

Rule 56(d) of the Federal Rules of Civil Procedure ........................ 10,13,27, 29, 34

N.Y. Rules of Prof'l Conduct  3.1 and 8.4....................................................6

## Secondary Authority

Siegel, New York Practice, 6th Edition at § 32.............................................5

## JURISDICTIONAL STATEMENT

This appeal is from an order of the United States District Court for the Southern District of New York (Buchwald, J.) dated September 26, 2024 ("Order") (A248).[1] The district court had jurisdiction pursuant to 28 U.S.C. § 1332(a), as there is complete diversity between all plaintiffs and defendants and the amount in controversy exceeds $75,000, exclusive of interest and costs. This Court has jurisdiction pursuant to 28 U. S. C. § 1291, as the Order appealed from is a final decision.

## OVERVIEW

This is a lawsuit brought by Plaintiff/Appellant Francis Quinn, Jr. ("Plaintiff or "Quinn") and his wife, Lori ("Lori"), against Defendants/Appellees, the City of New York and its Department of Transportation ("the City"), arising out of an incident that occurred at the intersection of 53rd Street and Sixth Avenue on July 3, 2019. In his complaint, Quinn states that while crossing Sixth Avenue, within the crosswalk, he "was caused to fall and sustain severe and permanent injuries due to the defective and hazardous condition of the within crosswalk." Complaint, ¶ 23 (A16). (The injuries sustained by Quinn, a professional golfer, sidelined him

---

[1] References to "A__" are to the pages of the Appendix.

permanently, costing him millions of dollars in income, and jeopardizing his ability to support his family. (*See generally* A158-A191).)

Photographs taken immediately after the incident, and a subsequent investigation by a highly qualified expert retained by Quinn, Joseph Farahnik, P.E., NSPE, revealed that a proximate cause of Quinn's injuries was a pothole in the crosswalk, abutting a ConEd gas utility box, which was defective, and extremely hazardous, because it had been the subject of an improper repair by the City. (A192-A205). That it was the City, and not some other entity or person, that created this condition as the result of a defective pothole repair is evident from that fact that shortly after Quinn's injury, the City dispatched workers who then properly repaired the pothole (thus demonstrating the City's responsibility for the hazardous condition). (Farahnik Declaration, ¶ 4 (A195), A201-A205). Additionally, the Big Apple Map clearly shows signs of defects which forms written notice to the city. (A206-A209).

The City moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure on the basis that: i) it allegedly had not received prior written notice of the defect that caused Quinn's accident; ii) there are no applicable exceptions to the prior written notice requirement; and iii) in the absence of any genuine issue of material fact as to Quinn's negligence claims, Lori Quinn's derivative claims must also be dismissed. (A52-A78).

The district court erroneously decided that the City had advanced a fulsome prima facie showing that it received no written notice of a defective condition prior to Quinn's accident, as required by §7-201, and that Quinn failed to establish that any conduct by the City constituted an affirmative act of negligence or any other exception to the rule. Hence, it granted summary judgment to the City. (A257-A268). Having granted the City's motion for summary judgment on Quinn's negligence claim, Lori's derivative claim was dismissed as well. (A269-A270).

## STATEMENT OF THE CASE

### A. FIRST ACTION, AGAINST CONED

The Plaintiffs, Francis Quinn, Jr., and Lori Quinn initially brought the suit against the Consolidated Edison Company of New York, Inc. ("ConEd"), under diversity jurisdiction. The case was filed on July 15, 2019, and ConEd filed an Answer on August 8, 2019. The case proceeded through initial filings, a case management conference, discovery, and pretrial motions in a timely manner. The initial conference was held on September 27, 2019, during which discovery deadlines and case management plans were set. Fact discovery deadlines were extended to February 28, 2020, to allow the parties to complete depositions and

provide expert reports. Settlement discussions were actively pursued, culminating in a settlement conference on February 6, 2020.

Over an approximately eight-month period, discovery was completed and the case ready for trial. On February 19, 2020, the parties informed the district court of a settlement in principle. The settlement amount was $2,499,000. As per Quinn's economic expert, Quinn's loss of earnings would be $378,390 payable over the next 14 years, loss of retirement in the amount of $1,101,024 payable over the next 14 years, and his medical/life care expenses totaled $449,500, payable over the next 28 ½ years. Mr. Quinn anticipated earning $650,000 to $900,000 per annum and wanted to remain on this tour until between age 68 and 70. Mr. Quinn's future economic loss has been estimated as $3,007,267 to $4,884,943. The estimated total of his past and future economic loss is $3,501,134 to $5,378,811. (*See generally* A158-A191.)

That case was formally dismissed on February 20, 2020, less than eight months after its filing date, reflecting an efficient resolution by Judge Ronnie Abrams and Magistrate Judge Stewart D. Aaron; had the case not been settled, it was ready for a trial date. All pending motions and conferences were vacated, and the case was closed, in February 2020.

## B. <u>SECOND ACTION, AGAINST THE CITY</u>

The Notice of Claim was filed on September 24, 2019, in which it was stated that "On July 3, 2019, while claimant FRANCIS QUINN, JR. was a lawful pedestrian on the crosswalk of the South side of 6th Avenue at its intersection with 53rd Street, in the County of New York, City and State of New York, he was caused to trip and fall due to a defective and hazardous gas utility box. The defect is located within the crosswalk of the Southside of 6th Avenue and its intersection with 53d Street, in the County of New York, City and State of New York. The defect consists of an uneven, raised, depressed, mis-leveled gas utility box." Quinn also attached three photographs of the accident location which showed the utility box and the pothole. *See* ECF No. 84-5.

As a result of the Notice of Claim, the City went to the scene of the accident and repaired the pothole. The purpose of the Notice of Claim was to prompt an investigation into the case, which the City carried out, leading to the subsequent repair. Photographs taken after the repair demonstrate that the Notice of Claim requirements were satisfied. Siegel, New York Practice, 6th Edition at § 32; *Brown v City of NY*, 95 NY2d 389 (2000).

Quinn testified in a 50-H hearing on April 23, 2020, and gave testimony about the pothole. *See* ECF No. 84-10. Thereafter, the City answered with the case being

5

assigned to Judge John G. Koeltl, who issued the case management order dated August 26, 2020. ECF No. 18.

The City added Con Ed as a third-party defendant on November 18, 2020. In November 2020 the case was reassigned to Judge Buchwald. Disregarding the case management order that had authorized Quinn to conduct discovery, she authorized the City to make the motion to dismiss based upon her view that a judicial estoppel issue existed.

Judge Buchwald then *sua sponte* made a motion to sanction Quinn's attorney, Joseph P. Napoli for allegedly violating Fed. R.Civ. P.11 ("Rule 11") and/or N.Y. Rules of Prof'l Conduct ("Rules") 3.1 and 8.4. ECF No. 46. Quinn opposed the *sua sponte* sanction and filed an opposition, attaching an expert attorney declaration which concluded that Mr. Napoli acted in a manner consistent with the customs and practices of New York lawyers handling personal injury matters involving ConEd and the City, and consistent with the applicable procedural rules (ECF No.55).

On appeal, on June 9, 2023, the Second Circuit vacated Judge Buchwald's judgement and stated that the district court "abused its discretion" in dismissing Quinn's complaint under the doctrine of Judicial estoppel. ECF No. 61. On June 13, 2023, counsel for Joseph P. Napoli and Napoli Shkolnik PLLC, Ronald C. Minkoff, filed a letter addressing the vacatur of the Show Cause Order by this Court,

emphasizing that the mediation in the ConEd's action did not warrant judicial estoppel, thus undermining the basis for any alleged Rule 11 or ethical violations against Joseph Napoli and Napoli Shkolnik LLP. He argued that sanctions requiring a finding of subjective bad faith cannot be supported based on the Second Circuit's ruling and the facts presented, including Napoli's compliance with procedural rules, prompt corrections of errors, and lack of intentional misconduct. The letter requested that the district court withdraw the sanctions-related aspects of the Order or allow a supplemental memorandum to address the updated context. ECF No. 62. In response, Judge Buchwald withdrew the Order to Show Cause on July 10, 2023. ECF No. 66.

## ISSUES PRESENTED

1.      Whether the lower court erred in concluding that the City met its initial Rule 56(c) burden to show that Quinn would be unable to produce evidence to demonstrate that the city caused or created the dangerous condition.


2.      Whether the lower court erred in determining that the Big Apple Map did not identify any relevant pothole or hazard.

3. Whether the lower court erred by failing to address Quinn's argument regarding pending discovery in the order.

4. Whether the case should be remanded back to the district court to a judge other than Judge Buchwald.

## STANDARD OF REVIEW

"We review de novo a district court's decision to grant summary judgment, construing the evidence in the light most favorable to the party against whom summary judgment was granted and drawing all reasonable inferences in that party's favor." *Bey v. City of New York*, 999 F.3d 157, 164 (2d Cir. 2021). "Summary judgment is required if 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *United States v. Sum of $185,336.07 U.S. Currency Seized from Citizen's Bank Acct. L7N01967*, 731 F.3d 189, 192 (2d Cir. 2013) (quoting Fed. R. Civ. P. 56(a)). Likewise, "we review de novo the district court's interpretation and application of state law." *Principal Nat'l Life Ins. Co. v. Coassin*, 884 F.3d 130, 134 (2d Cir. 2018).

Summary judgment can be granted only where, with the evidence viewed in the light most favorable to the non-moving party, "the movant shows that there is no

genuine issue as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). *See generally Vacold, L.L.C. v. Cerami*, 545 F.3d 114, 121 (2d Cir. 2008). A fact is "material" only where it will affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242. 248 (1986). A motion for summary judgment must be denied, even if the non-movant has come forward with *no* evidence, if the movant fails to meet its initial burden to show that there is no genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). *See also Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002) ("The party seeking summary judgment has the burden to demonstrate that no genuine issue of material fact exists."); *Giannulo v. City of New York*, 322 F.3d 139, 141 (2d Cir. 2003) ("non-movant is not required to rebut an insufficient showing").

As *Celotex* illustrates, a movant can meet that initial burden in one of two ways. First, it can wait until the end of discovery and then point to the fact that the non-movant has produced no evidence to prove the fact at issue. *Celotex*, 477 U.S. at 320, 325. This option is now expressly recognized in Fed. R. Civ. P. 56(c)(1)(B), as amended after *Celotex*: the moving party may show that the results of discovery "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." The City has

eschewed this option, having obtained leave to move for summary judgment before Quinn has had any opportunity to depose any City witness.

Alternatively, a party moving for summary judgment can seek to meet its initial burden by submitting with its motion its own evidence, in admissible form, which it contends disproves the fact at issue, as permitted by Fed. R. Civ. P. 56(c)(1)(A) & (4). A motion supported in this way can be defeated either by the non-moving party submitting its own evidence proving the fact at issue (thus demarking a triable issue), or by the non-movant showing, pursuant to Rule 56(d), that because discovery is incomplete, "it cannot present facts essential to justify its opposition," so that a ruling on summary judgment would be premature.

For there to be a "genuine" issue about the fact, the evidence must be such "that a reasonable jury could return a verdict for the nonmoving party." *Id*. In determining whether there is a genuine issue of material fact, the district court is required to resolve all ambiguities and draw all inferences in favor of the nonmoving party. *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 83 (2d Cir. 2004). But where there is no evidence in the record "from which a reasonable inference could be drawn in favor of the non-moving party on a material issue of fact," summary judgment is permissible. *Catlin v, Sobol*, 93 F.3d 1112, 1116 (2d Cir. 1996).

The City failed to put forth any evidence or undisputed material facts that entitle it to summary judgment as a matter of law in the instant case. Therefore, the City did not meet its initial burden, and its motion for summary judgment should have been denied in its entirety.

## SUMMARY OF ARGUMENT

The district court erred in dismissing this case by granting summary judgment, based on its erroneous conclusions that the City had advanced a fulsome prima facie showing that it received no written notice of a defective condition prior to Quinn's accident, as required by §7-201, and that Quinn had failed to establish that any conduct by the City constituted an affirmative act of negligence.

The error could not be clearer, as the district court made patent factual and legal errors as to the summary judgment standards in personal injury cases.

*First,* and foremost, the City failed to meet its Rule 56(c) burden to show that Quinn had failed to identify a witness who might prove that the City affirmatively caused or created the defect, through a botched repair done shortly before Quinn was injured. In its moving papers, the City did not even *mention* the expert affidavit of Joseph Farahnik on this exact point. It did so only in its reply brief—too late to meet its moving burden. The lower court clearly erred in concluding that affidavit from

expert witness Joseph Farahnik failed to raise a genuine issue of material fact. Mr. Farahnik's affidavit was sufficient to establish a triable issue regarding whether the City created or caused the hazardous condition. *See Cruz v City of NY*, 218 AD2d 546 (1st Dept 1995); *Gormley v County of Nassau,* 150 AD2d 342 (2d Dept 1989)).

The district court's grant of summary judgment on this issue was legal error.

*Second,* the Big Apple Map identifies the defect at the exact location where Quinn's accident occurred, reinforcing the need for discovery to obtain a clearer copy of the map. While the current copy may lack some clarity, it is nonetheless sufficient to show the existence of the defect. The need for a clearer copy does not negate the fact that this copy clearly highlights the relevant hazards. At the summary judgment stage, the district court is required to determine only whether there are genuine issues of material fact that a reasonable jury could decide in favor of the non-moving party. The presence of conflicting interpretations regarding the clarity and sufficiency of the Big Apple Map creates precisely such a triable issue. By nonetheless resolving this factual dispute in favor of the City, the district court improperly acted as the finder of fact, depriving Quinn of the right to have the evidence evaluated by a jury. This constitutes a significant error in the district court's application of the summary judgment standard.

*Third,* the district court abused its discretion in failing to adequately address the issue of pending discovery before granting summary judgment. The district court mentioned this critical issue only in a footnote on page 18 of its decision (A266), asserting that Quinn did not "specify" valid reasons why he "cannot present facts essential to justify his opposition" to the City's motion, as required by Rule 56(d). This assertion is incorrect. Quinn clearly outlined the necessity of further discovery in his memorandum of law, making clear that he needed, among other things, (1) "a clearer copy of the Big Apple Map"; and (2) depositions of City employees sufficient to determine the City's "record research regarding the work orders [and] repairs," as well as a deposition of "the City inspector who looked over the repairs in order to determine if the defect was caused due to the repairs." (A135-A136).

The district court's dismissal of these specific and critical discovery requests undermines Quinn's ability to fairly oppose the motion for summary judgment. What is even more troubling is that the District Court has misrepresented in its Order that Quinn failed to justify the need for discovery, which is both incorrect. Quinn explicitly and in detail articulated the necessity of further discovery, including the need to cross-examine witnesses, examine critical documents, and obtain post-accident repair records, all of which are essential to opposing the summary judgment motion. This misrepresentation by the district court unfairly dismisses Quinn's valid

and well-supported arguments, further compounding the procedural injustice in this case.

*Fourth,* Quinn requests reassignment of the case to a new district judge on remand, given the repeated errors and procedural inequities that have been associated with the current judge, raising concerns about impartiality and the appearance of justice. The judge's prior erroneous rulings, refusal to permit essential discovery, and apparent prejudgment of the case suggest that the judge on this second remand might have substantial difficulty in setting aside prior views. Reassignment is necessary and appropriate to preserve fairness, public confidence, and judicial integrity, outweighing any duplication of judicial effort.

## ARGUMENT

## I. THE CITY DID NOT MEET ITS RULE 56(C) BURDEN TO SHOW THAT QUINN WOULD BE UNABLE TO PROVE THAT THE CITY AFFIRMATIVELY CAUSED OR CREATED THE DANGEROUS CONDITION THROUGH A BOTCHED REPAIR

Quinn's first argument for reversing the district court is perhaps the most important, and certainly the most straightforward, as it simply involves applying well-settled law to an analysis of the City's opening memorandum seeking summary judgment, Quinn's opposition, and the City's reply (all collected in the Appendix, at A51-A79, A124-A146, and A230-A247, respectively).

As the district court recognized in its memorandum and order, Quinn advanced two separate arguments as to why the "Pothole Law," NYC Administrative Code § 7-201(c)(2), which partially shields the City from negligence liability (A256), posed no obstacle to his case. First, Quinn alleged in his complaint (A16-A17, ¶¶ 24, 28), and maintained in opposing summary judgment, that, through various means, the City had actual, prior written notice of the defect. (A257-A266). Second, Quinn alleged in his complaint (A16-A17, ¶¶ 26, 28), and maintained in opposing summary judgment, based on a 2022 affidavit by expert witness Joseph Farahnik, that the City's actions affirmatively and immediately resulted in the existence of a dangerous condition, through a botched repair that made the existing hazard worse. (A257, A263-A264, A267-A268).

The fatal error made by the City was that *it did not even mention the 2022 Farahnik affidavit* in its motion for summary judgment filed on January 25, 2024. There is no mention of Farahnik in the City's statement of undisputed facts (A43-A50) or in its opening memorandum of law (A52-A79), or in the three affidavits submitted by City employees, all executed more than a year after Farahnik's affidavit (A80-A122). The City's memorandum focused almost entirely on its argument that it lacked written notice of the defect. The scant four pages urging a grant of summary judgment on the affirmative negligence/"cause and create" exception to the notice statute (A73-A76) entirely overlooked the Farahnik affidavit, supplied to the City a

year and nine months earlier (in April 2022), which was direct evidence (based on an examination of photographs of the pothole at issue) that Quinn's injuries were caused by the City's botched repair of a pothole. (A195-A205, ¶¶ 8-12, 24-25).

The City's failure to even *mention* the Farahnik affidavit in moving for summary judgment is fatal given settled precedent holding that if a summary judgment movant fails, in its initial presentation, to demonstrate that there is no genuine issue of material fact on a given point, the motion for summary judgment must be denied *even if the non-movant has come forward with no evidence*. See p. 9, *supra*. It is well established that there are only two ways for a movant to meet that burden: either by waiting to complete discovery and then showing that the non-movant has produced no evidence to prove the fact at issue, or by presenting affirmative evidence disproving the fact at issue. See p. 10, *supra*. With regard to the factual issue of whether the physical appearance of the defect at issue, in the view of an expert witness, itself (independent of written records), provides proof of an affirmative act of negligence by the City, the City pursued *neither* way of meeting its burden. It did not depose Mr. Farahnik, and then seek to argue that his testimony was inadmissible and/or insufficient to prove the fact at issue. Nor did it submit an affidavit from *its own* expert, reaching a conclusion, based on the photographs of the defect and other considerations, opposite that of Mr. Farahnik. The City simply ignored, in filing its summary judgment motion, the fact that Quinn had not only

identified an expert to prove this point but had actually submitted an expert affidavit on the point.

Quinn's response, in opposing summary judgment on the affirmative act of negligence issue, was concise, and decisive. Citing the authoritative Supreme Court and Second Circuit precedent, Quinn pointed out that because the City had failed to even *mention* Mr. Farahnik in its motion for summary judgment, it necessarily had failed to meet its Rule 56(c) burden to show that Quinn would be unable to submit admissible proof on this point sufficient to justify a jury verdict in his favor. (A131-A135).

In its reply brief (A231-247), the City did not dispute Quinn's legal analysis of why its failure to address the Farahnik affidavit in its summary judgment was a fatal oversight, requiring that summary judgment be denied on this point. Instead, in two paragraphs of its reply brief, the City for the first time criticized Farahnik's analysis, arguing among other things that it was "conclusory," "self-serving," "lacks probative value," is "speculative," with contentions that are "are entirely misplaced"— and urging, based on these criticisms, that "Faharanick's [sic] report must be disregarded by the Court." A243-A244.

Of course, this effort ignored the Second Circuit decision, cited by Quinn in his opposition, holding that if a summary judgment movant fails to meet its burden in its opening brief, the "non-movant is not required to rebut an insufficient

showing" *at all*, *Giannulo v. City of New York*, 322 F.3d 139, 141 (2d Cir. 2003) (cited in A131), much less is the non-movant required to rebut with evidence in admissible form that can withstand close scrutiny. All the non-movant is required to do is *point out* that the movant, by overlooking a key piece of evidence, did not meet its burden. Merely pointing out that the moving burden had not been met, of course, does not then open the door to the movant submitting in its reply brief what it was required to submit in its moving papers. *See, e.g., Aurora Loan Services, Inc. v. Posner, Posner & Associates*, 513 F.Supp.2d 18, 20 (S.D.N.Y. 2007). *See also Bennett v. Bascom*, 788 F. App'x 318, 323 (6th Cir. 2019);

It necessarily follows that the district court erred as a matter of law in crediting the factual criticisms of Mr. Farahnik's affidavit made by the City in reply as reasons to grant summary judgment. (A263-A264). Thus, at minimum, this Court must reverse the district court's grant of summary judgment on the affirmative act of negligence issue.

## II.  THE ISSUE OF WRITTEN NOTICE IS A QUESTION OF FACT FOR THE JURY

### A. The Big Apple Map shows the defect that caused Quinn's accident

The City did have prior written notice of the defect on the location where

Quinn's accident happened because the Big Apple Map[2] provides a solid basis on which a jury could conclude that the defect caused Quinn's accident. Not only did the City have prior written notice of the defect by way of Big Apple Map, but also by way of complaints from citizens and work orders. Therefore, the argument that the City did not have prior written notice is incorrect. Maps prepared by Big Apple Pothole and Sidewalk Protection Committee, Inc., and filed with the DOT serve as prior written notice of defective conditions depicted thereon. *See Weinreb v City of NY*, 193 AD2d 596 (2d Dept 1993)*; Acevedo v New York*, 128 AD2d 488 (2d Dept 1987); *Big Apple Pothole & Sidewalk Protection Comm., Inc. v Ameruso,* 110 Misc 2d 688 (Sup Ct, NY County 1981).

The Big Apple Map (A208-A209) indicates that there is a "Hole or hazardous depression," "Extended section of broken, misaligned, or uneven curb." "Extended section of potholes or other hazards," "Extended section of raised or uneven sidewalk" "obstruction protruding from sidewalk" at the intersection of 53rd Street

---

[2] Access to the original fie of Big Apple Map would be helpful to Quinn, but its absence also underscores why summary judgment is inappropriate. The copy of the map available to Quinn already suggests a jury issue regarding whether the City had notice of the defect. To overcome this, the City would need to produce the original map and demonstrate that its finer detail eliminates any genuine issue of material fact. The ambiguity created by the lower-quality copy available to Quinn must be resolved in favor of allowing a jury to decide, particularly since it was within the City's power to produce the original map to substantiate its claim. A clearer version could clarify the defect's precise location, improve legibility, and/or reveal additional hazards or annotations relevant to the case, and the City's failure to provide it undermines its argument that no genuine factual dispute exists.

and 6th Avenue where the accident happened. Therefore, there was written notice to the City regarding the defects at the exact location where Mr. Quinn injured himself.

Additionally, the City's obligation to provide a clearer copy for further scrutiny only underscores the necessity of continued discovery, not the inadequacy of the current evidence. The Court erred in stating that "no reasonable juror could conclude otherwise" regarding the defect on the Big Apple Map. (A265). This statement overstepped the Court's role in a summary judgment motion, as it was not the district court's place to preempt what a jury might reasonably conclude.

### B. The maintenance repairs and orders constitute written acknowledgement

In *Bruni v. City of New York,* 2 NY3d 319 (2004), the court held that a written statement showing that the city agency responsible for repairing a condition had first-hand knowledge both of the existence and the dangerous nature of the condition is an "acknowledgement" sufficient to satisfy the Pothole Law. The "acknowledgement" alternative in paragraph (2) of the Pothole Law appears to be designed to make written notice to City unnecessary where there is documentary evidence that serves the same function—to demonstrate that the responsible city agency knew of the hazard and had an opportunity to remedy it. This purpose can be served as well by an internal document as an external one.

It is submitted that there is a Pothole Defect Complaint made on August 22,

2017-Defect No.: DM2017235027 for West 52nd Street to West 53rd Street to DOT (A212) The complaint stated: "Pothole Defect," "Damaged Patchwork." There is Manhattan Street Maintenance Pothole Sheet dated August 23, 2017, too.  (A219-A221). Again, on January 17, 2019, a repair Order DM2019019002 was generated on January 17, 2019, for the accident location and a pothole crew went to the location where they literally took three minutes to repair and do street maintenance (A224-A229). Therefore, the City acknowledged that there was a defect and hence it fulfills the "written notice" requirement by way of written acknowledgement.  Additionally, City had summoned ConEd to appear for a hearing on November 14, 2018, as ConEd had opened the street at 1301 6th Avenue between West 52nd Street and West 53rd Street without City permit which again goes to show that City had a notice of the defect. ECF No. 84-14 at 8.

In the instant case, the City conducted work at the location and it immediately created the defect. The City worked at the same location several times as seen vide the repair orders dated August 22, 2017, and January 17, 2019. (A212, A224). The City had provided Street Opening Permit to ConEd, too, which was valid from December 12, 2018, to December 13, 2018, and later converted to January 2, 2019 for repairs (ECF No. 84-17 at 21), this too, was only a few months before the accident. Work was done on the same location on January 17, 2019, only a few months before Quinn's accident, which goes to show that the work by City resulted

in existence of dangerous condition. Another Street Opening permit was granted to ConEd by the City on January 23, 2019 (ECF No. 84-17 at 27); February 12, 2019 (ECF No. 84-17 at 32); April 2, 2019 (ECF No. 84-17 at 38); June 6, 2019 (ECF No. 84-17 at 44). Therefore, the City had written notice of the defect pursuant to the NYC Administrative Code § 7-201 by way of Big Apple Map, complaints, work orders etc. and even if not so, the City created the defect and dangerous condition.

The district court relied on *Zinz v Empire City Subway Co., Ltd*., 2014 U.S. Dist. LEXIS 147247 (SDNY Oct. 14, 2014), and the unreported case *Webster v. City of New York*, No. 19 Civ. 5638 (KPF), 2021 WL 3913556 (S.D.N.Y. Sept. 1, 2021), to conclude that the affirmative negligence exception does not apply in the present case. Specifically, the district court reasoned that Quinn failed to provide evidence that the repairs on either August 22, 2017, or January 17, 2019, created a dangerous condition, as these repairs occurred two years and seven months, respectively, before Quinn's accident. The district court further cited *Webster* to support its determination that the maintenance and repair orders did not demonstrate any defect or danger remaining after the City completed its repairs. However, the reliance on these cases is flawed, as they are distinguishable from the present circumstances.

The foundational facts of *Webster* differ significantly from this case. In *Webster*, the district court endorsed a proposed case management plan and allowed discovery to proceed. Even after multiple extensions of the discovery deadline, the

22

plaintiff had the opportunity to reopen the discovery but chose not to do so. In contrast, Quinn in the current case has repeatedly requested discovery but was never given an opportunity to conduct it. Additionally, the plaintiff in *Webster* failed to plead that the City had prior written notice of the defect and instead relied on citizen complaints to meet the written notice requirement. By comparison, Quinn in this case relies on actual work orders as evidence of prior written notice, which is far more substantive than mere citizen complaints.

The district court's reliance on *Webster* to reject the affirmative negligence exception is also problematic. In *Webster*, the court concluded that the plaintiff could not prove the existence of a dangerous condition immediately following repairs, but this conclusion was reached after the plaintiff had an opportunity to conduct discovery. Here, Quinn has been denied such an opportunity, making it impossible to establish whether the repairs created a dangerous condition. Without discovery, it is premature and unfair to conclude that no evidence of affirmative negligence exists.

The *Zinz* case is distinguishable because the plaintiff there was afforded the opportunity to depose City employees and obtain relevant discovery. Only after conducting the discovery did the district court conclude that no evidence existed of an immediate dangerous condition following the City's repairs. In contrast, Quinn in this case has not been allowed to depose City employees or obtain discovery related to the City's repairs. This lack of discovery makes *Zinz* inapplicable here. In

fact, in *Zinz*, testimony from City employees suggested that the repairs may have been improperly performed—precisely the type of discovery Quinn in this case has been denied. This absence of critical information raises a genuine question of fact, yet the district court has unfairly denied Quinn the opportunity to pursue it.

In both *Webster* and *Zinz*, the plaintiffs' failures to produce evidence were based on opportunities for discovery that they either failed to take advantage of or that in the end yielded no relevant evidence. In the current case, Quinn has been denied such opportunities altogether. Therefore, the district court erred in relying on these cases to dismiss Quinn's claims.

The district court erred in relying on *Parente v. Metro. Transp. Auth.*, 10 Civ. 5913 LTS DCF, 2012 WL 1813077 (S.D.N.Y. May 16, 2012), in which the district court held that the "affirmative negligence" exception requires plaintiffs to present admissible evidence showing that the municipality's actions "affirmatively" and "immediately" created a dangerous condition. That case is distinguishable from the present one. *Parente* involved a black-ice-and-snow case, which is governed by different rules. In *Parente*, snow was plowed at the New Rochelle train station parking lot on December 16, 2007, and salting followed the next day. On December 17, the plaintiff parked in a non-designated area, noticed nearby ice but did not relocate, and later slipped while returning to her vehicle, injuring her knee. There was no prior notice to the City about the ice, and it was unclear whether freezing and

refreezing caused the condition. Additionally, the area had been plowed for accessibility, and the plaintiff's failure to move her vehicle contributed to the accident. These facts are markedly different from this case, in which Quinn tripped on a location repeatedly worked on by the City, under ordinary weather conditions.

## III.   THE DISTRICT COURT ABUSED ITS DISCRETION BY DENYING QUINN DISCOVERY

"Only in the rarest of cases may summary judgment be granted against a plaintiff who has not been afforded the opportunity to conduct discovery." *Hellstrom v United States Dep't of Veterans Affairs,* 201 F3d 94 (2d Cir 2000). Indeed, "summary judgment (should) be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition*." Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 n.5 (1986). When a party has not had *any* opportunity for discovery, summary judgment is premature. *See Berger v. United States,* 87 F.3d 60, 65 (2d Cir. 1996). "(W)hen a party facing an adversary's motion for summary judgment reasonably advises the court that it needs discovery to be able to present facts needed to defend the motion, the court should defer decision of the motion until the party has had the opportunity to take discovery and rebut the motion." *Com. Cleaning Servs., L.L.C. v. Colin Serv. Sys., Inc.,* 271 F.3d 374, 386 (2d Cir. 2001).

As noted by the Second Circuit in its June 9, 2023, order, the district court "abused its discretion" in dismissing Quinn's complaint under the doctrine of judicial estoppel. ECF No. 61 & 65. The district court compounded this error by subsequently denying Quinn the opportunity to conduct critical discovery, further undermining Quinn's ability to effectively litigate the case. This marks a troubling

pattern of the district court failing to uphold procedural fairness. This consistent disregard for legal standards raises serious concerns about the equitable handling of this matter.

It is well established that for a district court to grant summary judgment without first affording the non-movant adequate discovery constitutes an abuse of discretion, particularly when specific discovery requests have been articulated.[3] Only when the "nonmoving party has had a fully adequate opportunity for discovery" does the converse apply: that notwithstanding Rule 56(d), "the trial court may properly deny further discovery." *Trebor Sportswear Co., Inc. v. The Limited Stores, Inc.*, 865 F.2d 506, 511 (2d Cir. 1989). In this case Quinn has had no opportunity for discovery in the first place.

The District Court abused its discretion by preventing Quinn from conducting discovery that the judge originally assigned to the case had allowed. Rule 56(d) of the Federal Rules of Civil Procedure permits a court to defer ruling on a motion for

---

[3] *See, e.g.*, *Williams v. R.H. Donnelley Corp.*, 368 F.3d 123, 126 n.1 (2d Cir. 2004); *Emigrant Residential LLC v. Pinti*, 37 F.4th 717, 724 (1st Cir. 2022); *Shelton v. Bledsoe*, 775 F.3d 554, 559, 568 (3d Cir. 2015); *La Quinta Corp. v. Heartland Props.*, LLC, 603 F.3d 327, 334–335 (6th Cir. 2010); *Rakes v. Life Investors Ins. Co. of Am.*, 582 F.3d 886, 893, 896 (8th Cir. 2009); *Raby v. Livingston*, 600 F.3d 552, 561–562 (5th Cir. 2010); *Waterloo Furniture Components v. Haworth*, 467 F.3d 641, 648 (7th Cir. 2006); *Ingle v. Yelton*, 439 F.3d 191, 195 (4th Cir. 2006).

summary judgment if the nonmovant shows that it cannot present essential facts without additional discovery. The denial of such a request is reviewed for abuse of discretion, which occurs when a decision is arbitrary, unreasonable, or contrary to law. In this case, the district court erred by denying Quinn's specific and justified request for additional discovery, which undermined the fairness of the summary judgment process.

Quinn clearly articulated the necessity for further discovery, identifying specific evidence and witnesses essential to opposing the City's motion for summary judgment (A136). For example, Quinn sought:

i. A clearer copy of the Big Apple Map to examine potential defects at the accident location.

ii. Cross-examination of researchers, repair inspectors, and Ms. Yelena Pasynkova to reconcile conflicting repair orders (DM2017235027 and DM2019019002) and establish whether repairs were conducted properly.[4]

---

[4] In particular, Quinn requested the opportunity to cross-examine Ms. Pasynkova regarding the repair order DM2017235027, which was generated on August 22, 2017, prior to the accident at the location in question. In her affidavit, Ms. Pasynkova claimed that the defect was closed; however, another repair order, DM2019019002, was created for the same location on January 17, 2019, and allegedly closed on January 18, 2019, just months before the accident. Quinn contends that the defect was not properly repaired, ultimately leading to the accident. Cross-examination of both the repair inspector and Ms. Pasynkova regarding these defects is essential. (A136)

iii.    Post-accident repair records to substantiate that the defect was not adequately repaired before the incident.

iv.    Testimony regarding the existence and utility of a database tracking potholes or GAS utility boxes across the City.

The necessity of this evidence is clear, as it directly addresses the critical issue of whether the defect that caused the accident was properly repaired. The district court's failure to consider these valid requests contravenes the core purpose of Rule 56(d): to protect a litigant who needs additional time and discovery to respond effectively to a summary judgment motion.

The District Court also relied on a New York Supreme Court case, *Culbertson v. Triumph Constr. Corp.*, No. 159608/2019, 2023 WL 5628204, at *2–*3 (Sup. Ct. New York Cty. Aug. 31, 2023), to conclude that the City had satisfied its prima facie burden of proving it did not receive prior written notice by submitting a DOT affidavit and DOT records as part of its motion for summary judgment. However, this reliance is flawed for two reasons.

First, decisions from the New York Supreme Court are hardly authoritative in federal district court. Second, in *Zinz*, cited by both the district court and the City, testimony from City employees suggested that repairs performed by the City may have been improperly executed. This evidence created a factual issue as to whether the City had received written notice, which undermined the reliance solely on

29

affidavits and records. Similarly, in this case, the district court erred in deciding that the City's affidavits and records were sufficient to meet its burden of proving it did not receive prior written notice.

## A. The district court mischaracterized Quinn's requests as unsupported.

Contrary to the district court's assertion in its decision, Quinn provided a detailed explanation of the reasons why additional discovery was necessary. In the memorandum of law and accompanying letters, Quinn outlined the relevance of specific evidence and testimony to his opposition to summary judgment. (A136). The district court's assertion that Quinn did not "specify" valid reasons (A266 (footnote 7)) is factually incorrect and constitutes an abuse of discretion. This incorrect account of Quinn's arguments further illustrates the procedural unfairness involved, and further undermines one's confidence in the district court's impartiality.

In his August 17 letter, Quinn requested that district court compel the deposition of Henry Williams and a relevant City Roadway Repair and Maintenance Department employee, in order to secure the additional time and discovery needed to ensure an adequate summary judgment record, prior to the City filing its motion. ECF No. 70. Quinn also sought the production of missing records, including maintenance sheets and work orders, which are critical for completing discovery and opposing the summary judgment motion. ECF No. 70. However, the district court disregarded both the August 17 and August 21 letters. ECF No. 73.

Subsequently, Quinn served the City with a Notice to Admit that the City performed maintenance or repair work on the south side of 6th Avenue at the intersection with East 53rd Street, New York, at any time between July 3, 2016, through July 3, 2019, and at any time between July 3, 2019, through July 3, 2020, (ECF No. 78 #1) which the district court quashed in its October 13, 2024, order, ECF No. 80, shortly before allowing the City to file its motion for summary judgment. Quinn has been unable to obtain any discovery from the City. Additionally, the district court, as acknowledged in its own order (A252-A253), previously dismissed this case on judicial estoppel grounds, a decision that was overturned by the Second Circuit. These actions may give rise to questions regarding the equitable handling of this case by the district court.

## B. The district court's failure to address Quinn's discovery requests violated procedural fairness

Despite Quinn's repeated efforts to compel discovery through letters dated August 17, 2023, August 21, 2023, and October 2, 2023, the district court ignored these requests and allowed the City to proceed with its summary judgment motion without requiring discovery compliance. This deprived Quinn of a fair opportunity to gather evidence essential to opposing the motion.

Notably, the district court quashed Quinn's Notice to Admit regarding the City's maintenance or repair work on the accident location without sufficient justification. This decision further obstructed Quinn's ability to substantiate its

claims. Moreover, the district court's October 13, 2024, order dismissing Quinn's discovery requests immediately before granting summary judgment raises concerns about equitable treatment.

The district court's refusal to grant additional time and its mischaracterization of Quinn's arguments undermine the fairness of the proceedings. Given the Second Circuit's prior reversal and the procedural inequities in this case, Quinn respectfully requests that this court reverse the district court's decision and remand the case for further proceedings, including adequate discovery.

## IV. THE CASE SHOULD BE REMANDED BACK TO THE DISTRICT COURT TO A DIFFERENT JUDGE THAN JUDGE BUCHWALD

Quinn requests that this case be reassigned to a new District Judge on remand. As a general rule, cases remanded to a District Court for further proceedings are sent back without any directions or suggestions as to the judge before whom they are to be conducted; in most cases, such matters are "properly left to the district court." *United States v. Robin*, 553 F.2d 8, 9 (2d Cir. 1977) (en banc). Nevertheless, "in a few instances there may be unusual circumstances where both for the judge's sake and the appearance of justice," an order of reassignment is appropriate. *Id.* at 9-10 (internal quotation marks and citations omitted). The principal factors to be weighed in making a determination of whether reassignment is appropriate are:

(1) whether the original judge would reasonably be expected upon remand to have substantial difficulty in putting out of his or her mind previously expressed views or findings determined to be erroneous or based on evidence that must be rejected,

(2) whether reassignment is advisable to preserve the appearance of justice, and

(3) whether reassignment would entail waste and duplication out of proportion to any gain in preserving the appearance of fairness.

*Id.* at 10; *see also Reilly v. NatWest Mkts. Group, Inc.*, 181 F.3d 253, 271-72 (2d Cir. 1999) (relying on *Robin* in a civil case); *Springs Mills, Inc. v. Ultracashmere House, Ltd.*, 724 F.2d 352, 357 (2d Cir. 1983) (same).

The factors outlined in *Robin* strongly support reassignment in this case.

## 1. Difficulty in Setting Aside Previously Expressed Erroneous Views

The record demonstrates that the district court has repeatedly expressed and acted upon erroneous views in this case, which may present substantial difficulty in approaching further proceedings with impartiality. Specifically:

33

- The Second Circuit previously reversed the district court's dismissal of Quinn's claims under the doctrine of judicial estoppel, holding the decision to be an abuse of discretion.

- The district court had also *sua sponte* sanctioned Quinn's Attorney Mr. Joseph P. Napoli and later withdrew the sanctions after the Second Circuit's order.

- Later, the district court compounded this error by denying Quinn the opportunity to conduct essential discovery under Rule 56(d), despite Quinn's detailed and specific requests for discovery that were critical to opposing summary judgment.

- The district court, by stating "No reasonable juror could conclude otherwise" (A265), has indicated that the judge has prejudged the case and, with this firm conviction in mind, might have great difficulty in impartially assessing the trial record, and would likely dismiss the case at the end of Quinn's or the City's case, or else set aside a verdict for Quinn and direct a verdict in favor of the City.

These repeated missteps suggest that the district court may have certain negative views about the merits of Quinn's claims and the procedural handling of the case. Given this history, there is a reasonable likelihood that the district judge, no matter

how well intentioned, might struggle to set aside these preconceptions, even in the light of a remand order.

**2. Preserving the Appearance of Justice**

Reassignment is advisable to maintain the appearance of justice and ensure public confidence in the fairness of these proceedings. The district court's handling of this case raises significant concerns:

- The district court mischaracterized Quinn's well-supported discovery requests as unsupported, dismissing detailed justifications and denying discovery critical to opposing summary judgment.

- The district court disregarded multiple letters from Quinn requesting the opportunity to obtain depositions, missing records, and other discovery, further compounding procedural inequities.

These actions not only prejudiced Quinn but also created the perception of bias or an unwillingness to fairly evaluate Quinn's claims. Reassignment would alleviate such concerns and reinforce the Judicial Branch's commitment to maintaining public confidence in the principle of impartiality as the bedrock of the system.

**3. Balancing Waste and Fairness**

Although reassignment may result in some duplication of judicial effort, such waste would not be disproportionate to the benefits of preserving fairness and the appearance of justice. Reassignment would allow a new judge to review the case without the potential bias introduced by prior erroneous rulings. Additionally, the

judicial resources expended to date do not outweigh the need for procedural fairness and equity moving forward.

The circumstances of this case align closely with the *Robin* factors warranting reassignment. The district court's repeated errors, combined with its refusal to address legitimate discovery requests, create a substantial risk that the district court would face difficulty setting aside its prior views. Reassignment is essential to restore confidence in the judicial process and preserve the appearance of justice. Accordingly, Quinn respectfully requests that this case be remanded to a new District Judge for further proceedings.

## CONCLUSION

In conclusion, the district court committed significant legal and procedural errors in granting summary judgment to the City. First and foremost, it granted summary judgment on the affirmative act of negligence issue even though the City never met its Rule 56(c) burden as movant, which it was required to do in its opening brief (not, as it belatedly attempted to do, in its reply brief). Further, the district court failed to address the critical issue of pending discovery, dismissing detailed and valid arguments for additional evidence and testimony. By misapprehending Quinn's arguments and ignoring the necessity of further discovery, including the Big Apple

Map and related repair records, the district court undermined Quinn's ability to adequately oppose the motion.

At bottom, the district court's decisions to relieve the City of its burden as movant, and to resolve factual disputes, weigh evidence, and assess credibility at the summary judgment stage, violated established legal principles. The testimony of Quinn's expert, the discrepancies in the DOT records, and the City's post-accident repairs collectively raise substantial issues of material fact that require resolution by a jury. The numerous unresolved factual disputes, combined with the district court's errors in applying the summary judgment standard, warrant reversal of the district court's decision and a remand for further proceedings, including full discovery and a jury trial.

Dated: New York, New York

     January 13, 2025

                              Respectfully submitted,

                              **NAPOLI SHKOLNIK, PLLC**

                              */s/ Aparna Pujar*
                              Aparna Pujar
                              360 Lexington Avenue, Floor,
                              New York, New York 10017
                              Tel: (212) 397-1000
                              E-mail: JNapoli@NapoliLaw.com

## CERTIFICATE OF COMPLIANCE WITH F.R.A.P 32(a)

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B). It contains 8,248 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6). It has been prepared in a proportionally spaced typeface using MS Word in 14 pt Times New Roman.

Dated: January 13, 2025.

Respectfully submitted,

**NAPOLI SHKOLNIK, PLLC**

*/s/ Aparna Pujar*
Aparna Pujar
360 Lexington Avenue, Floor,
New York, New York 10017
Tel: (212) 397-1000
E-mail: JNapoli@NapoliLaw.com