# 24-2682

# United States Court of Appeals
# for the Second Circuit

---

FRANCIS PAUL QUINN, JR., and LORI ANN QUINN,

*Plaintiffs-Appellants,*

v.

THE CITY OF NEW YORK and
THE NEW YORK CITY DEPARTMENT OF TRANSPORTATION,

*Defendants- Third-Party-Plaintiffs-Appellees,*

CONSOLIDATED EDISON, INC.,

*Third-Party-Defendant.*

---

On Appeal from the United States District Court
for the Southern District of New York

---

## APPENDIX

---

**NAPOLI SHKOLNIK PLLC**
APARNA S. PUJAR
360 Lexington Avenue, 11th Floor
New York, NY 10017
Tel: (212) 397-1000
E-mail: JNapoli@NapoliLaw.com

*Attorneys for Plaintiffs-Appellants*

**Table of Contents**

**Document**                                          **Page**

Docket sheet ............................................................................ A1 to A11

Complaint, filed Mar. 31, 2020 (Dkt. 3) ................................... A12 to A24

Answer, filed Aug. 5, 2020 (Dkt. 10) ....................................... A25 to A33

Defendants' Notice of Motion for summary judgment,
filed Jan. 25. 2024 (Dkt. 84) ................................................... A34 to A37

    Declaration of Alexandra Hastings, Esq.,
    dated Jan. 25, 2024 (Dkt. 84-1) ...................................... A38 to A42

    Statement of Undisputed Facts (Dkt. 84-2) ................... A43 to A50

    Memorandum of Law (Dkt. 84-4) .................................. A51 to A79

    Exhibit H, Affidavit of Henry Williams,
    dated Aug. 24, 2023 (Dkt. 84-16) .................................. A80 to A85

    Exhibit J, Affidavit of Yelena Pasynkova,
    dated Aug. 25, 2023 (Dkt. 84-19) ................................ A86 to A108

    Exhibit K, Affidavit of Mohammad Hoque,
    dated Aug. 28, 2023 (Dkt. 84-20) .............................. A109 to A122

Plaintiffs' Memorandum of Law in Opposition to Defendants'
Motion for Summary Judgment, filed Feb. 28, 2024 (Dkt. 85) ............ A124 to A146

Declaration of Joseph P. Napoli, Esq.,
filed Feb. 28, 2024 (Dkt. 86) ................................................. A147 to A150

1

**Document**                                                          **Page**

Plaintiffs' Local Rule 56.1 Response and
Counterstatement of Material Facts,
filed Feb. 28, 2024 (Dkt. 87)..................................................A151 to A157

     Exhibit 1, Mediation Memo (Dkt. 87-1) ......................A158 to A191

     Exhibit 2, Expert Declaration of Joseph Farahnik,
     P.E, NSPE, dated Apr. 8, 2022 (Dkt. 87-2) ................A192 to A199

     Exhibit 3, Photos (Dkt. 87-3)......................................A200 to A205

     Exhibit 4, Big Apple Map (Dkt. 87-4) ........................A206 to A209

     Exhibit 5, August 2017 Report (Dkt. 87-5) ................A210 to A221

     Exhibit 6, January 2019 Report (Dkt. 87-6) ..............A222 to A229

Defendants' Reply Memorandum of Law,
filed Mar. 15, 2024 (Dkt. 88) .................................................A230 to A247

Memorandum and Order, filed Sept. 26, 2024 (Dkt. 89)......A248 to A270

Judgment, filed Sept. 26, 2024 (Dkt. 90) ..............................A271 to A272

Notice of Appeal, filed Oct. 8, 2024 (Dkt. 93) ......................A273 to A274

**Docket sheet**

12/8/24, 12:34 AM                          SDNY CM/ECF NextGen Version 1.7

**Query   Reports   Utilities   Help   Log Out**

CLOSED,APPEAL,ECF

# U.S. District Court
## Southern District of New York (Foley Square)
## CIVIL DOCKET FOR CASE #: 1:20-cv-02666-NRB

Quinn et al v. City of New York                          Date Filed: 03/30/2020
Assigned to: Judge Naomi Reice Buchwald                  Date Terminated: 09/26/2024
Demand: $9,000,000                                       Jury Demand: Both
Cause: 28:2672pi Federal Tort Claim Act - Personal Injury  Nature of Suit: 360 P.I.: Other
                                                         Jurisdiction: Diversity

### Plaintiff
**Francis Paul Quinn, Jr.**                 represented by   **Joseph Peter Napoli**
                                                            Napoli Shkolnik PLLC
                                                            360 Lexington Ave, Suite 1101
                                                            New York, NY 10119
                                                            (212)-397-1000
                                                            Fax: 646-843-7603
                                                            Email: jnapoli@napolilaw.com
                                                            *ATTORNEY TO BE NOTICED*

### Plaintiff
**Lori Ann Quinn**                          represented by   **Joseph Peter Napoli**
                                                            (See above for address)
                                                            *ATTORNEY TO BE NOTICED*

V.

### Defendant
**City of New York**                        represented by   **Alexandra Hastings**
                                                            New York City Law Department
                                                            100 Church St.
                                                            New York, NY 10007
                                                            212-356-8686
                                                            Email: ahasting@law.nyc.gov
                                                            *LEAD ATTORNEY*

                                                            **David Jeffrey Robert Skochil**
                                                            New York State Office of The Attorney General
                                                            100 Church Street
                                                            New York, NY 10007
                                                            212-356-2647
                                                            Fax: 212-356-1148
                                                            Email: dskochil@law.nyc.gov
                                                            *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*

### Defendant
**New York City Department of Transportation**  represented by   **Alexandra Hastings**
                                                            (See above for address)
                                                            *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*

                                                            **David Jeffrey Robert Skochil**
                                                            (See above for address)
                                                            *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*

### Miscellaneous
**Joseph Napoli**                           represented by   **Ronald Charles Minkoff**
                                                            Frankfurt Kurnit Klein & Selz, P.C.

**A2**

28 Liberty Street
Ste 36th Floor
New York, NY 10005
212-705-4837
Email: rminkoff@fkks.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Glenda Dieuveille**
Frankfurt Kurnit Klein & Selz
28 Liberty St
New York, NY 10005
212-705-4840
Email: gdieuveille@fkks.com
*ATTORNEY TO BE NOTICED*

**Miscellaneous**

**Napoli Shkolnik LLP**                              represented by   **Ronald Charles Minkoff**
                                                                     (See above for address)
                                                                     *LEAD ATTORNEY*
                                                                     *ATTORNEY TO BE NOTICED*

                                                                     **Glenda Dieuveille**
                                                                     (See above for address)
                                                                     *ATTORNEY TO BE NOTICED*

**Miscellaneous**

**Aparna Pujar**

**ThirdParty Plaintiff**

**New York City Department of Transportation**     represented by   **Alexandra Hastings**
                                                                     (See above for address)
                                                                     *LEAD ATTORNEY*

                                                                     **David Jeffrey Robert Skochil**
                                                                     (See above for address)
                                                                     *LEAD ATTORNEY*
                                                                     *ATTORNEY TO BE NOTICED*

**ThirdParty Plaintiff**

**City of New York**                                represented by   **Alexandra Hastings**
                                                                     (See above for address)
                                                                     *LEAD ATTORNEY*

                                                                     **David Jeffrey Robert Skochil**
                                                                     (See above for address)
                                                                     *LEAD ATTORNEY*
                                                                     *ATTORNEY TO BE NOTICED*

V.

**ThirdParty Defendant**

**Consolidated Edison, Inc.**                       represented by   **Gabrielle LaMarche DeYoung**
                                                                     Heidell, Pittoni, Murphy & Bach, LLP (CT)
                                                                     30 Oak Street
                                                                     Stamford, CT 06611
                                                                     (212)-286-8585
                                                                     Fax: (212)-490-8966
                                                                     Email: glamarche@hpmb.com
                                                                     *ATTORNEY TO BE NOTICED*

                                                                     **Silvia Durri Manaashirov**
                                                                     Heidell, Pittoni, Murphy & Bach, LLP
                                                                     99 Park Avenue
                                                                     Manhattan, NY 10016
                                                                     (718)-314-4900

**A3**

Email: sdurri@hpmb.com
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 03/30/2020 | 1 | **FILING ERROR - DEFICIENT PLEADING - FILED AGAINST PARTY ERROR**-COMPLAINT against All Plaintiffs. (Filing Fee $ 400.00, Receipt Number ANYSDC-19272111)Document filed by FRANCIS PAUL QUINN, JR, LORI ANN QUINN. (Attachments: # 1 Civil Cover Sheet CIVIL COVER SHEET).(Napoli, Joseph) Modified on 3/31/2020 (pne). (Entered: 03/30/2020) |
| 03/31/2020 | | CASE OPENING INITIAL ASSIGNMENT NOTICE: The above-entitled action is assigned to Judge John G. Koeltl. Please download and review the Individual Practices of the assigned District Judge, located at https://nysd.uscourts.gov/judges/district-judges. Attorneys are responsible for providing courtesy copies to judges where their Individual Practices require such. Please download and review the ECF Rules and Instructions, located at https://nysd.uscourts.gov/rules/ecf-related-instructions..(pne) (Entered: 03/31/2020) |
| 03/31/2020 | | Magistrate Judge Stewart D. Aaron is so designated. Pursuant to 28 U.S.C. Section 636(c) and Fed. R. Civ. P. 73(b)(1) parties are notified that they may consent to proceed before a United States Magistrate Judge. Parties who wish to consent may access the necessary form at the following link: https://nysd.uscourts.gov/sites/default/files/2018-06/AO-3.pdf. (pne) (Entered: 03/31/2020) |
| 03/31/2020 | | Case Designated ECF. (pne) (Entered: 03/31/2020) |
| 03/31/2020 | | **\*\*\*NOTICE TO ATTORNEY REGARDING DEFICIENT PLEADING. Notice to Attorney Joseph Peter Napoli to RE-FILE Document No. 1 Complaint,. The filing is deficient for the following reason(s): the All Plaintiff radio button was selected; the party/parties whom the pleading is against were not selected. Re-file the filing using the event type Complaint found under the event list Complaints and Other Initiating Documents - attach the correct signed PDF - select the individually named filer/filers - select the individually named party/parties the pleading is against. \*\*DO NOT USE GOOGLE CHROME OR SAFARI BROWSERS\*\* (pne)** (Entered: 03/31/2020) |
| 03/31/2020 | | **\*\*\*NOTICE TO ATTORNEY REGARDING DEFICIENT CIVIL COVER SHEET. Notice to attorney Joseph Peter Napoli to RE-FILE Document. The filing is deficient for the following reason(s): the civil cover sheet should not be filed as an attachment to another document; the civil cover sheet was not signed. Re-file the document using the event type Civil Cover Sheet found under the event list Other Documents and attach the PDF. (pne)** (Entered: 03/31/2020) |
| 03/31/2020 | | **\*\*\*NOTICE TO ATTORNEY REGARDING PARTY MODIFICATION. Notice to attorney Joseph Peter Napoli. The party information for the following party/parties has been modified: Francis Paul Quinn, Jr., Lori Ann Quinn, New York City Department of Transportation. The information for the party/parties has been modified for the following reason/reasons: party name was entered in all caps; party role was entered incorrectly. (pne)** (Entered: 03/31/2020) |
| 03/31/2020 | | **\*\*\*NOTICE TO ATTORNEY REGARDING CIVIL CASE OPENING STATISTICAL ERROR CORRECTION: Notice to attorney Joseph Peter Napoli. The following case opening statistical information was erroneously selected/entered: County code Albany. The following correction(s) have been made to your case entry: the County code has been modified to XX Out of State. (pne)** (Entered: 03/31/2020) |
| 03/31/2020 | 2 | CIVIL COVER SHEET filed..(Napoli, Joseph) (Entered: 03/31/2020) |
| 03/31/2020 | 3 | COMPLAINT against City of New York, New York City Department of Transportation. Document filed by Francis Paul Quinn, Jr., Lori Ann Quinn..(Napoli, Joseph) (Entered: 03/31/2020) |
| 03/31/2020 | 4 | **FILING ERROR - DEFICIENT PLEADING - SUMMONS REQUEST PDF ERROR -** REQUEST FOR ISSUANCE OF SUMMONS as to The City of New York and The New York City Department of Transportation, re: 3 Complaint. Document filed by Lori Ann Quinn, Francis Paul Quinn, Jr...(Napoli, Joseph) Modified on 4/1/2020 (jgo). (Entered: 03/31/2020) |
| 04/01/2020 | | **\*\*\*NOTICE TO ATTORNEY REGARDING DEFICIENT REQUEST FOR ISSUANCE OF SUMMONS. Notice to Attorney Joseph Peter Napoli to RE-FILE Document No. 4 Request for Issuance of Summons,. The filing is deficient for the following reason(s): the date field on the offical A.O. Summons form was completed by the attorney;. Re-file the document using the event type Request for Issuance of Summons found under the event list Service of Process - select the correct filer/filers - and attach the correct summons form PDF. (jgo)** (Entered: 04/01/2020) |
| 04/01/2020 | 5 | REQUEST FOR ISSUANCE OF SUMMONS as to The City of New York and The New York City Department of Transportation, re: 3 Complaint. Document filed by Lori Ann Quinn, Francis Paul Quinn, Jr...(Napoli, Joseph) (Entered: 04/01/2020) |
| 04/02/2020 | 6 | ELECTRONIC SUMMONS ISSUED as to City of New York, New York City Department of Transportation..(pc) (Entered: 04/02/2020) |

**A4**

| 07/27/2020 | 7 | **Vacated as per Judge's Order dated 8/6/2020, Doc. #13** STATEMENT OF DAMAGES. Document filed by Lori Ann Quinn, Francis Paul Quinn, Jr. (Attachments: # 1 Affidavit ATTORNEY AFFIRMATION, # 2 Affidavit PLAINTIFF'S AFFIDAVIT, # 3 Affidavit PLAINTIFF'S AFFIDAVIT, # 4 Affidavit STATEMENT OF DAMAGES, # 5 Exhibit SUMMONS, # 6 Exhibit COMPLAINT, # 7 Exhibit PROOF OF SERVICE).(Napoli, Joseph) Modified on 8/7/2020 (rjm). (Entered: 07/27/2020) |
| 07/27/2020 | 8 | ORDER: The plaintiff had 90 days from filing the complaint to serve the summons and complaint on the defendants. Fed. R. Civ. P. 4(m). The plaintiff has failed to serve the summons and complaint. The time to serve is extended until August 12, 2020. If service is not made by August 12, 2020, the case will be dismissed without prejudice for failure to prosecute. ( Service due by 8/12/2020.) (Signed by Judge John G. Koeltl on 7/27/2020) (mro) (Entered: 07/28/2020) |
| 07/28/2020 | 9 | AFFIDAVIT OF SERVICE of Summons and Complaint. All Defendants. Service was made by serviceecf@law.nyc.gov. Document filed by Francis Paul Quinn, Jr., Lori Ann Quinn. (Attachments: # 1 Affidavit AFFIDAVIT OF SERVICE).(Napoli, Joseph) (Entered: 07/28/2020) |
| 08/05/2020 | 10 | ANSWER to 3 Complaint with JURY DEMAND. Document filed by City of New York, New York City Department of Transportation..(Skochil, David) (Entered: 08/05/2020) |
| 08/05/2020 | 11 | NOTICE OF APPEARANCE by David Jeffrey Robert Skochil on behalf of City of New York, New York City Department of Transportation..(Skochil, David) (Entered: 08/05/2020) |
| 08/06/2020 | 12 | PROPOSED STIPULATION AND ORDER. Document filed by City of New York, New York City Department of Transportation..(Skochil, David) (Entered: 08/06/2020) |
| 08/06/2020 | 13 | STIPULATION AND ORDER WITHDRAWING DEFAULT AND ENLARGING TIME TO ANSWER. IT IS HEREBY STIPULATED AND AGREED, by and amongst the undersigned, counsel for all parties to this action as follows: 1) Plaintiffs voluntarily withdraw their Request for Clerk's Certificate of Default, filed July 27, 2020 under docket number 7. 2) The time within which defendants may answer, move, or otherwise respond to the Complaint is hereby extended, nunc pro tunc, to August 12, 2020. 3) No provision of this Stipulation shall be construed as a waiver of, and defendants expressly reserve any and all defenses. 4) No prior request for an extension has been made in this matter. So ordered. City of New York answer due 8/12/2020; New York City Department of Transportation answer due 8/12/2020. (Signed by Judge John G. Koeltl on 8/6/2020) (rjm) (Entered: 08/07/2020) |
| 08/13/2020 | 14 | ORDER. The parties should file a Rule 26(f) report by August 28, 2020.SO ORDERED. (Signed by Judge John G. Koeltl on 8/13/20) (yv) (Entered: 08/14/2020) |
| 08/22/2020 | 15 | RULE 26 DISCLOSURE.Document filed by Lori Ann Quinn, Francis Paul Quinn, Jr...(Napoli, Joseph) (Entered: 08/22/2020) |
| 08/22/2020 | 16 | FIRST SET OF INTERROGATORIES to DEFENDANTS.Document filed by Lori Ann Quinn, Francis Paul Quinn, Jr.. (Attachments: # 1 REQUEST FOR PRODUCTION, # 2 NOTICE TO PRODUCE).(Napoli, Joseph) (Entered: 08/22/2020) |
| 08/26/2020 | 17 | PROPOSED CASE MANAGEMENT PLAN. Document filed by City of New York, New York City Department of Transportation..(Skochil, David) (Entered: 08/26/2020) |
| 08/26/2020 | 18 | CIVIL CASE MANAGEMENT PLAN AND DISCOVERY ORDER: The parties do not consent to conducting all further proceedings before a United States Magistrate Judge, including motions and trial. The parties are free to withhold consent without adverse substantive consequences. Amended pleadings may not be filed and additional parties may not be joined except with leave of the Court. Motions to amend or join additional parties due by 11/15/2020. Fact Discovery due by 12/23/2020. Expert Discovery due by 3/15/2021. Expert Deposition due by 3/15/2021. Depositions of fact witness shall be completed by December 11, 2020. i. Depositions of plaintiffs to be completed on or before December 1, 2020. ii. Deposition of City to be completed on or before December 3, 2020. Motions for summary judgment shall be filed within 30 days of the close of fact and expert discovery. Unless the Court orders otherwise for good cause shown, the parties shall be ready for trial 30 days after the Joint Pretrial Order is filed. This case is to be tried to a jury. Counsel for the parties have conferred and the present best estimate of the length of trial is 7 days. (Signed by Judge John G. Koeltl on 8/26/2020) (jwh) (Entered: 08/27/2020) |
| 11/13/2020 | 19 | PROPOSED STIPULATION AND ORDER. Document filed by City of New York, New York City Department of Transportation. (Attachments: # 1 Supplement Correspondence regarding stipulation and proposed order, # 2 Supplement Proposed Third-Party Complaint).(Skochil, David) (Entered: 11/13/2020) |
| 11/13/2020 | 20 | STIPULATION AND ORDER PERMITTING IMPLEADER OF NON-PARTY: IT IS HEREBY STIPULATED AND AGREED, by and amongst the undersigned, counsel for all parties to this action as follows: 1) Defendants are authorized to commence a third-party action against non-party Consolidated Edison, Inc. 2) Defendants shall file a third-party complaint on or before December 14, 2020. 3) The parties shall submit a proposed Case Management Order within thirty days of Consolidated Edison, Inc. filing an Answer. 4) Depositions are adjourned to be rescheduled in the Order referenced in paragraph 3. SO ORDERED. (Signed by Judge John G. Koeltl on 11/13/2020) (ks) (Entered: 11/13/2020) |

**A5**

| 11/18/2020 | 21 | THIRD PARTY COMPLAINT against Consolidated Edison, Inc..Document filed by New York City Department of Transportation, City of New York. (Attachments: # 1 Supplement Proposed Third-Party Summons).(Skochil, David) (Entered: 11/18/2020) |
|---|---|---|
| 11/19/2020 | | ***NOTICE TO ATTORNEY REGARDING DEFICIENT REQUEST FOR ISSUANCE OF SUMMONS. Notice to Attorney David Jeffrey Robert Skochil to RE-FILE Document No. 21 Third Party Complaint. The filing is deficient for the following reason(s): the wrong event type was used to file the request for issuance of summons;. Re-file the document using the event type Request for Issuance of Summons found under the event list Service of Process - select the correct filer/filers - and attach the correct summons form PDF. (pc) (Entered: 11/19/2020) |
| 11/20/2020 | 22 | REQUEST FOR ISSUANCE OF SUMMONS as to Consolidated Edison, Inc., re: 21 Third Party Complaint. Document filed by City of New York, New York City Department of Transportation. (Attachments: # 1 Exhibit Third-Party Complaint).(Skochil, David) (Entered: 11/20/2020) |
| 11/20/2020 | | NOTICE OF CASE REASSIGNMENT to Judge Naomi Reice Buchwald. Judge John G. Koeltl is no longer assigned to the case..(wb) (Entered: 11/20/2020) |
| 11/23/2020 | 23 | ELECTRONIC SUMMONS ISSUED as to Consolidated Edison, Inc.. (sj) (Entered: 11/23/2020) |
| 02/08/2021 | 24 | NOTICE OF APPEARANCE by Silvia Durri Manaashirov on behalf of Consolidated Edison, Inc...(Durri Manaashirov, Silvia) (Entered: 02/08/2021) |
| 02/08/2021 | 25 | NOTICE OF APPEARANCE by Gabrielle LaMarche DeYoung on behalf of Consolidated Edison, Inc...(DeYoung, Gabrielle) (Entered: 02/08/2021) |
| 02/08/2021 | 26 | FIRST MOTION for Extension of Time to File Answer re: 23 Summons Issued *Letter Motion to Court for Extension of Time to Answer_File Motion and Signed Wavier*. Document filed by Consolidated Edison, Inc...(Durri Manaashirov, Silvia) (Entered: 02/08/2021) |
| 02/08/2021 | 27 | ORDER: granting 26 Letter Motion for Extension of Time to Answer. Application Granted. SO ORDERED. Consolidated Edison, Inc. answer due 4/7/2021. (Signed by Judge Naomi Reice Buchwald on 2/08/2021) (ama) (Entered: 02/09/2021) |
| 03/19/2021 | 28 | FIRST LETTER addressed to Judge Naomi Reice Buchwald from David Skochil dated March 19 2021 re: Request for pre-motion conference. Document filed by City of New York, New York City Department of Transportation..(Skochil, David) (Entered: 03/19/2021) |
| 03/22/2021 | 29 | **FILING ERROR - DEFICIENT DOCKET ENTRY (SEE DOCUMENT #30) -** FIRST LETTER MOTION for Extension of Time to File Answer *3rd Party Letter Motion to Court on Further Extension in light of Motion* addressed to Judge Naomi Reice Buchwald from Silvia D. Manashirov dated March 22, 2021. Document filed by Consolidated Edison, Inc...(Durri Manaashirov, Silvia) Modified on 3/22/2021 (ldi). (Entered: 03/22/2021) |
| 03/22/2021 | 30 | SECOND LETTER MOTION for Extension of Time to File Answer *3rd Party Letter Motion to Court on Further Extension in light of Motion* addressed to Judge Naomi Reice Buchwald from Silvia D. Manashirov dated March 22, 2021. Document filed by Consolidated Edison, Inc...(Durri Manaashirov, Silvia) (Entered: 03/22/2021) |
| 03/23/2021 | 31 | FIRST LETTER addressed to Judge Naomi Reice Buchwald from JOSEPH P. NAPOLI, ESQ. dated 03/23/2021 re: in Response to defendant's letter dated 03/19/2021. Document filed by Lori Ann Quinn, Francis Paul Quinn, Jr...(Napoli, Joseph) (Entered: 03/23/2021) |
| 04/06/2021 | | ORDER The dial-in for today's 11:30 AM teleconference is (888) 363-4749, access code: 2712517. (HEREBY ORDERED by Judge Naomi Reice Buchwald) (Text Only Order) (Entered: 04/06/2021) |
| 04/06/2021 | | Minute Entry for proceedings held before Judge Naomi Reice Buchwald: Conference held on 4/6/2021. (ade) (Entered: 04/14/2021) |
| 04/13/2021 | 32 | TRANSCRIPT of Proceedings re: CONFERENCE held on 4/6/2021 before Judge Naomi Reice Buchwald. Court Reporter/Transcriber: Kristen Carannante, (212) 805-0300. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 5/4/2021. Redacted Transcript Deadline set for 5/14/2021. Release of Transcript Restriction set for 7/12/2021..(McGuirk, Kelly) (Entered: 04/13/2021) |
| 04/13/2021 | 33 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT Notice is hereby given that an official transcript of a CONFERENCE proceeding held on 4/6/21 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days....(McGuirk, Kelly) (Entered: 04/13/2021) |
| 05/06/2021 | 34 | **FILING ERROR - DEFICIENT DOCKET ENTRY -** FIRST MOTION to Dismiss *Complaint*. Document filed by City of New York, New York City Department of Transportation. (Attachments: # 1 Affidavit Certification in Support of Motion to Dismiss, # 2 Exhibit A Complaint in Prior Action, # 3 Exhibit B Con Edison's Answer, # 4 Exhibit C Notice of Claim, # 5 Exhibit D Case Management Order from Prior Action, # 6 Exhibit E 10 2019 Con Edison Response, # 7 Exhibit F Plaintiff's Interrogatory Responses Prior Action, # 8 Exhibit G Plaintiff's Supplemental Documentary |

**A6**

| | | |
|---|---|---|
| | | Responses, # 9 Exhibit H December 2019 Correspondence, # 10 Exhibit I Plaintiff's Deposition Transcript, # 11 Exhibit J Plaintiff's Expert Disclosure of Claim, # 12 Exhibit K Con Edison's Disclosure of DOT Records, # 13 Exhibit L Plaintiff's Memo Part 1, # 14 Exhibit L Plaintiff's Memo Part 2, # 15 Exhibit M Plaintiff's Slides, # 16 Exhibit N Declaration, # 17 Exhibit O State Action Summons and Complaint, # 18 Exhibit P Complaint, # 19 Exhibit Q 4 2020 Correspondence, # 20 Exhibit R 50h Transcript, # 21 Exhibit S Plaintiff's Interrogatory Responses, # 22 Exhibit T Order Authorizing Third-Party Action, # 23 Exhibit U Notice to Produce, # 24 Exhibit V Third-Party Summons and Complaint, # 25 Exhibit W State Action Docket, # 26 Exhibit X State Action Answer, # 27 Exhibit Y Premotion Correspondence, # 28 Supplement Memorandum of Law, # 29 Text of Proposed Order Proposed Order, # 30 Supplement Motion Summary Letter).(Skochil, David) Modified on 5/8/2021 (ldi). (Entered: 05/06/2021) |
| 05/08/2021 | | ***NOTICE TO ATTORNEY TO RE-FILE DOCUMENT - DEFICIENT DOCKET ENTRY ERROR. Notice to Attorney David Jeffrey Robert Skochil to RE-FILE Document 34 FIRST MOTION to Dismiss *Complaint*. ERROR(S): Supporting documents must be filed separately, each receiving their own document number. Declaration in Support of Motion and Memorandum of Law in Support of Motion are both found under the event list Replies, Opposition and Supporting Documents. (ldi) (Entered: 05/08/2021) |
| 05/10/2021 | 35 | FIRST MOTION to Dismiss *Complaint*. Document filed by City of New York, New York City Department of Transportation. (Attachments: # 1 Exhibit A Complaint in prior action, # 2 Exhibit B Con Edison Answer in prior action, # 3 Exhibit C Notice of Claim, # 4 Exhibit D Case Management Order prior action, # 5 Exhibit E 10 2019 Correspondence, # 6 Exhibit F Plaintiff's Interrogatory Responses prior action, # 7 Exhibit G Plaintiff's 11 2019 Supplemental Response prior action, # 8 Exhibit H 12 2019 Correspondence scheduling 50h hearing, # 9 Exhibit I Plaintiff's Deposition Transcript prior action, # 10 Exhibit J Plaintiff's Expert Disclosure prior action, # 11 Exhibit K Con Edison's Disclosure of DOT Records prior action, # 12 Exhibit L Plaintiff's Memorandum Part 1, # 13 Exhibit L Plaintiff's Memorandum Part 2, # 14 Exhibit M Plaintiff's Slides, # 15 Exhibit N Declaration, # 16 Exhibit O Summons and Complaint state action, # 17 Exhibit P Complaint, # 18 Exhibit Q 4 2020 Correspondence rescheduling 50h hearing, # 19 Exhibit R 50h Transcript, # 20 Exhibit S Plaintiff's Interrogatory Responses, # 21 Exhibit T Order Authorizing Third-Party Action, # 22 Exhibit U Notice to Produce Regarding Prior Action, # 23 Exhibit V Third-Party Summons and Complaint, # 24 Exhibit W Electronic Docket state action, # 25 Exhibit X Answer state action, # 26 Exhibit Y Pre-Motion Correspondence, # 27 Text of Proposed Order Proposed Order, # 28 Supplement Motion Submission Letter).(Skochil, David) (Entered: 05/10/2021) |
| 05/10/2021 | 36 | DECLARATION of David Skochil in Support re: 35 FIRST MOTION to Dismiss *Complaint*.. Document filed by City of New York, New York City Department of Transportation..(Skochil, David) (Entered: 05/10/2021) |
| 05/10/2021 | 37 | MEMORANDUM OF LAW in Support re: 35 FIRST MOTION to Dismiss *Complaint*. . Document filed by City of New York, New York City Department of Transportation..(Skochil, David) (Entered: 05/10/2021) |
| 06/07/2021 | 38 | REPLY MEMORANDUM OF LAW in Opposition re: 35 FIRST MOTION to Dismiss *Complaint*. . Document filed by Lori Ann Quinn, Francis Paul Quinn, Jr.. (Attachments: # 1 Exhibit Ex A Police Report, # 2 Exhibit Ex B STIPULATION OF DISCONTINUANCE and Letter to City, # 3 Exhibit Ex C City's Letter Re NYCDOT Employee Names, # 4 Exhibit Ex D CASE MANAGEMENT ORDER-NYC).(Napoli, Joseph) (Entered: 06/07/2021) |
| 06/07/2021 | 39 | AFFIRMATION of Joseph Napoli in Opposition re: 35 FIRST MOTION to Dismiss *Complaint*.. Document filed by Lori Ann Quinn, Francis Paul Quinn, Jr.. (Attachments: # 1 Exhibit Ex A Mediation Memo Damages, # 2 Exhibit Ex B Photograph of Defect Before 2nd Repair, # 3 Exhibit Ex C Photograph of Defect After 2nd Repair, # 4 Exhibit Ex D Photograph of Defect After 2nd Repair with Ruler, # 5 Exhibit Ex E Photograph of Defect After 2nd Repair, # 6 Exhibit Ex F Photograph from City's Manual, # 7 Exhibit Ex G Con Ed's Letter, # 8 Exhibit Ex H City's Incomplete Records, # 9 Exhibit Ex I City's Letter, # 10 Exhibit Ex J EXPERT DISCLOSURES Reduced Reduced, # 11 Exhibit Ex K Police Report, # 12 Exhibit Ex L City's Letter Re Con Ed's Gas Cap, # 13 Exhibit Ex M City's Letter Re NYCDOT Employee Names, # 14 Exhibit Ex N Permit to Work on Facade of CBS Building, # 15 Exhibit Ex O Big Apple Maps, # 16 Exhibit Ex P STIPULATION OF DISCONTINUANCE, # 17 Exhibit Ex Q Closing Papers in Con Ed Case, # 18 Exhibit Ex R CASE MANAGEMENT ORDER-NYC).(Napoli, Joseph) (Entered: 06/07/2021) |
| 06/07/2021 | 40 | RESPONSE to Motion re: 35 FIRST MOTION to Dismiss *Complaint*. *Paragraph 2(E)(1) Practice Rules Letter*. Document filed by Lori Ann Quinn, Francis Paul Quinn, Jr...(Napoli, Joseph) (Entered: 06/07/2021) |
| 06/21/2021 | 41 | REPLY AFFIRMATION of David Skochil in Support re: 35 FIRST MOTION to Dismiss *Complaint*.. Document filed by City of New York, New York City Department of Transportation. (Attachments: # 1 Exhibit Exhibit Z the City's 10 2020 Responses Part 1, # 2 Exhibit Exhibit Z the City's 10 2020 Response Part 2).(Skochil, David) (Entered: 06/21/2021) |
| 06/25/2021 | 42 | RESPONSE in Opposition to Motion re: 35 FIRST MOTION to Dismiss *Complaint*. *Supplemental Certification in Opposition*. Document filed by Lori Ann Quinn, Francis Paul Quinn, Jr.. (Attachments: # 1 Exhibit NYLJ Article). (Napoli, Joseph) (Entered: 06/25/2021) |
| 11/30/2021 | 43 | FIRST LETTER addressed to Judge Naomi Reice Buchwald from Joseph P. Napoli dated 11/30/2021 re: DISCOVERY/CASE MANAGEMENT. Document filed by Lori Ann Quinn, Francis Paul Quinn, Jr...(Napoli, Joseph) (Entered: 11/30/2021) |
| 12/13/2021 | 44 | FIRST LETTER addressed to Judge Naomi Reice Buchwald from David Skochil dated 12/13/2021 re: Responding to Plaintiff's Letter. Document filed by City of New York, New York City Department of Transportation..(Skochil, David) (Entered: 12/13/2021) |

12/8/24, 12:34 AM                                    SDNY CM/ECF NextGen Version 1.7

| | | |
|---|---|---|
| 12/16/2021 | 45 | MEMO ENDORSEMENT on re: 43 Letter filed by Lori Ann Quinn, Francis Paul Quinn, Jr. ENDORSEMENT: Application denied. (Signed by Judge Naomi Reice Buchwald on 12/15/2021) (vfr) (Entered: 12/16/2021) |
| 03/24/2022 | 46 | MEMORANDUM AND ORDER terminating 30 Letter Motion for Extension of Time to Answer re 30 SECOND LETTER MOTION for Extension of Time to File Answer *3rd Party Letter Motion to Court on Further Extension in light of Motion* addressed to Judge Naomi Reice Buchwald from Silvia D. Manashirov dated March 22, 2021., 35 FIRST MOTION to Dismiss *Complaint*.. ; terminating 35 Motion to Dismiss. For the foregoing reasons, the Court finds that plaintiffs' claim is barred by the doctrine of judicial estoppel and dismisses plaintiffs' complaint in its entirety with prejudice. The conclusion that a claim is barred by the doctrine of judicial estoppel is always serious as it is based on a determination that there has been an attempt to violate the integrity of the judicial process. However, the undisputed facts here appear to raise additional issues of an ethical dimension: specifically whether Rule 11 of the Federal Rules of Civil Procedure or the New York Rules of Professional Conduct have been violated. Those issues arise from failures to disclose and/or outright misrepresentations to this Court and to opposing counsel. In addition to the absence of a legal or factual basis for the current litigation assuming that the basis of the prior litigation was truthful, plaintiffs' counsel misrepresented to ConEd's lawyer the reason for filing a Notice of Claim with the City; failed to disclose the ConEd Action to this Court when he filed this action; falsely denied the fact of the ConEd Action and plaintiffs' testimony in that action in the interrogatory answers in this case; falsely denied the fact of the Notice of Claim in the interrogatory answers in the ConEd Action; and falsely tried to explain to this Court his failure to sue the City earlier. Accordingly, pursuant to Rule 11(c)(3), plaintiffs' counsel is direct to show cause why the conduct described above is not violative of Rule 11(b) and/or, inter alia, Rules 3.3 and 8.4 of the New York Rules of Professional Conduct. Counsel's submission should be filed no later than 30 days from the entry of this order. The Court respectfully directs the Clerk to terminate the open motions. (Signed by Judge Naomi Reice Buchwald on 3/24/2022) (ate) (Entered: 03/24/2022) |
| 03/31/2022 | 47 | NOTICE OF APPEARANCE by Ronald Charles Minkoff on behalf of Joseph Napoli, Napoli Shkolnik LLP..(Minkoff, Ronald) (Entered: 03/31/2022) |
| 03/31/2022 | 48 | NOTICE OF APPEARANCE by Glenda Dieuveille on behalf of Joseph Napoli, Napoli Shkolnik LLP..(Dieuveille, Glenda) (Entered: 03/31/2022) |
| 03/31/2022 | 49 | LETTER MOTION for Extension of Time *to file response to Order to Show Cause Order dated March 24, 2022* addressed to Judge Naomi Reice Buchwald from Ronald C. Minkoff dated March 31, 2022. Document filed by Joseph Napoli, Napoli Shkolnik LLP..(Minkoff, Ronald) (Entered: 03/31/2022) |
| 03/31/2022 | 50 | ORDER granting 49 Letter Motion for Extension of Time. Application granted. SO ORDERED. Show Cause Response due by 5/9/2022. (Signed by Judge Naomi Reice Buchwald on 3/31/2022) (mml) (Entered: 03/31/2022) |
| 04/04/2022 | 51 | NOTICE OF APPEAL from 46 Order on Motion for Extension of Time to Answer, Order on Motion to Dismiss,,,,,,,,,,,,,,,,,. Document filed by Lori Ann Quinn, Francis Paul Quinn, Jr.. Filing fee $ 505.00, receipt number ANYSDC-25959355. Form C and Form D are due within 14 days to the Court of Appeals, Second Circuit..(Badala, Salvatore) (Entered: 04/04/2022) |
| 04/05/2022 | | Transmission of Notice of Appeal and Certified Copy of Docket Sheet to US Court of Appeals re: 51 Notice of Appeal. (tp) (Entered: 04/05/2022) |
| 04/05/2022 | | Appeal Record Sent to USCA (Electronic File). Certified Indexed record on Appeal Electronic Files for 51 Notice of Appeal, filed by Lori Ann Quinn, Francis Paul Quinn, Jr. were transmitted to the U.S. Court of Appeals. (tp) (Entered: 04/05/2022) |
| 04/14/2022 | 52 | LETTER MOTION to Stay *proceedings against Napoli pending the determination of the Appeal* addressed to Judge Naomi Reice Buchwald from Ronald C. Minkoff dated April 14, 2022. Document filed by Joseph Napoli, Napoli Shkolnik LLP..(Minkoff, Ronald) (Entered: 04/14/2022) |
| 04/19/2022 | 53 | ORDER denying 52 Letter Motion to Stay *proceedings against Napoli pending the determination of the Appeal* addressed to Judge Naomi Reice Buchwald from Ronald C. Minkoff dated April 14, 2022. Application denied. (Signed by Judge Naomi Reice Buchwald on 4/19/2022) (vfr) (Entered: 04/19/2022) |
| 05/09/2022 | 54 | DECLARATION of Joseph Farahnik, P.E., NSPE re: 46 Order on Motion for Extension of Time to Answer, Order on Motion to Dismiss,,,,,,,,,,,,,,,,,. Document filed by Joseph Napoli, Napoli Shkolnik LLP..(Minkoff, Ronald) (Entered: 05/09/2022) |
| 05/09/2022 | 55 | DECLARATION of Edward A. Ruffo re: 46 Order on Motion for Extension of Time to Answer, Order on Motion to Dismiss,,,,,,,,,,,,,,,,,. Document filed by Joseph Napoli, Napoli Shkolnik LLP..(Minkoff, Ronald) (Entered: 05/09/2022) |
| 05/09/2022 | 56 | DECLARATION of Joseph P. Napoli re: 46 Order on Motion for Extension of Time to Answer, Order on Motion to Dismiss,,,,,,,,,,,,,,,,,. Document filed by Joseph Napoli, Napoli Shkolnik LLP. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I, part 1, # 10 Exhibit I, part 2, # 11 Exhibit J, # 12 Exhibit K, # 13 Exhibit L, # 14 Exhibit M, # 15 Exhibit N, # 16 Exhibit O, # 17 Exhibit P, # 18 Exhibit Q, # 19 Exhibit R, # 20 Exhibit S, # 21 Exhibit T, # 22 Exhibit U, # 23 Exhibit V, # 24 Exhibit W).(Minkoff, Ronald) (Entered: 05/09/2022) |
| 05/09/2022 | 57 | AFFIDAVIT of Lori Ann Quinn re: 46 Order on Motion for Extension of Time to Answer, Order on Motion to Dismiss,,,,,,,,,,,,,,,,,. Document filed by Joseph Napoli, Napoli Shkolnik LLP..(Entered: 05/09/2022) |

A8

| 05/09/2022 | 58 | MEMORANDUM OF LAW re: 46 Order on Motion for Extension of Time to Answer, Order on Motion to Dismiss,,,,,,,,,,,,,,,,,, . Document filed by Joseph Napoli, Napoli Shkolnik LLP..(Minkoff, Ronald) (Entered: 05/09/2022) |
| 07/19/2022 | 59 | ORDER: It is hereby ORDERED that the proceedings against Joseph Napoli are stayed pending the Second Circuit Court of Appeal's determination of the Appeal. (Signed by Judge Naomi Reice Buchwald on 7/19/2022) (vfr) (Entered: 07/19/2022) |
| 04/07/2023 | 60 | NOTICE of Withdrawal of Glenda Dieuville as Special Responsibility Counsel for Joseph Napoli and Napoli Shkolnik LLP. Document filed by Joseph Napoli, Napoli Shkolnik LLP..(Dieuville, Glenda) (Entered: 04/07/2023) |
| 06/09/2023 | 61 | TRUE COPY ORDER of USCA as to 51 Notice of Appeal, filed by Lori Ann Quinn, Francis Paul Quinn, Jr. USCA Case Number 22-0709. UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the order of the district court is VACATED and REMANDED for further proceedings consistent with this summary order. Catherine O'Hagan Wolfe, Clerk USCA for the Second Circuit. Certified: 6/9/2023. (tp) (Entered: 06/09/2023) |
| 06/13/2023 | 62 | LETTER addressed to Judge Naomi Reice Buchwald from Ronald C. Minkoff dated June 13, 2023 re: the June 9, 2023 Second Circuit decision to remand and submitting that this Court withdraw the Order to Show Cause insofar as it seeks to impose sanctions on, or find ethical violations by, Napoli. Document filed by Joseph Napoli, Napoli Shkolnik LLP.. (Minkoff, Ronald) (Entered: 06/13/2023) |
| 06/14/2023 | 63 | NOTICE OF APPEARANCE by Alexandra Hastings on behalf of City of New York..(Hastings, Alexandra) (Entered: 06/14/2023) |
| 06/14/2023 | 64 | NOTICE OF APPEARANCE by Alexandra Hastings on behalf of New York City Department of Transportation.. (Hastings, Alexandra) (Entered: 06/14/2023) |
| 07/05/2023 | 65 | MANDATE of USCA (Certified Copy) as to 51 Notice of Appeal, filed by Lori Ann Quinn, Francis Paul Quinn, Jr. USCA Case Number 22-0709. UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the order of the district court is VACATED and REMANDED for further proceedings consistent with this summary order.. Catherine O'Hagan Wolfe, Clerk USCA for the Second Circuit. Issued As Mandate: 07/05/2023.. (nd) (Entered: 07/05/2023) |
| 07/05/2023 | | Transmission of USCA Mandate to the District Judge re: 65 USCA Mandate,..(nd) (Entered: 07/05/2023) |
| 07/10/2023 | 66 | ORDER: Given the Second Circuit' Summary Order of June 9, 2023, ECF No. 61, which mandate was transmitted on July 5, 2023, ECF No. 65, the Order to Show Cause contained in this Court's Memorandum and Order of March 24, 2022, ECF No. 46, is hereby withdrawn. SO ORDERED. (Signed by Judge Naomi Reice Buchwald on 7/10/2023) (mml) Modified on 7/11/2023 (mml). (Entered: 07/10/2023) |
| 07/14/2023 | 67 | **FILING ERROR - WRONG EVENT TYPE SELECTED FROM MENU -** FIRST LETTER MOTION to Substitute Attorney. Old Attorney: David Skochil, New Attorney: Alexandra Hastings addressed to Judge Naomi Reice Buchwald from David Skochil dated 07/14/2023. Document filed by City of New York, New York City Department of Transportation..(Skochil, David) Modified on 7/28/2023 (db). (Entered: 07/14/2023) |
| 07/28/2023 | | **\*\*\*NOTICE TO ATTORNEY TO RE-FILE DOCUMENT - EVENT TYPE ERROR. Notice to Attorney David Jeffrey Robert Skochil to RE-FILE Document 67 FIRST LETTER MOTION to Substitute Attorney. Old Attorney: David Skochil, New Attorney: Alexandra Hastings addressed to Judge Naomi Reice Buchwald from David Skochil dated 07/14/2023. Use the event type Letter found under the event list Other Documents. (db)** (Entered: 07/28/2023) |
| 07/31/2023 | 68 | FIRST LETTER addressed to Judge Naomi Reice Buchwald from David Skochil dated 07/14/2023 re: Change of Counsel. Document filed by City of New York, New York City Department of Transportation..(Skochil, David) (Entered: 07/31/2023) |
| 08/04/2023 | 69 | LETTER MOTION for Conference addressed to Judge Naomi Reice Buchwald from Alexandra Hastings dated 8/4/2023. Document filed by City of New York..(Hastings, Alexandra) (Entered: 08/04/2023) |
| 08/07/2023 | | Minute Entry for proceedings held before Judge Naomi Reice Buchwald: Telephone Conference held on 8/7/2023. (ade) (Entered: 08/08/2023) |
| 08/17/2023 | 70 | FIRST LETTER addressed to Judge Naomi Reice Buchwald from Joseph Napoli of Napoli Shkolnik, PLLC dated August 17, 2023 re: Defendant's request for Summary Judgment. Document filed by Napoli Shkolnik LLP..(Napoli, Joseph) (Entered: 08/17/2023) |
| 08/17/2023 | 71 | LETTER REPLY to Response to Motion addressed to Judge Naomi Reice Buchwald from Alexandra Hastings dated August 17, 2023 re: 69 LETTER MOTION for Conference addressed to Judge Naomi Reice Buchwald from Alexandra Hastings dated 8/4/2023 . Document filed by City of New York..(Hastings, Alexandra) (Entered: 08/17/2023) |
| 08/18/2023 | 72 | LETTER addressed to Judge Naomi Reice Buchwald from Silvia D. Manashirov dated August 18, 2023 re: response to the Courts invitation to address plaintiffs counsels statements pertaining to Con Edisons representations. Document filed by Consolidated Edison, Inc.. (Attachments: # 1 Exhibit 1 -Con ED Search Results 2 yr, # 2 Exhibit 2- Con ED Search Results 3 yr, # 3 Exhibit 3 - Part 1- NYC DOT Records, # 4 Exhibit 3 - Part 2 - NYC DOT Records, # 5 Exhibit 3 - Part 3 - NYC DOT Records).(Durri Manaashirov, Silvia) (Entered: 08/18/2023) |

**A9**

| 08/21/2023 | 73 | SECOND LETTER addressed to Judge Naomi Reice Buchwald from Joseph Napoli, Esq. dated August 21, 2023 re: Con Edison Letter dated August 17, 2023. Document filed by Napoli Shkolnik LLP..(Napoli, Joseph) (Entered: 08/21/2023) |
|---|---|---|
| 08/25/2023 | 74 | ENDORSED LETTER addressed to Counsel from Naomi Reice Buchwald, United States District Judge dated 8/25/2023 re: defendant's letter requesting permission to make a motion for summary judgment. ENDORSEMENT: The Court has reviewed defendants letter requesting permission to make a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure based upon Administrative Code § 7-201, see ECF No. 69, and the parties subsequent letters in opposition and further support, see ECF Nos. 70-73. It does not appear that additional discovery is necessary before the City files its proposed motion. Should that not be the case, or if any other issue arises that might meaningfully impact plaintiffs ability to respond to the motion, such issue may be raised after the motion has been filed. Therefore, the Court will permit the City to make its motion, and the parties should confer and propose a briefing schedule agreeable to both sides, in which no more than sixty days elapse from the filing of the Citys motion to the filing of its reply. Furthermore, for the avoidance of doubt, any schedule set by Judge Koeltl in 2020 is no longer operative, and the caption of the case should be corrected on all future filings by the parties to reflect that this case is in front of the undersigned. (Signed by Judge Naomi Reice Buchwald on 8/25/2023) (ate) Modified on 8/25/2023 (ate). (Entered: 08/25/2023) |
| 09/29/2023 | 75 | MOTION to Quash Plaintiff's Notice to Admit dated September 5, 2023 . Document filed by Consolidated Edison, Inc.. (Attachments: # 1 Exhibit Notice to Admit).(Durri Manaashirov, Silvia) (Entered: 09/29/2023) |
| 09/29/2023 | 76 | LETTER MOTION for Discovery addressed to Judge Naomi Reice Buchwald from Silvia D. Manashirov dated September 29, 2023. Document filed by Consolidated Edison, Inc.. (Attachments: # 1 Exhibit Notice to Admit).(Durri Manaashirov, Silvia) (Entered: 09/29/2023) |
| 10/03/2023 | 77 | LETTER addressed to Judge Naomi Reice Buchwald from Joseph P. Napoli, Esq., dated 10/2/23 re: Response to Con Edison's letter dated 9/29/23. Document filed by Joseph Napoli, Napoli Shkolnik LLP, Lori Ann Quinn, Francis Paul Quinn, Jr...(Napoli, Joseph) (Entered: 10/03/2023) |
| 10/04/2023 | 78 | FIRST LETTER MOTION for Discovery *Motion to Quash Notice to Admit* addressed to Judge Naomi Reice Buchwald from Alexandra Hastings dated 10/4/23. Document filed by City of New York. (Attachments: # 1 Exhibit A - Notice to Admit as to City, # 2 Exhibit B - Decision, # 3 Exhibit C - Emails).(Hastings, Alexandra) (Entered: 10/04/2023) |
| 10/05/2023 | 79 | LETTER addressed to Judge Naomi Reice Buchwald from Joseph Napoli ESQ dated October 2, 2023 re: Response to Con Edison's letter dated 9/29/23. Document filed by Joseph Napoli, Napoli Shkolnik LLP, Lori Ann Quinn, Francis Paul Quinn, Jr...(Napoli, Joseph) (Entered: 10/05/2023) |
| 10/13/2023 | 80 | ORDER granting 78 Letter Motion for Discovery. Application to quash or strike plaintiff's Notice to Admit is granted. SO ORDERED. (Signed by Judge Naomi Reice Buchwald on 10/13/2023) (tg) (Entered: 10/13/2023) |
| 10/13/2023 | 81 | ORDER granting 76 Letter Motion for Discovery. Application to quash or strike plaintiff's Notice to Admit is granted. SO ORDERED. (Signed by Judge Naomi Reice Buchwald on 10/13/2023) (tg) (Entered: 10/13/2023) |
| 10/30/2023 | 82 | PROPOSED SCHEDULING ORDER. Document filed by City of New York..(Hastings, Alexandra) (Entered: 10/30/2023) |
| 10/31/2023 | 83 | BRIEFING SCHEDULE: Pursuant to the Honorable Naomi Reice Buchwald's Decision dated August 25, 2023, the Defendants/Third-Party Plaintiffs THE CITY OF NEW YORK and THE CITY OF NEW YORK S/H/A THE NEW YORK CITY DEPARTMENT OF TRANSPORTATION's motion pursuant to Rule 56 of the Federal Rules of Civil Procedure based upon Administrative Code §7-201 shall be filed by January 26, 2024. Opposition, if any, shall be filed by February 28, 2024. Reply, if any, shall be fi led by March 15, 2024. SO ORDERED. Motions due by 1/26/2024. Responses due by 2/28/2024 Replies due by 3/15/2024. (Signed by Judge Naomi Reice Buchwald on 10/31/2023) (ama) (Entered: 11/01/2024) |
| 01/25/2024 | 84 | MOTION for Judgment as a Matter of Law . Document filed by City of New York. Responses due by 2/28/2024 Return Date set for 3/15/2024 at 05:00 PM. (Attachments: # 1 Supplement Declaration of Alexandra Hastings, Esq., # 2 Supplement Rule 56.1 Statement, # 3 Supplement Letter Accompanying Memorandum of Law, # 4 Supplement Memorandum of Law in Support of Motion, # 5 Exhibit A - Notice of Claim and Photographs, # 6 Exhibit B - Summons and Complaint, # 7 Exhibit C - City's Answer, # 8 Exhibit D - Third-Party Summons and Complaint, # 9 Exhibit E - Con Ed's Notice of Appearance and Order Extending Time to Answer, # 10 Exhibit F - Quinn's 50-h Hearing, # 11 Exhibit G1 - DOT Roadway Segment Search, # 12 Exhibit G2 - DOT Roadway Segment Search, # 13 Exhibit G3 - DOT Roadway Segment Search, # 14 Exhibit G4 - DOT Roadway Segment Search, # 15 Exhibit G5 - DOT Roadway Segment Search, # 16 Exhibit H - Henry Williams Affidavit, # 17 Exhibit I1 - DOT Intersection Search, # 18 Exhibit I2 - DOT Intersection Search, # 19 Exhibit J - Yelena Pasynkova Affidavit, # 20 Exhibit K - Mohammad Hoque Affidavit, # 21 Exhibit L - Webster Opinion and Order, # 22 Exhibit M - Order and Briefing Schedule). (Hastings, Alexandra) (Entered: 01/25/2024) |
| 02/28/2024 | 85 | FIRST MEMORANDUM OF LAW in Opposition re: 84 MOTION for Judgment as a Matter of Law . . Document filed by Francis Paul Quinn, Jr...(Napoli, Joseph) (Entered: 02/28/2024) |
| 02/28/2024 | 86 | DECLARATION of Joseph P. Napoli in Opposition re: 84 MOTION for Judgment as a Matter of Law . Document filed by Francis Paul Quinn, Jr...(Napoli, Joseph) (Entered: 02/28/2024) |

**A10**

| | | |
|---|---|---|
| 02/28/2024 | 87 | RESPONSE in Opposition to Motion re: 84 MOTION for Judgment as a Matter of Law . *Response to Material facts*. Document filed by Francis Paul Quinn, Jr.. (Attachments: # 1 Exhibit 1. Mediation Memo, # 2 Exhibit 2. Expert Declaration, # 3 Exhibit 3. Photos, # 4 Exhibit 4. Big Apple Map, # 5 Exhibit 5. August 2017 report, # 6 Exhibit 6. Jan 2019 report).(Napoli, Joseph) (Entered: 02/28/2024) |
| 03/15/2024 | 88 | REPLY MEMORANDUM OF LAW in Support re: 84 MOTION for Judgment as a Matter of Law . . Document filed by City of New York. (Attachments: # 1 Supplement Supplemental Declaration of Alexandra Hastings, Esq., # 2 Exhibit N - Bellizi Report, # 3 Exhibit O - Big Apple Map, # 4 Exhibit P - Pena Order, # 5 Exhibit Q - Culbertson Order, # 6 Supplement Response to Plaintiffs' Counterstatement of Undisputed Facts).(Hastings, Alexandra) (Entered: 03/15/2024) |
| 09/26/2024 | 89 | MEMORANDUM AND ORDER granting 84 Motion for Judgment as a Matter of Law. For the reasons stated above, the City defendants' motion for summary judgment is granted in its entirety and plaintiffs' complaint is dismissed. Further, because there is no longer a predicate for any of the City defendants' claims against ConEd, ECF No. 21, which have been stayed pending the outcome of the City defendants' motion for summary judgment, ECF No. 76, those claims are also dismissed. The Clerk of the Court is respectfully directed to terminate all pending motions and enter judgment for the defendant.SO ORDERED. (Signed by Judge Naomi Reice Buchwald on 9/26/24) (yv) Transmission to Orders and Judgments Clerk for processing. (Entered: 09/26/2024) |
| 09/26/2024 | 90 | CLERK'S JUDGMENT re: 89 Order on Motion for Judgment as a Matter of Law. It is, ORDERED, ADJUDGED AND DECREED: That for the reasons stated in the Court's Memorandum and Order dated September 26, 2024, the City defendants' motion for summary judgment is granted in its entirety and plaintiffs' complaint is dismissed. Further, because there is no longer a predicate for any of the City defendants' claims against ConEd, ECF No. 21, which have been stayed pending the outcome of the City defendants' motion for summary judgment, ECF No. 76, those claims are also dismissed. Judgment is entered for the defendant. (Signed by Clerk of Court - Acting Daniel Ortiz on 9/26/2024) (Attachments: # 1 Appeal Package) (tp) (Entered: 09/26/2024) |
| 10/07/2024 | 91 | **FILING ERROR - DEFICIENT DOCKET ENTRY** - FIRST NOTICE OF APPEAL from 90 Clerk's Judgment,,. Document filed by Joseph Napoli, Napoli Shkolnik LLP, Lori Ann Quinn, Francis Paul Quinn, Jr.. Filing fee $ 605.00, receipt number ANYSDC-30001810. Form C and Form D are due within 14 days to the Court of Appeals, Second Circuit..(Napoli, Joseph) Modified on 10/7/2024 (nd). (Entered: 10/07/2024) |
| 10/07/2024 | | **\*\*\*NOTICE TO ATTORNEY REGARDING DEFICIENT APPEAL. Notice to attorney Joseph Napoli to RE-FILE Document No. 91 Notice of Appeal. The filing is deficient for the following reason(s): filers were selected for the appeal are not listed on the document; different login user's account. Re-file the appeal using the event type Notice of Appeal found under the event list Appeal Documents - attach the correct signed PDF - select the correct named filer/filers - select the correct order/judgment being appealed. (nd)** (Entered: 10/07/2024) |
| 10/07/2024 | 92 | **FILING ERROR - DEFICIENT DOCKET ENTRY - FILER ERROR** - FIRST NOTICE OF APPEAL from 90 Clerk's Judgment,, 89 Order on Motion for Judgment as a Matter of Law.. Document filed by Aparna Pujar. Filing fee $ 605.00, receipt number ANYSDC-30004705. Form C and Form D are due within 14 days to the Court of Appeals, Second Circuit..(Pujar, Aparna) Modified on 10/8/2024 (tp). (Entered: 10/07/2024) |
| 10/08/2024 | | **\*\*\*NOTICE TO ATTORNEY REGARDING DEFICIENT APPEAL. Notice to attorney Aparna Pujar to RE-FILE Document No. 92 Notice of Appeal. The filing is deficient for the following reason(s): the wrong filer/filers is/are selected, or the wrong filer/filers is/are listed on the Notice of Appeal. Re-file the appeal using the event type Notice of Appeal found under the event list Appeal Documents - attach the correct signed PDF - select the correct named filer/filers - select the correct order/judgment being appealed - Do Not Pay The Appeal Fee Again. (tp)** (Entered: 10/08/2024) |
| 10/08/2024 | 93 | FIRST NOTICE OF APPEAL from 90 Clerk's Judgment,, 89 Order on Motion for Judgment as a Matter of Law,,,. Document filed by Lori Ann Quinn, Francis Paul Quinn, Jr.. Form C and Form D are due within 14 days to the Court of Appeals, Second Circuit..(Pujar, Aparna) (Entered: 10/08/2024) |
| 10/08/2024 | | Appeal Fee Paid electronically via Pay.gov: for 93 Notice of Appeal. Filing fee $ 605.00. Pay.gov receipt number ANYSDC-30004705, paid on 10/7/2024. (tp) (Entered: 10/08/2024) |
| 10/08/2024 | | Transmission of Notice of Appeal and Certified Copy of Docket Sheet to US Court of Appeals re: 93 Notice of Appeal. (tp) (Entered: 10/08/2024) |
| 10/08/2024 | | Appeal Record Sent to USCA (Electronic File). Certified Indexed record on Appeal Electronic Files for 93 Notice of Appeal, filed by Lori Ann Quinn, Francis Paul Quinn, Jr. were transmitted to the U.S. Court of Appeals. (tp) (Entered: 10/08/2024) |

**A11**

**Complaint, filed Mar. 31, 2020 (Dkt. 3)**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**Docket No.: 20-cv-2666**

---

FRANCIS PAUL QUINN, JR., and LORI ANN QUINN,

Plaintiff(s),

-*against*-

THE CITY OF NEW YORK and THE NEW YORK
CITY DEPARTMENT OF TRANSPORTATION,

Defendant(s).

---

**VERIFIED COMPLAINT**

**JURY TRIAL DEMANDED**

---

     **PLAINTIFFS**, FRANCIS PAUL QUINN, JR., and LORI ANN QUINN by their attorneys, NAPOLI SHKOLNIK, PLLC, complaining of Defendants, upon information and belief respectfully allege as follows:

### JURISDICTION AND VENUE

     1.     That at all times herein mentioned, Plaintiff FRANCIS PAUL QUINN, JR., was and still is resident of the State of Massachusetts, County of Worcester.

     2.     That at all times herein mentioned, Plaintiff LORI ANN QUINN, was and still is resident of the State of Massachusetts, County of Worcester.

     3.     That at all times hereinafter mentioned the defendant THE CITY OF NEW YORK (hereinafter referred to as "NYC") was and is a municipal corporation organized and existing under and by virtue of the Laws of the State of New York.

     4.     That within ninety (90) days after the cause of action accrued and before the commencement of this action, plaintiff caused to be served upon defendant NYC by the Comptroller thereof, a Notice of Claim, in writing, setting forth the time, place and cause of the



**A13**

accident and damage sustained and gave notice that if the claim was not settled or adjusted within the time limited for compliance with this demand by defendant NYC by the Statutes in such cases made and provided, suit would be commenced against defendant NYC for damages by reason of the facts herein set forth.   The City of New York Claim Number is 2019PI0025533.

5.      That more than thirty (30) days have elapsed since the presentation of Claim and Notice of Intention to Sue and the Comptroller and Corporation Counsel have neglected and refused to make any payment.

6.      That not more than fifteen (15) months have elapsed from the time the cause of action accrued and the commencement of this action.

7.      That pursuant to §50(h) of the General Municipal Law a hearing was scheduled for February 20, 2020 but was adjourned due to the COVID 19 epidemic and will be rescheduled to a future date.

8.      That defendants have refused or neglected for more than thirty (30) days and up to the commencement of this action to make any adjustment or payment thereof, and thereafter, and within the time provided by law, this action has been duly commenced.

9.      That this action is being commenced within one (1) year and ninety (90) days of the date of the occurrence herein against the defendants.

10.      That Jurisdiction with this Honorable Court is proper as the provides the remedy with respect to plaintiff's claims against defendant.

11.      That the cause of action arose in the State of New York, County of New York.



**A14**

12.     The matter in controversy exceeds, exclusive of interest and costs, the sum of $75,000.

13.     That this court has jurisdiction over this action pursuant to 28 U.S.C. §1332(a)(2).

14.     That venue is proper pursuant to 28 U.S.C. §1391(b)(2).

### FIRST CAUSE OF ACTION ON BEHALF
### OF PLAINTIFF FRANCIS PAUL QUINN, JR.

15.     Plaintiff repeats, reiterates and re-alleges each and every allegation as set forth in paragraphs designated as numbers "1" through "14" with the same force and effect as though fully set forth herein.

16.     That on or about July 3, 2019, and at all times hereinafter mentioned, defendant NYC owned a certain crosswalk on the South side of 6th Avenue at its intersection with West 53rd Street, in the State of New York, County of New York (hereinafter referred to as the "subject crosswalk").

17.     That on or about July 3, 2019, and at all times hereinafter mentioned, defendant NYC controlled the subject crosswalk.

18.     That on or about July 3, 2019, and at all times hereinafter mentioned, defendant NYC was the lessee of the subject crosswalk.

19.     That on or about July 3, 2019, and at all times hereinafter mentioned, defendant NYC was the lessor of the subject crosswalk.



**A15**

20.     That on or about July 3, 2019, and at all times hereinafter mentioned, defendant NYC maintained the subject crosswalk.

21.     That on or about July 3, 2019, and at all times hereinafter mentioned defendant NYC operated the subject crosswalk.

22.     That on or about July 3, 2019, and at all times hereinafter mentioned defendant NYC repaired the subject crosswalk.

23.     That on or about July 3, 2019, Plaintiff FRANCIS PAUL QUINN, JR. was lawfully within the crosswalk of the South side of Avenue of the Americas (6th Avenue) at its intersection with West 53rd Street, New York, New York, when he was caused to fall and sustain severe and permanent injuries due the defective and hazardous condition of the within crosswalk.

24.     That on or about July 3, 2019, and sometime prior thereto defendant NYC had notice of said dangerous condition within the subject crosswalk.

25.     That on or about July 3, 2019, there were no warning signs, posts, and/or placards regarding the dangerous condition located at the subject crosswalk.

26.     On or about July 3, 2019, and sometime prior thereto defendant NYC., caused and created said dangerous condition within the subject crosswalk.

27.     That the above-mentioned occurrence and the results thereof were caused by the joint, several and concurrent negligence of the defendants and/or its servants, agents, employees and/or licensees in the ownership, operation, management, supervision, maintenance and control of the aforesaid crosswalk.



28.     The above mentioned occurrence and the results thereof were caused by the negligence and carelessness of the defendant NYC., its agents, servants, employees and/or licensees in the ownership, operation, management, maintenance, repair, inspection and control of the aforesaid crosswalk; in causing, allowing and permitting said crosswalk at the location above mentioned to be, become and remain for a period of time after notice, either actual or constructive, in a dangerous, trap like and/or hazardous condition; in causing, allowing and permitting a trap to exist at said location; in failing to maintain the aforesaid crosswalk in a reasonably safe and proper condition; in causing, allowing and permitting an obstruction to plaintiff's safe passage at said location; in failing to provide plaintiff with a safe and proper crosswalk; in causing, allowing and permitting the existence of a defective condition to interfere with and prevent plaintiffs safe passage; in causing, allowing and permitting the existence of a condition which constituted a trap, nuisance, menace and danger to persons lawfully traversing said crosswalk; in failing to have taken necessary steps and measures to have prevented the above mentioned crosswalk from being used while in said dangerous condition; in failing to give plaintiff adequate and timely signal, notice or warning of said condition; in negligently and carelessly causing and permitting the above said crosswalk and walkway to be and remain in said condition for an unreasonable length of time, resulting in a hazard to the plaintiff and others; in failing to take suitable and proper precautions for the safety of persons on and using said crosswalk; and in being otherwise negligent and careless.

29.     The subject crosswalk herein and the parts thereof constituted a public and private nuisance and a trap for the unaware and more particularly the plaintiff herein.

### SECOND CAUSE OF ACTION AS TO ON BEHALF OF PLAINTIFF FRANCIS PAUL QUINN, JR

30.     Plaintiff repeats, reiterates and re-alleges each and every allegation as set



**A17**

forth in paragraphs designated as numbers "1" through "29" with the same force and effect as though fully set forth herein.

31.     That at all times hereinafter mentioned the defendant THE NEW YORK CITY DEPARTMENT OF TRANSPORTATION (hereinafter referred to as "DOT") was and is an agency of co-defendant NYC.

32.     On or about July 3, 2019, and at all times hereinafter mentioned, defendant NYC owned a certain sidewalk and/or curb adjacent to such sidewalk outside of the crosswalk designated as 3990 Hillman Avenue, Bronx, New York (hereinafter referred to as the "subject crosswalk").

33.     That on or about July 3, 2019, and at all times hereinafter mentioned, defendant DOT controlled the subject crosswalk.

34.     That on or about July 3, 2019, and at all times hereinafter mentioned, defendant DOT was the lessee of the subject crosswalk.

35.     That on or about July 3, 2019, and at all times hereinafter mentioned, defendant DOT was the lessor of the subject crosswalk.

36.     That on or about July 3, 2019, and at all times hereinafter mentioned, defendant DOT maintained the subject crosswalk.

37.     That on or about July 3, 2019, and at all times hereinafter mentioned defendant DOT operated the subject crosswalk.

38.     That on or about July 3, 2019, and at all times hereinafter mentioned



**A18**

defendant DOT repaired the subject crosswalk.

39.     That on or about July 3, 2019, and at all times hereinafter mentioned, defendant DOT owned the subject crosswalk.

40.     That on or about July 3, 2019, and at all times hereinafter mentioned, plaintiff FRANCIS PAUL QUINN, JR was lawfully walking at subject crosswalk when she was caused to fall and sustain severe and permanent injuries as a result of the aforementioned dangerous condition.

41.     That on or about July 3, 2019, there were no warning signs, posts, and/or placards regarding the dangerous condition located at the subject crosswalk.

42.     That the above-mentioned occurrence and the results thereof were caused by the joint, several and concurrent negligence of the defendants and/or its servants, agents, employees and/or licensees in the ownership, operation, management, supervision, maintenance and control of the aforesaid crosswalk.

43.     The above mentioned occurrence and the results thereof were caused by the negligence and carelessness of the defendant DOT., its agents, servants, employees and/or licensees in the ownership, operation, management, maintenance, repair, inspection and control of the aforesaid crosswalk; in causing, allowing and permitting said crosswalk at the location above mentioned to be, become and remain for a period of time after notice, either actual or constructive, in a dangerous, trap like and/or hazardous condition; in causing, allowing and permitting a trap to exist at said location; in failing to maintain the aforesaid crosswalk in a reasonably safe and proper condition; in causing, allowing and permitting an obstruction to plaintiff's safe passage at said location; in failing to provide plaintiff with a safe and proper crosswalk; in causing, allowing and



**A19**

permitting the existence of a defective condition to interfere with and prevent plaintiffs safe passage; in causing, allowing and permitting the existence of a condition which constituted a trap, nuisance, menace and danger to persons lawfully traversing said crosswalk; in failing to have taken necessary steps and measures to have prevented the above mentioned crosswalk from being used while in said dangerous condition; in failing to give plaintiff adequate and timely signal, notice or warning of said condition; in negligently and carelessly causing and permitting the above said crosswalk and walkway to be and remain in said condition for an unreasonable length of time, resulting in a hazard to the plaintiff and others; in failing to take suitable and proper precautions for the safety of persons on and using said crosswalk; and in being otherwise negligent and careless.

44.     The subject crosswalk herein and the parts thereof constituted a public and private nuisance and a trap for the unaware and more particularly the plaintiff herein.

### THIRD CAUSE OF ACTION ON BEHALF
### OF PLAINTIFF LORI ANN QUINN

45.     Plaintiff repeats, reiterates and re-alleges each and every allegation as set forth in paragraphs designated as numbers "1" through "44" with the same force and effect as though fully set forth herein.

46.     That at all times hereinafter mentioned, Plaintiff LORI ANN QUINN *née* HAZELHURST, was and is the lawful wedded wife of plaintiff, FRANCIS PAUL QUINN, JR., and as such is entitled to the services, society, comfort, companionship and consortium of her husband.

47.     That as a result of the foregoing occurrence, and resulting serious personal injuries, plaintiff has been deprived of the services, society, comfort, companionship and



consortium of her husband.

48.    That the damages in this action exceed the jurisdiction of the lower courts which would otherwise have jurisdiction over the subject matter.

49.    That due to the aforesaid, plaintiff suffered damages in an amount to be determined by the Court.

**WHEREFORE,** Plaintiff demand judgment against the Defendants herein on the First Cause of Action, for compensatory and consequential damages, including damages for physical and emotional pain and suffering, loss of enjoyment of life, and other pain and suffering on all claims allowed by law in an amount to be determined at trial, as well as all economic loss on all claims allowed by law, attorneys fees allowed by law, and any further relief that this court deems just and proper, and any other relief as allowed by law.

Dated:  New York, New York
        March 30, 2020

Yours, etc.,

**NAPOLI SHKOLNIK, PLLC.**

By:   Joseph P. Napoli, Esq.
      Attorneys for Plaintiffs
      **FRANCIS PAUL QUINN, JR**
      360 Lexington Avenue – 11th Floor
      New York, New York 10017-6502
      (212) 397-1000

To:    **THE CITY OF NEW YORK**
       100 Church Street
       New York, New York 10007-2601



**A21**

**THE NEW YORK CITY DEPARTMENT OF TRANSPORTATION**
100 Church Street
New York, New York 10007-2601



**A22**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**Docket No.: 20-cv-2666**

FRANCIS PAUL QUINN, JR., and LORI ANN QUINN,

Plaintiff(s),

**VERIFICATION**

-*against*-

THE CITY OF NEW YORK and THE NEW YORK
CITY DEPARTMENT OF TRANSPORTATION,

Defendant(s).

**STATE OF NEW YORK     }**
**COUNTY OF NEW YORK } ss:**

        **JOSEPH P. NAPOLI, ESQ.,** an attorney admitted to practice in the Courts of New York State, states:

        1.     Affirmant is a senior partner of the law firm of NAPOLI SHKOLNIK, PLLC, attorneys of record for the plaintiff in the within action. Affirmant has read the foregoing VERIFIED COMPLAINT and knows the contents thereof; the same is true to affirmant's own knowledge, except as to the matters therein stated to be alleged on information and belief, and that as to those matters, affirmant believes it to be true.

        2.     This verification is made by affirmant and not by plaintiff, for the reason that plaintiff's residence is not in the county where affirmant maintains his office.

        3.     The ground of affirmant's belief as to all matters not stated upon affirmant's knowledge are as follows: information furnished by plaintiff and counsel's investigation.  The undersigned affirms that the foregoing statements are true, under the penalties of perjury.

Dated:  New York, New York
       March 30, 2020

By:   Joseph P. Napoli, Esq.



**A23**

Docket No.: 20-cv-2666
UNITED STATES DISTRICT COURT, SOUTHERN DISTRICT OF NEW YORK

**FRANCIS PAUL QUINN, JR., and LORI ANN QUINN**

**Plaintiff(s),**

*-against-*

**THE CITY OF NEW YORK and THE NEW CITY YORK DEPARTMENT OF TRANSPORTATION,**

**Defendant(s).**

**SUMMONS & VERIFIED COMPLAINT**

**NAPOLI SHKOLNIK, PLLC.**
Attorneys for Plaintiffs
360 Lexington, Avenue 11th Floor
New York, New York 10017-6502
(212) 397-1000

To
Attorney(s) for _____

Service of a copy of the within _____ is           hereby
                                                                                admitted.
Dated:
Attorney(s) for Plaintiff _____

Sir:

☐ Please take notice that the within is a (certified) true copy of a _____
duly entered in the Office of the Clerk of the within named Court on _____, 20___

☐ Please take Please take notice that an Order of _____
which the within is a true copy will be presented for settlement to the Hon. _____
one of the Judges of the within named Court, at _____ on _____, 20___
at ____:_____ ☐ a.m./ ☐ p.m.



# A24

**Answer, filed Aug. 5, 2020 (Dkt. 10)**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------- x

FRANCIS PAUL QUINN JR. and LORI ANN QUINN,

                              Plaintiff,

                  -against-

THE CITY OF NEW YORK and THE NEW YORK CITY
DEPARTMENT OF TRANSPORTATION,

                              Defendants.

------------------------------------------------------------------------- x

**ANSWER TO THE
COMPLAINT**

20 CV 2666 (JGK)

<u>Jury Trial Demanded</u>

ECF Case

      Defendants the CITY OF NEW YORK and the CITY OF NEW YORK S/H/A
THE NEW YORK CITY DEPARTMENT OF TRANSPORTATION, by their attorney, James E.
Johnson, Corporation Counsel of the City of New York, for their Answer to the Complaint,
respectfully allege, upon information and belief, as follows:

      1.     Deny knowledge or information sufficient to form a belief as to the truth of the
allegations set forth in paragraph "1" of the Complaint.

      2.     Deny knowledge or information sufficient to form a belief as to the truth of the
allegations set forth in paragraph "2" of the Complaint.

      3.     Deny the allegations set forth in paragraph "3" of the Complaint, except admit the
City of New York is a municipal corporation existing pursuant to law.

      4.     Deny knowledge or information sufficient to form a belief as to the truth of the
allegations set forth in paragraph "4" of the Complaint.

      5.     Deny knowledge or information sufficient to form a belief as to the truth of the
allegations set forth in paragraph "5" of the Complaint.

      6.     Deny knowledge or information sufficient to form a belief as to the truth of the
allegations set forth in paragraph "6" of the Complaint.

**A26**

7.      Deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph "7" of the Complaint.

8.      Deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph "8" of the Complaint.

9.      Deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph "9" of the Complaint.

10.     Deny the allegations set forth in paragraph "10" of the Complaint, except admit that plaintiff purports to invoke the jurisdiction of this Court as stated therein.

11.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph "11" of the Complaint.

12.     Deny the allegations set forth in paragraph "12" of the Complaint.

13.     Deny the allegations set forth in paragraph "13" of the Complaint, except admit that plaintiff purports to invoke the jurisdiction of this Court as stated therein.

14.     Deny the allegations set forth in paragraph "14" of the Complaint, except admit that plaintiff purports to invoke the jurisdiction of this Court as stated therein.

15.     In response to the allegations set forth in paragraph "15" of the Complaint, defendants repeat and reallege all of the responses contained within the preceding paragraphs of this answer, as if fully set forth.

16.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph "16" of the Complaint.

17.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph "17" of the Complaint.

**A27**

18.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph "18" of the Complaint.

19.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph "19" of the Complaint.

20.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph "20" of the Complaint.

21.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph "21" of the Complaint.

22.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph "22" of the Complaint.

23.     Deny the allegations set forth in paragraph "23" of the Complaint.

24.     Deny the allegations set forth in paragraph "24" of the Complaint.

25.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph "25" of the Complaint.

26.     Deny the allegations set forth in paragraph "26" of the Complaint.

27.     Deny the allegations set forth in paragraph "27" of the Complaint.

28.     Deny the allegations set forth in paragraph "28" of the Complaint.

29.     Deny the allegations set forth in paragraph "29" of the Complaint.

30.     In response to the allegations set forth in paragraph "30" of the Complaint, defendants repeat and reallege all of the responses contained within the preceding paragraphs of this answer, as if fully set forth.

**A28**

31.    Deny the allegations set forth in paragraph "31" of the Complaint except admit that the City of New York is a municipal corporation which maintains a Department of Transportation pursuant to law.

32.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph "32" of the Complaint.

33.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph "33" of the Complaint.

34.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph "34" of the Complaint.

35.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph "35" of the Complaint.

36.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph "36" of the Complaint.

37.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph "37" of the Complaint.

38.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph "38" of the Complaint.

39.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph "39" of the Complaint.

40.    Deny the allegations set forth in paragraph "40" of the Complaint.

41.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph "41" of the Complaint.

42.    Deny the allegations set forth in paragraph "42" of the Complaint.

43.     Deny the allegations set forth in paragraph "43" of the Complaint.

44.     Deny the allegations set forth in paragraph "44" of the Complaint.

45.     In response to the allegations set forth in paragraph "45" of the Complaint, defendants repeat and reallege all of the responses contained within the preceding paragraphs of this answer, as if fully set forth.

46.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph "46" of the Complaint.

47.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph "47" of the Complaint.

48.     Deny the allegations set forth in paragraph "48" of the Complaint.

49.     Deny the allegations set forth in paragraph "49" of the Complaint.

<u>**AS AND FOR A FIRST AFFIRMATIVE DEFENSE:**</u>

50.     Plaintiff'(s') culpable conduct caused or contributed, in whole or in part, to his/her/their injuries and/or damages.

<u>**AS AND FOR A SECOND AFFIRMATIVE DEFENSE:**</u>

51.     At all times mentioned in the complaint, plaintiff knew or should have known in the exercise of due/reasonable care of the risks and dangers incident to engaging in the activity alleged.  Plaintiff voluntarily performed and engaged in the alleged activity and assumed the risk of the injuries and/or damages claimed.  Plaintiff failed to use all required proper, appropriate and reasonable safety devices and/or equipment and failed to take all proper appropriate and reasonable steps to assure his safety.  Plaintiff'(s') primary assumption of risk solely caused his/her/their injuries and/or damage and defendants owed no duty to the plaintiff(s) with respect to the risk assumed.  Plaintiff'(s') express assumption of risk solely caused his/her/their injuries and/or damage and defendant owed no duty to the plaintiff(s) with respect to the risk assumed.

**A30**

Plaintiff'(s') implied assumption of risk solely caused his/her/their injuries and/or damage and defendants owed no duty to the plaintiff(s) with respect to the risk assumed.

## AS AND FOR A THIRD AFFIRMATIVE DEFENSE:

52.     Defendants are immune from suit for their exercise of discretion in the performance of a governmental function and/or their exercise of professional judgment.

## AS AND FOR A FOURTH AFFIRMATIVE DEFENSE:

53.     The amounts recoverable by plaintiff(s) are subject to limitation by reason of the culpable conduct of other person(s) who are, or with reasonable diligence could have been made party defendant(s) to this action; by reason of a prior settlement between plaintiff and said person(s); and/or are subject to reduction by collateral sources received by plaintiff(s); and/or by reason of the fact that punitive damages are not recoverable against municipal defendant(s).

## AS AND FOR A FIFTH AFFIRMATIVE DEFENSE:

54.     The action on behalf of the plaintiff(s) is barred by reason of the fact that it was not commenced within the time provided by the Statute of Limitations.

## AS AND FOR A SIXTH AFFIRMATIVE DEFENSE:

55.     To the extent that the Complaint alleges any claims arising under New York State law, such claims are barred, in whole or in part, for failure to comply with New York General Municipal Law §§ 50-(e) and/or 50(i), *et seq*; failure to allege a prima facie against the defendant(s) answering hereby; and failure to satisfy a condition precedent.

## AS AND FOR A SEVENTH AFFIRMATIVE DEFENSE:

56.     Plaintiffs' Complaint fails to state a cause of action upon which relief can be granted.

## AS AND FOR AN EIGHTH AFFIRMATIVE DEFENSE:

57.    Plaintiffs' claims may be barred, in whole or in part, by the doctrine of laches, waiver, and estoppel.

## AS AND FOR A NINTH AFFIRMATIVE DEFENSE:

58.    Plaintiffs may have failed to mitigate damages.

## AS AND FOR A TENTH AFFIRMATIVE DEFENSE:

59.    Plaintiffs' claims may be barred, in whole or in part, by Section 7-210 of the Administrative Code of the City of New York.

## AS AND FOR AN ELEVENTH AFFIRMATIVE DEFENSE:

60.    Plaintiffs' claims may be barred, in whole or in part, by Section 7-201(c)(2) of the Administrative Code of the City of New York.

## AS AND FOR A TWELFTH AFFIRMATIVE DEFENSE:

61.    Plaintiffs' claims may be barred, in whole or in part, by 34 RCNY § 2-07(b).

## AS AND FOR A TWELFTH AFFIRMATIVE DEFENSE:

62.    Plaintiff(s) did not submit to an examination pursuant to Section 50-h of the General Municipal Law, before commencement of this action.

**WHEREFORE,** defendants request judgment dismissing the Complaint and all cross-claims, counter-claims and other claims asserted by any individual or entity against them in their entirety, together with the costs and disbursements of this action, and such other and further relief as the Court may deem just and proper.

Dated: New York, New York
August 5, 2020

**A32**

JAMES E. JOHNSON
Corporation Counsel of the
City of New York
*Attorney for Defendant*
CITY OF NEW YORK
100 Church Street
New York, New York 10007
(212) 356-7155

By:   /s/ David Skochil_____
David Skochil
Senior Counsel
Special Litigation Unit

To:

Napoli Shkolnik (Via ECF)

**A33**

**Defendants' Notice of Motion for summary judgment,
filed Jan. 25. 2024 (Dkt. 84)**

**A34**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------x

FRANCIS PAUL QUINN JR. and LORI ANN QUINN,

                             Plaintiff(s),

            -against-

THE CITY OF NEW YORK and THE NEW YORK CITY
DEPARTMENT OF TRANSPORTATION,

                            Defendant(s).

-----------------------------------------------------------------
THE CITY OF NEW YORK and THE NEW YORK CITY
DEPARTMENT OF TRANSPORTATION,

                   Third-Party Plaintiff(s),

            -against-

CONSOLIDATED EDISON, INC.,

                   Third-Party Defendant(s)
-----------------------------------------------------------------------x

**NOTICE OF MOTION**

Docket No:  20 CV 2666 (JGK)
File No:     2020-017559

ECF Case

Third-Party Action

       PLEASE TAKE NOTICE that, upon the accompanying declaration of Alexandra

Hastings, including all of the exhibits appended thereto, Local Rule 56.1 Statement of Undisputed

Facts, Memorandum of Law, and Letter, and upon all prior proceedings, pleadings, and filings in

this Action, defendants/third-party plaintiffs The City of New York and The City of New York

S/H/A The New York City Department of Transportation (hereafter "the City") will move this

Court at the United States Courthouse for the Southern District of New York, 500 Pearl Street,

Courtroom 17A, New York, New York, before the Honorable Naomi Reice Buchwald, United

States District Judge, for an Order granting summary judgment pursuant to Rule 56 dismissing the

complaint in its entirety and for other relief that the Court may deem just and proper.  In accordance

**A35**

with the schedule ordered by the Court, plaintiffs will file and serve their answering papers on or

before February 28, 2024, and the City its reply papers on or before March 15, 2024.

Dated: New York, New York
      January 25, 2024

                     SYLVIA O. HINDS RADIX
                     Corporation Counsel
                     *Attorney for Defendants/Third-Party Plaintiffs THE*
                     *CITY OF NEW YORK and THE CITY OF NEW*
                     *YORK S/H/A THE NEW YORK CITY*
                     *DEPARTMENT OF TRANSPORTATION*
                     100 Church Street
                     New York, New York 10007

                     _____
                     By:   Alexandra Hastings
                            Assistant Corporation Counsel
                            The City of New York Law Department
                            100 Church Street
                            New York, New York 10007-2601
                            Tel:  (212) 356-7179
                            ahasting@law.nyc.gov

TO (by ECF):

NAPOLI SHKOLNIK
*Attorneys for Plaintiffs*
*FRANCIS PAUL QUINN JR. and LORI ANN QUINN*
360 Lexington Avenue, 11th Floor
New York, New York 10017
Tel.#: (212) 397-1000
Fax#: (646) 843-7603

HEIDELL, PITTONI, MURPHY & BACH, LLP
*Attorneys for Third-Party Defendant*
*CONSOLIDATED EDISON, INC.*
99 Park Avenue
New York New York 10016
Tel.#: (212) 286-8585
Fax#: (212) 490-8966

**A36**

Docket No:  20 CV 2666 (JGK)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

FRANCIS PAUL QUINN JR. and LORI ANN QUINN,

Plaintiffs,

-against-

THE CITY OF NEW YORK and THE NEW YORK CITY
DEPARTMENT OF TRANSPORTATION,

Defendants.

--------------------------------------------------------------------------------------X
THE CITY OF NEW YORK and THE NEW YORK CITY
DEPARTMENT OF TRANSPORTATION,

Third-Party Plaintiffs,

-against-

CONSOLIDATED EDISON, INC.,

Third-Party Defendant.

**DEFENDANTS/THIRD-PARTY PLAINTIFFS' NOTICE OF
MOTION FOR SUMMARY JUDGMENT**

HON. SYLVIA O. HINDS-RADIX
Acting Corporation Counsel
*Attorney for Defendants/Third-Party Plaintiffs THE CITY OF NEW YORK
and THE CITY OF NEW YORK S/H/A THE NEW YORK CITY
DEPARTMENT OF TRANSPORTATION*
By: ALEXANDRA HASTINGS
100 Church Street
New York, New York 10007
Tel. #: (212) 356-7179

Please refer to the following file number: **2020-017559**
and indicate the County in which the action is pending in all papers,
correspondence and other communications with respect thereto.

**A37**

**Declaration of Alexandra Hastings, Esq.,
dated Jan. 25, 2024 (Dkt. 84-1)**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------x

FRANCIS PAUL QUINN JR. and LORI ANN QUINN,

                       Plaintiffs,

          -against-

THE CITY OF NEW YORK and THE NEW YORK CITY
DEPARTMENT OF TRANSPORTATION,

                    Defendants.

-----------------------------------------------------------------------

THE CITY OF NEW YORK and THE NEW YORK CITY
DEPARTMENT OF TRANSPORTATION,

               Third-Party Plaintiffs,

          -against-

CONSOLIDATED EDISON, INC.,

               Third-Party Defendants.

-----------------------------------------------------------------------x

**DECLARATION OF
ALEXANDRA HASTINGS,
ESQ.**

Docket No:  20 CV 2666 (JGK)
File No:    2020-017559

ECF Case

Third-Party Action

       Defendants/Third-Party Plaintiffs' The City of New York and The City of New York s/h/a The New York City Department of Transportation ("the City") submits this declaration in support of its motion for summary judgment pursuant to 56 of the Civil Rules of Federal Procedure.

       1.      Annexed as Exhibit A is a true and correct copy of plaintiffs' notice of claim and accompanying photographs.

       2.      Annexed as Exhibit B is a true and correct copy of plaintiffs' summons and complaint.

       3.      Annexed as Exhibit C is a true and correct copy of the City's answer.

**A39**

4.      Annexed as Exhibit D is a true and correct copy of the third-party summons and complaint.

5.      Annexed as Exhibit E is a true and correct copy of third-party defendant CONSOLIDATED EDISON COMPANY OF NEW YORK, INC. s/h/a "CONSOLIDATED EDISON, INC." ("Con Ed")'s Notice of Appearance and Order, extending Con Ed's time to interpose an answer.

6.      Annexed as Exhibit F is a true and correct copy of plaintiff Francis Paul Quinn Jr.'s 50-h hearing.

7.      Annexed as Exhibit G is a true and correct copy of the City's Department of Transportation roadway segment search results bearing Bates Nos. 1-288.

8.      Annexed as Exhibit H is a true and correct copy of the Affidavit of Henry Williams, a paralegal conducting record searches for the New York City Department of Transportation.

9.      Annexed as Exhibit I is a true and correct copy of the City's Department of Transportation roadway intersection search results bearing Bates Nos. 1-115.

10.     Annexed as Exhibit J is a true and correct copy of the Affidavit of Yelena Pasynkova, a Principal Administrative Associate in the Manhattan Street Maintenance Division of Roadway Repair within the New York City Department of Transportation, along with repair orders DM2017235027 and DM2019019002.

11.     Annexed as Exhibit K is a true and correct copy of the Affidavit of Mohammad Hoque, a Supervisor Highway Repairer of the Jolt Elimination Team Emergency Response Unit within the New York City Department of Transportation, along with repair order DM2017318006.

**A40**

12.     Annexed as Exhibit L is a true and correct copy of the <u>Webster et al. v. City of New York</u>, No. 19-cv-05638-KPF (S.D.N.Y. Sept. 1, 2021) Opinion and Order.

13.     Annexed as Exhibit M is a true and correct copy of the Order and Briefing Schedule, permitting the City to make a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure based upon Administrative Code § 7-201.

Dated: New York, New York
        January 25, 2024

HON. SYLVIA O. HINDS-RADIX
Corporation Counsel
*Attorney for Defendants/Third-Party Plaintiffs The City of New York and The City of New York S/H/A The New York City Department of Transportation*
100 Church Street
New York, New York 10007

_____

By:   Alexandra Hastings
      Assistant Corporation Counsel
      The City of New York Law Department
      100 Church Street
      New York, New York 10007-2601
      Tel:  (212) 356-7179
      ahasting@law.nyc.gov

TO (by ECF):

NAPOLI SHKOLNIK
*Attorneys for Plaintiffs*
*FRANCIS PAUL QUINN JR. and LORI ANN QUINN*
360 Lexington Avenue, 11th Floor
New York, New York 10017
Tel.#: (212) 397-1000
Fax#: (646) 843-7603

HEIDELL, PITTONI, MURPHY & BACH, LLP
*Attorneys for Third-Party Defendant*
*CONSOLIDATED EDISON, INC.*
99 Park Avenue
New York New York 10016
Tel.#: (212) 286-8585
Fax#: (212) 490-8966

**A41**

Docket No: 20 CV 2666 (JGK)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

FRANCIS PAUL QUINN JR. and LORI ANN QUINN,

                                                            Plaintiffs,

                            - against -

THE CITY OF NEW YORK and THE NEW YORK CITY
DEPARTMENT OF TRANSPORTATION,

                                                            Defendant.

THE CITY OF NEW YORK and THE NEW YORK CITY
DEPARTMENT OF TRANSPORTATION,

                                                    Third-Party Plaintiffs,

                            - against -

CONSOLIDATED EDISON, INC.,

                                                    Third-Party Defendant.

**DECLARATION OF ALEXANDRA HASTINGS, ESQ.**

HON. SYLVIA O. HINDS-RADIX
Corporation Counsel
Attorney for Defendants/Third-Party Plaintiffs The City of New York and
The City of New York S/H/A The New York City Department of
Transportation
By: ALEXANDRA HASTINGS
100 Church Street
New York, New York 10007
Tel. #: (212) 356-7179

Please refer to the following file number: **2020-017559**
and indicate the County in which the action is pending in all papers,
correspondence and other communications with respect thereto.

A42

**Statement of Undisputed Facts (Dkt. 84-2)**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------x

FRANCIS PAUL QUINN JR. and LORI ANN QUINN,

                              Plaintiffs,

         -against-

THE CITY OF NEW YORK and THE NEW YORK CITY
DEPARTMENT OF TRANSPORTATION,

                              Defendants.

-----------------------------------------------------------------
THE CITY OF NEW YORK and THE NEW YORK CITY
DEPARTMENT OF TRANSPORTATION,

                     Third-Party Plaintiffs,

         -against-

CONSOLIDATED EDISON, INC.,

                     Third-Party Defendants.

-----------------------------------------------------------------------x

**DEFENDANTS/THIRD-PARTY PLAINTIFFS' STATEMENT OF UNDISPUTED FACTS PURSUANT TO LOCAL CIVIL RULE 56.1**

Docket No:  20 CV 2666 (JGK)
File No:    2020-017559

ECF Case

Third-Party Action

      Defendants/Third-Party Plaintiffs' The City of New York and The City of New York s/h/a The New York City Department of Transportation ("the City") submit this statement pursuant to Rule 56.1 of the Local Civil Rules of the United States District for the Southern District of New York, setting forth the material facts to which they contend there is no genuine issue to be tried:

      1.    Plaintiffs' notice of claim states that plaintiff Francis Paul Quinn Jr. (hereinafter "Quinn") fell "due to a defective and hazardous gas utility box…located within the crosswalk of the Southside of 6th Avenue and its intersection with 53rd Street." (Exhibit A.)

<strong>A44</strong>

2.      On July 3, 2019, Quinn, a resident of Massachusetts, was walking from his hotel located at 7th Avenue and 53rd Street to the parking garage at 6th Avenue and 53rd Street in Manhattan.  (Exhibit F at 13-14.)

3.      At approximately 8:00 a.m., Quinn was in the crosswalk crossing 6th Avenue from the southwest corner to the southeast corner.  (Exhibit F at 12, 15-16.)

4.      Quinn had crossed about halfway through the intersection when he encountered an alleged defect in the area surrounding a Con Ed utility box in the crosswalk. (Exhibit F at 20.)

5.      Quinn testified that his left foot "went into a pothole that was up against the utility box," causing his ankle to twist and him to fall onto his right shoulder.  (Exhibit F at 25, 27.)

6.      When asked to describe the pothole, Quinn testified that it was "an eroded egg-like shape."  Id. at 26.

7.      The City's Department of Transportation ("DOT") conducted several searches of its databases for records related to the intersection of 6th Avenue and West 53rd Street and to the segment of 6th Avenue between West 52nd and West 53rd Streets.  (Exhibits G, H, and I.)

8.      Henry Williams, a DOT paralegal, personally conducted the aforementioned record searches for the two years prior to and including July 3, 2019, the date of Quinn's accident.  (Exhibit H.)

9.      Mr. Williams searched for roadway records, including permits, applications for permits, Office of Construction Mitigation and Coordination (OCMC) files, corrective action requests (CARs), notices of violation (NOVs), notifications for immediate corrective action

**A45**

(NICAs), inspections, contracts, maintenance and repair orders, complaints, gangsheets for roadway work, milling and resurfacing records, and Big Apple Maps.  (Exhibit H.)

10.    Mr. Williams' aforementioned roadway segment search returned the following results: twenty-five permits, twenty-five hardcopy permits, twenty-five applications for permits, one OCMC file, three CARs, two NOVs, zero NICAs, fourteen inspections, zero contracts, one maintenance and repair order/record, one complaint, one gangsheet for roadway defects, one handwritten gangsheet for roadway defects, zero gangsheets for milling and resurfacing records, zero handwritten gangsheets for milling and resurfacing records, zero Office of Special Events reports, and four Big Apple Maps, labeled as Volume 4, Page 46, and Volume 6e, Pages 31 and 33, which were served upon the DOT on October 23, 2003, and Volume 5n, Page 60, which was served upon the DOT on September 20, 2002.  (Exhibits G and H.)

11.    Mr. Williams' aforementioned roadway intersection search returned the following results: eight permits, eight hardcopy permits, eight applications for permits, zero OCMC files, zero CARs, three NOVs, zero NICAs, twelve inspections, zero contracts, two maintenance and repair orders/records, one complaint, two gangsheets for roadway defects, two handwritten gangsheets for roadway defects, zero gangsheets for milling and resurfacing records, zero handwritten gangsheets for milling and resurfacing records, zero Office of Special Events reports, and two Big Apple Maps, labeled as Volume 6e, Pages 31 and 33, which were served upon the DOT on October 23, 2003.  (Exhibits H and  I.)

12.    The three maintenance and repair orders/records (also known as "FITS" reports) collectively located in the roadway segment and intersection searches are identified as DM2017235027, DM2017318006, and DM2019019002.  (Exhibits G, I, J, and K.)

**A46**

13.     DM2017235027, DM2017318006, and DM2019019002 relate to pothole repairs.  (Exhibits J and K.)

14.     Upon arrival at a specific location, the crew supervisor for the pothole repair crew inspects the entire segment of the roadway, including the crosswalk on both ends of the segment.  (Exhibits J and K.)

15.     This is done in order to locate all defective conditions on the segment. (Exhibits J and K.)

16.     Upon completion of such a search, the crew repairs all defective conditions found by the supervisor on the entire block.  (Exhibits J and K.)

17.     This process of inspecting and repairing all found defective conditions at a location ensures that all defects are repaired.  (Exhibits J and K.)

18.     Repair order DM20172235027 was generated on August 22, 2017.  (Exhibit J.)

19.     According to the FITS report, the Action-ID is listed as "close defect," the Repair Status as "XCL," and the Defect Status as "CLS- closed work order" on August 23, 2017, which indicates that the condition described in repair order DM20172235027 was found and repaired on August 23, 2017.  (Exhibit J.)

20.     Repair order DM2017318006 was generated by the "office of special events" on November 13, 2017.  (Exhibit K.)

21.     According to the FITS report, the Action-ID is listed as "close defect," the Repair Status as "XCL," and the Defect Status as "CLS- closed work order" on November 13, 2017, which indicates that the condition described in repair order DM2017318006 was found and repaired on November 13, 2017.  (Exhibit K.)

**A47**

22.      Repair order DM2019019002 was generated on January 17, 2019.  (Exhibit J.)

23.      According to the FITS report, the Action-ID is listed as "close defect," the Repair Status as "XCL," and the Defect Status as "CLS- closed work order" on January 18, 2019, which indicates that the condition described in repair order DM2019019002 was found and repaired on January 18, 2019.  (Exhibit J.)

24.      The DOT's records search results demonstrate that the City did not receive prior written notice of the roadway condition that Quinn claims caused the accident, as required under Admin Code. § 7-201(c)(2).  (Exhibits G, H, and I.)

25.      While the City bears no burden of proof on this issue, the record evidence also demonstrates that the City did not create the subject condition through an affirmative act of negligence.  (Exhibits G, H, I, J, and K.)

26.      None of the permits revealed in the DOT intersection or segment searches were issued to the City.  (Exhibit G at 4-219.  Exhibit  I at 5-52.)

**A48**

Dated: New York, New York
      January 25, 2024

                        HON. SYLVIA O. HINDS-RADIX
                        Corporation Counsel
                        *Attorney for Defendants/Third-Party Plaintiffs The*
                        *City of New York and The City of New York S/H/A*
                        *The New York City Department of Transportation*
                        100 Church Street
                        New York, New York 10007

                        _____
                      By:  Alexandra Hastings
                              Assistant Corporation Counsel
                              The City of New York Law Department
                              100 Church Street
                              New York, New York 10007-2601
                              Tel:  (212) 356-7179
                              ahasting@law.nyc.gov

TO (by ECF):

NAPOLI SHKOLNIK
*Attorneys for Plaintiffs*
*FRANCIS PAUL QUINN JR. and LORI ANN QUINN*
360 Lexington Avenue, 11th Floor
New York, New York 10017
Tel.#: (212) 397-1000
Fax#: (646) 843-7603

HEIDELL, PITTONI, MURPHY & BACH, LLP
*Attorneys for Third-Party Defendant*
*CONSOLIDATED EDISON, INC.*
99 Park Avenue
New York New York 10016
Tel.#: (212) 286-8585
Fax#: (212) 490-8966

**A49**

Docket No:  20 CV 2666 (JGK)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

FRANCIS PAUL QUINN JR. and LORI ANN QUINN,

Plaintiffs,

- against -

THE CITY OF NEW YORK and THE NEW YORK CITY
DEPARTMENT OF TRANSPORTATION,

Defendants.

THE CITY OF NEW YORK and THE NEW YORK CITY
DEPARTMENT OF TRANSPORTATION,

Third-Party Plaintiffs,

- against -

CONSOLIDATED EDISON, INC.,

Third-Party Defendant.

**DEFENDANTS'/THIRD-PARTY PLAINTIFFS' STATEMENT OF
UNDISPUTED FACTS PURSUANT TO LOCAL CIVIL RULE 56.1**

HON. SYLVIA O. HINDS-RADIX
Corporation Counsel
Attorney for Defendants/Third-Party Plaintiffs The City of New York and
The City of New York S/H/A The New York City Department of
Transportation
By: ALEXANDRA HASTINGS
100 Church Street
New York, New York 10007
Tel. #: (212) 356-7179

Please refer to the following file number: **2020-017559**
and indicate the County in which the action is pending in all papers,
correspondence and other communications with respect thereto.

A50

**Memorandum of Law (Dkt. 84-4)**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------x

FRANCIS PAUL QUINN JR. and LORI ANN QUINN,

                                          Plaintiffs,

                  -against-

THE CITY OF NEW YORK and THE NEW YORK CITY
DEPARTMENT OF TRANSPORTATION,

                                    Defendants.

-----------------------------------------------------------------------

THE CITY OF NEW YORK and THE NEW YORK CITY
DEPARTMENT OF TRANSPORTATION,

                        Third-Party Plaintiffs,

                  -against-

CONSOLIDATED EDISON, INC.,

                        Third-Party Defendants.

-----------------------------------------------------------------------x

**MEMORANDUM OF LAW
IN SUPPORT OF
DEFENDANTS/THIRD-
PARTY PLAINTIFFS'
MOTION FOR SUMMARY
JUDGMENT**

Docket No:  20 CV 2666 (JGK)
File No:  2020-017559

ECF Case

Third-Party Action

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS/THIRD-PARTY
PLAINTIFFS' THE CITY OF NEW YORK AND THE CITY OF NEW YORK S/H/A
THE NEW YORK CITY DEPARTMENT OF TRANSPORTATION MOTION FOR
SUMMARY JUDGMENT PURSUANT TO FRCP 56**

*HON. SYLVIA O. HINDS-RADIX*
*Corporation Counsel for the City of New York*
*Attorney for Defendants/Third-Party Plaintiffs The City of New York and The City of New York
S/H/A The New York City Department of Transportation*

*Of Counsel*
*Alexandra Hastings, Esq.*
*Corporation Counsel of the City of New York*
*100 Church Street*
*New York, NY 10007*
*Tel: 212-356-7179/Fax: 212-356-1148*
*ahasting@law.nyc.gov*

**A52**

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ........................................................................... ii

PRELIMINARY STATEMENT .................................................................... 1

PROCEDURAL HISTORY…………………………………………………2

STATEMENT OF FACTS ............................................................................ 2

STANDARD OF REVIEW .......................................................... …………5

ARGUMENT ................................................................................................. 7

    POINT I   THE CITY HAD NO PRIOR WRITTEN NOTICE OF
                THE DEFECT ALLEGED TO HAVE CAUSED
                QUINN'S ACCIDENT ............................................................ 7

    POINT II   THE CITY IS ENTITLED TO SUMMARY JUDGMENT
                BECAUSE THERE ARE NO APPLICABLE EXCEPTIONS
                TO THE PRIOR WRITTEN NOTICE REQUIREMENT .......................... 16

    POINT III  PLAINTIFF LORI ANN QUINN'S DERIVATIVE CLAIMS
                MUST BE DISMISSED .............................................................. 20

CONCLUSION.................................................................................... 20

## TABLE OF AUTHORITIES

**Cases**                                                                                              **Pages**

Allen v. Cuomo, 100 F.3d 253 (2d Cir. 1996)……..............................................................6

Amabile v. City of Buffalo, 93 N.Y.2d 471 (1999)...................................................16

Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986)......................................................6

Arzeno v. City of New York, 128 A.D.3d 527 (1st Dep't 2015) ..................................19

Babenzien v. Town of Fenton, 67 A.D.3d 1236 (3d Dep't 2009) .................................18

Barry v. Niagara Frontier Transit Sys., Inc., 35 N.Y.2d 629, 633-634 (1974)....................7, 8

Belmonte v. Metro Life Ins. Co., 304 A.D.2d 471 (1st Dep't 2003)........................9, 15

Bielecki v City of New York, 14 A.D.3d 301
(1st Dep't 2005) ....................................................................................17, 18

Bigman v. City of New York, 2012 NY Slip Op 30362U
(Sup. Ct., N.Y. Co., Feb. 16, 2012).………...........................................................11

Bolanos v. City of New York, 29 A.D.3d 455, 456 (1st Dep't
2006)………............................................................................…............10

Caldarola v. Calabrese, 298 F.3d 156 (2d Cir. 2002).......................................................6

Capobianco v. Mari, 272 A.D.2d 497, 497 (2d Dep't 2000).………...............................9

Celotex Corp. v. Catrett, 477 U.S. 317 (1986)..............................................................6

Congero v. City of Glen Cove, 193 A.D.3d 679, 680 (2d Dep't 2021).………................…1

Cruz v. Otis Elevator Co., 238 A.D.2d 540 (2d Dep't 1997) ........................................17

Denton v. Hernandez, 504 U.S. 25, 32, 33 (1992).………...........................................7

De Rosso v. Town of Poughkeepsie, 51 A.D.3d 966 (2d Dep't 2008) ..........................17

DeSilva v. City of New York, 15 A.D.3d 252, 253 (1st Dep't 2005).………..….............10

Diaz v. City of New York, 56 A.D.3d 599 (2d Dep't 2008).....................................18, 19

D'Onofrio v. City of New York, 11 N.Y.3d 581 (2008).....................................9, 15

Elstein v. City of New York, 209 A.D.2d 186 (1st Dep't 1994) ....................................17

Freeman v. County of Nassau, 95 A.D.2d 363, 364 (2d Dep't 1983)……………………………8

Gonzalez v. New York City Hous. Auth., 181 A.D.2d 440, 441 (1st Dep't 1992)……..……1, 14

Gonzalez v. Town of Hempstead, 124 A.D.3d 719 (2d Dep't 2015)............................................17

Hanley v. City of New York, 139 A.D.3d 800, 802 (2d Dep't 2016) ......................................9, 18

Hazel v. Montefiore Med. Ctr., 243 A.D.2d 344, 344 (1st Dep't 1997)………………..……..2, 20

Heckel v. City of New York, 60 A.D.3d 812, 813 (2d Dep't 2009)………………………..……1, 14

Jacobs v. Village of Rockville Centre, 41 A.D.3d 539 (2d Dep't 2007) ......................................16

Jacobowitz v. City of New York, 2023 N.Y. App. Div. LEXIS 6906 (2d Dep't 2023)……..……1

Jeffreys v. City of New York, 426 F.3d 549 (2d Cir. 2005) ...........................................................7

Katz v. City of New York, 87 N.Y.2d 241 (1995)…………………………………………………8

Koehler v. Inc. Village of Lindenhurst, 42 A.D.3d 438 (2d Dep't 2007) ...................................16

Kushner v. City of Albany, 27 A.D.3d 851 (3d Dep't 2006)……..............................................19

Lieberman v. City of New York, 2010 NY Slip Op 32034U *4
(Sup. Ct., N.Y. County July 23, 2010)……………………………………..………………11

Leary v. City of Rochester, 67 N.Y.2d 866 (1986)……………………………………………15

Levy v. Incorporated Vil. Of E. Hampton, 193 A.D.3d 714, 714-715 (2d Dep't 2021)…………1

Lipani v. Hiawatha Elementary Sch., 153 A.D.3d 1247, 1248 (2d Dep't 2017)…………………1

Lopez v. G & J Rudolph. Inc., 20 A.D.3d 511 (2d Dept. 2005) ...................................................17

Lopez v. Gonzalez, 44 A.D.3d 1012 (2d Dep't 2007)...........................................................9, 14

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986) ...................................6

Mazzella v. City of New York, 2018 NY Slip Op 30138[U]
(Sup. Ct., N.Y. County Jan. 23, 2018)……………………………………………..…………11

McCarthy v. City of White Plains, 54 A.D.3d 828, 830 (2d Dep't 2008)…………..……………9

McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184 (2d Cir. 2007)..........................................7

Meltzer v. City of New York, 156 A.D.2d 124 (1st Dep't 1989)………………………..…………7

Mood v. City of New York, 53 Misc 3d 1205[A], 2016 NY Slip Op 51402[U]
(Sup. Ct., Queens Co., Oct. 4, 2016)……………………………………………11

Mosley v. City of New York, 217 A.D.3d 857, 859 (2d Dep't 2023)……………………………...1

Oboler v. City of New York, 8 N.Y.3d 888 (2007) ...................................................2, 17

Ocasio v. City of Middletown, 148 A.D.2d 431, 432 (2d Dep't 1989)………………………….8

Oswald v. City of Niagara Falls, 13 A.D.3d 1155 (4th Dep't 2004) ...............................16

Pagillo v. City of Oneonta, 25 A.D.3d 1044 (3d Dep't 2006) .......................................16

Parente v. Metro. Transp. Auth., 2012 U.S. Dist. LEXIS 70145
(S.D.N.Y. May 16, 2012).............................................................................16

Poirer v. City of Schenectady, 85 N.Y.2d 310, 313 (1995)………………………...……….8

Roldan v. City of New York, 36 A.D.3d 484 (1st Dep't 2007)………………….……………15

Roman v. City of New York, 38 A.D.3d 442 (1st Dep't 2007) ........................................16

Rothstein v. City of New York, 2011 U.S. Dist LEXIS 85609, *15
(S.D.N.Y. June 15, 2011)…………………………………………………….…..8, 9

Savino v. City of New York, 331 F.3d 63 (2d Cir. 2003) ...............................................6

Shabazz v. Pico, 994 F. Supp. 460 (S.D.N.Y. 1998).....................................................7

Shannon v. Village of Rockville Centre, 39 A.D.3d 528 (2d Dep't 2007) ......................16

Spanos v. Town of Clarkstown, 81 A.D.3d 711 (2d Dep't 2011) ..................................16

Torres v. City of New York, 39 A.D.3d 438 (1st Dep't 2007).........................................18

Vega v. 103 Thayer St., LLC, 105 A.D.3d 405, 406 (1st Dep't 2013)……………………….15

Vega v. City of New York, 88 A.D.3d 497 (1st Dep't 2011) ..........................................18

Villaret v. City of New York, 236 A.D.2d 216 (1st Dep't 1997) ....................................17

Wald v. City of New York, 115 A.D.3d 939 (2d Dep't 2014) ........................................18

Webster et al. v. City of New York, No. 19-cv-05638-KPF (S.D.N.Y. Sept. 1, 2021)………....14

Weinreb v. City of New York, 193 A.D.2d 596, 599 (2d Dep't 1993)……………………….9

Wilson v. Incorporated Vil. Of Hempstead, 120 A.D.3d 665 (2d Dep't 2014)...........18, 19

Yarborough v. City of New York, 10 N.Y.3d 726 (2008) ....................................16, 17, 18

Yarborough v. City of New York, 28 A.D.3d 650 (2d Dept. 2006) .................................17

Zigman v. Town of Hempstead, 120 A.D.2d 520, 521 (2d Dep't 1986)..............................8

Zinz v. Empire City Subway Co., Ltd., 2014 U.S. Dist. LEXIS 147247
(S.D.N.Y. Oct. 14, 2014) .....................................................................................18, 19

Zuckerman v. City of New York, 49 N.Y.2d 557 (1980) ............................................17

**Statutes**                                                                                **Pages**

Administrative Code § 7-201................................................................................7, 9

Fed. R. Civ. P.56 (c)............................................................................................6

**A57**

## PRELIMINARY STATEMENT

This case arises from an incident on July 3, 2019, when plaintiff Francis Quinn, Jr. ("Quinn") allegedly tripped and fell on or near a Consolidated Edison, Inc. (hereafter "Con Ed") utility box within the pedestrian crosswalk on the Southside of 6th Avenue and 53rd Street in Manhattan, suffering personal injuries.[1] Plaintiffs claim that defendants The City of New York and The City of New York S/H/A The New York City Department of Transportation (hereafter the "City"), which own the street, is liable because it had prior written notice of the subject condition and negligently repaired the roadway before Quinn fell.

Plaintiffs' claims are unavailing for two principal reasons. First, the City did not have prior written notice of the condition that allegedly caused Quinn to trip—either a Con Ed utility box or a pothole abutting the Con Ed utility—thereby barring liability.

Second, despite not having the burden of proof on this issue, the City did not cause or create the condition alleged to have caused Quinn to trip. Plaintiffs' reliance on the so-called affirmative negligence exception to the prior written notice statute is fruitless. As is well established, the exception only applies where it can be shown that a dangerous condition arose

---

[1] Plaintiffs' notice of claim, by which they are bound, states that Quinn fell "due to a defective and hazardous gas utility box…located within the crosswalk of the Southside of 6th Avenue and its intersection with 53rd Street." (Exhibit A). See Gonzalez v. New York City Hous. Auth., 181 A.D.2d 440, 441 (1st Dep't 1992) (finding an amendment to the notice of claim to add a cause of action for negligent infliction of emotional distress would not be permitted as it would "substantially alter the nature of plaintiff's claim" almost five years after the occurrence); see also Heckel v. City of New York, 60 A.D.3d 812, 813 (2d Dep't 2009) ("the plaintiff could not rely on evidence in support of a theory of liability not advanced in the notice of claim to raise a triable issue of fact…."); see also Jacobowitz v. City of New York, 2023 N.Y. App. Div. LEXIS 6906 (2d Dep't 2023) (finding "'A notice of claim must set forth, inter alia, the nature of the claim, and the time, place, and manner in which the claim arose.' Congero v. City of Glen Cove, 193 A.D.3d 679, 680 (2d Dep't 2021); Lipani v. Hiawatha Elementary Sch., 153 A.D.3d 1247, 1248 (2d Dep't 2017). Evidence extrinsic to the notice of claim 'cannot be used to substantively change the nature of the claim or the theory of liability, since causes of action or legal theories may not be raised in the complaint [or in a bill of particulars] that were not directly or indirectly mentioned in the notice of claim and that change the nature of the claim or assert a new one.' Mosley v. City of New York, 217 A.D.3d 857, 859 (2d Dep't 2023); see Levy v. Incorporated Vil. Of E. Hampton, 193 A.D.3d 714, 714-715 (2d Dep't 2021).") Contrary to the notice of claim, Quinn testified that he fell due to a pothole abutting the aforementioned Con Ed gas utility box. (Exhibit F.)

"*immediately*" as a result of a municipality's actions.  Oboler v. City of New York, 8 N.Y.3d 888, 889 (2007).  The absence of any such evidence here requires dismissal.

Finally, because all causes of action herein must be dismissed as a matter of law, plaintiff Lori Ann Quinn's derivative claims must also be dismissed.  See Hazel v. Montefiore Med. Ctr., 243 A.D.2d 344, 344 (1st Dep't 1997).

Accordingly, summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure is warranted and the complaint should be dismissed in its entirety.

## PROCEDURAL HISTORY

Plaintiffs submitted a notice of claim and photographs to the City on or about September 24, 2019.  (Exhibit A.)  Plaintiffs' complaint was filed on April 2, 2020.  (Exhibit B.)  The complaint alleges claims of negligence and loss of consortium.  (Exhibit B.)  The City served its answer on August 5, 2020.  (Exhibit C.)  Due to allegations that Plaintiff Quinn tripped and fell on or near a Con Ed gas cap, the City filed a Summons and Third-Party complaint against Con Ed on November 20, 2020.  (Exhibit D.)  Unbeknownst to the City at the time the Summons and Third-Party complaint was filed, plaintiffs previously litigated an action against Con Ed under docket number 19-cv-6538, which was resolved.  Con Ed entered its notice of appearance in this matter on February 8, 2021.  (Exhibit E.)

## STATEMENT OF FACTS

For a complete statement of undisputed facts, the City respectfully refers the Court to the City's Local Civil Rule 56.1 Statement of Undisputed Facts, dated January 25, 2024, which is submitted concurrently herewith.  However, for the Court's convenience, the City recites here certain relevant facts for the purposes of its motion.

On July 3, 2019, Quinn, a resident of Massachusetts, was walking from his hotel located at 7th Avenue and 53rd Street to the parking garage located at 6th Avenue and 53rd Street.

(Exhibit F at 13-14.)[2]  At approximately 8:00 a.m., Quinn was heading east on 53rd Street, crossing 6th Avenue in the crosswalk from the southwest corner to the southeast corner, in Manhattan. (Exhibit F at 12, 15-16.)  He had crossed about halfway when he encountered an alleged defect in the area surrounding a Con Ed utility box encroaching on the crosswalk.  (Exhibit F at 20.)  Quinn testified that his left foot "went into a pothole that was up against the utility box," causing his ankle to twist and him to fall onto his right shoulder.  (Exhibit F at 25, 27.)  When asked to describe the pothole, Quinn testified that it was "an eroded egg-like shape."  Id. at 26.

Based on plaintiffs' pleadings, testimony, and photographs, Henry Williams, a paralegal at the Department of Transportation ("DOT"), conducted a search for roadway segment records pertaining to 6th Avenue between West 52nd Street and West 53rd Street in the County, City, and State of New York, the location of accident.  His record search encompassed the period of two years prior to and including July 3, 2019, the accident date.  Mr. Williams searched for roadway records, including permits, applications for permits, Office of Construction Mitigation and Coordination (OCMC) files, corrective action requests (CARs), notices of violation (NOVs), notifications for immediate corrective action (NICAs), inspections, contracts, maintenance and repair orders, complaints, gangsheets for roadway work, milling and resurfacing records, and Big Apple Maps.  (Exhibit G.)

Mr. Williams' aforementioned roadway segment search returned the following results: twenty-five permits, twenty-five hardcopy permits,[3] twenty-five applications for permits, one OCMC file, three CARs, two NOVs, zero NICAs, fourteen  inspections, zero contracts, one

---

[2] All exhibits to the City's motion are annexed to the Declaration of Alexandra Hastings, Esq.  For brevity, references are to "Exhibit_."

[3] A hardcopy permit is a physical copy of the same permit maintained in DOT's electronic system.

maintenance and repair order/record, one complaint, one gangsheet for roadway defects, one handwritten gangsheet for roadway defects, zero gangsheets for milling and resurfacing records, zero handwritten gangsheets for milling and resurfacing records, zero Office of Special Events reports, and four Big Apple Maps, labeled as Volume 4, Page 46, and Volume 6e, Pages 31 and 33, which were served upon the DOT on October 23, 2003, and Volume 5n, Page 60, which was served upon the DOT on September 20, 2002.  (Exhibit H.)

   Mr. Williams also conducted a search for roadway intersection records pertaining to the location of accident. His record search encompassed the period of two years prior to and including the accident date.  Mr. Williams searched for the same type of roadway records as in the aforementioned segment search.  (Exhibit I.)

   Mr. Williams' aforementioned roadway intersection search returned the following results: eight permits, eight hardcopy permits, eight applications for permits, zero OCMC files, zero CARs, three NOVs, zero NICAs, twelve inspections, zero  contracts, two maintenance and repair orders/records,[4] one complaint, two gangsheets[5] for roadway defects, zero gangsheets for milling and resurfacing records, zero handwritten gangsheets for milling and resurfacing records, zero Office of Special Events reports, and two Big Apple Maps, labeled as Volume 6e, Pages 31 and 33, which were served upon the DOT on October 23, 2003.  (Exhibit H.)

   The three maintenance and repair orders/records collectively located in the roadway segment and intersection searches are identified as DM2017235027, DM2017318006, and DM2019019002.  (Exhibits G, I, J, and K.)  These documents relate to pothole repairs. (Exhibits J and K.)  Upon arrival at a specific location, the crew

---

[4] The maintenance and repair orders/records are also known as "FITS" reports. (Exhibits J and K.)

[5] The gangsheets are also known as crew sheets.  (Exhibits J and K.)

supervisor for the pothole repair crew inspects the entire segment of the roadway, including the crosswalk on both ends of the segment. (Exhibits J and K.)  This is done in order to locate all defective conditions on the segment. (Exhibits J and K.)  Upon completion of such a search, the crew repairs all defective conditions found by the supervisor on the entire block. (Exhibits J and K.)  This process of inspecting and repairing all found defective conditions at a location ensures that all defects are repaired.  (Exhibits J and K.)

Repair order DM20172235027 was generated on August 22, 2017.  (Exhibit J.) According to the FITS report, the Action-ID is listed as "close defect," the Repair Status as "XCL," and the Defect Status as "CLS- closed work order" on August 23, 2017.  (Exhibit J.)  All of this information indicates that the condition described in repair order DM20172235027 was found and repaired on August 23, 2017.  (Exhibit J.)

Repair order DM2017318006 was generated by the "office of special events" on November 13, 2017.  (Exhibit K.)  According to the FITS report, the Action-ID is listed as "close defect," the Repair Status as "XCL," and the Defect Status as "CLS- closed work order" on November 13, 2017.  (Exhibit K.)  All of this information indicates that the condition described in repair order DM2017318006 was found and repaired on November 13, 2017.  (Exhibit K.)

Repair order DM2019019002 was generated on January 17, 2019.  (Exhibit J.) According to the FITS report, the Action-ID is listed as "close defect," the Repair Status as "XCL," and the Defect Status as "CLS- closed work order" on January 18, 2019.  (Exhibit J.)  All of this information indicates that the condition described in repair order DM2019019002 was found and repaired on January 18, 2019.  (Exhibit J.)

## STANDARD OF REVIEW

Summary judgment is appropriate when the pleadings, depositions, interrogatories, admissions, and affidavits demonstrate that there are no genuine issues of material fact in dispute.

**A62**

See Fed. R. Civ. P. 56 (c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  Although courts must resolve all ambiguities and draw all factual inferences in favor of the non-moving party in deciding whether a genuine issue of material fact exists, once a motion for summary judgment is made and supported, the non-moving party must come forward with specific facts showing there is a genuine issue for trial.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted).  Genuine issues of material fact exist when "the evidence is such that a reasonable jury could return a verdict for the non-moving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  However, summary judgment should be granted "if the evidence presented by the nonmoving party is merely colorable, or is not significantly probative . . . or if it is based purely on conjecture or surmise."  Savino v. City of New York, 331 F.3d 63, 71 (2d Cir. 2003) (internal quotes omitted).  As the Second Circuit has found, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." Caldarola v. Calabrese, 298 F.3d 156, 160 (2d Cir. 2002) (internal quotation marks omitted).

At the summary judgment stage, "a complete failure of proof concerning an essential element of . . . that party's case necessarily renders all other facts immaterial."  Celotex Corp., 477 U.S. at 322-23.  "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  Anderson, 477 U.S. at 247-48.  "If the plaintiff fails to come forward with enough evidence to create a genuine factual issue to be tried," a defendant's motion for summary judgment must be granted.  Allen v. Cuomo, 100 F.3d 253, 258 (2d Cir. 1996) (citing Anderson, 477 U.S. at 247-48).

Further, "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Jeffreys v. City of New York, 426 F.3d 549, 554 (2d Cir. 2005) (internal quotation marks and citations omitted).  "Unless the nonmoving party offers 'some hard evidence showing that its version of events is not wholly fanciful[,]' summary judgment is granted to the moving party." McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 202 (2d Cir. 2007) (quoting Jeffreys, 426 F.3d at 554).  Additionally, "when the facts alleged are so contradictory that doubt is cast upon their probability, [the court is] authorized to 'pierce the veil of the complaint's factual allegations,' dispose of 'some improbable allegations,' and dismiss the claim." Shabazz v. Pico, 994 F. Supp. 460, 470-471 (S.D.N.Y. 1998) (Sotomayor, D.J.), vacated on other grounds by 205 F.3d 1324 (2d Cir. 2000) (quoting Denton v. Hernandez, 504 U.S. 25, 32, 33 (1992)).

In the instant matter, summary judgment should be granted in the City's favor as to all of plaintiffs' claims because there are no genuine issues of material fact which warrant a trial.

## ARGUMENT

### POINT I

### THE CITY HAD NO PRIOR WRITTEN NOTICE OF THE DEFECT ALLEGED TO HAVE CAUSED QUINN'S ACCIDENT

Lawsuits against the City alleging personal injury "in consequence of any street, highway, bridge, wharf, culvert, sidewalk or crosswalk, or any part or portion of any of the foregoing including any encumbrances thereon or attachments thereto, being out of repair, unsafe, dangerous, or obstructed" are barred in the absence of "written notice."  Administrative Code of the City of New York, § 7-201(c)(2).  New York's prior written notice statutes prevent "any possibility of liability for nonfeasance, except where the [municipality] fails or refuses to remedy the condition within a reasonable time after receipt of notice." Barry v. Niagara Frontier Transit

**A64**

Sys., Inc., 35 N.Y.2d 629, 633-634 (1974).  Liability is limited to cases where the municipality has been given actual notice, in writing, and an opportunity to correct the hazardous condition.  See Poirer v. City of Schenectady, 85 N.Y.2d 310, 313 (1995) ("Practically, prior written notice provisions result in limiting a locality's duty of care over municipal streets and sidewalks by imposing liability only for those defects or hazardous conditions which its officials have actually been notified exist at a specific location.")  "New York State law, as construed by the Court of Appeals, binds the Court in a diversity action."  Rothstein v. City of New York, 2011 U.S. Dist LEXIS 85609, *15 (S.D.N.Y. June 15, 2011).

The rationale informing prior written notice statutes is well established and the Court of Appeals has found that such laws constrain the common-law duty of care as a means of solving "the vexing problem of municipal street and sidewalk liability."  Barry, 35 N.Y.2d at 633. Indeed the Court has found that this "comports with the reality that municipal officials are not aware of every dangerous condition on its streets and public walkways."  Poirer, 85 N.Y.2d at 313-314.

Prior written notice laws are to be strictly construed, and their words are to be given neither "an artificial, forced or unnatural meaning" (Zigman v. Town of Hempstead, 120 A.D.2d 520, 521 (2d Dep't 1986)), nor "a strained interpretation to defeat their obvious intent."  Freeman v. County of Nassau, 95 A.D.2d 363, 364 (2d Dep't 1983).  See also Katz v. City of New York, 87 N.Y.2d 241 (1995) (because prior written notice "is a limited waiver of sovereign immunity, in derogation of common law, it is strictly construed"); Rothstein, 2011 U.S. Dist LEXIS 85609 at *18; Ocasio v. City of Middletown, 148 A.D.2d 431, 432 (2d Dep't 1989) ("Prior written notice laws are in derogation of the common law and, thus, are to be strictly construed.")

**A65**

For liability to attach, a municipality must have been provided with notice of the specific defect involved, and not merely a similar condition. See Rothstein, 2011 U.S. Dist LEXIS 85609, *36; D'Onofrio v. City of New York, 11 N.Y.3d 581, 585 (2008); Belmonte v. Metro Life Ins. Co., 304 A.D.2d 471, 474 (1st Dep't 2003). See also Hanley v. City of New York, 139 A.D.3d 800, 802 (2d Dep't 2016). The City also must have had at minimum fifteen (15) days prior written notice of the specific condition alleged to have caused plaintiff's injury. Administrative Code § 7-201(c)(2). See also Weinreb v. City of New York, 193 A.D.2d 596, 599 (2d Dep't 1993).

Where a municipality is provided notice of a defective condition which is then repaired, a plaintiff must present evidence of additional written notice that was received subsequently in the event of a recurrence. See, e.g., McCarthy v. City of White Plains, 54 A.D.3d 828, 830 (2d Dep't 2008) (recurrence of a prior defect "does not abrogate the need for prior written notice"); Lopez v. Gonzalez, 44 A.D.3d 1012, 1013 (2d Dep't 2007) (granting dismissal of complaint and finding that "plaintiff failed to present any evidence that the City received prior written notice of the subject defect following the [previous] repair"); Capobianco v. Mari, 272 A.D.2d 497, 497 (2d Dep't 2000) (reversing denial of summary judgment and finding that "there is no evidence in the record that a dangerous condition existed when the Town completed its repairs" and holding that the "allegation of a subsequent recurrence of a condition does not abrogate the need for prior written notice.").

Here, the record makes clear that the City had no prior written notice of the defect— a Con Ed utility box or pothole abutting the utility box—that allegedly caused Quinn to trip and fall.

*Permits, Hardcopy Permits, and Applications for Permits*

A search of the DOT's database revealed no records that relate to the alleged defect. Thirty-three permits, thirty-three hardcopy permits, and thirty-three applications were collectively located in the two-year DOT roadway segment and intersection searches, which encompass the location of Quinn's accident.  (Exhibits G, H and I.)  It is well-established law that permits merely issued by the City do not constitute prior written notice.  See Meltzer v. City of New York, 156 A.D.2d 124 (1st Dep't 1989) (permits issued by the City pertaining to the installation of a gas valve housing, upon which the plaintiff tripped, did not provide the necessary notice to the City); Levbarg v. City of New York, 282 A.D.2d 239, 242 (1st Dep't 2001) ("As this Court has previously held, the issuance of a permit for a street excavation is insufficient as a matter of law to provide the requisite notice to the City"); Bolanos v. City of New York, 29 A.D.3d 455, 456 (1st Dep't 2006) (permits issued by the City do not establish that it "prior actual or written notice of a dangerous condition in the roadway where plaintiff was injured"); DeSilva v. City of New York, 15 A.D.3d 252, 253 (1st Dep't 2005) (permits issued by the City will not constitute a "written acknowledgement" of an alleged defect, and "the issuance of the work permits is insufficient to satisfy the prior written notice requirement of the statute.")  Accordingly, the thirty-three permits and permit applications collectively located in this case do not constitute prior written notice of the condition alleged to have caused Quinn's accident.

*Corrective Action Requests, Notice of Violations, Complaints, and Inspections*

Similar to the permits issued in this case, the three corrective action requests, five notice of violations, two complaints, and twenty-six inspections collectively revealed in the DOT roadway segment and intersection searches do not provide prior written notice of the alleged roadway condition.  (Exhibits G, H, and I.)  The total twenty-six inspections found in the DOT

segment and intersection searches all resulted in a final passing condition, indicated no work was completed, are for a different location than where Quinn's accident allegedly occurred, and/or do not mention any condition resembling the alleged defect. Id.; see Lieberman v. City of New York, 2010 NY Slip Op 32034U *4 (Sup. Ct., N.Y. County July 23, 2010) (finding the City established that it did not have prior written notice where "none of the corrective action reports, notices of violation or complaints refer to a missing cap on a water valve or any condition that resembles the subject condition, which is a metal sheet opening with a missing cover."); Bigman v. City of New York, 2012 NY Slip Op 30362U (Sup. Ct., N.Y. Co., Feb. 16, 2012) (a notice of violation reflecting that a DOT inspection of the subject sidewalk uncovered the following: "broken, trip hazard, patchwork, [and] structural integrity," did not constitute prior written notice because plaintiff offered no evidence demonstrating that it referred to the defect on which she tripped.")

Specifically, of the twenty-six inspections found, eighteen resulted in "pass" or indicated that work had not started, and therefore do not provide the City with prior written notice. (Exhibit I at 87-93; Exhibit G at 250-251, 265-269.)  See Mazzella v. City of New York, 2018 NY Slip Op 30138[U] (Sup. Ct., N.Y. County Jan. 23, 2018); Mood v. City of New York, 53 Misc 3d 1205[A], 2016 NY Slip Op 51402[U] (Sup. Ct., Queens Co., Oct. 4, 2016).

One inspection conducted on October 12, 2017, pursuant to non-permit number MNP2017285A0, resulted in a notice of violation issued to non-City permittee, Verizon New York Inc. ("Verizon"), for opening a manhole cover without an authorization number during restricted hours.  (Exhibit I at 53.)  Notably, a photograph of the subject manhole attached to the inspection reveals that this notice of violation was issued for a different location and condition than that alleged by Quinn.  Id. at 53-55.  As such, this inspection and notice of violation fails to provide the City with prior written notice of a Con Ed utility box or pothole abutting a Con Ed utility box

**A68**

in the southern crosswalk of on 53rd Street and 6th Avenue, New York, New York. Another inspection conducted on June 21, 2018, pursuant to non-permit number MNP2018172A0, resulted in a notice of violation issued to Verizon, again, for opening a manhole cover without an authorization during restricted hours. (Exhibit I at 64.) A photograph of the subject manhole attached to the inspection reveals that this notice of violation was issued for a different location and condition than that alleged by Quinn; thus, it fails to provide the City with prior written notice. Id. at 64-67.

An inspection conducted on December 13, 2018, pursuant to non-permit number MNP2018365A0 issued to non-City permittee, Con Ed, resulted in a notice of violation issued to Con Ed for illegally working during a special events embargo. Id. at 75. Photographs of Con Ed's work, attached to the inspection, reveal that this notice of violation was issued for a different location and condition than that alleged by Quinn. Id. at 75-79. Therefore, this inspection and notice of violation fails to provide the City with prior written notice. One inspection conducted on January 10, 2018, pursuant to non-permit number MNP2018010A1 issued to the New York City Department of Environmental Protection ("DEP"), as a result of complaint SR #1-1-1511505189, resulted in a corrective action request issued to DEP for a "utility cover in the crosswalk of W. 52 Street loose and noisy." (Exhibit G at 220, 224.) Notably, a photograph of the subject manhole attached to the inspection reveals that this corrective action request was issued for a different location and condition than that alleged by Quinn. Id. at 220-223. As such, this inspection, complaint, and corrective action request fails to provide the City with prior written.

Two inspections conducted on August 17, 2018 and September 6, 2018, pursuant to non-permit number MNP2018229A0 issued to Con Ed, resulted in notices of violation issued to Con Ed for "failure to obtain a permit for electric conduit left in temporary asphalt in parking

**A69**

lane [in front of] 1301 6th Avenue" and "electric trench" grated without a permit.  (Exhibit G at 225.)  A complaint was further filed with DOT for "damaged patchwork" in front of 1301 6th Avenue.  (Exhibit I at 94.)  Again, the photographs attached to the inspections and complaint reveal that these documents were issued for a different location and condition than that alleged by Quinn and fail to provide the City with prior written notice.  (Exhibit I at 94. Exhibit G at 225-234.)

An inspection conducted on September 10, 2018, pursuant to non-permit MNP2018253A0 issued to Con Ed, resulted in a corrective action request issued to Con Ed for failing to restore panels on an electrical trench in front of 1301 6th Avenue.  (Exhibit G at 242.) The photographs attached to the inspection reveal that this corrective action request was issued for a different location and condition than that alleged by Quinn and fails to provide the City with prior written notice.  Id. at 242-248.

Next, an inspection conducted on August 21, 2017, pursuant to permit number M012017167A88 issued to non-City permittee Crown Castle NG East LLC ("Crown"), resulted in a corrective action request issued to Crown for failing to restore crosswalk markings in the crosswalk.  Id. at 251.  A review of the photographs attached to the inspection reveal that it is for a different location and condition than that alleged by Quinn.  Id. at 251-254.  Furthermore, two subsequent inspections of Crown's work on April 6, 2018 and August 17, 2018, resulted in a "pass," indicating that the crosswalk lane markings were acceptable.  Id. at 251.  As the records show, none of the inspections and conditions noted in the complaint, notice of violations, and corrective action requests relate to a an allegedly defective Con Ed utility box or a pothole abutting a Con Ed utility box in the southern crosswalk of West 53rd Street and 6th Avenue and thus cannot provide the City with prior written notice.

*Maintenance and Repair Orders/Records, Gangsheets for Roadway Defects, Handwritten Gangsheets for Roadway Defects, and Office of Construction Mitigation and Coordination File*

44.     The Maintenance and Repair records and corresponding Gangsheets and Office of Construction Mitigation and Coordination File likewise fail to provide the City with prior written notice of the specific defect in this case as "written repair orders" do not constitute prior written notice.  See Lopez v. Gonzalez, 845 N.Y.S.2d 91, 93 (2d Dep't 2007).  Furthermore, the Gangsheets and Maintenance and Repair records cannot constitute prior written notice because all of the potholes were closed by DOT gangs months before Quinn's accident.[6]  (Exhibits J and K.); see  Webster et al. v. City of New York, No. 19-cv-05638-KPF (S.D.N.Y. Sept. 1, 2021) (finding the gangsheet did not provide prior written notice of a pothole as the gangsheet showed that the condition was repaired and the City did not receive prior written notice of the subject defect following the repair) (Exhibit L.)  Additionally, the records do not reference the exact specific location where Quinn's accident occurred.  (Exhibit G at 270-279.  Exhibit I at 95-105, 110-115.)  Thus, these records cannot provide the City with prior written notice of a pothole abutting a Con Ed utility box in the southern crosswalk of West 53rd Street near its intersection with 6th Avenue.

*Big Apple Maps*

Finally, as part of its DOT roadway searches, the City searched for Big Apple Maps relating to the subject location and the "Key to Map Symbols," the legend provided to the City by

---

[6] Again, plaintiffs' notice of claim, by which they are bound, states that Quinn fell "due to a defective and hazardous gas utility box…located within the crosswalk of the Southside of 6th Avenue and its intersection with 53rd Street." (Exhibit A.)  See Gonzalez v. New York City Hous. Auth., 181 A.D.2d 440, 441 (1st Dep't 1992); see also Heckel v. City of New York, 60 A.D.3d 812, 813 (2d Dep't 2009) holding that "the plaintiff could not rely on evidence in support of a theory of liability not advanced in the notice of claim to raise a triable issue of fact…."  To the extent that Quinn now alleges he tripped due to a pothole abutting a Con Ed utility box, such a claim should be rejected as there is no valid Notice of Claim for such a condition.  (Exhibit A.)  Nevertheless, despite this location not being plead in the notice of claim, the evidence demonstrates that the City does not have prior written notice of any pothole at the subject location.  (Exhibits G, H, I, J, and K.)

the Big Apple Pothole & Sidewalk Protection Corporation.  (Exhibit G, H, and I.)  The maps were served on DOT by the Big Apple Pothole and Sidewalk Protection Corporation and received by DOT on either September 20, 2002 or October 23, 2003.  Id.  In the instant matter, the Big Apple Maps do not demonstrate prior written notice because there are no symbols within the pedestrian crosswalk on the Southside of 6th Avenue and 53rd Street in Manhattan, the alleged location of Quinn's accident.  (Exhibit G at 284-288.  Exhibit I at 106-108.)  Plaintiffs may not argue that marks elsewhere on the Big Apple Maps are sufficient to constitute notice of the defect that allegedly caused Quinn's accident.  The Court of Appeals has emphatically ruled that precise notice on the map is required to satisfy the prior written notice requirement. D'Onofrio v. City of New York, 11 N.Y.3d 581 (2008).  A nearby defect is insufficient to constitute prior written notice of another defect. Leary v. City of Rochester, 67 N.Y.2d 866 (1986).  The notice must be for the specific defect involved, and not merely a similar condition. Belmonte v. Metro Life Ins. Co., 304 A.D.2d 471 (1st Dep't 2003).  It is well settled that "the awareness of one defect in the area is insufficient to constitute notice of a different particular defect which caused the accident." Roldan v. City of New York, 36 A.D.3d 484 (1st Dep't 2007). "When a Big Apple Map is used to satisfy the prior written notice requirement, the type and location of the defect must be precisely noted on the map." Vega v. 103 Thayer St., LLC, 105 A.D.3d 405, 406 (1st Dep't 2013) (J.P. Andrias and J. Freedman dissenting) rev'd 23 N.Y.3d 1027 (2014) (the markings on the map were insufficient to establish prior written notice because they did not specifically refer to the hole that caused plaintiff's fall.)  Taken as a whole, none of the DOT records provide the City with prior written notice.

## POINT II

## THE CITY IS ENTITLED TO SUMMARY
## JUDGMENT BECAUSE THERE ARE NO APPLICABLE
## EXCEPTIONS TO THE PRIOR WRITTEN NOTICE
## REQUIREMENT

Once a municipality meets its burden and establishes prima facie entitlement to summary judgment owing to the absence of prior written notice, the burden then shifts to the non-movant to supply admissible evidence that proves an exception to the notice statute.

In its initial motion papers, the City does not have the burden of proving the exceptions to § 7-201, such as the "cause and create" exception.  The courts have found that a municipality meets its burden to warrant an order granting summary judgment when it has demonstrated the absence of prior written notice.  The burden then shifts to the party opposing the motion to demonstrate a triable issue of fact to defeat the motion for summary judgment, such as an exception to the prior written notice law.  See Yarborough v. City of New York, 10 N.Y.3d 726 (2008); Spanos v. Town of Clarkstown, 81 A.D.3d 711, 712-713 (2d Dep't 2011); Koehler v. Inc. Village of Lindenhurst, 42 A.D.3d 438, 438 (2d Dep't 2007); Jacobs v. Village of Rockville Centre, 41 A.D.3d 539 (2d Dep't 2007); Shannon v. Village of Rockville Centre, 39 A.D.3d 528 (2d Dep't 2007); Roman v. City of New York, 38 A.D.3d 442 (1st Dep't 2007); Pagillo v. City of Oneonta, 25 A.D.3d 1044 (3d Dep't 2006); Oswald v. City of Niagara Falls, 13 A.D.3d 1155 (4th Dep't 2004).  In New York, the only exceptions to the notice requirement are where (a) a municipality affirmatively caused of created a dangerous condition, or (b) "a 'special use' confers a special benefit upon the locality."  Amabile v. City of Buffalo, 93 N.Y.2d 471, 474 (1999).  See also Parente v. Metro. Transp. Auth., 2012 U.S. Dist. LEXIS 70145, *10 (S.D.N.Y. May 16, 2012) ("The prior written notice requirement will be obviated only if the plaintiff establishes that the municipality affirmatively created the defect by performing work that immediately resulted in the

**A73**

existence of a dangerous condition or that a special use resulted in a special benefit to the locality.")[7]

   For the affirmative negligence/"cause and create" exception to apply, a plaintiff must proffer admissible evidence that a municipality's actions affirmatively and immediately gave rise to a dangerous condition.  See Elstein v. City of New York, 209 A.D.2d 186 (1st Dep't 1994); De Rosso v. Town of Poughkeepsie, 51 A.D.3d 966 (2d Dep't 2008); Daniels v. City of New York, 29 A.D. 3d 514 (2d Dept. 2006); Yarborough v. City of New York, 28 A.D.3d 650 (2d Dept. 2006) aff'd, 10 N.Y.3d 726 (2008); Lopez v. G & J Rudolph. Inc., 20 A.D.3d 511 (2d Dept. 2005).  Where such an allegation is "without support in the record," the exception cannot be applied.  Gonzalez v. Town of Hempstead, 124 A.D.3d 719, 721 (2d Dep't 2015).  "[M]ere conclusions, expressions of hope or unsubstantiated allegations or assertions [of a municipality's affirmative negligence] are insufficient" to create an issue of fact and defeat summary judgment. Zuckerman v. City of New York, 49 N.Y.2d 557, 562 (1980).  See also Villaret v. City of New York, 236 A.D.2d 216, 216-217 (1st Dep't 1997) ("conclusory allegations do not create a triable issue with respect to any of the exceptions to the written notice requirement"); Cruz v. Otis Elevator Co., 238 A.D.2d 540 (2d Dep't 1997) ("conclusory statements [that defendant caused or created a condition] are not sufficient to defeat a motion for summary judgment").

   Crucially, "the affirmative negligence exception is limited to work by the City that *immediately* results in the existence of a dangerous condition." Oboler, 8 N.Y.3d at 889-890. See also Yarborough, 10 N.Y.3d at 728; Bielecki v. City of New York, 14 A.D.3d 301, 301 (1st Dep't 2005) ("affirmative act of negligence" must "immediately" result in a dangerous condition). What this means is that the exception cannot apply in instances "where the alleged defect is not

---

[7] The special use exception is not implicated here as the complaint contains no such allegations.  (Exhibit B.)

immediately apparent at the conclusion of the City's roadway work, but develops subsequently."
Torres v. City of New York, 39 A.D.3d 438, 438 (1st Dep't 2007).  Although there is no bright line rule delineating the period in which a dangerous condition must arise in order to satisfy the immediacy requirement, courts have routinely found that the passage of days, weeks or months bars application of the exception.  See Zinz v. Empire City Subway Co., Ltd., 2014 U.S. Dist. LEXIS 147247, *14 (S.D.N.Y. Oct. 14, 2014) (a period of two months found "too attenuated to … constitute 'immediate results' for purposes of the affirmative negligence exception to the notice rule."); Wilson v. Incorporated Vil. Of Hempstead, 120 A.D.3d 665, 666 (2d Dep't 2014) (period of one month deemed not sufficiently immediate); Wald v. City of New York, 115 A.D.3d 939, 941 (2d Dep't 2014) (period of 10 weeks deemed not sufficiently immediate); Babenzien v. Town of Fenton, 67 A.D.3d 1236, 1238-1239 (3d Dep't 2009) (municipal conduct one day before plaintiff's injury deemed not immediate).

Hand-in-hand with the requirement that a dangerous condition must arise immediately, the affirmative negligence exception is inapplicable where a roadway defect "developed over time."  Bielecki, 14 A.D.at 301.  See also Vega v. City of New York, 88 A.D.3d 497, 498 (1st Dep't 2011); Hanley v. City of New York, 139 A.D.3d 800, 802 (2d Dep't 2016). In Diaz v. City of New York, 56 A.D.3d 599, 601 (2d Dep't 2008), for instance, a pothole that developed over the course of a couple of months "after use by vehicles" was not covered by the exception.  Without this limiting principle, the First Department has found, "the exception would swallow up the requirement itself, thereby defeating the purpose of the [prior written notice statute]."  Bielecki, 14 A.D.at 301.  Even where a municipality has performed negligent repairs – improperly fixing a pothole, for example – the affirmative negligence exception does not apply if the defect arose over time.  Yarborough, 10 A.D.3d at 727 (evidence of negligent repair that

eventually resulted in pothole not within the affirmative negligence exception); Zinz, 2014 U.S. Dist. LEXIS 147247, *14; Diaz, 56 A.D.3d at 601.

Additionally, municipal remediation of a roadway defect that does not make "the defective condition more dangerous than it was before any efforts were made to repair it" may not serve as a basis for liability.  Wilson, 120 A.D.3d at 666.  See also Arzeno v. City of New York, 128 A.D.3d 527, 528 (1st Dep't 2015) ("an ineffectual pothole repair job which does not make the condition any worse [does not] amount to an affirmative act of negligence").  As the appellate division has held, "an attempted repair which does not exacerbate the defective condition cannot constitute an affirmative act of negligence such that defendant is precluded from relying on its prior notice law."  Kushner v. City of Albany, 27 A.D.3d 851, 852 (3d Dep't 2006).

Here, despite the City not having the burden to proof on the issue of affirmative negligence, the evidence demonstrates that the City did not cause or create the alleged condition in the roadway at the subject location.  Notably, none of the permits revealed in the DOT intersection search were issued to the City or one of its contractors.  (Exhibit I at 5-52.)  In reviewing the DOT segment search, of the twenty-five permits revealed, only permit was issued to a City contractor.  (Exhibit G at 4-219.)  Specifically, permit M01-2017132-A20 was issued to City contractor E-J Electric Installation Company ("EJ Electric"), pursuant to contract 14MNTR811 with the DOT for the purpose of repairing a traffic signal on 6th Avenue, ten feet north of West 52nd Street.  (Exhibit G at 4.)  The remaining permits revealed in the DOT search results were not issued to the City or its contractors.  (Exhibit G at 4-219.)  Thus, the City could not be said to have caused or created the defect in question based on these permits.  As there is no evidence that the condition that allegedly caused Quinn to fall resulted from any repair or work

performed by or on behalf of the City, the City cannot be held liable for Quinn's accident and its motion should be granted.

### POINT III

### PLAINTIFF LORI ANN QUINN'S DERIVATIVE CLAIMS MUST BE DISMISSED

Because all causes of action herein must be dismissed as a matter of law, plaintiff Lori Ann Quinn's derivative claims must also be dismissed.  See Hazel v. Montefiore Med. Ctr., 243 A.D.2d 344, 344 (1st Dep't 1997) ("The cause of action for loss of consortium was also properly dismissed, since it is derivative of the other claims.").

### CONCLUSION

For all of the foregoing reasons, the City respectfully requests that the Court grant its motion for summary judgment and dismiss the complaint in its entirety with prejudice.

Dated: New York, New York
      January 25, 2024

> HON. SYLVIA O. HINDS-RADIX
> Corporation Counsel
> *Attorney for Defendants/Third-Party Plaintiffs The City of New York and The City of New York S/H/A The New York City Department of Transportation*
> 100 Church Street
> New York, New York 10007

_____

> By:   Alexandra Hastings
>       Assistant Corporation Counsel
>       The City of New York Law Department
>       100 Church Street
>       New York, New York 10007-2601
>       Tel:  (212) 356-7179
>       ahasting@law.nyc.gov

**A77**

TO (by ECF):

NAPOLI SHKOLNIK
*Attorneys for Plaintiffs*
*FRANCIS PAUL QUINN JR. and LORI ANN QUINN*
360 Lexington Avenue, 11th Floor
New York, New York 10017
Tel.#: (212) 397-1000
Fax#: (646) 843-7603

HEIDELL, PITTONI, MURPHY & BACH, LLP
*Attorneys for Third-Party Defendant*
*CONSOLIDATED EDISON, INC.*
99 Park Avenue
New York New York 10016
Tel.#: (212) 286-8585
Fax#: (212) 490-8966

**A78**

Docket No: 20 CV 2666 (JGK)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

FRANCIS PAUL QUINN JR. and LORI ANN QUINN,

Plaintiffs,

- against -

THE CITY OF NEW YORK and THE NEW YORK CITY
DEPARTMENT OF TRANSPORTATION,

Defendant.

THE CITY OF NEW YORK and THE NEW YORK CITY
DEPARTMENT OF TRANSPORTATION,

Third-Party Plaintiffs,

- against -

CONSOLIDATED EDISON, INC.,

Third-Party Defendant.

### MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS/THIRD-PARTY PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

HON. SYLVIA O. HINDS-RADIX
Corporation Counsel
Attorney for Defendants/Third-Party Plaintiffs The City of New York and
The City of New York S/H/A The New York City Department of
Transportation
By: ALEXANDRA HASTINGS
100 Church Street
New York, New York 10007
Tel. #: (212) 356-7179

Please refer to the following file number: **2020-017559**
and indicate the County in which the action is pending in all papers,
correspondence and other communications with respect thereto.

A79

**Defendants' Exhibit H, Affidavit of Henry Williams, dated Aug. 24, 2023 (Dkt. 84-16)**

# EXHIBIT H

A81

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x

FRANCIS PAUL QUINN JR. and LORI ANN QUINN,          **AFFIDAVIT**

                                 Plaintiffs,          Docket No:  20 CV 2666 (JGK)
                                           File No:    2020-017559
            -against-

THE CITY OF NEW YORK and THE NEW YORK CITY
DEPARTMENT OF TRANSPORTATION,

                                 Defendants.

------------------------------------------------------------------------x

THE CITY OF NEW YORK and THE NEW YORK CITY
DEPARTMENT OF TRANSPORTATION,

                       Third-Party Plaintiffs,

            -against-

CONSOLIDATED EDISON, INC.,

                               Defendant.

------------------------------------------------------------------------x

STATE OF NEW YORK     )
                        ) SS:
COUNTY OF NEW YORK  )

**HENRY WILLIAMS,** being duly sworn, deposes and says:

        1.    I am a paralegal conducting record searches for the Department of
Transportation for the City of New York ("DOT"). I am assigned to search for records maintained
by DOT. My duties include searching for records that may include permits, applications for
permits, Office of Construction Mitigation and Coordination (OCMC) files, corrective action
requests (CARs), notices of violation (NOVs), notifications for immediate corrective action

**A82**

(NICAs), inspections, contracts, maintenance and repair orders, complaints, sidewalk violations, resurfacing/milling records, and Big Apple Maps.

2.      DOT records are preserved and maintained in accordance with the guidelines for records retention and disposition as outlined in the New York City Charter and administered by the New York City Department of Records and Information Services. DOT maintains both electronic and hardcopy records in the ordinary course of business. The retention of records is governed by DOT's document retention policy. The records described below are maintained for a minimum of 13 years. DOT also maintains file rooms for active paper records in various locations throughout the City of New York and participates in the program for transferring inactive records to a private off-site records management facility. Records are generally destroyed when they have no legal, fiscal, administrative, or historical reason for their continued retention.

3.      At the request of the New York City Law Department, I personally conducted a search in the pertinent electronic databases and identified and requested a search for corresponding paper records of permits, applications for permits, OCMC files, CARs, NOVs, NICAs, inspections, contracts, maintenance and repair orders, complaints, gangsheets for roadway work, milling and resurfacing records, and Big Apple Maps for the roadway located at 6th Avenue between West 52nd Street and West 53rd Street in the County, City, and State of New York. This search encompassed a period of two years prior to and including July 3, 2019, the date upon which the plaintiffs claim to have been injured. This represents a search of the usual and customary locations where records are maintained by DOT in the ordinary course of business. The search revealed the following records: permits located: 25; hardcopy permits located: 25; applications located: 25; OCMC files located: 1; CARs located: 3; NOVs located: 2; NICAs located: 0; inspections located: 14; contract information and/or in-house resurfacing records located: 0; maintenance and repair orders/records located: 1; complaints located: 1; gangsheets for roadway

- 2 -

**A83**

defects located: 1; handwritten gangsheets for roadway defects located: 1; gangsheets for milling and resurfacing records located: 0; handwritten gangsheets for milling and resurfacing records located: 0; and Office of Special Events reports located: 0.

    4.    Also at the request of the New York City Law Department, I personally conducted a search in the pertinent electronic databases and identified and requested a search for corresponding paper records of permits, applications for permits, OCMC files, CARs, NOVs, NICAs, inspections, contracts, maintenance and repair orders, complaints, gangsheets for roadway work, milling and resurfacing records, and Big Apple Maps for the roadway located at the intersection of 6th Avenue and West 53rd Street, for New York County, City and State of New York. This search encompassed a period of two years prior to and including July 3, 2019, the date upon which the plaintiffs claim to have been injured. This represents a search of the usual and customary locations where records are maintained by DOT in the ordinary course of business. The search revealed the following records: permits located: 8; hardcopy permits located: 8; applications located: 8; OCMC files located: 0; CARs located: 0; NOVs located: 3; NICAs located: 0; inspections located: 12; contract information and/or in-house resurfacing records located: 0; maintenance and repair orders/records located: 2; complaints located: 1; gangsheets for roadway defects located: 2; handwritten gangsheets for roadway defects located: 2; gangsheets for milling and resurfacing records located: 0; handwritten gangsheets for milling and resurfacing records located: 0; and Office of Special Events reports located: 0.

**A84**

5.    I searched for Big Apple Maps for an area that included the above referenced location. Four maps were found and are labeled Volume 4, Page 46; Volume 5n, Page 60;, and Volume 6e, Pages 31 and 33. The map labeled Volume 5n, Page 60 was served upon DOT by the Big Apple Pothole and Sidewalk Protection Corporation on September 20, 2002. The maps labeled Volume 4, Page 46 and Volume 6e, Pages 31 and 33 were served on DOT by the Big Apple Pothole and Sidewalk Protection Corporation on October 23, 2003. These are the most recent maps served on DOT, which was at least 15 days prior to the date of the incident.

_____

HENRY WILLIAMS

Sworn to before me this

24th ____ day of August 2023

_____

NOTARY PUBLIC/COMMISSIONER OF DEEDS

**CHRISTINE R. MERTZ**
**Notary Public, State of New York**
**No. 02ME6023984**
**Qualified in Suffolk County**
**Commission Expires May 3, 20 27**

- 4 -

**A85**

**Defendants' Exhibit J, Affidavit of Yelena Pasynkova, dated Aug. 25, 2023 (Dkt. 84-19)**

# EXHIBIT J

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x

FRANCIS PAUL QUINN JR. and LORI ANN QUINN,

                                              Plaintiffs,

                     -against-

THE CITY OF NEW YORK and THE NEW YORK CITY
DEPARTMENT OF TRANSPORTATION,

                                  Defendants.

------------------------------------------------------------------------x

THE CITY OF NEW YORK and THE NEW YORK CITY
DEPARTMENT OF TRANSPORTATION,

                          Third-Party Plaintiffs,

                     -against-

CONSOLIDATED EDISON, INC.,

                                Defendant.

------------------------------------------------------------------------x

**AFFIDAVIT**

Docket No: 20 CV 2666 (JGK)
File No: 2020-017559

STATE OF NEW YORK    )
                         ) SS:
COUNTY OF NEW YORK  )

**YELENA PASYNKOVA,** being duly sworn, deposes and says:

      1.     I am currently employed by the New York City Department of Transportation (hereinafter "DOT"). I work in the Manhattan Street Maintenance Division of Roadway Repair and Maintenance ("RRM") as Principal Administrative Associate. I have been employed by DOT since 2014. In my position, I am familiar with the policies, procedures, and protocols of DOT,

1

**A88**

particularly those relating to standard operating procedures related to roadway repair and maintenance.

2.     The following is based upon my review of the maintenance and repair records (also known as a "FITS" report) for defect numbers: DM2017235027 and DM2019019002. I am familiar with these FITS reports through the ordinary course of my work. With respect to these defect numbers, I also reviewed computerized and handwritten crew sheets associated with the alleged defects complained of in the FITS reports.

3.     Upon arrival at a specific location in the complaint, the supervisor inspects the entire street block of the roadway, including the crosswalk on both ends of the block. This is done to locate all defective conditions on the street block. Upon completion of such a search, the crew repairs all defective conditions found by the supervisor on the entire segment. This process of inspecting and repairing all found defective conditions on the segment and the intersection ensures that the specific complained of defect is repaired.

4.     As a result of repair order DM2017235027, that was generated on August 22, 2017, for the location of 6th Avenue between West 52nd Street and West 53rd Street in the County, City, and State of New York, a pothole crew, supervised by Highway Repairer Blacknall, responded to the location. This FITS report indicates that the source of this repair order was "yard" indicating that it was a defect picked up by a DOT crew. This complaint was referred to DOT maintenance on August 22, 2017, and is noted on the computerized and handwritten crew sheets. Copies of repair order DM2017235027, the computerized crew sheets, and the handwritten crew sheets are annexed as **Exhibit A**.

5.     Repair order DM2017235027 was closed on August 23, 2017. According to the FITS report, the Action-ID is listed as "close defect," the Repair Status as "XCL," and the Defect

Stats as "CLS- closed work order." In addition, the Action ID column on the computerized and handwritten crew sheets shows the code "XCL" for repair order DM2017235027. This information indicates that the condition described in repair order DM2017235027 was found and repaired.

6.     As a result of repair order DM2019019002, that was generated on January 17, 2019, for the location of the intersection of 6th Avenue and West 53rd Street in the County, City, and State of New York, a pothole crew, supervised by Highway Repairer Bell, responded to the location. This FITS report indicates that the source of this repair order was "yard" indicating that it was a defect picked up by a DOT crew. This complaint was referred to DOT maintenance on January 17, 2019, and is noted on the computerized and handwritten crew sheets. Copies of repair order DM2019019002, the computerized crew sheets, and the handwritten crew sheets are annexed as **Exhibit B**.

7.     Repair order DM2019019002 was closed on January 18, 2019. According to the FITS report, the Action-ID is listed as "close defect," the Repair Status as "XCL," and the Defect Stats as "CLS- closed work order." In addition, the Action ID column on the computerized and handwritten crew sheets shows the code "XCL" for repair order DM2019019002. This information indicates that the condition described in repair order DM2019019002 was found and repaired.

_____
**YELENA PASYNKOVA**

Sworn to before me this
25th day of August 2023

JOANNE COLLINS
Commissioner of Deeds
City of New York  No: 2-12551
Certificate Filed in Kings County
Commission Expires: 7-1-24

_____
NOTARY PUBLIC/COMMISSIONER OF DEEDS

3

**A90**

# EXHIBIT A

```
BOROUGH OF MANHATTAN                 MOSAICS                      09/25/2020
MOSM322B              DEFECT DETAILS FOR DEFECT NO.: DM2017235027


DEFECT TYPE   : POT - POTHOLE                    MAINT SECTOR : 10
DEFECT STATUS : CLS - CLOSED WORK ORDER          REPAIR STATUS: XCL
LOCATION : BOROUGH CODE : M                    COMMUNITY DISTRICT: 5
         HOUSE NUMBER : 1301         ON :   6 AVENUE
FROM : WEST   52 STREET              TO : WEST   53 STREET
SPECIFIC LOCATION    :
PRIORITY :   DEFECT URL: _
REPORTED DATE  : 08/22/2017          REPORTED TIME : 15:31
CALLER:   NAME:
ADDRESS: STREET:
CITY:                                STATE :        ZIP:
E-MAIL:
SOURCE        : YRD - YARD
HANSEN TICKET NUM :        DEFECT COMPLAINT DETAILS : _
LENGTH :    WIDTH :
  ----CORNER----   -------DISTANCE--------   LANE
  F/T:   L/R:   STREET:    CURB:
                                   ORIGINAL DEFECT NUM:
Enter-PF1---PF2---PF3---PF4---PF5---PF6---PF7---PF8---PF9---PF10--PF11--PF12---
         QUIT  MAIN              HST              ESC
```

**A92**

```
MOSM0346            HISTORY OF DEFECT NO  : DM2017235027        09/25/2020
BOROUGH OF MANHATTAN          DEFECT TYPE: POT

                                                               INIT
DATE       TIME  GENERATED FROM       ACTION-ID              CAR.NO   BY
---------- ----  -----------------    --------------------   ------------ ---
08/22/2017 20:00 SYSTEM               REFERRED TO MAINTENANCE          YRD


08/23/2017 12:40 FITS                 CLOSE DEFECT
BLACKNALL/POT/08-23-2017/SHIFT:D/GR
```

**A93**

NEW YORK CITY DEPARTMENT OF TRANSPORTATION
STREET MAINTENANCE DIVISION

BOROUGH OF MANHATTAN
YARD:  DUGOUT

HIGHWAYS MAINTENANCE CREW WORK ORDER ASSIGNMENT

CREW SUPERVISER: BLACKNALL          CREW TYPE: POT          DATE: 08-23-2017          SHIFT: D          GROUP NO.: 1

| WORK ORDER | HOUSE # | ON/FROM/TO STREETS | DEF. TYPE | DEF. STAT | LAN | FEET | CR | FEET | CB | ARR. TIME | DEP. TIME | NEW DEF | ACT ID | PHOLE A B C | OTH REP | SQ. YARDS | CUBIC YARDS | SQ. FEET | LINEAR FEET |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| DM2017235012 | | 6 AVENUE | POT | XCL | 0 | | 0 | | | 0810 | 0830 | ___ | XCL | 06 __ __ | | | | | |
| _____ | | WEST   42 STREET | | | | | | | | | | | | | | | | | |
| | | SPEC LOC: _____ | | | | | | | | | | | | A:   ,B:   ,C: | | | | | |
| | | COMMENT : _____ | | | | | | | | | | | | | | | | | |
| DM2017235013 | | 6 AVENUE | POT | XCL | 0 | | 0 | | | 0835 | 0850 | ___ | XCL | 05 01 | | | | | |
| _____ | | WEST   43 STREET | | | | | | | | | | | | | | | | | |
| | | SPEC LOC: _____ | | | | | | | | | | | | A:   ,B:   ,C: | | | | | |
| | | COMMENT : _____ | | | | | | | | | | | | | | | | | |
| DM2017235014 | 1120 | 6 AVENUE | POT | XCL | 0 | | 0 | | | 0900 | 0915 | ___ | XCL | 02 03 | | | | | |
| _____ | | WEST   43 STREET | | | | | | | | | | | | | | | | | |
| | | WEST   44 STREET | SPEC LOC: _____ | | | | | | | | | | | A:   ,B:   ,C: | | | | | |
| | | COMMENT : _____ | | | | | | | | | | | | | | | | | |
| DM2017235015 | 1155 | 6 AVENUE | POT | XCL | 0 | | 0 | | | 0920 | 0930 | ___ | XCL | 02 01 | | | | | |
| _____ | | WEST   44 STREET | | | | | | | | | | | | | | | | | |
| | | WEST   45 STREET | SPEC LOC: _____ | | | | | | | | | | | A:   ,B:   ,C: | | | | | |
| | | COMMENT : _____ | | | | | | | | | | | | | | | | | |
| DM2017235016 | 1166 | 6 AVENUE | POT | XCL | 0 | | 0 | | | 0940 | 1000 | ___ | XCL | 07 04 | | | | | |
| _____ | | WEST   45 STREET | | | | | | | | | | | | | | | | | |
| | | WEST   46 STREET | SPEC LOC: _____ | | | | | | | | | | | A:   ,B:   ,C: | | | | | |
| | | COMMENT : _____ | | | | | | | | | | | | | | | | | |
| DM2017235017 | 1177 | 6 AVENUE | POT | XCL | 0 | | 0 | | | 1005 | 1015 | ___ | XCL | 03 __ | | | | | |
| _____ | | WEST   45 STREET | | | | | | | | | | | | | | | | | |
| | | WEST   46 STREET | SPEC LOC: _____ | | | | | | | | | | | A:   ,B:   ,C: | | | | | |
| | | COMMENT : _____ | | | | | | | | | | | | | | | | | |

**A94**

Case: 24-2682, 01/13/2025, DktEntry: 24.1, Page 98 of 277
Case 1:20-cv-02666-NRB   Document 84-19   Filed 01/25/24   Page 9 of 22

STREET MAINTENANCE DIVISION                          BOROUGH: MANHATTAN
                                                     YARD : DUGOUT

HIGHWAYS MAINTENANCE CREW WORK ORDER ASSIGNMENT

CREW SUPERVISER: BLACKNALL        CREW TYPE: POT      DATE: 08-23-2017      SHIFT: D        GROUP NO.: 1

| WORK ORDER | HOUSE # | ON/FROM/TO STREETS | DEF. TYPE | DEF. STAT | LAN | FEET | CR | FEET | CB | P | ARR. TIME | DEP. TIME | NEW DEF | ACT ID | PHOLE A | B | C | OTH REP | SQ. YARDS | CUBIC YARDS | SQ. FEET | LINEAR FEET |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| DM2017235018 | 1180 | 6 AVENUE | POT | XCL | 0 | | 0 | | | | 1020 | 1035 | | XCL | 02 | 04 | | | | | | |
| | | WEST 46 STREET | | | | | | | | | | | | | | | | | | | | |
| | | WEST 47 STREET | SPEC LOC: _____ | | | | | | | | | | | | | | | | | | | |
| | | | COMMENT : _____ | | | | | | | | | | | | | | | | | | | |
| DM2017235019 | 1200 | 6 AVENUE | POT | XCL | 0 | | 0 | | | | 1040 | 1055 | | XCL | 06 | | | | | | | |
| | | WEST 47 STREET | | | | | | | | | | | | | | | | | | | | |
| | | WEST 48 STREET | SPEC LOC: _____ | | | | | | | | | | | | | | | | | | | |
| | | | COMMENT : _____ | | | | | | | | | | | | | | | | | | | |
| DM2017235020 | 1221 | 6 AVENUE | POT | XCL | 0 | | 0 | | | | 1100 | 1110 | | XCL | 03 | | | | | | | |
| | | 6 AVENUE | | | | | | | | | | | | | | | | | | | | |
| | | 7 AVENUE | SPEC LOC: _____ | | | | | | | | | | | | | | | | | | | |
| | | | COMMENT : _____ | | | | | | | | | | | | | | | | | | | |
| DM2017235021 | | 6 AVENUE | POT | XCL | 0 | | 0 | | | | 1115 | 1125 | | XCL | 02 | | | | | | | |
| | | WEST 49 STREET | | | | | | | | | | | | | | | | | | | | |
| | | | SPEC LOC: _____ | | | | | | | | | | | | | | | | | | | |
| | | | COMMENT : _____ | | | | | | | | | | | | | | | | | | | |
| DM2017235022 | 1251 | 6 AVENUE | POT | XCL | 0 | | 0 | | | | 1130 | 1145 | | XCL | 03 | 03 | | | | | | |
| | | WEST 49 STREET | | | | | | | | | | | | | | | | | | | | |
| | | WEST 50 STREET | SPEC LOC: _____ | | | | | | | | | | | | | | | | | | | |
| | | | COMMENT : _____ | | | | | | | | | | | | | | | | | | | |
| DM2017235023 | 1250 | 6 AVENUE | POT | XCL | 0 | | 0 | | | | 1150 | 1200 | | XCL | 01 | 01 | | | | | | |
| | | WEST 49 STREET | | | | | | | | | | | | | | | | | | | | |
| | | WEST 50 STREET | SPEC LOC: _____ | | | | | | | | | | | | | | | | | | | |
| | | | COMMENT : _____ | | | | | | | | | | | | | | | | | | | |

A: ,B: ,C:

A95

Case: 24-2682, 01/13/2025, DktEntry: 24.1, Page 99 of 277
Case 1:20-cv-02666-NRB   Document 84-19   Filed 01/25/24   Page 10 of 22

BOROUGH OF MANHATTAN
STREET MAINTENANCE DIVISION                                    YARD: DUGOUT

HIGHWAYS MAINTENANCE CREW WORK ORDER ASSIGNMENT

CREW SUPERVISER: BLACKNALL        CREW TYPE: POT        DATE: 08-23-2017        SHIFT: D        GROUP NO.: 1

| WORK ORDER | HOUSE # | ON/FROM/TO STREETS | DEF. TYPE | DEF. STAT | LAN | FEET | CR | FEET | CB | P | ARR. TIME | DEP. TIME | NEW DEF | ACT ID | PHOLE A | B | C | OTH REP | SQ. YARDS | CUBIC YARDS | SQ. FEET | LINEAR FEET |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| DM2017235024 | 1260 | 6 AVENUE | POT | XCL | | 0 | | 0 | | | 1205 | 1215 | | XCL | 02 | | | | | | | |
| | | WEST 50 STREET | | | | | | | | | | | | | | | | | | | | |
| | | WEST 51 STREET | | | | | | | | | | | | | | | | | | | | |
| DM2017235025 | 1270 | 6 AVENUE | POT | XCL | | 0 | | 0 | | | 1220 | 1225 | | XCL | | 01 | | | | | | |
| | | WEST 50 STREET | | | | | | | | | | | | | | | | | | | | |
| | | WEST 51 STREET | | | | | | | | | | | | | | | | | | | | |
| DM2017235026 | 1290 | 6 AVENUE | POT | XCL | | 0 | | 0 | | | 1230 | 1235 | | XCL | | 01 | | | | | | |
| | | WEST 51 STREET | | | | | | | | | | | | | | | | | | | | |
| | | WEST 52 STREET | | | | | | | | | | | | | | | | | | | | |
| DM2017235027 | 1301 | 6 AVENUE | POT | XCL | | 0 | | 0 | | | 1240 | 1245 | | XCL | 01 | | | | | | | |
| | | WEST 52 STREET | | | | | | | | | | | | | | | | | | | | |
| | | WEST 53 STREET | | | | | | | | | | | | | | | | | | | | |
| DM2017235028 | 1325 | 6 AVENUE | POT | XCL | | 0 | | 0 | | | 1250 | 1300 | | XCL | 03 | | | | | | | |
| | | WEST 53 STREET | | | | | | | | | | | | | | | | | | | | |
| | | WEST 54 STREET | | | | | | | | | | | | | | | | | | | | |
| DM2017235029 | 1370 | 6 AVENUE | POT | XCL | | 0 | | 0 | | | 1305 | 1320 | | XCL | 04 | 01 | | | | | | |
| | | 5 AVENUE | | | | | | | | | | | | | | | | | | | | |
| | | 6 AVENUE | | | | | | | | | | | | | | | | | | | | |

SPEC LOC: _____    A:   ,B:   ,C:
COMMENT : _____

SPEC LOC: _____    A:   ,B:   ,C:
COMMENT : _____

SPEC LOC: _____    A:   ,B:   ,C:
COMMENT : _____

SPEC LOC: _____    A:   ,B:   ,C:
COMMENT : _____

SPEC LOC: _____    A:   ,B:   ,C:
COMMENT : _____

SPEC LOC: _____    A:   ,B:   ,C:
COMMENT : _____

A96

Case: 24-2682, 01/13/2025, DktEntry: 24.1, Page 100 of 277
Case 1:20-cv-02666-NRB   Document 84-19   Filed 01/25/24   Page 11 of 22

STREET MAINTENANCE DIVISION                    YARD:  DUGOUT

HIGHWAYS MAINTENANCE CREW WORK ORDER ASSIGNMENT

CREW SUPERVISER: BLACKNALL          CREW TYPE: POT      DATE: 08-23-2017      SHIFT: D        GROUP NO.: 1

| WORK ORDER | HOUSE # | ON/FROM/TO STREETS | DEF. TYPE | DEF. STAT | LAN | FEET | CR | FEET | CB | P | ARR. TIME | DEP. TIME | NEW DEF | ACT ID | PHOLE A | B | C | OTH REP | SQ. YARDS | CUBIC YARDS | SQ. FEET | LINEAR FEET |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| DM2017235030 | | WEST   46 STREET | POT | XCL | | 0 | | 0 | | | 1340 | 1350 | ___ | XCL | __ | 01 | __ | __ | ___ | _____ | _____ | _____ |
| _____ | | 5 AVENUE | | | | | | | | | | | | | | | | | | | | |
| | | 6 AVENUE | | SPEC LOC: _____ A: ,B: ,C: | | | | | | | | | | | | | | | | | | |
| | | | | COMMENT : _____ | | | | | | | | | | | | | | | | | | |

FITMC 04/28/94

A97

Case: 24-2682, 01/13/2025, DktEntry: 24.1, Page 101 of 277
Case 1:20-cv-02665-NRB  Document 84-19  Filed 01/25/24  Page 12 of 22

BOROUGH OF MANHATTAN
BUREAU OF HIGHWAYS - STREET MAINENANCE DIVISION                          YARD: DUGOUT

MAINTENANCE PRODUCTION CREW SHEET

CREW SUPERVISOR:  BLACKNALL        CREW TYPE:  POT       DATE:  08-23-2017     SHIFT:  D      GROUP NO.:  1

S.A.NO.  M20172350    START TIME:  08100    END TIME:  08300    LOCATION:
S.A.NO.  M20172350    START TIME:  08350    END TIME:  08500    LOCATION:
S.A.NO.  M20172350    START TIME:  09000    END TIME:  09150    LOCATION:

==================================================================================================

| SIGNATURE | MEMBER NAME | | TITLE | START DATE | START TIME | END DATE | END TIME | ASSIGN | TOOK OVER LUN | TIME | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| _____ | BLACKNALL | T | SHR | 08232017 | 0530 | 08232017 | 1430 | SUP | N | _____ | S.A.NO.:  M20172350 |
| _____ | ROSS | J | HR | 08232017 | 0600 | 08232017 | 1430 | ROL | N | _____ | |
| _____ | MERCADO | A | HR | 08232017 | 0600 | 08232017 | 1430 | SHV | N | _____ | REMARKS: |
| _____ | JONES | C | ACHR | 08232017 | 0600 | 08232017 | 1430 | SPC | N | _____ | |
| _____ | BUGLIONE | F | ACHR | 08232017 | 0600 | 08232017 | 1430 | RKR | N | _____ | |
| _____ | _____ | _ | ____ | 08232017 | _____ | 08232017 | _____ | ___ | Y | _____ | S.A.NO.:  M20172350 |
| _____ | _____ | _ | ____ | 08232017 | _____ | 08232017 | _____ | ___ | Y | _____ | |
| _____ | _____ | _ | ____ | 08232017 | _____ | 08232017 | _____ | ___ | Y | _____ | REMARKS: |
| _____ | _____ | _ | ____ | 08232017 | _____ | 08232017 | _____ | ___ | Y | _____ | |
| _____ | _____ | _ | ____ | 08232017 | _____ | 08232017 | _____ | ___ | Y | _____ | |
| _____ | _____ | _ | ____ | 08232017 | _____ | 08232017 | _____ | ___ | Y | _____ | |
| _____ | _____ | _ | ____ | 08232017 | _____ | 08232017 | _____ | ___ | Y | _____ | |
| _____ | _____ | _ | ____ | 08232017 | _____ | 08232017 | _____ | ___ | Y | _____ | S.A.NO.:  M20172350 |
| _____ | _____ | _ | ____ | 08232017 | _____ | 08232017 | _____ | ___ | Y | _____ | |
| _____ | _____ | _ | ____ | 08232017 | _____ | 08232017 | _____ | ___ | Y | _____ | REMARKS: |
| _____ | _____ | _ | ____ | 08232017 | _____ | 08232017 | _____ | ___ | Y | _____ | |
| _____ | _____ | _ | ____ | 08232017 | _____ | 08232017 | _____ | ___ | Y | _____ | |
| _____ | _____ | _ | ____ | 08232017 | _____ | 08232017 | _____ | ___ | Y | _____ | |
| _____ | _____ | _ | ____ | 08232017 | _____ | 08232017 | _____ | ___ | Y | _____ | |

==================================================================================================

I CERTIFY THAT THE EMPLOYEE' TIME RECORDED ABOVE IS CORRECT AND THAT THE WORK WAS PERFORMED EXCLUSIVELY FOR THE CITY OF NEW YORK.
CREW SUPERVISOR'S SIGNATURE: _____    DISTRICT SUPERVISOR'S SIGNATURE: _____    FITCRW

**A98**

Case 1:20-cv-02666-NRB   Document 84-19   Filed 01/25/24   Page 13 of 22

**A99**

## MANHATTAN STREET MAINTENANCE POTHOLE SHEET

CREW SUPERVISOR  T Blacknall

CREW TYPE  POTHOLE

DATE  8/23/2017

| MEMBERS NAME | SIGNATURE | TITLE | START DATE | START TIME | END DATE | END TIME | LUNCH | TASK | O/T |
|---|---|---|---|---|---|---|---|---|---|
| T.Blacknall | | SHR | 8/23/2017 | 5:30 | 8/23/2017 | 14:30 | N | SUP | 1/2 |
| M.Mercado | | HR | 8/23/2017 | 6:00 | 8/23/2017 | 14:30 | N | SHV | 1/2 |
| F.Buglione | | AHR | 8/23/2017 | 6:00 | 8/23/2017 | 14:30 | N | RAK | 1/2 |
| C.Jones | | AHR | 8/23/2017 | 6:00 | 8/23/2017 | 14:30 | N | ROLL | 1/2 |
| J.Ross | | AHR | 8/23/2017 | 6:00 | 8/23/2017 | 14:30 | N | SWP | 1/2 |
| | | | | | | | | | |
| | | | | | | | | | |

### VEHICLE CHECK

| VEHICLE CHECK | PRE CHECK | DEFECT |
|---|---|---|
| CAB/ODOMETER | ✓ | |
| EXTERIOR/ VISUAL | ✓ | |
| TIRES | ✓ | |
| STEERING | ✓ | |
| BRAKE SYSTEM | ✓ | |
| ELECT. SYSTEM | ✓ | |
| FUEL / GALLONS | Full | |

### A/C  USED

| | GALLONS |
|---|---|
| | |
| TOTAL AC USED | 15941 |

### EQUIPMENT USED

| EQUIPMENT USED | ID NUMBER | DOWN TIME |
|---|---|---|
| D- TRUCK | 66D | |
| HOTBOX | 66HT | N/A |
| COMPRESSOR | | N/A |
| BACK-UP TRUCK | 755 B | |

### CREW MATERIAL

| PLANT | TONNAGE |
|---|---|
| HAMILTON PLANT | 3.06 |
| HARPER ST. YARD | |
| TOTAL TONNAGE | 3.06 |

**BEGINNING OF DAY**

YARD /  PIER 36

COFFEE LOCATION /  E. 16 st 1 Ave   DEPARTURE TIME  6:50   MILEAGE  55269

ARRIVAL TIME /  7:30   DEPARTURE TIME  7:40   MILEAGE  55273

LUNCH LOCATION /  N/C   DEPARTURE TIME  /   MILEAGE  /

ARRIVAL TIME /  N/C

**END OF DAY**

YARD  PIER 36

ARRIVAL TIME  14:15

SUPERVISOR SIGNATURE

AREA LEVEL SIGNATURE  M. Keung

...rrect and that the work was performed exclusively for the City of New York

**A100**

## MANHATTAN STREET MAINTENANCE

SUPERVISOR NAME: T. Blackall

DATE: 8/23/17

Pg 1 of 2

See pg 2 for notes

| NOTES | DEFECT NUMBERS | LOCATION | DEFECT TYPE | ARRIVAL TIME | DEPARTURE TIME | ACTION ID | POTHOLES A | B | C | SQUARE YARDS |
|---|---|---|---|---|---|---|---|---|---|---|
| 2017 Brazilian Hispanic Cultural Street Festival | | 6 Ave W. 42 ST (Inter) | POT | 8:10 | 8:30 | XCL | 6 | | | |
| | | 6 Ave W. 43 (Inter) | POT | 8:35 | 8:50 | XCL | 5 | 1 | | |
| | | 1120 6 Ave W. 43rd-44 ST | POT | 9:00 | 9:15 | XCL | 2 | 3 | | |
| | | 1155 6 Ave W. 44-W.45 ST | POT | 9:20 | 9:30 | XCL | 2 | 1 | | |
| | | 1166 6 Ave W. 45-W.46 ST | POT | 9:40 | 10:00 | XCL | 7 | 4 | | |
| | | 1177 6 Ave W. 45-W.46 ST | POT | 10:05 | 10:15 | XCL | 3 | | | |
| | | 1180 6 Ave W.46 W.47 ST | POT | 10:20 | 10:35 | XCL | 2 | 4 | | |
| | | 1200 6 Ave W. 47-W.48 ST | POT | 10:40 | 10:55 | XCL | 6 | | | |
| | | 1221 6 Ave W. 48-W.49 ST (Inter) | POT | 11:00 | 11:10 | XCL | 3 | | | |
| | | 6 Ave W.49 ST (Inter) | POT | 11:15 | 11:25 | XCL | 2 | | | |
| | | 1251 6 Ave W.49-W.50 ST | POT | 11:30 | 11:45 | XCL | 3 | 3 | | |
| | | 1250 6 Ave W. 56 ST. | POT | 11:50 | 12:00 | XCL | 1 | | | |
| | | 1260 6 Ave W.50-W.51 ST | POT | 12:05 | 12:15 | XCL | 2 | | | |
| | | 1270 6 Ave W.50-W.51 ST | POT | 12:20 | 12:25 | XCL | 2 | | | |
| | | TOTAL HOLES AND SQUARE YARDS | | | | | 44 | 18 | | |

DMS COMPLETED - 0

SIEBELS COMPLETED - 0

TOTAL NUMBER OF HOLES AND SQUARE YARDS

COMMENTS - Left yard @ 6:50AM went to 55N4 to fill up hotbox + truck. Continued along Parade route very heavy Traffic congestion along parade route. No used or All jobs. Bathroom Stops Throughout day.

ACTION I/D -   (TOC) TOP OFF COMPLETED   (TON) TOP OFF NOT COMPLETED

(MST) MADE SAFE TEMPORARILY   (RTB) REFERRED TO BRIDGES   (NAC) NOT ACCESSIBLE   (DNF) DEFECT NOT FOUND   (DPL) DUPLICATE   (EXC) EXCAVATION COMPLETE

(BAR) BARRICADED   (XCL) CLOSED DEFECT   (BFC) BACKFILL COMPLETED   (BFH) BACK FILL NOT COMPLETE   (EGH) EXCAVATION NOT COMPLETE   (FRE) FOUND RESTORED

Case 1:20-cv-02666-NRB  Document 84-19  Filed 01/25/24  Page 15 of 22

**A101**

SUPERVISOR NAME: T. Brockman

MANHATTAN STREET MAINTENANCE

PG 2 of 2

DATE: 8/23/17

| NOTES | DEFECT NUMBERS | LOCATION | DEFECT TYPE | ARRIVAL TIME | DEPARTURE TIME | ACTION ID | POTHOLES A | B | C | SQUARE YARDS |
|---|---|---|---|---|---|---|---|---|---|---|
| 2017 Brooklyn American Cultural Street Festival continued... | | 1290 6 Ave w. 51 - w. 52 st | POT | 12:30 | 12:35 | XCL | | 1 | | |
| | | 1301 6 Ave w. 52 - w. 53 st | POT | 12:40 | 12:45 | XCL | 1 | | | |
| | | 1325 6 Ave w. 53 - w. 54 st | POT | 12:50 | 13:00 | XCL | 3 | | | |
| | | 1340 6 Ave w. 55 - w. 56 st | POT | 13:05 | 13:20 | XCL | 4 | 1 | | |
| | | 560 w. 46 st 5+6 Ave | POT | 13:40 | 13:50 | XCL | | 1 | | |

DMS COMPLETED - 0
SIEBELS COMPLETED - 0
TOTAL HOLES AND SQUARE YARDS   8   3

COMMENTS ON PG 1

TOTAL NUMBER OF HOLES AND SQUARE YARDS   73

ACTION I/D -   (TOC) TOP OFF COMPLETED   (TON) TOP OFF NOT COMPLETED
(DPL) DUPLICATE   (EXC) EXCAVATION COMPLETE
(EXN) EXCAVATION NOT COMPLETE   (FRE) FOUND RESTORED

(MST) MADE SAFE TEMPORARILY  (RTB) REFERRED TO BRIDGES  (NAC) NOT ACCESSIBLE  (DNF) DEFECT NOT FOUND
(BAR) BARRICADED  (XCL) CLOSED DEFECT  (BFC) BACKFILL COMPLETED  (BFN) BACK FILL NOT COMPLETE

# EXHIBIT B

```
BOROUGH OF MANHATTAN                MOSAICS                      09/25/2020
MOSM322B              DEFECT DETAILS FOR DEFECT NO.: DM2019019002


DEFECT TYPE   : POT – POTHOLE                    MAINT SECTOR : 10
DEFECT STATUS : CLS – CLOSED WORK ORDER          REPAIR STATUS: XCL
LOCATION : BOROUGH CODE : M                  COMMUNITY DISTRICT: 5
         HOUSE NUMBER :
FROM :   6 AVENUE                        TO : WEST   53 STREET
DESCRIPTION OF CORNER
PRIORITY :   DEFECT URL:  _
REPORTED DATE  : 01/17/2019              REPORTED TIME : 00:12
CALLER:   NAME:
ADDRESS: STREET:
CITY:                            STATE :        ZIP:
E-MAIL:
SOURCE        : YRD – YARD
HANSEN TICKET NUM :            DEFECT COMPLAINT DETAILS : _
LENGTH :     WIDTH :
  ----CORNER----    -------DISTANCE--------    LANE
   F/T:   L/R:   STREET:     CURB:
                                  ORIGINAL DEFECT NUM:
Enter-PF1---PF2---PF3---PF4---PF5---PF6---PF7---PF8---PF9---PF10--PF11--PF12---
           QUIT  MAIN              HST              ESC
```

**A103**

```
MOSM0346           HISTORY OF DEFECT NO  : DM2019019002          09/25/2020
BOROUGH OF MANHATTAN           DEFECT TYPE: POT

                                                                    INIT
DATE       TIME  GENERATED FROM       ACTION-ID             CAR.NO  BY
---------- ----- ----------------- --------------------- ------------ ---
01/17/2019 10:00 SYSTEM            REFERRED TO MAINTENANCE          YRD


01/18/2019 23:18 FITS             CLOSE DEFECT
BELL/POT/01-18-2019/SHIFT:N/GRP:1
```

```
                                                              ....END
 Enter-PF1---PF2---PF3---PF4---PF5---PF6---PF7---PF8---PF9---PF10--PF11--PF12---
          QUIT  MAIN                     PREV  NEXT  ESC
```

**A104**

Case: 24-2682, 01/13/2025, DktEntry: 24.1, Page 108 of 277
Case 1:20-cv-02666-NRB   Document 84-18   Filed 01/25/24   Page 19 of 22

BOROUGH OF MANHATTAN
STREET MAINTENANCE DIVISION                          YARD: DUGOUT

HIGHWAYS MAINTENANCE CREW WORK ORDER ASSIGNMENT

CREW SUPERVISER: BELL          CREW TYPE: POT      DATE: 01-18-2019      SHIFT: N      GROUP NO.: 1

| WORK ORDER | HOUSE # | ON/FROM/TO STREETS | DEF. TYPE | DEF. STAT | LAN | FEET | CR | FEET | CB | P | ARR. TIME | DEP. TIME | NEW DEF | ACT ID | PHOLE A B C | OTH REP | SQ. YARDS | CUBIC YARDS | SQ. FEET | LINEAR FEET |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| DM2019018017 | 2 AVENUE | | POT | XCL | DRV | O | | O | | | 2100 | 2110 | | XCL | 01 01 | | | | | |
| | | EAST  94 STREET | | | | | | | | | | | | | | | | | | |
| | | EAST  95 STREET | SPEC LOC: MIDDLE LANE IN FRONT OF 1830 2ND AVE, SEWER COVER | | | | | | | | | | | | A: ,B: ,C: | | | | | |
| | | | COMMENT : | | | | | | | | | | | | | | | | | |
| DM2019018023 | RIVERSIDE DRIVE | | POT | DNF | INT | O | | O | | | 2125 | 2130 | | DNF | | | | | | |
| | | WEST  96 STREET | | | | | | | | | | | | | | | | | | |
| | | | SPEC LOC: | | | | | | | | | | | | A: ,B: ,C: | | | | | |
| | | | COMMENT : | | | | | | | | | | | | | | | | | |
| DM2019018016 | WEST  75 STREET | | POT | XCL | DRV | O | | O | | | 2230 | 2240 | | XCL | 01 | | | | | |
| | | AMSTERDAM AVENUE | | | | | | | | | | | | | | | | | | |
| | | COLUMBUS AVENUE | SPEC LOC: ON W 75 ST CLOSER TO COLUMBUS AVE ON WEST SIDE | | | | | | | | | | | | A: ,B: ,C: | | | | | |
| | | | COMMENT : | | | | | | | | | | | | | | | | | |
| DM2019019001 | WEST  80 STREET | | POT | XCL | | O | | O | | | 2250 | 2315 | | XCL | 07 01 | | | | | |
| | | AMSTERDAM AVENUE | | | | | | | | | | | | | | | | | | |
| | | COLUMBUS AVENUE | SPEC LOC: | | | | | | | | | | | | A: ,B: ,C: | | | | | |
| | | | COMMENT : | | | | | | | | | | | | | | | | | |
| DM2019019002 | 6 AVENUE | | POT | XCL | | O | | O | | | 2318 | 2321 | | XCL | 01 | | | | | |
| | | WEST  53 STREET | | | | | | | | | | | | | | | | | | |
| | | | SPEC LOC: | | | | | | | | | | | | A: ,B: ,C: | | | | | |
| | | | COMMENT : | | | | | | | | | | | | | | | | | |
| DM2019019003 | WEST  54 STREET | | POT | XCL | | O | | O | | | 2325 | 0001 | | XCL | 06 03 01 | | | | | |
| | | 5 AVENUE | | | | | | | | | | | | | | | | | | |
| | | 6 AVENUE | SPEC LOC: | | | | | | | | | | | | A: ,B: ,C: | | | | | |
| | | | COMMENT : | | | | | | | | | | | | | | | | | |

A105

PAGE#: 1
09/30/2020
MOSM5724

BUREAU OF HIGHWAYS — STREET MAINENANCE DIVISION

DEPARTMENT OF TRANSPORTATION

BOROUGH OF MANHATTAN
YARD: DUGOUT

MAINTENANCE PRODUCTION CREW SHEET

CREW SUPERVISOR: BELL          CREW TYPE: POT          DATE: 01-18-2019          SHIFT: N          GROUP NO.: 1

| S.A.NO. | | START TIME: | | END TIME: | | LOCATION: |
|---|---|---|---|---|---|---|
| S.A.NO. | M20190180 | START TIME: | 21000 | END TIME: | 21100 | LOCATION: |
| S.A.NO. | M20190180 | START TIME: | 21250 | END TIME: | 21300 | LOCATION: |
| S.A.NO. | M20190180 | START TIME: | 22300 | END TIME: | 22400 | LOCATION: |

=============================================================================

| SIGNATURE | MEMBER NAME | | TITLE | START DATE | START TIME | END DATE | END TIME | ASSIGN | TOOK LUN | OVER TIME | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| _____ | BELL | M | SHR | 01182019 | 1830 | 01192019 | 0330 | SUP | Y | _____ | S.A.NO.: M20190180 |
| _____ | KENNY | D | HR | 01182019 | 1900 | 01192019 | 0330 | DRV | Y | _____ | |
| _____ | TOTA | E | HR | 01182019 | 1900 | 01192019 | 0330 | SHV | Y | _____ | REMARKS: |
| _____ | GRAY | E | HR | 01182019 | 1900 | 01192019 | 0330 | RKR | Y | _____ | |
| _____ | _____ _ | | ____ | 01182019 | _____ | 01192019 | ____ | ___ | Y | _____ | |
| _____ | _____ _ | | ____ | 01182019 | _____ | 01192019 | ____ | ___ | Y | _____ | S.A.NO.: M20190180 |
| _____ | _____ _ | | ____ | 01182019 | _____ | 01192019 | ____ | ___ | Y | _____ | |
| _____ | _____ _ | | ____ | 01182019 | _____ | 01192019 | ____ | ___ | Y | _____ | REMARKS: |
| _____ | _____ _ | | ____ | 01182019 | _____ | 01192019 | ____ | ___ | Y | _____ | |
| _____ | _____ _ | | ____ | 01182019 | _____ | 01192019 | ____ | ___ | Y | _____ | |
| _____ | _____ _ | | ____ | 01182019 | _____ | 01192019 | ____ | ___ | Y | _____ | |
| _____ | _____ _ | | ____ | 01182019 | _____ | 01192019 | ____ | ___ | Y | _____ | |
| _____ | _____ _ | | ____ | 01182019 | _____ | 01192019 | ____ | ___ | Y | _____ | S.A.NO.: M20190180 |
| _____ | _____ _ | | ____ | 01182019 | _____ | 01192019 | ____ | ___ | Y | _____ | |
| _____ | _____ _ | | ____ | 01182019 | _____ | 01192019 | ____ | ___ | Y | _____ | REMARKS: |
| _____ | _____ _ | | ____ | 01182019 | _____ | 01192019 | ____ | ___ | Y | | |
| _____ | _____ _ | | ____ | 01182019 | _____ | 01192019 | ____ | ___ | Y | | |
| _____ | _____ _ | | ____ | 01182019 | _____ | 01192019 | ____ | ___ | Y | | |

=============================================================================

I CERTIFY THAT THE EMPLOYEE' TIME RECORDED ABOVE IS CORRECT AND THAT THE WORK WAS PERFORMED EXCLUSIVELY FOR THE CITY OF NEW YORK.
CREW SUPERVISOR'S SIGNATURE: _____          DISTRICT SUPERVISOR'S SIGNATURE: _____          FITCRW

**A106**

Case 1:20-cv-02666-NRB   Document 84-19   Filed 01/25/24   Page 21 of 22

**A107**

MANHATTAN STREET MAINTENANCE POTHOLE SHEET

CREW SUPERVISOR: M. Bel     CREW TYPE: Pothole     DATE: 1-18-19

| MEMBERS NAME | SIGNATURE | TITLE | START DATE | START TIME | END DATE | END TIME | LUNCH | TASK | O/T |
|---|---|---|---|---|---|---|---|---|---|
| M. Bel | W Ray | S/Flr | 1-18-19 | 18:30 | 1-19-19 | 3:30 | yes | Sup | 1/2 |
| D. Kenny | | flr | | 19:00 | | | | Drv | 1/2 |
| E. Toto | | flr | | | | | | Sh | |
| E. Gray | | flr | | | | | | rer | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |

| EQUIPMENT USED | ID NUMBER | DOWN TIME |
|---|---|---|
| D - TRUCK | 661 | |
| HOTBOX | 6447 | |
| COMPRESSOR | | |
| BACK-UP TRUCK | | |

**CREW MATERIAL**

| PLANT: | TONNAGE |
|---|---|
| HAMILTON PLANT | 3.03 |
| HARPER ST. YARD | |
| TOTAL TONNAGE | 3.03 |

**VEHICLE CHECK**

| VEHICLE CHECK | PRE CHECK | DEFECT |
|---|---|---|
| CAB / ODOMETER | / | |
| EXTERIOR/ VISUAL | / | |
| TIRES | / | |
| STEERING | / | |
| BRAKE SYSTEM | / | |
| ELECT. SYSTEM | / | |
| FUEL / GALLONS | / | |
| TIME | | |

**A/C USED**

| GALLONS |
|---|
| 1.5 |
| TOTAL A/C USED: 1.5 |

**BEGINNING OF DAY**

YARD / Pier 36    DEPARTURE TIME 19:30    MILEAGE 62551

COFFEE LOCATION / Bwy W 96 St
ARRIVAL TIME / 21:55    DEPARTURE TIME 21:40    MILEAGE

LUNCH LOCATION / 6 Ave W 56 St
ARRIVAL TIME / 00:10    DEPARTURE TIME 02:40    MILEAGE

**END OF DAY**

YARD Pier 36

ARRIVAL TIME 3:00

AREA LEVEL SIGNATURE

correct and that the work was performed exclusively for the City of New York

SUPERVISOR SIGNATURE

**A108**

## MANHATTAN STREET MAINTENANCE
Pothole

SUPERVISOR NAME: M. Bell          DATE: 1-18-19

| NOTES | DEFECT NUMBERS | LOCATION | DEFECT TYPE | ARRIVAL TIME | DEPARTURE TIME | ACTION ID | POTHOLES A | B | C | SQUARE YARDS |
|---|---|---|---|---|---|---|---|---|---|---|
| | DM0090190507 | 2 Ave E94St E95St | PH | 21:00 | 21:10 | XCL | 1 | | | |
| | DM30190.0023 | R.S.D W96st | PH | 21:25 | 21:30 | DNF | | | | |
| | DM20(01801b | W7SS Amster - Columbus | PH | 22:30 | 22:40 | XCL | 1 | | | |
| | W72019019001 | W88st Amster - Columbus | PH | 22:50 | 23:15 | XCL | 7 | | | |
| | DW720190.19002 | 6 Ave W53st | PH | 23:18 | 23:21 | XCL | | 1 | | |
| | DW20190190003 | W51st bet5 & 6 Ave | PH | 23:25 | 23:21 | XCL | | 3 | | |
| | DW720190190.004 | E42st & 5 Ave | PH | 00:50 | 1:00 | XCL | 6 | | | |
| | DW2019019005 | E 8st & Greenest | PH | 1:20 | 1:25 | XCL | 1 | | | |
| | | | | | | **TOTAL HOLES AND SQUARE YARDS** | 16 | 8 | | |
| | | | | | | **TOTAL NUMBER OF HOLES AND SQUARE YARDS** | | | 25 | |

DMS COMPLETED: 3          SIEBELS COMPLETED:

COMMENTS: Heavy Traffic to Hamilton Plant. Had to return to Ford to move personal vehicle. 21:45 - 22:30

**ACTION I/D –** (TOC) TOP OFF COMPLETED  (TON) TOP OFF NOT COMPLETED

(MST) MADE SAFE TEMPORARILY (RTB) REFERRED TO BRIDGES (NAC) NOT ACCESSIBLE (DNF) DEFECT NOT FOUND (DPL) DUPLICATE (EXG) EXCAVATION COMPLETED
(BAR) BARRICADED (XCL) CLOSED DEFECT (BFC) BACKFILL COMPLETED (BFN) BACK FILL NOT COMPLETE (EXN) EXCAVATION NOT COMPLETE (FRE) FOUND RESTORED

**Defendants' Exhibit K, Affidavit of Mohammad Hoque,
dated Aug. 28, 2023 (Dkt. 84-20)**

# EXHIBIT K

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x

FRANCIS PAUL QUINN JR. and LORI ANN QUINN,

                              Plaintiffs,

                -against-

THE CITY OF NEW YORK and THE NEW YORK CITY
DEPARTMENT OF TRANSPORTATION,

                              Defendants.

------------------------------------------------------------------------x

THE CITY OF NEW YORK and THE NEW YORK CITY
DEPARTMENT OF TRANSPORTATION,

                          Third-Party Plaintiffs,

                -against-

CONSOLIDATED EDISON, INC.,

                           Defendant.

------------------------------------------------------------------------x

**AFFIDAVIT**

Docket No: 20 CV 2666 (JGK)
File No: 2020-017559

STATE OF NEW YORK    )
                          ) SS:
COUNTY OF QUEENS    )

**MOHAMMAD HOQUE,** being duly sworn, deposes and says:

1.     I am currently employed by the New York City Department of Transportation (hereinafter "DOT"). I work in the Division of Roadway Repair and Maintenance ("RRM") as a Supervisor Highway Repairer of the Jolt Elimination Team (hereinafter "JETS") Emergency Response Unit. I have been employed by DOT since 2005. As a Supervisor Highway Repairer in the JETS Emergency Response Unit, my responsibilities include directing the daily activities of

1

**A111**

the JETS. I am familiar with the policies, procedures, and protocols of DOT, particularly those relating to standard operating procedures related to roadway repair and maintenance.

2.      The following is based upon my review of the maintenance and repair records (also known as a "FITS" report) for defect number DM2017318006. I am familiar with this FITS report through the ordinary course of my work. With respect to this defect number, I also reviewed computerized and handwritten crew sheets associated with the alleged defect complained of in the FITS report.

3.      Upon arrival at a specific location, the crew supervisor inspects the entire segment of the roadway, including the crosswalk on both ends of the segment. This is done to locate all defective conditions on the segment. Upon completion of such a search, the crew repairs all defective conditions found by the supervisor on the entire block. This process of inspecting and repairing all found defective conditions at a location ensures that all defects are repaired.

4.      As a result of repair order DM2017318006 that was generated on November 13, 2017, I supervised a maintenance crew that responded to the location of the intersection of 6th Avenue and West 53rd Street in the County, City, and State of New York. This FITS report indicates that the source of this defect was "office of special events," indicating that it was a defect picked up by the Office of Special Events. This repair order was referred to DOT maintenance on November 13, 2017, and is noted on the corresponding handwritten and computerized crew sheets. Copies of repair order DM2017318006 and the handwritten and computerized crew sheets are annexed as **Exhibit A**

5.      Repair order DM2017318006 was closed on November 13, 2017. According to the FITS report, the Action-ID is listed as "close defect," the Repair Status as "XCL," and the Defect Stats as "CLS- closed work order." In addition, the Action ID column on the computerized and

**A112**

handwritten crew sheets shows the code "XCL" for repair order DM2017318006.This information

indicates that the condition described in repair order DM2017318006 was found and repaired.

_____

**MOHAMMAD HOQUE**

Sworn to before me this

28__ day of August 2023

_____

NOTARY PUBLIC COMMISSIONER OF DEEDS

ARTHUR MULLAKANDOV
Notary Public, State of New York
Registration #01MU6341246
Qualified In Queens County
Commission Expires _____

3

**A113**

A114

# EXHIBIT A

```
BOROUGH OF MANHATTAN              MOSAICS                    09/25/2020
MOSM322B            DEFECT DETAILS FOR DEFECT NO.: DM2017318006


DEFECT TYPE   : POT – POTHOLE                 MAINT SECTOR : 10
DEFECT STATUS : CLS – CLOSED WORK ORDER          REPAIR STATUS: XCL
LOCATION : BOROUGH CODE : M                   COMMUNITY DISTRICT: 5
         HOUSE NUMBER :
FROM :   6 AVENUE                        TO : WEST   53 STREET
DESCRIPTION OF CORNER
PRIORITY :   DEFECT URL: _
REPORTED DATE : 11/13/2017              REPORTED TIME : 12:46
CALLER:   NAME:
ADDRESS: STREET:
CITY:                                STATE :        ZIP:
E-MAIL:
SOURCE      : OSE – OFFICE OF SPECIAL EVENTS
HANSEN TICKET NUM :             DEFECT COMPLAINT DETAILS : _
LENGTH :     WIDTH :
  ----CORNER----   -------DISTANCE--------   LANE
  F/T:   L/R:   STREET:    CURB:
                               ORIGINAL DEFECT NUM:
Enter-PF1---PF2---PF3---PF4---PF5---PF6---PF7---PF8---PF9---PF10--PF11--PF12---
          QUIT  MAIN           HST           ESC
```

**A116**

```
MOSM0346              HISTORY OF DEFECT NO  : DM2017318006          09/25/2020
BOROUGH OF MANHATTAN            DEFECT TYPE: POT

                                                                        INIT
DATE       TIME   GENERATED FROM      ACTION-ID            CAR.NO       BY
---------- ----  ----------------     --------------------  -----------  ---
11/13/2017 22:22 SYSTEM               CLOSE DEFECT                       YRD


11/13/2017 22:22 FITS                 CLOSE DEFECT
HOQUE/JET/11-13-2017/SHIFT:N/GRP:1
```

                                                                    ....END
```
 Enter-PF1---PF2---PF3---PF4---PF5---PF6---PF7---PF8---PF9---PF10--PF11--PF12---
          QUIT  MAIN                      PREV  NEXT  ESC
```

**A117**

STREET MAINTENANCE DIVISION                                      YARD: JETS/EMERGENCY RESPO

HIGHWAYS MAINTENANCE CREW WORK ORDER ASSIGNMENT

CREW SUPERVISER: HOQUE          CREW TYPE: JET          DATE: 11-13-2017          SHIFT: N          GROUP NO.: 1

| WORK ORDER | HOUSE # | ON/FROM/TO STREETS | DEF. TYPE | DEF. STAT | LAN | FEET | CR | FEET | CB | P | ARR. TIME | DEP. TIME | NEW DEF | ACT ID | PHOLE A B C | OTH REP | SQ. YARDS | CUBIC YARDS | SQ. FEET | LINEAR FEET |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| DM2017318003 | | 6 AVENUE | POT | XCL | 0 | | 0 | | | | 1630 | 1810 | | XCL | 32 04 | | | | | |
| | | WEST  57 STREET | | | | | | | | | | | | | | | | | | |
| | | SPEC LOC: | | | | | | | | | | | | | A:  ,B:  ,C: | | | | | |
| | | COMMENT : ALSO/1/W&T/DONE/WITH/ASPHALT | | | | | | | | | | | | | | | | | | |
| DM2017318004 | | 9 AVENUE | POT | XCL | 0 | | 0 | | | | 1825 | 1845 | | XCL | 04 | | | | | |
| | | WEST  51 STREET | | | | | | | | | | | | | | | | | | |
| | | SPEC LOC: | | | | | | | | | | | | | A:  ,B:  ,C: | | | | | |
| | | COMMENT : | | | | | | | | | | | | | | | | | | |
| DM2017318005 | | 6 AVENUE | POT | XCL | 0 | | 0 | | | | 2150 | 2220 | | XCL | 10 | | | | | |
| | | WEST  52 STREET | | | | | | | | | | | | | | | | | | |
| | | SPEC LOC: | | | | | | | | | | | | | A:  ,B:  ,C: | | | | | |
| | | COMMENT : 1/W&T/SAME/AS/ABOVE | | | | | | | | | | | | | | | | | | |
| DM2017318006 | | 6 AVENUE | POT | XCL | 0 | | 0 | | | | 2222 | 2235 | | XCL | 09 | | | | | |
| | | WEST  53 STREET | | | | | | | | | | | | | | | | | | |
| | | SPEC LOC: | | | | | | | | | | | | | A:  ,B:  ,C: | | | | | |
| | | COMMENT : | | | | | | | | | | | | | | | | | | |
| DM2017318007 | | 6 AVENUE | POT | XCL | 0 | | 0 | | | | 2237 | 2300 | | XCL | 04 03 | | | | | |
| | | WEST  54 STREET | | | | | | | | | | | | | | | | | | |
| | | SPEC LOC: | | | | | | | | | | | | | A:  ,B:  ,C: | | | | | |
| | | COMMENT : | | | | | | | | | | | | | | | | | | |
| DM2017318008 | 270 | AVENUE OF THE AMER | POT | XCL | 0 | | 0 | | | | 2310 | 2335 | | XCL | 08 03 | | | | | |
| | | BEDFORD STREET | | | | | | | | | | | | | | | | | | |
| | | BLEECKER STREET  SPEC LOC: | | | | | | | | | | | | | A:  ,B:  ,C: | | | | | |
| | | COMMENT : | | | | | | | | | | | | | | | | | | |

A118

Case: 24-2652, 01/13/2025, DktEntry: 24.1, Page 122 of 277
Case 1:20-cv-02666-NRB   Document 84-20   Filed 01/25/24   Page 10 of 13

STREET MAINTENANCE DIVISION                          YARD: JETS/EMERGENCY RESPO

HIGHWAYS MAINTENANCE CREW WORK ORDER ASSIGNMENT

CREW SUPERVISER: HOQUE          CREW TYPE: JET      DATE: 11-13-2017       SHIFT: N        GROUP NO.: 1

| WORK ORDER | HOUSE # | ON/FROM/TO STREETS | DEF. TYPE | DEF. STAT | LAN | FEET | CR | FEET | CB | P | ARR. TIME | DEP. TIME | NEW DEF | ACT ID | PHOLE A | B | C | OTH REP | SQ. YARDS | CUBIC YARDS | SQ. FEET | LINEAR FEET |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| DM2017318009 | 9 AVENUE | | POT | XCL | 0 | | 0 | | | | 2345 | 0005 | ___ | XCL | 07 | 03 | __ | __ | ___ | _____ | _____ | _____ |
| _____ | | | | | | | | | | | | | | | | | | | | | | |
| | WEST 52 STREET | | | | | | | | | | | | | | | | | | | | | |
| | WEST 53 STREET | | SPEC LOC: _____  A:   ,B:   ,C: |
| | | | COMMENT : _____ |

FITMC 04/28/94

A119

Case: 24-2682, 01/13/2025, DktEntry: 24.1, Page 123 of 277
Case 1:20-cv-02666-NRB Document 84-20 Filed 01/25/24 Page 11 of 13

BUREAU OF HIGHWAYS – STREET MAINENANCE DIVISION

YARD: JETS/EMERGEN

### MAINTENANCE PRODUCTION CREW SHEET

CREW SUPERVISOR: HOQUE          CREW TYPE: JET          DATE: 11-13-2017     SHIFT: N          GROUP NO.: 1

| | | | | |
|---|---|---|---|---|
| S.A.NO. M20173180 | START TIME: 16300 | END TIME: 18100 | LOCATION: | |
| S.A.NO. M20173180 | START TIME: 18250 | END TIME: 18450 | LOCATION: | |
| S.A.NO. M20173180 | START TIME: 21500 | END TIME: 22200 | LOCATION: | |

S.A.NO.: M20173180

| SIGNATURE | MEMBER NAME | | TITLE | START DATE | START TIME | END DATE | END TIME | ASSIGN | TOOK LUN | OVER TIME | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| _____ | HOQUE | M | HR | 11132017 | 1500 | 11142017 | 0130 | SUP | N | _____ | REMARKS: ALSO/1/W&T/DONE/WITH/ASPH |
| _____ | CAMPBELL | H | HR | 11132017 | 1530 | 11142017 | 0130 | GEN | N | _____ | ALT |
| _____ | VERMILYE | M | ACHR | 11132017 | 1530 | 11142017 | 0130 | GEN | N | _____ | |
| _____ | HERNANDEZ | J | HR | 11132017 | 1530 | 11142017 | 0130 | GEN | N | _____ | |
| _____ | GAROFALO | M | HR | 11132017 | 1400 | 11142017 | 0130 | OFC | N | _____ | |
| _____ | GIRGENTI | G | ACHR | 11132017 | 1530 | 11142017 | 0130 | OFC | N | _____ | S.A.NO.: M20173180 |
| _____ | CAZASSUS | C | ACHR | 11132017 | 1530 | 11142017 | 0130 | DRV | N | _____ | |
| _____ | PALACINO | J | HR | 11132017 | 1530 | 11142017 | 0130 | DRV | N | _____ | REMARKS: |
| _____ | BUEFORD | T | HR | 11132017 | 1530 | 11142017 | 0130 | GEN | N | _____ | |
| _____ | _____ | _ | ____ | 11132017 | ____ | 11142017 | ____ | ___ | Y | _____ | |
| _____ | _____ | _ | ____ | 11132017 | ____ | 11142017 | ____ | ___ | Y | _____ | |
| _____ | _____ | _ | ____ | 11132017 | ____ | 11142017 | ____ | ___ | Y | _____ | |
| _____ | _____ | _ | ____ | 11132017 | ____ | 11142017 | ____ | ___ | Y | _____ | |
| _____ | _____ | _ | ____ | 11132017 | ____ | 11142017 | ____ | ___ | Y | _____ | S.A.NO.: M20173180 |
| _____ | _____ | _ | ____ | 11132017 | ____ | 11142017 | ____ | ___ | Y | _____ | |
| _____ | _____ | _ | ____ | 11132017 | ____ | 11142017 | ____ | ___ | Y | _____ | REMARKS: 1/W&T/SAME/AS/ABOVE |
| _____ | _____ | _ | ____ | 11132017 | ____ | 11142017 | ____ | ___ | Y | _____ | |
| _____ | _____ | _ | ____ | 11132017 | ____ | 11142017 | ____ | ___ | Y | _____ | |
| _____ | _____ | _ | ____ | 11132017 | ____ | 11142017 | ____ | ___ | Y | _____ | |
| _____ | _____ | _ | ____ | 11132017 | ____ | 11142017 | ____ | ___ | Y | _____ | |

I CERTIFY THAT THE EMPLOYEE' TIME RECORDED ABOVE IS CORRECT AND THAT THE WORK WAS PERFORMED EXCLUSIVELY FOR THE CITY OF NEW YORK.

CREW SUPERVISOR'S SIGNATURE: _____     DISTRICT SUPERVISOR'S SIGNATURE: _____          FITCRW

A120

Case 1:20-cv-02666-NRB   Document 84-20   Filed 01/25/24   Page 12 of 13

Supervisor: __M. HOQUE__   Crew Type: __Pot hole__   Date: __1/13/2017__   Shift: __0130 x 130__   Group #: _____

| Member Name: | Title: | Start Date: | Start Time: | End Date: | End Time: | Took Lunch | Assignment: | Signature |
|---|---|---|---|---|---|---|---|---|
| M. HOQUE | HR | 1/13 | 1500 | 11/14 | 130 | N | SUP | |
| A. CAMPBELL | HR | 1/13 | 1530 | 11/14 | 130 | N | GEN | |
| J. PALACINO | HR | 1/13 | 1530 | 11/14 | 130 | N | 8119 | |
| T. BUEFORD | HR | 1/13 | 1530 | 11/14 | 130 | N | GEN | |
| J. HERNANDEZ | HR | 1/13 | 1530 | 11/14 | 130 | N | GEN | |
| C. CAZASSUS | AHR | 1/13 | 1530 | 11/14 | 130 | N | 68D | |
| M. VERMILYE | AHR | 1/13 | 1530 | 11/14 | 130 | N | GEN | |

**Equipment Used:**

| | ID #: | DOWNTIME Hours | Minutes |
|---|---|---|---|
| D.Trucks | 8119 | W/7141T | |
| Hot Boxes | 68D | | |
| Compressor | | | |
| Backhoe | | | |

**Crew Material**

| Plant | Asphalt / RR (TONS) |
|---|---|
| TULLY/HAMILTON | 3.05 + 3.01 = 6.06 TONS |
| | 2 W/T + 87 REPAIRS |
| | 2 0 MILES |

TOOLS: Brooms ✓ Rakes ✓ Shovels ✓ Tamper ✓ Crow Bars ✓
Safety Equipment: Barricades ✓ Safety Cones ✓ Barrels ✓

**Vehicle Check**

| Vehicle Check | Pre Check | Vehicle Defects (Describe) |
|---|---|---|
| Cab | ✓ | |
| Oil Pressure; Odometer) | ✓ | |
| Exterior (Visual Check, Mirrors) | ✓ | |
| Tires | ✓ | |
| Steering | | |
| Brake System | | |
| Electrical System | | |
| Fuel (Gallons) | ✓ | |
| Time | | |
| Propane Tanks | ✓ | |
| Visual Check | | |

**Beginning of Day:**

Yard: __44 DR__   Departure Time: __3.35__   Mileage: __29351__
Coffee Location: __COURT ST & LIVINGSTON ST__
Arrival Time: __7.50__   Departure Time: __8.00__   Mileage: _____

**End of Day:**

Yard: __44 DR__   Arrival Time: __1 0__   Mileage: __29380__
Lunch Location: __NO LUNCH__
Arrival Time: _____   Departure Time: _____   Mileage: _____

I Certify that the Employees Time recorded above is correct and that the Work was performed exclusively for the City of New York

Crew Supervisors Signature: _____   District Supervisors Signature: _____

**A121**

Case 1:20-cv-02666-NRB   Document 84-20   Filed 01/25/24   Page 13 of 13

**A122**

Supervisor: M. HOOVE  
Crew Type: Pot hole  
Date: 11/15/2017

CTACULAR

| DEFECT NUMBERS ONLY | LOCATION | DEFECT TYPE | ARRIVAL TIME | DEPART TIME | ACTION ID | POTHOLES A | B | C | SQ. YDS |
|---|---|---|---|---|---|---|---|---|---|
| DM2017368003 | WS 7 ST Bet 6th & 7 Ave | Pot | 4:30 | 6:10 | xcl | 32 | 4 | | |
| | | W/T | | 22 x 6 = 14.66 SQ YDS | | | | | |
| 4 | 6 Av & WS 1 ST | Pot | 6:25 | 6:45 | xcl | | 4 | | |
| 5 | 6 Av & W S 2 ST | Pot | 5:50 | 10:20 | xcl | 10 | | | |
| | | W/T | | 16 x 5' = 8.88 SQ YDS | | | | | |
| 6 | 6 Av & W S 3 ST | Pot | 10:22 | 10:35 | xcl | 9 | | | |
| | 6 Av Bet W S 3 ST & W S 5 5' | Pot | 10:37 | 11:08 | xcl | 4 | 3 | | |
| | 270, 6 Ave | Pot | 11:08 | 11:35 | xcl | 8 | 3 | | |
| | 6 Ave Bet W S 3 ST & W S 5' | Pot | 11:45 | 12:08 | xcl | 7 | 3 | | |
| | | | | | | 10 17 | | | |
| | | | | | | = 81 | | | |
| | | | | | | 23 SUB DS | | | |

ACTION ID / DESCRIPTION:

| ACTION ID | DESCRIPTION |
|---|---|
| MST | Made Safe Temporarily |
| NAC | Not Accessible |
| REG | Referred to Bridges |
| RDE | Referred to DEF |
| TCC | Top Off Completed |
| XCL | Closed Defect |
| BAR | Barricaded |
| BFC | Backfill Completed |
| BFN | Backfill Not Completed |
| DNF | Defect Not Found |
| DPL | Duplicate Defect |
| EXC | Excavation Completed |
| FRE | Found Restored |
| TON | Top Off Not Completed |

Additional Remarks: HAMILTON Plant (Lon)  
8:12 - 10 5:02

Supervisor Crew Visit:

**Plaintiffs' Memorandum of Law in Opposition to
Defendants' Motion for Summary Judgment,
filed Feb. 28, 2024 (Dkt. 85)**

**A123**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

_____

| | | |
|---|---|---|
| FRANCIS PAUL QUINN, JR. and LORI ANN QUINN, | ) ) ) | |
| *Plaintiffs*, | ) ) | |
| v. | ) ) | Case No. 1:20-cv-02666-NRB |
| THE CITY OF NEW YORK and THE NEW YORK CITY DEPARTMENT OF TRANSPORTATION, | ) ) ) ) ) | |
| *Defendants.* | ) ) | |
| THE CITY OF NEW YORK and THE NEW YORK CITY DEPARTMENT OF TRANSPORTATION, | ) ) ) ) ) | |
| *Third-Party Plaintiffs*, | ) ) | |
| v. | ) ) ) | |
| CONSOLIDATED EDISON, INC., | ) ) | |
| *Third-Party Defendants.* | ) | |

_____

**MEMORANDUM OF LAW IN OPPOSITION TO**
**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**NAPOLI SHKOLNIK, PLLC**
JOSEPH NAPOLI
360 Lexington Avenue, 11th Floor
New York, New York 10017
Tel: (212) 397-1000
E-mail:  JNapoli@NapoliLaw.com

*Attorneys for Plaintiffs*

1

**A124**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................. ii

INTRODUCTION AND FACTUAL SUMMARY ................................ 1

LEGAL STANDARD ......................................................................... 3

ARGUMENT ....................................................................................... 7

    I.     The City Has Failed to Meet its Initial Burden to Show That
          It Did Not Cause or Create the Dangerous Crosswalk Condition ..... 7

    II.    Even if the City Has Met Its Initial Burden,
          Quinn's Evidence Establishes a
          Genuine Issue of Material Fact ........................................................ 8

    III.   The City had prior written notice of the subject
          Condition pursuant to the NYC Admin Code § 7-201 ..................... 9

    IV.   The Notice of Claim provided information sufficient
           to enable the City to investigate…………………………………… 13

CONCLUSION .................................................................................. 18

i

# TABLE OF AUTHORITIES

**Cases:**                                                                    **Page:**

*Abano v Suffolk County Community Coll.,* 66 AD3d 719 [2009]................12

*Amabile v City of Buffalo*, 93 NY2d 471 [1999].......................................12

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)................................4

*Bielecki v. City of New York,* 14 A.D. 3d 201 (1st Dep't 2005)...................12

*Brown v City of New York,* 95 NY2d at 393.............................................16

*Bruni v. City of New York,* 2 NY3d 319...................................................11

*Catlin v, Sobol*, 93 F.3d 1112 (2d Cir. 1996)..............................................6

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)..........................................4, 5

*Cuffey by Cuffey v City of New York,* 255 AD2d 203 [1st Dept. 1998]............12

*D'Alessandro v NY City Tr. Auth.,* 83 NY2d 893 [1994]..........................15-18

*Giannulo v. City of New York,*
    322 F.3d 139, 141 (2d Cir. 2003)....................................................4

*Gonzalez v City of New York,* 268 AD2d 214, 215 [1st Dept. 2000].............12, 17

*Ingle v New York City Tr. Auth.,* 7 AD3d 574 [2004]...................................16

*Marvel Characters, Inc. v. Simon,*
    310 F.3d 280, 286 (2d Cir. 2002).....................................................4

*Matter of Big Apple Pothole & Sidewalk*
    *Protection Comm. v Ameruso,* 110 Misc. 2d 688, 691...........................10

*O'Brien v City of Syracuse, 54 NY2d*.......................................................16

*Power v Manhattan & Bronx Surface Operating Auth.,*
    16 AD3d 655 [2d Dept 2005]......................................................17,18

*Purdy v City of New York,* 193 NY 521, 523, 86 N.E. 560..............................16

*Sec. Ins. Co. of Hartford v. Old Dominion*

**A126**

*Freight Line, Inc.*, 391 F.3d 77 (2d Cir. 2004)...........................................6

*Steins v Incorporated Vil. of Garden City,* 127 AD3d at 959.................................16

*Vacold, L.L.C. v. Cerami*, 545 F.3d 114 (2d Cir. 2008)...... ................................4

*Valencia v Glinski,* 219 AD3d 541 [2d Dept 2023].............................................. 9

*Vallejo-Bayas v New York City Tr. Auth.,* 103 AD3d 881...................................16

*Wald v. City of New York,* 115 AD3d 939........................................................12

*Washington v City of New York,* 190 AD3d 1009..............................................16

*Weinreb v City of New York,* 193 A.D.2d 596..................................................10

*Yarborough v. City of New York,* 10 NY3d 726 (2008)........................................12

**Rule:**

Fed. R. Civ. P. 56........................................................................................4,5

Fed. R. Evid. 803(6)........................................................................................7

NY CLS Gen Mun § 50-e 6.......................................................................15, 17

NY CLS Gen Mun § 50-h...................................................................15, 16, 17

NYC Administrative Code §7-201.............................................................2, 9 ,13

**A127**

## INTRODUCTION AND FACTUAL SUMMARY

This is a lawsuit brought by Plaintiff Francis Quinn, Jr. ("Quinn") and his wife, Lori, against Defendants, the City of New York and its Department of Transportation ("City"), arising out of an incident that occurred at the intersection of 53rd Street and Sixth Avenue on July 3, 2019. In his complaint, Quinn states that while crossing Sixth Avenue, within the crosswalk, he "was caused to fall and sustain severe and permanent injuries due to the defective and hazardous condition of the within crosswalk." Verified Complaint (ECF No. 3), ¶ 23. (The injuries sustained by Quinn, a professional golfer, sidelined him for several years, costing him millions of dollars in income, and jeopardizing his ability to support his family. **(Exhibit "1")**

Photographs taken immediately after the incident, and a subsequent investigation by a highly qualified expert retained by Quinn, revealed that a proximate cause of Quinn's injuries was a pothole in the crosswalk, abutting a ConEd gas utility box, which was defective, and extremely hazardous, because it had been the subject of an improper repair by the City. **(Exhibit "2" ¶ 25).** That it was **the City**, and not some other entity or person, that created this condition as the result of a defective pothole repair is evident from that fact that shortly after Quinn's injury, the City dispatched workers who then properly repaired the pothole (thus demonstrating the City's responsibility for the hazardous condition). **(Exhibit "3")**

The key question at this juncture, of course, is whether the City had prior **notice** of the hazardous condition that severely injured Quinn ― notice being a

**A128**

precondition to suit under the NYC Administrative Code § 7-201(c)(2). Quinn's complaint alleges that as of the date of his injury, the City **did** have "notice of said dangerous condition within the subject crosswalk," in particular because it was the City that, due to its improper earlier repair of the pothole, "caused and created said dangerous condition within the subject crosswalk." Verified Complaint, ¶¶ 24, 26.

To be clear, Quinn still alleges that the prior notice to the City was provided by Big Apple Maps[1]. **(Exhibit "4")** *See* Def. Mem. (ECF No. 84-4) at 14-15. Rather, despite the City's submission asserting that there was no **other** written notice — an assertion that hinges entirely on affidavits signed by three City employees, *id.* at 7-14 — Quinn submits that forthcoming depositions of these employees will uncover admissible evidence of other written notice. See Part III, *infra.* But even without the benefit of that outstanding discovery (to which Quinn is entitled prior to a ruling on summary judgment), it is presently clear that the City has not shown the absence of a genuine issue of material fact concerning another form of notice: the notice a City inherently possesses when it has **caused or created** a dangerous condition, here, through the improper earlier repair of the pothole at issue. Therefore, the City has not met its initial burden. Furthermore, triable issues of fact exist as to **whether City had written notice of the defect, whether City created the dangerous condition, whether the City failed to inspect the crosswalk or maintain the street in proper manner.**

---

[1] The Big Apple Map provided is blurry illegible and cannot be read.

**A129**

**Part I** of this brief shows that, as to Quinn's allegation that the City had the required notice because it caused or created the dangerous condition, the City has failed to meet its burden, as summary judgment movant, under Fed. R. Civ. P. 56(c)(1), to show that Quinn will be unable to make this factual showing.

In the event this Court were to find that the City **has** met its burden as movant, **Part II** presents competent evidence, in admissible form, pursuant to Rule 56(c)(4), showing that there is a genuine issue for trial, thus defeating the motion even if the City has met its initial burden. Part II also argues that if this Court were to find this evidence insufficient, it should deny or defer ruling on the motion to permit Quinn further discovery into the matter, pursuant to Rule 56(d).

In **Part III**, Plaintiff addresses the City's contention that there is an absence of written notice contained in its files. Plaintiff shows that there is written notice provided to the City. Additionally, it would clearly be premature for the Court to address this contention, which is based on the affidavits of City employees who have not been made available for deposition. A defendant is not permitted to use summary judgment to ask a court to conduct a trial by affidavit. A ruling on this point would need to be deferred under Rule 56(d) until Quinn has an opportunity for further discovery.

This brief concludes with **Part IV**, addressing the City's indirect contention that contrary to Notice of Claim, Plaintiff testified that he fell due to a pothole and not due to the gas utility box. This is complete misrepresentation of facts, and even if so, a court's inquiry is not limited  to the four corners of the notice of claim', this court

must consider evidence adduced at a 50-h hearing to correct a good faith and nonprejudicial technical mistake, omission, irregularity or defect in the notice of claim.

## LEGAL STANDARD

Summary judgment can be granted only where, with the evidence viewed in the light most favorable to the non-moving party, "the movant shows that there is no genuine issue as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). *See generally Vacold, L.L.C. v. Cerami*, 545 F.3d 114, 121 (2d Cir. 2008). A fact is "material" only where it will affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242. 248 (1986). A motion for summary judgment must be denied, even if the non-movant has come forward with **no** evidence, if the movant fails to meet its initial burden to show that there is no genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). *See also Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002) ("The party seeking summary judgment has the burden to demonstrate that no genuine issue of material fact exists."); *Giannulo v. City of New York*, 322 F.3d 139, 141 (2d Cir. 2003) ("non-movant is not required to rebut an insufficient showing").

As *Celotex* illustrates, a movant can meet that initial burden in one of two ways.[2] First, it can wait until the end of discovery and then point to the fact that the

---

[2] As Dean Louis long ago summarized in a leading article on summary judgment (cited in *Celotex*, 477 U.S. at 324 n.5), a summary judgment movant

**A131**

non-movant has produced no evidence to prove the fact at issue. *Celotex*, 477 U.S. at 320, 325. This option is now expressly recognized in Fed. R. Civ. P. 56(c)(1)(B), as amended after *Celotex*: the moving party may show that the results of discovery "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." The City has eschewed this option, having obtained leave to move for summary judgment before Quinn has had any opportunity to depose any City witness.

Alternatively, a party moving for summary judgment can seek to meet its initial burden by submitting with its motion **its own** evidence, in admissible form, which it contends disproves the fact at issue, as permitted by Fed. R. Civ. P. 56(c)(1)(A) & (4). A motion supported in this way can be defeated either by the non-moving party submitting **its own** evidence proving the fact at issue (thus demarking a triable issue), or by the non-movant showing, pursuant to Rule 56(d), that because discovery is incomplete, "it cannot present facts essential to justify its opposition," so that a ruling on summary judgment would be premature.

---

"who would not have the trial proof burden" has two separate ways of discharging his Rule 56(c) burden. Martin B. Louis, *Federal Summary Judgment Doctrine: A Critical Analysis*, 83 Yale L.J. 745, 749-50 (1974). "First, through discovery he can obtain a preview of his opponent's evidence on an essential element" and then summarize why "the evidence is insufficient to discharge the opponent's production burden." *Id.* at 750. "Second, by previewing his own proof he can attempt to show the nonexistence of an essential element asserted by the opposing party." *Id.*

**A132**

For there to be a "genuine" issue about the fact, the evidence must be such "that a reasonable jury could return a verdict for the nonmoving party." *Id.* In determining whether there is a genuine issue of material fact, the Court is required to resolve all ambiguities and draw all inferences in favor of the nonmoving party. *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 83 (2d Cir. 2004). But where there is **no** evidence in the record "from which a reasonable inference could be drawn in favor of the non-moving party on a material issue of fact," summary judgment is permissible. *Catlin v, Sobol*, 93 F.3d 1112, 1116 (2d Cir. 1996).

**A133**

## ARGUMENT

### I.    The City Has Failed to Meet its Initial Burden to Show That It Did Not Cause or Create the Dangerous Crosswalk Condition

The sole evidence presented by the City in support of its assertion that Quinn will be unable to prove at trial that the City caused or created the hazardous condition that caused his injury consists of two affidavits of its employees, attesting that they found **no records** of any City employee or contractor ever repairing a pothole at the location at which Quinn was injured. Def. Mem. at 19-20 (citing Exhibits I and G to ECF No. 84-1). See also Def. Statement of Undisputed Facts (ECF No. 84-2), ¶¶ 13-26. The problem, however, is that the **absence** of records proving that the City repaired the pothole does not prove that the City **did not** repair the pothole nor that, assuming the City did repair the pothole, it repaired it properly. Additionally, the City never laid a proper foundation for the records pursuant to business records exception Fed. R. Evid. 803(6). They merely stating that they looked and found various records is not enough to lay a foundation.

For the City's motion utterly ignores evidence from an expert witness, submitted by Quinn two years ago, proving that Quinn was injured due to an improperly repaired pothole. **(Exhibit "2" ¶ 25).** In ¶ 12 of the Declaration, he specifically concluded that the hazardous condition was due to "inadequate repair and improper partial repair of the pothole by the City of New York, as well as deferred maintenance and inspection by Con Edison, all of which occurred prior to the accident."

The City has failed in its initial burden because of its silence on this evidence that, in fact, the City caused or created this hazard, through its improper repair of the pothole. True, Mr. Farahnik did not cite records documenting the City's prior repair. But as an expert familiar with who is responsible for repairing potholes in city streets, he concluded that it was obviously the City that did the repair. The City's summary judgment motion announcing that its employees found no record of the repair is, again, no proof that it did do the repair. At most it is proof either that the City's records are incomplete, or that its employees did an inadequate search —matters that counsel for Quinn intend to follow up on in discovery.

## II.        Even if the City Has Met Its Initial Burden, Quinn's Evidence Establishes a Genuine Issue of Material Fact

It is the opinion of our expert Mr. Farahnik "with a reasonable degree of engineering certainty that the cracked, broken, in chunks, uneven and partially missing roadway surfacing, as well as improperly patched/resurfaced section of the pothole, caused Mr. Quinn's accident". In addition, his opinion was that-"the foregoing defects were due to combined effects of inadequate repair and improper partial repair of the pothole by the City of New York, as well as deferred maintenance and inspection by Con Edison, all of which occurred prior to the accident" **(Exhibit "2" ¶12)**. Therefore, there remains an issue of material fact as to **whether the City failed to inspect the roadway or maintain the street in proper manner.**

Additionally, this motion for summary judgment is premature as there has been no discovery. A party contending that a summary judgment motion is premature

**A135**

must demonstrate that discovery might lead to relevant evidence or that the facts essential to justify opposition to the motion were exclusively within the knowledge and control of the movant. *Valencia v Glinski,* 219 AD3d 541 [2d Dept 2023]. Quinn needs to examine a clearer copy of the Big Apple Map, Plaintiff needs to cross examine all of the researchers who conducted the record research regarding the work orders, the repairs and needs to cross examine the City inspector who looked over the repairs in order to determine if the defect was caused due to the repairs. Plaintiff needs to cross examine Ms. Yelena Pasynkova regarding the repair order DM2017235027 that was generated on August 22, 2017 before the accident at the location of the accident, Ms. Pasynkova alleges in her Affidavit that the defect was closed and then again a repair order DM2019019002 was generated for the same location on January 17, 2019 which was allegedly closed on January 18, 2019 only a few months before the date of the accident **(Exhibit "6").** It is Plaintiff's case that the defect was not repaired properly, hence causing Plaintiff's accident. Therefore, it is important and worthwhile to question the repair inspector and Ms. Pasynkova regarding these defects.  We also need to cross examine City's witness and ask if  there is any available database to help identify the location of potholes or GAS utility boxes in various areas of the City and if it would come up on Big Apple Map. Defendants have no provided any repair orders and work orders for the repairs done after the accident **(Exhibit "3").** We would need those repair orders to justify our opposition to the summary judgment. All of this discovery will lead to relevant evidence essential to justify opposition to Defendant's motion for summary judgment.

### III. THE CITY HAD PRIOR WRITTEN NOTICE OF THE SUBJECT CONDITION PURSUANT TO NEW YORK CITY ADMINISTRATIVE CODE §7-201

a. <u>Big Apple Map</u>

As will be shown hereinafter, the City did have prior written notice of the defect on the location where Quinn's accident happened because the Big Apple Map shows the defect that caused Quinn's accident. Not only did the City have prior written notice of the defect by way of Big Apple Map but also by way of Complaints from citizens and work orders. Therefore, the argument that City did not have prior written notice is false and bogus.

Maps prepared by Big Apple Pothole and Sidewalk Protection Committee, Inc. and filed with the DOT serve as prior written notice of defective conditions depicted thereon (See, *Weinreb v City of New York,* 193 A.D.2d 596, 598, 597 N.Y.S.2d 432; *Acevedo v City of New York,* 128 A.D.2d 488, 489, 512 N.Y.S.2d 414; *Matter of Big Apple Pothole & Sidewalk Protection Comm. v Ameruso,* 110 Misc. 2d 688, 691, 442 N.Y.S.2d 860). The Big Apple Map (citing Exhibit G-5 to ECF No. 84-15 at Pg. 287-288) clearly shows that there is a "Hole or hazardous depression", "Extended section of broken, misaligned, or uneven curb", "Extended section of potholes or other hazards", "Extended section of raised or uneven sidewalk" "obstruction protruding from sidewalk" at the  intersection of 53rd Street and 6th Avenue where the accident happened. Therefore, there was clear written notice to the City regarding the defects at the exact location where Mr. Quinn injured himself. The Big Apple is annexed at

**A137**

**Exhibit "4"** along with Key to Map Symbols for Court's convenience.

      b.  <u>City  has acknowledged that there is a defect</u>

     In *Bruni v. City of New York,* 2 NY3d 319, 811 N.E.2d 19, 778 N.Y.S.2d 757 the court held that a written statement showing that the city agency responsible for repairing a condition had first-hand knowledge both of the existence and the dangerous nature of the condition is an "acknowledgement" sufficient to satisfy the Pothole Law . The "acknowledgement" alternative in paragraph (2) of the Pothole Law appears to be designed to make written notice to City unnecessary where there is documentary evidence that serves the same function—to demonstrate that the responsible city agency knew of the hazard and had an opportunity to remedy it. This purpose can be served as well by an internal document as an external one.

     It is submitted that there is a  Pothole Defect Complaint made on August 22, 2017-Defect No.: DM2017235027  for West 52nd Street to West 53rd Street to DOT (citing Exhibit G- Exhibit G-5 to ECF No. 84-15 at Pg. 270-280) The complaint states- "Pothole Defect" "Damaged Patchwork" . There is Manhattan Street Maintenance Pothole Sheet dated August 23, 2017 too. **(Exhibit "5")**.  Again on January 17, 2019 a repair Order DM2019019002 was generated on January 17, 2019 for the accident location and a pothole crew went to the location where they literally took three minutes to repair and do street maintenance. **(Exhibit "6").** Therefore, the City has acknowledged that there is a defect and hence it fulfills the "written notice" requirement by way of written acknowledgement.  Additionally, City had summoned

**A138**

Con Ed to appear for a hearing on November 14, 2018 as Con Ed had opened the street at 1301 6th Avenue between West 52nd Street and West 53rd Street without City permit which again goes to show that City had a notice of the defect.

### c. City created the dangerous defective condition

Where Plaintiff alleges in the complaint that the City created the alleged defect, the City must "establish, as part of its prima facie showing, both that it did not receive prior written notice of the alleged defect, and that it did not create the alleged defect through an affirmative act of negligence". *Wald v. City of New York,* 115 AD3d 939, 982 N.Y.S.2d 534). Under § 7-201 (c)(2), there is no requirement that the City have prior written notice of an alleged defect where the City either caused or created the defect (*Gonzalez v City of New York,* 268 AD2d 214, 215, 700 N.Y.S.2d 462 [1st Dept. 2000], *See also, Cuffey by Cuffey v City of New York,* 255 AD2d 203, 203, 680 N.Y.S.2d 14 [1st Dept. 1998]).

Therefore, arguendo, even if there is no written notice as alleged by the City, the instant case falls under an exception to the written notice requirement.

Two exceptions to the written notice are recognized, "namely, where the locality created the defect or hazard through an affirmative act of negligence and where a special use confers a special benefit upon the locality" (*Amabile v City of Buffalo*, 93 NY2d 471, 474, 715 NE2d 104, 693 NYS2d 77 [1999]; see *Abano v Suffolk County Community Coll.,* 66 AD3d 719, 887 NYS2d 200 [2009]).The First and Second Departments have limited the rule that the municipality's affirmative negligence

**A139**

obviates the need for prior written notice of a defect to those situations where the work done by the municipality immediately results in the existence of a dangerous condition. *Yarborough v. City of New York,* 10 NY3d 726 (2008). In *Bielecki v. City of New York,* 14 A.D. 3d 201 (1st Dep't 2005), where the plaintiff alleged injuries from stepping into an ankle-deep hole in a pedestrian pathway in Central Park, the court held that the affirmative negligence exception to the notice requirement is limited to work by the city that "immediately results in the existence of dangerous condition". In the instant case, the City conducted work at the location and it immediately created the defect.

The City worked at the same location several times as seen vide the repair orders dated August 22, 2017; January 17, 2019. City had provided Street Opening Permit to Con Ed too which was valid from December 12, 2018, to December 13, 2018 and later converted to January 2, 2019 for repairs, this too was only a few months before the accident. Work was done on the same location on January 17, 2019, only a few months before Plaintiff's accident, which goes to show that the work by City resulted in existence of dangerous condition. (citing Exhibit "I1" to ECF No. 84-17 at pg. 21). Another Street Opening permit was granted to Con Ed by the City on January 23, 2019 (citing Exhibit "I1" to ECF No. 84-17 at pg. 27). February 12, 2019 (citing Exhibit "I1" to ECF No. 84-17 at pg. 32), April 2, 2019 (citing Exhibit "I1" to ECF No. 84-17 at pg. 38), June 6, 2019 (citing Exhibit "I1" to ECF No. 84-17 at pg. 44).

Therefore, the City had written notice of the defect pursuant to the NYC Administrative Code § 7-201 by way of Big Apple Map, complaints, work orders etc

**A140**

and even if not so, the City created the defect and dangerous condition.

## IV.  The Notice of Claim provided information sufficient to enable the City to investigate

The Defendants allege that contrary to Notice of Claim, Quinn testified that he fell due to a pothole and not due to the gas utility box. This is a complete misrepresentation of Plaintiff's 50-H testimony and the Notice of Claim. Defendants are twisting Quinn's layman and colloquial way of explaining the defect in order to avoid liability and simultaneously reading the Notice of Claim very narrowly. The issue Defendants are railing about is no more than a straw man.

Firstly, Defendants have conveniently omitted an important part of the Notice of Claim by only stating what is favorable to Defendants. The Notice of Claim states "On July 3, 2019, while Claimant Francis Quinn, Jr. was a lawful pedestrian on the crosswalk of the South side of 6th Avenue at its intersection with 53rd Street, in the County of New York, City and State of New York, he was caused to trip and fall due to a defective and hazardous gas utility box. The defect is located within the crosswalk of the Southside of 6th Avenue and its intersection with 53rd Street, in the County of New York, City and State of New York, The defect consists of an uneven, raised, depressed, mis-leveled gas utility box."  Photos showing the depression next to the utility box was attached to the Notice of Claim.

Secondly, during the deposition the Plaintiff described the defect as follows:

*Q. Are you claiming that you tripped*

**A141**

*on the utility box?*
*A No, I'm claiming that when I was*
*walking across the street, my left foot went*
*into the pothole that was up against the*
*utility box and my ankle twisted and I*
*tripped and I fell and landed, crashing on my*
*right shoulder.*
*Q. What was the distance between the*
*pothole and the utility box?*
*A. It was up against it, maybe --*
*pretty much up against the lip of the utility*
*box.*
*Q. Was the utility box raised up*
*above the surrounding pavement?*
*A It was raised because there was a*
*pothole just in front of it, yes. It was*
*eroded.*
*Q Sir, you had referred to it as an*
*eroded area and also a pothole. Are you*
*using those two words to mean the same?*
*A Yes, it was a pothole. A pothole*
*is an eroded area.*

(citing Def's Exhibit "F")

Plaintiff is clearly saying that the utility box was raised and eroded because there was a pothole just in front of it and that he was using the words pothole and eroded area to mean the same thing. He states that is the reason he tripped and fell. Plaintiff also states that he fell due to the pothole which was right by the lip of the utility box. Now it is obvious that Plaintiff would not know if the utility box has caused the area to be uneven, raised, eroded or it is the other way around-the pothole caused the utility box to be uneven, raised, depressed, mis-leveled.

Thirdly, in determining the sufficiency of a notice of claim in the context of a motion to dismiss, a court may consider the testimony provided during a hearing pursuant to NY CLS Gen Mun § 50-h., and any other evidence before the court, as

15

**A142**

well as the notice of claim (see *D'Alessandro v NY City Tr. Auth.,* 83 NY2d 893 [1994])

NY CLS Gen Mun. § 50-e (6) provides that a "mistake, omission, irregularity or defect" in the notice of claim may be corrected, supplied or disregarded" in the court's discretion, provided that such mistake, omission, irregularity, or defect was made in good faith, in the absence of any prejudice to the municipal defendant (see *D'Alessandro v New York City Tr. Auth,* 83 NY2d 891, 893, 636 NE2d 1382, 613 NYS2d 849 [1994]; *Ingle v New York City Tr. Auth.,* 7 AD3d 574, 575, 777 NYS2d 154 [2004])

"A notice of claim which, inter alia, sufficiently identifies the claimant, states the nature of the claim and describes the time when, the place where, and the manner in which the claim arose, is a condition precedent to asserting a tort claim against a municipality". **Although "the statute does not require 'those things to be stated with literal nicety or exactness"** (*Brown v City of New York,* 95 NY2d at 393, quoting *Purdy v City of New York,* 193 NY 521, 523, 86 N.E. 560), a notice of claim must provide "'information sufficient to enable the city to investigate'" (*Brown v City of New York,* 95 NY2d at 393, quoting *O'Brien v City of Syracuse,* 54 NY2d at 358), and "must at least adequately apprise the defendant that the claimant would seek to impose liability under a cognizable theory of recovery" (*Steins v Incorporated Vil. of Garden City,* 127 AD3d at 959).

In making a determination on the sufficiency of a notice of claim, a court's inquiry is not limited to the "four corners of the notice of claim'" (*Washington v City*

**A143**

*of New York,* 190 AD3d 1009, 1011, 141 N.Y.S.3d 62, quoting Vallejo-Bayas v New York City Tr. Auth., 103 AD3d 881, 882, 962 N.Y.S.2d 203). "A court may consider evidence adduced at a [ NY CLS Gen Mun §  50-h hearing to correct a good faith and nonprejudicial technical mistake, omission, irregularity or defect in the notice of claim" (id., citing  NY CLS Gen Mun § 50-e 6 ), as well as "such other evidence as is properly before the court" (*D'Alessandro v New York City Tr. Auth.,* 83 NY2d 891, 893, 636 N.E.2d 1382, 613 N.Y.S.2d 849).

Therefore, even if the Notice of Claim does not mention the pothole, it was corrected by the Plaintiff during the §50-H hearing. *Power v Manhattan & Bronx Surface Operating Auth.,* 16 AD3d 655 [2d Dept 2005] (Although the plaintiff provided the defendants with the wrong time of the accident in her notice of claim, she corrected such error at her  NY CLS Gen Mun § 50-h hearing. Further, the plaintiff provided the correct date and place of the accident in her notice of claim, as well as the circumstances regarding the accident at her  NY CLS Gen Mun§ 50-h hearing. Therefore, in the absence of any bad faith by the plaintiff and the lack of prejudice to the defendants, the Supreme Court properly denied the motion to dismiss the complaint.)

The Judgements referred to be the Defendants are inapplicable to the case in hand.

*Gonzalez* is not applicable because we are not attempting to amend the notice of claim to add a cause of action. *Heckel* is not applicable as Plaintiff is not relying on

**A144**

any on evidence in support of a theory of liability not advanced in the notice of claim. In Heckel, Plaintiff was relying on Bills of Particulars to add an additional claim. That is not the case here, Plaintiff is relying on Notice of Claim and 50-H testimony together which is allowed. *Power v Manhattan & Bronx Surface Operating Auth.,* 16 AD3d 655 [2d Dept 2005]. *Jacobowitz* is not applicable either as Plaintiff's Notice of Claim has set forth, inter alia, the nature of the claim, and the time, place, and manner in which the claim arose

In *Lipani*, the Court infact denied Defendants motion for summary judgment because Defendants failed to eliminate all triable issues of facts. The Court also stated that "In any event, HN3 in passing on the sufficiency of a notice of claim, a court is not limited to the notice of claim itself (see *D'Alessandro v New York City Tr. Auth.,* 83 NY2d 891, 893, 636 NE2d 1382, 613 NYS2d 849 [1994]). "[A] mistake, omission, irregularity or defect made in good faith . . . may be corrected, supplied or disregarded, as the case may be, in the discretion of the court, provided it shall appear that the other party was not prejudiced thereby". In making a determination of prejudice, "the court may look to evidence adduced at a section 50-h hearing, and to such other evidence as is properly before the court" (*D'Alessandro v New York City Tr. Auth.,* 83 NY2d at 893)." Therefore, this is totally inapplicable to Defendant's contention and to the case in hand.

## CONCLUSION

**A145**

For all these reasons, Plaintiffs Francis and Lori Quinn respectfully request that the Court deny Defendants' motion for summary judgment.

Dated:        New York, New York
              February 28, 2024

                              Respectfully submitted,

                              **NAPOLI SHKOLNIK, PLLC**

                              */s/ Joseph Napoli*

                              JOSEPH NAPOLI
                              360 Lexington Avenue, 11th Floor,
                              New York, New York 10017
                              Tel: (212) 397-1000
                              E-mail:  JNapoli@NapoliLaw.com

                              *Attorneys for Plaintiffs*

TO:
HON. SYLVIA O. HINDS-RADIX
Corporation Counsel
Attorney for Defendants/Third-Party Plaintiffs The
City of New York and The City of New York S/H/A
The New York City Department of Transportation
100 Church Street
New York, New York 10007

Alexandra Hastings
Assistant Corporation Counsel
The City of New York Law Department
100 Church Street
New York, New York 10007-2601
Tel: (212) 356-7179
ahasting@law.nyc.gov

       (by ECF)

19

**A146**

**Declaration of Joseph P. Napoli, Esq.,
filed Feb. 28, 2024 (Dkt. 86)**

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

_____

| | |
|---|---|
| FRANCIS PAUL QUINN, JR. ) <br> and LORI ANN QUINN, ) <br> ) <br> *Plaintiffs*, ) <br> v. ) <br> ) <br> THE CITY OF NEW YORK and ) <br> THE NEW YORK CITY ) <br> DEPARTMENT OF ) <br> TRANSPORTATION, ) <br> ) <br> *Defendants.* ) <br> _____) <br> THE CITY OF NEW YORK and ) <br> THE NEW YORK CITY ) <br> DEPARTMENT OF ) <br> TRANSPORTATION, ) <br> ) <br> *Third-Party Plaintiffs*, ) <br> ) <br> v. ) <br> ) <br> CONSOLIDATED EDISON, INC., ) <br> ) <br> *Third-Party Defendants.* ) <br> _____) | Case No. 1:20-cv-02666-NRB <br><br> **DECLARATION OF** <br> **JOSEPH P. NAPOLI, EQ.** |

Plaintiffs Francis Paul Quinn, Jr. ("Quinn") and Lori Ann Quinn submit this declaration in support of the opposition to Defendant's motion for summary judgment pursuant to 56 of the Civil Rules of Federal Procedure.

1. Annexed at Exhibit 1 is a true and correct copy of Plaintiff's Mediation Memorandum in Quinn v. Con Ed.

**A148**

2. Annexed at Exhibit 2 is a true and correct copy of Expert Declaration of Joseph Farahnik, P.E., NSPE, April 28, 2022.

3. Annexed at Exhibit 3 are the photos of the accident location. One photo before the accident and  three photo after the accident and the repairs.

4. Annexed at Exhibit 4 is a true and correct copy of Big Apple Map along with the Key to Map Symbols.

5. Annexed at Exhibit 5 is a true and correct copy of the Repair Order DM2017235027 and complaint dated August 22, 2017.

6. Annexed at Exhibit 6 is a true and correct copy of the Repair Order DM2019019002 and complaint dated January 17, 2019.

Dated:     New York, New York
        February 28, 2024

Respectfully submitted,

**NAPOLI SHKOLNIK, PLLC**

*/s/ Joseph Napoli*

JOSEPH NAPOLI
360 Lexington Avenue, 11th Floor,
New York, New York 10017
Tel: (212) 397-1000
E-mail:  JNapoli@NapoliLaw.com

*Attorneys for Plaintiffs*

TO:
HON. SYLVIA O. HINDS-RADIX
Corporation Counsel
Attorney for Defendants/Third-Party Plaintiffs The
City of New York and The City of New York S/H/A

**A149**

The New York City Department of Transportation
100 Church Street
New York, New York 10007

Alexandra Hastings
Assistant Corporation Counsel
The City of New York Law Department
100 Church Street
New York, New York 10007-2601
Tel: (212) 356-7179
ahasting@law.nyc.gov

    (by ECF)

**A150**

**Plaintiffs' Local Rule 56.1 Response and
Counterstatement of Material Facts,
filed Feb. 28, 2024 (Dkt. 87)**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| FRANCIS PAUL QUINN, JR. and LORI ANN QUINN, | ) ) ) | |
| *Plaintiffs,* | ) ) | |
| v. | ) ) | Case No. 1:20-cv-02666-NRB |
| THE CITY OF NEW YORK and THE NEW YORK CITY DEPARTMENT OF TRANSPORTATION, | ) ) ) ) ) | **PLAINTIFFS' LOCAL RULE 56.1 RESPONSE AND COUNTERSTATEMENT OF MATERIAL FACTS** |
| *Defendants.* | ) ) | |
| THE CITY OF NEW YORK and THE NEW YORK CITY DEPARTMENT OF TRANSPORTATION, | ) ) ) ) | |
| *Third-Party Plaintiffs,* | ) ) ) | |
| v. | ) ) ) | |
| CONSOLIDATED EDISON, INC., | ) ) | |
| *Third-Party Defendants.* | ) ) | |

Pursuant to Rule 56.1 (b) and (c) of the Local Rules of the United States District Court for the Eastern District of New York and Rule 56 of the Federal Rules of Civil Procedure, Plaintiffs, Francis Paul Quinn, Jr., and Lori Ann Quinn, by and through their counsel, respectfully submit the following response and counterstatement of material facts to the Statement of Material Facts of the Defendant:

**Plaintiffs' Specific Responses to Defendants' Rule 56.1 Statement**

**A152**

1.     Disputed in part.  Defendants are misrepresenting the Notice of Claim by omitting an important part of the Notice of Claim by only stating what is favorable to Defendants. The Notice of Claim states "On July 3, 2019, while Claimant Francis Quinn, Jr. was a lawful pedestrian on the crosswalk of the South side of 6th Avenue at its intersection with 53rd Street, in the County of New York, City and State of New York, he was caused to trip and fall due to a defective and hazardous gas utility box. The defect is located within the crosswalk of the Southside of 6th Avenue and its intersection with 53rd Street, in the County of New York, City and State of New York, The defect consists of an uneven, raised, depressed, mis-leveled gas utility box." Photos showing the depression next to the utility box was attached to the Notice of Claim.

2.     Admit.

3.     Admit.

4.     Admitted partly.  The defect was real and not an alleged defect.

5.     Admit.

6.     Admit.

7.     Disputed. This statement and the several searches that Defendants are referring to double hearsay and triple hearsay. The person conducting the alleged searches of its databases for records was never deposed and such a person conducting the research must be deposed prior to deciding the motions to question the extent incompleteness of this search.

8.     Disputed pursuant to reasons stated in para 7.

9.     Disputed pursuant to reasons stated in para 7.

**A153**

10.    Disputed pursuant to reasons stated in para 7.

11.    Disputed pursuant to reasons stated in para 7.

12.    Disputed pursuant to reasons stated in para 7.

13.    Disputed pursuant to reasons stated in para 7.

14.    Disputed. It is merely hearsay. The alleged crew supervisor conducting the alleged inspections was never deposed and such a person conducting the research must be deposed prior to deciding this motion.

15.    Disputed. It is merely hearsay. We need the deposition of the crew supervisor and the documentation of what they did.

16.    Disputed. It is merely hearsay.

17.    Disputed. It is merely hearsay.

18.    Admit.

19.    Disputed. This repair was undertaken before the date of the accident and has contributed to creating the dangerous condition.

20.    Admit.

21.    Disputed. This repair was undertaken before the date of the accident and has contributed to creating the dangerous condition.

22.    Admit.

23.    Disputed. This repair was undertaken before the date of the accident and has contributed to creating the dangerous condition.

24.    Disputed. This repair was undertaken before the date of the accident and has contributed to creating the dangerous condition.

25. Disputed. It is merely hearsay. It is the opinion of our expert "with a reasonable degree of engineering certainty that the cracked, broken, in chunks, uneven and partially missing roadway surfacing, as well as improperly patched/resurfaced section of the pothole, caused Mr. Quinn's accident". In addition, his opinion was that "the foregoing defects were due to combined effects of inadequate repair and improper partial repair of the pothole by the City of New York, as well as deferred maintenance and inspection by Con Edison, all of which occurred prior to the accident" (Exhibit "2" ¶12) . We also need the depositions of the researchers and supervisor of the repair crew to further respond to these alleged undisputed facts.

26. Disputed. It is merely hearsay.

**Plaintiff's Counterstatement of Undisputed Material Facts**

1. Plaintiff Francis Quinn, Jr. ("Quinn") and his wife, Lori, against Defendants, the City of New York and its Department of Transportation ("City"), arising out of an incident that occurred at the intersection of 53rd Street and Sixth Avenue on July 3, 2019.

2. While crossing Sixth Avenue, within the crosswalk, Quinn was caused to fall and sustain severe and permanent injuries due to the defective and hazardous condition of the within crosswalk. Verified Complaint (ECF No. 3), ¶ 23.

3. The injuries sustained by Quinn, a professional golfer, sidelined him for several years, costing him millions of dollars in income, and jeopardizing his ability to support his family. (Exhibit "1")

4. Photographs taken immediately after the incident, and a subsequent investigation by a highly qualified expert retained by Quinn, revealed that a

proximate cause of Quinn's injuries was a pothole in the crosswalk, abutting a ConEd gas utility box, which was defective, and extremely hazardous, because it had been the subject of an improper repair by the City. (Exhibit "2" ¶ 25).

5.    That it was the City, and not some other entity or person, that created this condition as the result of a defective pothole repair is evident from that fact that shortly after Quinn's injury, the City dispatched workers who then properly repaired the pothole (thus demonstrating the City's responsibility for the hazardous condition). (Exhibit "3")

Dated:    New York, New York
          February 28, 2024

                              Respectfully submitted,

                              **NAPOLI SHKOLNIK, PLLC**

                              _/s/ Joseph Napoli_

                              JOSEPH NAPOLI
                              360 Lexington Avenue, 11th Floor,
                              New York, New York 10017
                              Tel: (212) 397-1000
                              E-mail:  JNapoli@NapoliLaw.com

                              _Attorneys for Plaintiffs_

TO:
HON. SYLVIA O. HINDS-RADIX
Corporation Counsel
Attorney for Defendants/Third-Party Plaintiffs The
City of New York and The City of New York S/H/A
The New York City Department of Transportation
100 Church Street
New York, New York 10007

Alexandra Hastings

**A156**

Assistant Corporation Counsel
The City of New York Law Department
100 Church Street
New York, New York 10007-2601
Tel: (212) 356-7179
ahasting@law.nyc.gov

(by ECF)

**A157**

**Exhibit 1, Mediation Memo (Dkt. 87-1)**

# EXHIBIT 1

A160

# Medical Treatment

- On July 23, 2019, Mr. Quinn underwent surgery for the glenoid fracture of his right shoulder. Dr. Mark Price preferred to operate arthroscopically but when that was not possible due to missing fragments, he withdrew the arthroscope and converted to an open Latarjet.

**A161**



# Medical Treatment
## Graphic of Open Latarjet Surgery

Case 1:20-cv-02666-NRB    Document 87-1    Filed 02/28/24    Page 4 of 33

A162



# Medical Treatment

Picture of Open
Latarjet Surgery

# Dr. McMahon, Orthopedic Expert

- <u>Diagnosis</u>: Comminuted, displaced, intraarticular, anterior, inferior, glenoid fracture of the right shoulder. Hill-Sachs fracture of the right shoulder. This necessitated an arthroscopic debridement followed by an open Latarjet procedure (transfer of the coracoid bone to the glenoid, fixated with two screws).

- <u>Causation</u>: The above diagnosis occurred as a result of the accident of July 3, 2019.

A163

A164

# Dr. McMahon, Orthopedic Expert

- "The patient's prognosis is poor. His condition is permanent. At the time of his visit, he was three months from the time of the accident and remained symptomatic to the extent that he continued taking anti-inflammatory medication."

- "His condition interfered with his quality of life, his activities of daily living and his ability to work as a professional golfer on the Champions' Tour. He was unable to return to his job since the accident."

A165

# Dr. McMahon, Orthopedic Expert

- "The patient is permanently disabled and will be unable to play golf in the future."

- "As a result of the injury he sustained and the surgery he underwent, the patient is at increased risk of developing post-traumatic arthritis of the right shoulder, as well as at increased risk of requiring a total shoulder replacement (cost: $35,000)."

# Medical Treatment

- On January 22, 2020, Mr. Quinn received a corticosteroid and anesthetic injection in the right glenohumeral joint.

- Mr. Quinn is scheduled for another right shoulder surgery for arthroscopic debridement and capsular release on March 6, 2020 with Dr. Mark Price.

- Mr. Quinn has been undergoing physical therapy since August 2019 to the present.

A166

# Pain and Suffering

- Mr. Quinn has never had a single day free from pain since the day of the accident. It cut short his career as a professional golfer on the Championship Tour. Chronic pain has been his constant companion.

A167

A168

# Dr. Fayer, Psychiatrist

- "Mr. Quinn has had persistent difficulty sleeping. He has early morning awakening three to four times a night, and cannot find a comfortable position to sleep because of the necessity of not moving his shoulder in certain ways. He also has problems with range of motion of his shoulder, and in such minor things as reaching for objects."

A169

# Dr. Fayer, Psychiatrist

- "Mr. Quinn has experienced feelings of sadness as a result of the injury and impact on his life. This is the most significant injury he has ever experienced, and certainly has derailed his career for an indeterminate period of time. Mr. Quinn is a world-class professional golfer, and an injury like this is devastating to his psychological well-being."

# Pain and Suffering

- Dr. Fayer states, "Mr. Quinn, as a result of the accident, has an Adjustment Disorder with mixed anxiety and a depressed mood (F43.23). He also has a sleep disorder, Insomnia type, due to a general medical condition (G47.01)."

- Mr. Quinn is presently seeing Dr. C. Graham Campbell, a psychologist, on a regular basis for his problems outlined in Dr. Fayer's report.

A170

A171

# Dr. Philip J. Lahey, Jr.,
# Mr. Quinn's Treating Physician

- "Given the nature of the injury and the surgery performed, it is highly probable that he will never achieve a full range of motion of the shoulder. As a result of this, it is my opinion that he will never be able to regain his pre-injury function; and as a result of the injury, he will never be able to play competitive golf at his previous level of proficiency."

Case 1:20-cv-02666-NRB    Document 87-1    Filed 02/28/24    Page 14 of 33

# Louis Oosthuizen, Professional Golfer

A172



A173

# Tiger Woods, Professional Golfer



# Scott McCarron,
# PGA Tour Champions Champion

- "Fran Quinn was well on his way to becoming a Winner on the PGA tour Champions. He has demonstrated he had what it took to win. Over the past 2 ½ seasons, Fran accumulated two third place finishes, a fourth place finish, and a fifth place finish in Newport Beach. I had the opportunity to play with Fran on that Saturday when he increased his lead to 3 shots going into final round. I knew his time to win would eventually come as it did for me. With his length and solid short game, I believe Fran Quinn could have been a top 20 player on the PGA tour Champions."

A174

# Loss of Earnings
# Mr. Provder, Vocational Rehab Expert

- "Mr. Quinn is unable to perform his past relevant work as a Professional Golfer."

- "Mr. Quinn anticipated earning $650,000 to $900,000 per annum and wanted to remain on this tour until age 68 to 70."

- "Mr. Quinn has sustained a significant diminution of earning capacity over his work life due to his impairments."

A175

# Loss of Earnings
# Mr. Provder, Vocational Rehab Expert

- "It is recommended that Mr. Quinn receive the treatment and therapy contained in the accompanying Life Care Plan to assist him in his day-to-day functioning."

- With respect to Mr. Quinn's Life Care Plan, $250,000 to $300,000 as future expenses is projected.

A176

# Loss of Earnings
## Dr. Freifelder, Economist

- "The accident-related economic loss of Francis Quinn, Jr. has been estimated to a reasonable degree of economic certainty in this report. As the figures in the Summary Table show, the estimated amount of his past economic loss is $493,867. Mr. Quinn's future economic loss has been estimated in the Summary Table as $3,007,267 to $4,884,943. The estimated total of his past and future economic loss is $3,501,134 to $5,378,811."

A177

# Pain and Suffering Damages

- In *Peterson v. MTA*, the Second Department concluded that awards of $800,000 for past pain and suffering and $800,000 for future pain and suffering were permissible for a plaintiff who underwent surgery for rotator cuff tears in both her shoulders. *Peterson v. MTA*, 155 A.D.3d 795, 64 N.Y.S.3d 266 (2d Dep't 2017). Plaintiff subsequently underwent physical therapy, but she continued to experience pain and suffered a permanent residual diminution of her shoulders' range of motion which limit her physical activity.

A178

A179

# Pain and Suffering Damages

- In *Guallpa v. Key Fat Corp.*, the Second Department concluded that awards of $791,000 for past pain and suffering and $1,428,571.43 for future pain and suffering were permissible for the plaintiff. *Guallpa v. Key Fat Corp.*, 98 A.D.3d 650, 950 N.Y.S.2d 165 (2d Dep't 2012).

- In *Siano v Consolidated Edison Company of New York, Inc.*, No. 21377/2012, the jury awarded $17,480,000.00 to the plaintiff (New York Law Journal of Monday, December 9, 2019, p. 5).

**A180**

# Pain and Suffering Damages

- In *Kane v Consolidated Edison, Inc.*, 147 A.D.3d 421 (1st Dept. 2017), the jury awarded the 70-year-old plaintiff $4,380,000 for past pain and suffering and $7,442,000 for future pain and suffering for severe injuries to her lower leg and foot, for a total of $11,822,000.

**Should this case go to trial and the jury agrees with plaintiff's expert(s), the defense faces a multitude of issues:**

1. Under CPLR 4111(e), in a CPLR 50-B case, the jury's only job is to give out a gross award without regard to present value.

2. Under *Shultz v. Harrison Radiator Division General Motors Corporation*, the jury is allowed to take inflation testimony into consideration when rendering this gross award, resulting in an award being based on the future pay out with inflation rather than the current cost.

A181

# Should this case go to trial and the jury agrees with plaintiff's expert(s), the defense faces a multitude of issues:

3. Under CPLR 5041(e), the resulting award will be "adjusted" to present value by discounting by the discount rate in effect on the damage decision date while simultaneously increasing by the statutory 4% increase.

4. Per *Bryant v. NYCHHC*, the 4% statutory increase is included in the present value calculation, the attorney's fee and the plaintiff's final monthly payments. Plaintiff's final monthly payment is based on the "future" rather than the "present" value of the award.

**A182**

**Should this case go to trial and the jury agrees with plaintiff's expert(s), the defense faces a multitude of issues:**

5. Under current market conditions, the projected value of the jury's award will be two or three times higher than the award itself.

**A183**

**Should this case go to trial and the jury agrees with plaintiff's expert(s), the defense faces a multitude of issues:**

Court of Appeals of New York.

Samuel DESIDERIO, an Infant by his m/n/g Gale

Organist v. Robert L. OCHS et al.

- included the jury's undiscounted award of $40,000,000 for future nursing care over 55 years, based on plaintiff economist's testimony of an annual expense of $262,800 a year for 55 years and an inflation rate of 3.3535%.

A184

# Should this case go to trial and the jury agrees with plaintiff's expert(s), the defense faces a multitude of issues:

- Under "old" CPLR 50-A (and current CPLR 50-B), the plaintiff's final annual payment was calculated by dividing the $40,000,000 jury award by 55 years, and arriving at an initial annual payment of $635,594* which would continue for the shorter of 55 years or the life of Samuel Desiderio, increasing by the statutory 4%.

*$635,594 must include various deductions off of the $40 million award, including offsets, the first $250,000 of futures paid in cash, expenses, etc.

A185

# Should this case go to trial and the jury agrees with plaintiff's expert(s), the defense faces a multitude of issues:

- By contrast, defense suggested a structure based on the plaintiff's actual loss of $262,800 per year for 55 years, increasing 3.335% annually.

- The Court of Appeals upheld the plaintiff's methodology, even though:

1. the ultimate pay out could exceed $137 million, and

2. The Court conceded that, without inflation, it would take roughly $12 million to "compensate" for the loss.

A186

**A187**

# Should this case go to trial and the jury agrees with plaintiff's expert(s), the defense faces a multitude of issues:

- While CPLR 50-A (med. mal. Statute) was re-negotiated in 2003, CPLR 50-B and its corresponding methodology was left untouched.

# Should this case go to trial and the jury agrees with plaintiff's expert(s), the defense faces a multitude of issues:

- In the case at present, plaintiff's economist will testify to future pay outs for loss of earnings, in the amount of $3,783,920 payable over the next 14 years, loss of retirement in the amount of $1,101,024 payable over the next 14 years and medical/life care expenses in the amount of $449,500 payable over the next 28/2 years.

**A188**

**Should this case go to trial and the jury agrees with plaintiff's expert(s), the defense faces a multitude of issues:**

- Assuming an award for past pain and suffering in the amount of $830,000, past loss of earnings in the amount of $370,985 an award for past loss of retirement in the amount of $122,882 and an award for future pain & suffering in the amount of $1.5 million payable over the next 28.2 years [reduced to 10 years per CPLR 5041(e)], the total award would amount to $8,158,311.

# Should this case go to trial and the jury agrees with plaintiff's expert(s), the defense faces a multitude of issues:

- Following the methodology of CPLR 5041(e) and the case precedents detailed herein above, using reasonable discount rates (based on the latest three-month average of the relevant Treasury yields), the present value of the total award would amount to two or three times larger than $9,000,797.17 with a total of $18,000,000 to $36,000,000.

A191

# Demand

- Based upon the above injuries, past medical expenses, past loss of earnings, and future loss of earnings, the Plaintiffs make a minimum demand of $9,000,000 with the jury potential sustainable verdict as high as $15,000,000.

**Plaintiffs' Exhibit 2, Expert Declaration of
Joseph Farahnik, P.E, NSPE,
dated Apr. 8, 2022 (Dkt. 87-2)**

# EXHIBIT 2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**Docket No.: 20-cv-2666 (NRB)**

FRANCIS PAUL QUINN, JR., and LORI ANN QUINN,

Plaintiff(s),

-*against*-

THE CITY OF NEW YORK and THE NEW YORK
CITY DEPARTMENT OF TRANSPORTATION,

Defendant(s).

**EXPERT DECLARATION OF
JOSEPH FARAHNIK, P.E., NSPE**

**JOSEPH FARAHNIK, P.E., NSPE**, declares as follows, under penalty of perjury:

1.    I earned my Bachelor of Science in Mechanical Engineering in June 1980 and my Master of Science in Mechanical Engineering in June 1983, both from Polytechnic University, Brooklyn, New York.

2.    I am a New York State registered Professional Engineer and am course certified in Accident Investigation, Legal Aspects of Safety, Ergonomics, Behavioral Based Safety, Fall Protection / Working on Elevated Structures, and Machine Guarding.

3.    I have been a Consulting Forensic Engineer since 1997. As a Consulting Forensic Engineer, I have investigated accidents related to stair, ramp, and walking surface slips, trip and falls, as well as playground, construction site, product liability and lead exposure cases. I have also evaluated defects of door, window, plumbing, and electromechanical cases. I am experienced in utilizing NYC, NYS, DOT, ANSI, ASTM, OSHA, Multiple Dwelling and Housing Maintenance regulations to support findings; I have conducted dozens of Forensic Engineering inspections; and I have served as an expert witness in numerous litigations.



4.      I have reviewed relevant documents and photographs in this action to determine the responsibilities of the City of New York with respect to the subject pothole. Specifically, the photo of the pothole on the date of the accident and the photo of the city's subsequent repair.

5.      I have been retained as an expert witness by non-parties Napoli Shkolnik LLP and Joseph Napoli.   I am being paid $400.00 per hour for my services.

## I.      Result of Findings

6.      It is reported that on July 3, 2019, the plaintiff was caused to misstep, trip, and fall at the pedestrian crosswalk located across the south side of Sixth Avenue, at its intersection with West 53rd Street, in Manhattan.

7.      A depressed 6"x 6" steel valve cover, also called a "valve box," is located within the path of pedestrian traffic at the crosswalk.

8.      At the time of the accident, a section of the asphalt roadway adjacent to this valve box was cracked, broken, in chunks, uneven and partially missing, forming a long narrow pothole of an irregular rectangular-type shape estimated to be 8" x 30".

9.      At the time of the accident, the pothole was partially patched/resurfaced, as evidenced by the different color and texture of the asphalt.

10.     The photographs I reviewed showed no signs of applied liquid asphaltic cement along the perimeter of the pothole, or along the perimeter of the partially patched/resurfaced area within the pothole area.


NAPOLI
SHKOLNIK PLLC
ATTORNEYS AT LAW

**A195**

11.     Based upon my review and the above-mentioned inspection, I conclude that there are instances of non-compliance with New York City codes and regulations and/or applicable industry standards, which I describe in more detail below.

12.     Ultimately, it is my professional opinion, with a reasonable degree of engineering certainty, that the cracked, broken, in chunks, uneven, and partially missing roadway surfacing, as well as improperly patched/resurfaced section of the pothole, caused Mr. Quinn's accident. Furthermore, it is my professional opinion, with a reasonable degree of engineering certainty, that the foregoing defects were due to combined effects of inadequate repair and improper partial repair of the pothole by the City of New York, as well as deferred maintenance and inspection by Con Edison, all of which occurred prior to the accident.

## II.     Applicable Codes, Regulations, and Standards

13.     According to Title 32, Chapter 2 the New York City Department of Transportation Highway Rules, § 2-09 pertains to Sidewalk, Curb and Roadway Work.  As relevant here, §2-09(a) requires owners or builders installing or repairing roadway pavement, sidewalk and curb to comply with the following requirement:

> All public infrastructure work shall be designed and installed in compliance with current highway engineering practice, the latest version of this publication, and the latest versions of these other Department publications: Standard Details of Construction, Standard Specifications, and Instructions for Filing Plans & Guidelines for the Design of Sidewalks, Curbs, Roadways and Other Infrastructure Components.


NAPOLI
SHKOLNIK PLLC
ATTORNEYS AT LAW

**A196**

§2-09(a)(2).

14.    § 2-11(e) of the New York City Department of Transportation Highway Rules pertains to excavation and restoration requirements, and § 2-11(e)(12)(ii) pertains to wearing course.

15.    According to § 2-11(e)(12)(ii):

> The finished grade of the wearing course shall be flush with surrounding pavement on all sides of the cut. The final wearing course shall conform to the Standard Specifications and Standard Detail Drawings. In the event a permanent restoration pavement installed settles more than two inches (2") below the surrounding existing surface during the life of the guarantee period, this shall be deemed a failure of the backfill compaction, in which case the permittee shall remove all of the failed backfill, down to the subsurface facility, and install new, properly compacted backfill.

16.    According to § 2-11(e)(12)(viii):

> The wearing course shall be properly sealed completely at the edges of the cut with liquid asphaltic cement ironed in with a heated smoothing iron or by means of infrared treatment to prevent water seepage into the pavement. The sealant applied to the wearing course must be properly maintained throughout the life of the guarantee period.

17.    According to § 2-11(e)(16)(ii):

> Guarantee period. Permittees shall be responsible for permanent restoration and maintenance of street openings and excavations for a period of three years on unprotected streets, and up to five years on protected streets commencing on the restoration completion date. This period shall be the guarantee period.


NAPOLI
SHKOLNIK PLLC
ATTORNEYS AT LAW

**A197**

18. The Department of Transportation publication titled *Standard Details of Construction*, drawing number MS 1003, designated as "Typical Roadway Cross-Section Resurfacing," states that "[the] Maximum transverse slope of 1/2" per foot [across the entire width of the roadway] or as ordered by engineer."

19. Furthermore, under "Standard Practice for Safe Walking Surfaces," issued under designation F1637 by the American Society for Testing and Materials (ASTM), Section 4 regarding "Exterior Walkways," states:

> Exterior walkways shall be maintained so as to provide safe walking conditions. (§ 4.7.1);
> Exterior walkway conditions that may be considered substandard and in need of repair include conditions in which the pavement is broken, depressed, raised, undermined, slippery, uneven, or cracked to the extent that pieces may be readily removed (§ 4.7.1.2).

### III.  **Affected Non-Compliances**

20. At the time of the accident, the subject roadway was in violation of Sections 2-09 and 2-11 of the New York City Department of Transportation Highway Rules, as well as drawing  MS 1003, "Typical Roadway Cross-Section Resurfacing," issued by the Department of Transportation in a publication titled *Standard Details of Construction.*

21. Additionally, the roadway was not in conformance with designation F1637, Sections 4.7.1 and 4.7.1.2, of the American Society of Testing and Materials standards.

### IV.  **Reasoning**

22. Here, the pothole presented an unanticipated and abrupt level difference along the walking path of the pedestrian traffic.



**A198**

23.     Pedestrians safely crossing the street would likely not see the pothole.   That is because they must keep pace with pedestrian traffic, pay attention to cars, and focus on their destination on the other side of the street.   They would not see expect, much less see, the level difference in the middle of their path.   For these reasons, the defects in the crosswalk created a hazardous condition that could – and did – lead to a dangerous misstep, trip and fall.

## V.     Conclusion

24.     Photographs evidence the damaged roadway surfacing in the form of the pothole as well as the improper partial repair of the pothole, creating an unsafe condition.

25.     It is my professional opinion, with a reasonable degree of engineering certainty, that the cracked, broken, in chunks, uneven, and partially missing roadway surfacing, as well as improperly patched/resurfaced section of the pothole, were the causes of Mr. Quinn's accident. Furthermore, it is my professional opinion, with a reasonable degree of engineering certainty, that these defects were caused by the City's creating the condition by its inadequate repair and improper partial repair of the pothole and Con Edison's deferred maintenance and inspection of the pothole.

Dated: Great Neck, New York
       April 28, 2022

JOSEPH FARAHNIK, P.E., NSPE

Sworn to before me this 29
day of April, 2022

Notary Public

IVAN RODRIGUEZ
Notary Public, State of New York
No. 01RO6116071
Qualified in Richmond County
Commission Expires September 20, 20 24

NAPOLI
SHKOLNIK PLLC
ATTORNEYS AT LAW

**A199**

**Exhibit 3, Photos (Dkt. 87-3)**

# EXHIBIT 3

A201









**Exhibit 4, Big Apple Map (Dkt. 87-4)**

# EXHIBIT 4



QUINN, FRANCIS PAUL JR, ET AL.
VS CITY OF NEW YORK, ET AL.

SANBORN

## KEY TO MAP SYMBOLS
### BIG APPLE POTHOLE & SIDEWALK PROTECTION CORPORATION
### SURVEY OF PAVEMENT DEFECTS SUFFICIENT TO CAUSE A HAZARD

Charlotte
North Carolina

Colorado Springs
Colorado

Columbus
Ohio

Pelham
New York

Rochester
New York

San Antonio
Texas

St. Louis
Missouri

Bogotá
Colombia

Mumbai
India

#### Sidewalks

— or | = Raised or uneven portion of sidewalk

= Extended section of raised or uneven sidewalk

= Cracked sidewalk

= Extended section of cracked sidewalk

= Hole or hazardous depression

= Extended section of holes or hazardous depressions

= Obstruction protruding from sidewalk

= Extended section of obstructions protruding from sidewalk

= Extended section of cracks and holes in sidewalk

= Deficiencies pertaining to metal doors and frames

#### For Curbs

= Broken, misaligned, or uneven curb

= Extended section of broken, misaligned, or uneven curb

#### Pedestrian Crosswalks

= Pothole or other hazard

= Extended section of potholes or other hazards

#### Other

UC = Area Under Construction

NS = No Sidewalk

OK = Block Satisfactory

OB = Area Obstructed from view by cars or other objects and is therefore unable to be inspected

CS = Sidewalk area that is primarily constructed of cobblestones

V = Tree wells without a "fence" or in place barrier

**Exhibit 5, August 2017 Report (Dkt. 87-5)**

# EXHIBIT 5

```
BOROUGH OF MANHATTAN                  MOSAICS                      09/25/2020
MOSM322B              DEFECT DETAILS FOR DEFECT NO.: DM2017235027


DEFECT TYPE  : POT - POTHOLE                     MAINT SECTOR : 10
DEFECT STATUS : CLS - CLOSED WORK ORDER          REPAIR STATUS: XCL
LOCATION : BOROUGH CODE : M                      COMMUNITY DISTRICT: 5
          HOUSE NUMBER : 1301        ON :   6 AVENUE
FROM : WEST   52 STREET              TO : WEST   53 STREET
SPECIFIC LOCATION    :
PRIORITY :   DEFECT URL: _
REPORTED DATE  : 08/22/2017          REPORTED TIME : 15:31
CALLER:   NAME:
ADDRESS: STREET:
CITY:                               STATE :         ZIP:
E-MAIL:
SOURCE        : YRD - YARD
HANSEN TICKET NUM :            DEFECT COMPLAINT DETAILS : _
LENGTH :     WIDTH :
  ----CORNER----    -------DISTANCE--------    LANE
  F/T:   L/R:   STREET:    CURB:
                                    ORIGINAL DEFECT NUM:
Enter-PF1---PF2---PF3---PF4---PF5---PF6---PF7---PF8---PF9---PF10--PF11--PF12---
          QUIT  MAIN            HST              ESC
```

**A212**

```
MOSM0346                 HISTORY OF DEFECT NO  : DM2017235027           09/25/2020
BOROUGH OF MANHATTAN               DEFECT TYPE: POT

                                                                            INIT
DATE        TIME   GENERATED FROM        ACTION-ID                CAR.NO     BY
----------  ----   -----------------     --------------------     --------  ---
08/22/2017  20:00  SYSTEM                REFERRED TO MAINTENANCE             YRD


08/23/2017  12:40  FITS                  CLOSE DEFECT
BLACKNALL/POT/08-23-2017/SHIFT:D/GR
```

                                                                       ....END
```
Enter-PF1---PF2---PF3---PF4---PF5---PF6---PF7---PF8---PF9---PF10--PF11--PF12---
          QUIT  MAIN                        PREV  NEXT  ESC
```

**A213**

NEW YORK CITY DEPARTMENT OF TRANSPORTATION                BOROUGH OF MANHATTAN
STREET MAINTENANCE DIVISION                                    YARD:  DUGOUT

### HIGHWAYS MAINTENANCE CREW WORK ORDER ASSIGNMENT

CREW SUPERVISER: BLACKNALL            CREW TYPE: POT          DATE: 08-23-2017          SHIFT: D          GROUP NO.: 1

| WORK ORDER | HOUSE # | ON/FROM/TO STREETS | DEF. TYPE | DEF. STAT | LAN | FEET | CR | FEET | CB | CR P | ARR. TIME | DEP. TIME | NEW DEF | ACT ID | PHOLE A B C | OTH REP | SQ. YARDS | CUBIC YARDS | SQ. FEET | LINEAR FEET |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| DM2017235012 | | 6 AVENUE | POT | XCL | | 0 | | 0 | | | 0810 | 0830 | ___ | XCL | 06 __ __ | | | | | |
| | | WEST  42 STREET | | | | | | | | | | | | | | | | | | |
| | | SPEC LOC: _____ A:  ,B:  ,C: | | | | | | | | | | | | | | | | | | |
| | | COMMENT : _____ | | | | | | | | | | | | | | | | | | |
| DM2017235013 | | 6 AVENUE | POT | XCL | | 0 | | 0 | | | 0835 | 0850 | ___ | XCL | 05 01 | | | | | |
| | | WEST  43 STREET | | | | | | | | | | | | | | | | | | |
| | | SPEC LOC: _____ A:  ,B:  ,C: | | | | | | | | | | | | | | | | | | |
| | | COMMENT : _____ | | | | | | | | | | | | | | | | | | |
| DM2017235014 | 1120 | 6 AVENUE | POT | XCL | | 0 | | 0 | | | 0900 | 0915 | ___ | XCL | 02 03 | | | | | |
| | | WEST  43 STREET | | | | | | | | | | | | | | | | | | |
| | | WEST  44 STREET | | | | | | | | | | | | | | | | | | |
| | | SPEC LOC: _____ A:  ,B:  ,C: | | | | | | | | | | | | | | | | | | |
| | | COMMENT : _____ | | | | | | | | | | | | | | | | | | |
| DM2017235015 | 1155 | 6 AVENUE | POT | XCL | | 0 | | 0 | | | 0920 | 0930 | ___ | XCL | 02 01 | | | | | |
| | | WEST  44 STREET | | | | | | | | | | | | | | | | | | |
| | | WEST  45 STREET | | | | | | | | | | | | | | | | | | |
| | | SPEC LOC: _____ A:  ,B:  ,C: | | | | | | | | | | | | | | | | | | |
| | | COMMENT : _____ | | | | | | | | | | | | | | | | | | |
| DM2017235016 | 1166 | 6 AVENUE | POT | XCL | | 0 | | 0 | | | 0940 | 1000 | ___ | XCL | 07 04 | | | | | |
| | | WEST  45 STREET | | | | | | | | | | | | | | | | | | |
| | | WEST  46 STREET | | | | | | | | | | | | | | | | | | |
| | | SPEC LOC: _____ A:  ,B:  ,C: | | | | | | | | | | | | | | | | | | |
| | | COMMENT : _____ | | | | | | | | | | | | | | | | | | |
| DM2017235017 | 1177 | 6 AVENUE | POT | XCL | | 0 | | 0 | | | 1005 | 1015 | ___ | XCL | 03 __ | | | | | |
| | | WEST  45 STREET | | | | | | | | | | | | | | | | | | |
| | | WEST  46 STREET | | | | | | | | | | | | | | | | | | |
| | | SPEC LOC: _____ A:  ,B:  ,C: | | | | | | | | | | | | | | | | | | |
| | | COMMENT : _____ | | | | | | | | | | | | | | | | | | |

A214

Case: 24-2682, 01/13/2025, DktEntry: 24.1, Page 218 of 277
Case 1:20-cv-06866-NRB   Document 84-39   Filed 01/26/24   Page 5 of 11

STREET MAINTENANCE DIVISION                                          YARD: DUGOUT

HIGHWAYS MAINTENANCE CREW WORK ORDER ASSIGNMENT

CREW SUPERVISER: BLACKNALL          CREW TYPE: POT        DATE: 08-23-2017        SHIFT: D          GROUP NO.: 1

| WORK ORDER | HOUSE # | ON/FROM/TO STREETS | DEF. TYPE | DEF. STAT | LAN | FEET | CR | FEET | CB | P | ARR. TIME | DEP. TIME | NEW DEF | ACT ID | PHOLE A | PHOLE B | PHOLE C | OTH REP | SQ. YARDS | CUBIC YARDS | SQ. FEET | LINEAR FEET |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| DM2017235018 | 1180 | 6 AVENUE | POT | XCL | | 0 | | 0 | | | 1020 | 1035 | | XCL | 02 | 04 | | | | | | |
| | | WEST  46 STREET | | | | | | | | | | | | | | | | | | | | |
| | | WEST  47 STREET | | | | | | | | | | | | | | | | | | | | |
| DM2017235019 | 1200 | 6 AVENUE | POT | XCL | | 0 | | 0 | | | 1040 | 1055 | | XCL | 06 | | | | | | | |
| | | WEST  47 STREET | | | | | | | | | | | | | | | | | | | | |
| | | WEST  48 STREET | | | | | | | | | | | | | | | | | | | | |
| DM2017235020 | 1221 | 6 AVENUE | POT | XCL | | 0 | | 0 | | | 1100 | 1110 | | XCL | 03 | | | | | | | |
| | | 6 AVENUE | | | | | | | | | | | | | | | | | | | | |
| | | 7 AVENUE | | | | | | | | | | | | | | | | | | | | |
| DM2017235021 | | 6 AVENUE | POT | XCL | | 0 | | 0 | | | 1115 | 1125 | | XCL | 02 | | | | | | | |
| | | WEST  49 STREET | | | | | | | | | | | | | | | | | | | | |
| DM2017235022 | 1251 | 6 AVENUE | POT | XCL | | 0 | | 0 | | | 1130 | 1145 | | XCL | 03 | 03 | | | | | | |
| | | WEST  49 STREET | | | | | | | | | | | | | | | | | | | | |
| | | WEST  50 STREET | | | | | | | | | | | | | | | | | | | | |
| DM2017235023 | 1250 | 6 AVENUE | POT | XCL | | 0 | | 0 | | | 1150 | 1200 | | XCL | 01 | 01 | | | | | | |
| | | WEST  49 STREET | | | | | | | | | | | | | | | | | | | | |
| | | WEST  50 STREET | | | | | | | | | | | | | | | | | | | | |

SPEC LOC: _____   A:    ,B:    ,C:
COMMENT : _____

SPEC LOC: _____   A:    ,B:    ,C:
COMMENT : _____

SPEC LOC: _____   A:    ,B:    ,C:
COMMENT : _____

SPEC LOC: _____   A:    ,B:    ,C:
COMMENT : _____

SPEC LOC: _____   A:    ,B:    ,C:
COMMENT : _____

SPEC LOC: _____   A:    ,B:    ,C:
COMMENT : _____

A215

Case: 24-2682, 01/13/2025, DktEntry: 24.1, Page 219 of 277
Case 1:20-cv-02888-NRB   Document 37-15   Filed 01/25/24   Page 6 of 21

STREET MAINTENANCE DIVISION                                          YARD: DUGOUT

HIGHWAYS MAINTENANCE CREW WORK ORDER ASSIGNMENT

CREW SUPERVISER: BLACKNALL          CREW TYPE: POT       DATE: 08-23-2017          SHIFT: D            GROUP NO.: 1

| WORK ORDER | HOUSE # | ON/FROM/TO STREETS | DEF. TYPE | DEF. STAT | LAN | FEET | CR | FEET | CB | P | ARR. TIME | DEP. TIME | NEW DEF | ACT ID | PHOLE A | B | C | OTH REP | SQ. YARDS | CUBIC YARDS | SQ. FEET | LINEAR FEET |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| DM2017235024 | 1260 | 6 AVENUE | POT | XCL | 0 | | 0 | | | | 1205 | 1215 | | XCL | 02 | | | | | | | |
| | | WEST  50 STREET | | | | | | | | | | | | | | | | | | | | |
| | | WEST  51 STREET | SPEC LOC: | | | | | | | | | | | | | | A:  ,B:  ,C: | | | | |
| | | | COMMENT : | | | | | | | | | | | | | | | | | | | |
| DM2017235025 | 1270 | 6 AVENUE | POT | XCL | 0 | | 0 | | | | 1220 | 1225 | | XCL | | 01 | | | | | | |
| | | WEST  50 STREET | | | | | | | | | | | | | | | | | | | | |
| | | WEST  51 STREET | SPEC LOC: | | | | | | | | | | | | | | A:  ,B:  ,C: | | | | |
| | | | COMMENT : | | | | | | | | | | | | | | | | | | | |
| DM2017235026 | 1290 | 6 AVENUE | POT | XCL | 0 | | 0 | | | | 1230 | 1235 | | XCL | | 01 | | | | | | |
| | | WEST  51 STREET | | | | | | | | | | | | | | | | | | | | |
| | | WEST  52 STREET | SPEC LOC: | | | | | | | | | | | | | | A:  ,B:  ,C: | | | | |
| | | | COMMENT : | | | | | | | | | | | | | | | | | | | |
| DM2017235027 | 1301 | 6 AVENUE | POT | XCL | 0 | | 0 | | | | 1240 | 1245 | | XCL | 01 | | | | | | | |
| | | WEST  52 STREET | | | | | | | | | | | | | | | | | | | | |
| | | WEST  53 STREET | SPEC LOC: | | | | | | | | | | | | | | A:  ,B:  ,C: | | | | |
| | | | COMMENT : | | | | | | | | | | | | | | | | | | | |
| DM2017235028 | 1325 | 6 AVENUE | POT | XCL | 0 | | 0 | | | | 1250 | 1300 | | XCL | 03 | | | | | | | |
| | | WEST  53 STREET | | | | | | | | | | | | | | | | | | | | |
| | | WEST  54 STREET | SPEC LOC: | | | | | | | | | | | | | | A:  ,B:  ,C: | | | | |
| | | | COMMENT : | | | | | | | | | | | | | | | | | | | |
| DM2017235029 | 1370 | 6 AVENUE | POT | XCL | 0 | | 0 | | | | 1305 | 1320 | | XCL | 04 | 01 | | | | | | |
| | | 5 AVENUE | | | | | | | | | | | | | | | | | | | | |
| | | 6 AVENUE | SPEC LOC: | | | | | | | | | | | | | | A:  ,B:  ,C: | | | | |
| | | | COMMENT : | | | | | | | | | | | | | | | | | | | |

A216

Case: 24-2682  01/13/2025  DktEntry: 24.4  Page 220 of 277
Case 1:20-cv-02466-NRB   Document 37-15   Filed 01/26/24   Page 17 of 21

BOROUGH OF MANHATTAN
STREET MAINTENANCE DIVISION                                        YARD: DUGOUT

                    HIGHWAYS MAINTENANCE CREW WORK ORDER ASSIGNMENT

CREW SUPERVISER: BLACKNALL          CREW TYPE: POT      DATE: 08-23-2017      SHIFT: D        GROUP NO.: 1

| WORK ORDER | HOUSE # | ON/FROM/TO STREETS | DEF. TYPE | DEF. STAT | LAN | FEET | CR | FEET | CB | P | ARR. TIME | DEP. TIME | NEW DEF | ACT ID | PHOLE A | B | C | OTH REP | SQ. YARDS | CUBIC YARDS | SQ. FEET | LINEAR FEET |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| DM2017235030 | | WEST   46 STREET | POT | XCL | 0 | | 0 | | | | 1340 | 1350 | ___ | XCL | __ | 01 | __ | __ | ____ | _____ | _____ | |
| _____ | | 5 AVENUE | | | | | | | | | | | | | | | | | | | | |
| | | 6 AVENUE | SPEC LOC: _____ | | | | | | | | | | | | | | A:    ,B:    ,C: | | | | |
| | | | COMMENT : _____ | | | | | | | | | | | | | | | | | | |

                                                                                    FITMC 04/28/94

A217

Case: 24-2682, 01/13/2025, DktEntry: 24.1, Page 221 of 277
Case 1:20-cv-02765-NRB   Document 87-15   Filed 01/23/24   Page 3 of 221

DEPARTMENT OF TRANSPORTATION - BOROUGH OF MANHATTAN
BUREAU OF HIGHWAYS - STREET MAINENANCE DIVISION                      YARD: DUGOUT

MAINTENANCE PRODUCTION CREW SHEET

CREW SUPERVISOR:  BLACKNALL      CREW TYPE:  POT      DATE:  08-23-2017      SHIFT:  D      GROUP NO.:  1

S.A.NO.  M20172350     START TIME:  08100     END TIME:  08300     LOCATION:
S.A.NO.  M20172350     START TIME:  08350     END TIME:  08500     LOCATION:
S.A.NO.  M20172350     START TIME:  09000     END TIME:  09150     LOCATION:

===================================================================================================

| SIGNATURE | MEMBER NAME | TITLE | START DATE | START TIME | END DATE | END TIME | ASSIGN | TOOK OVER LUN | OVER TIME | S.A.NO.: M20172350 |
|---|---|---|---|---|---|---|---|---|---|---|
| _____ | BLACKNALL T | SHR | 08232017 | 0530 | 08232017 | 1430 | SUP | N | ____ | REMARKS: |
| _____ | ROSS J | HR | 08232017 | 0600 | 08232017 | 1430 | ROL | N | ____ | |
| _____ | MERCADO A | HR | 08232017 | 0600 | 08232017 | 1430 | SHV | N | ____ | |
| _____ | JONES C | ACHR | 08232017 | 0600 | 08232017 | 1430 | SPC | N | ____ | |
| _____ | BUGLIONE F | ACHR | 08232017 | 0600 | 08232017 | 1430 | RKR | N | ____ | |
| _____ | _____ _ | ____ | 08232017 | ____ | 08232017 | ____ | ___ | Y | ____ | S.A.NO.: M20172350 |
| _____ | _____ _ | ____ | 08232017 | ____ | 08232017 | ____ | ___ | Y | ____ | |
| _____ | _____ _ | ____ | 08232017 | ____ | 08232017 | ____ | ___ | Y | ____ | REMARKS: |
| _____ | _____ _ | ____ | 08232017 | ____ | 08232017 | ____ | ___ | Y | ____ | |
| _____ | _____ _ | ____ | 08232017 | ____ | 08232017 | ____ | ___ | Y | ____ | |
| _____ | _____ _ | ____ | 08232017 | ____ | 08232017 | ____ | ___ | Y | ____ | |
| _____ | _____ _ | ____ | 08232017 | ____ | 08232017 | ____ | ___ | Y | ____ | |
| _____ | _____ _ | ____ | 08232017 | ____ | 08232017 | ____ | ___ | Y | ____ | |
| _____ | _____ _ | ____ | 08232017 | ____ | 08232017 | ____ | ___ | Y | ____ | S.A.NO.: M20172350 |
| _____ | _____ _ | ____ | 08232017 | ____ | 08232017 | ____ | ___ | Y | ____ | |
| _____ | _____ _ | ____ | 08232017 | ____ | 08232017 | ____ | ___ | Y | ____ | REMARKS: |
| _____ | _____ _ | ____ | 08232017 | ____ | 08232017 | ____ | ___ | Y | ____ | |
| _____ | _____ _ | ____ | 08232017 | ____ | 08232017 | ____ | ___ | Y | ____ | |
| _____ | _____ _ | ____ | 08232017 | ____ | 08232017 | ____ | ___ | Y | ____ | |
| _____ | _____ _ | ____ | 08232017 | ____ | 08232017 | ____ | ___ | Y | ____ | |

===================================================================================================

I CERTIFY THAT THE EMPLOYEE' TIME RECORDED ABOVE IS CORRECT AND THAT THE WORK WAS PERFORMED EXCLUSIVELY FOR THE CITY OF NEW YORK.
CREW SUPERVISOR'S SIGNATURE:  _____      DISTRICT SUPERVISOR'S SIGNATURE:  _____      FITCRW

**A218**

Case 1:20-cv-02666-NRB   Document 84-3   Filed 01/23/24   Page 3 of 21

A219

## MANHATTAN STREET MAINTENANCE POTHOLE SHEET

CREW TYPE  POTHOLE

DATE  8/23/2017

CREW SUPERVISOR  T Blacknall

| MEMBERS NAME | SIGNATURE | TITLE | START DATE | START TIME | END DATE | END TIME | LUNCH | TASK | O/T |
|---|---|---|---|---|---|---|---|---|---|
| T.Blacknall | | SHR | 8/23/2017 | 5:30 | 8/23/2017 | 14:30 | N | SUP | 1/2 |
| M.Mercado | | HR | 8/23/2017 | 6:00 | 8/23/2017 | 14:30 | N | SHV | 1/2 |
| F.Buglione | | AHR | 8/23/2017 | 6:00 | 8/23/2017 | 14:30 | N | RAK | 1/2 |
| C.Jones | | AHR | 8/23/2017 | 6:00 | 8/23/2017 | 14:30 | N | ROLL | 1/2 |
| J.Ross | | AHR | 8/23/2017 | 6:00 | 8/23/2017 | 14:30 | N | SWP | 1/2 |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |

| EQUIPMENT USED | ID NUMBER | DOWN TIME |
|---|---|---|
| D- TRUCK | 66D | |
| HOTBOX | 66HT | NA |
| COMPRESSOR | | |
| BACK-UP TRUCK | 755 B | |

### CREW MATERIAL

| PLANT | TONNAGE |
|---|---|
| HAMILTON PLANT | 3.06 |
| HARPER ST. YARD | |
| TOTAL TONNAGE | 3.06 |

### VEHICLE CHECK

| VEHICLE CHECK | PRE CHECK | DEFECT |
|---|---|---|
| CAB/ODOMETER | ✓ | |
| EXTERIOR/ VISUAL | ✓ | |
| TIRES | ✓ | |
| STEERING | ✓ | |
| BRAKE SYSTEM | ✓ | |
| ELECT. SYSTEM | ✓ | |
| FUEL / GALLONS | ✓ | |
| Full | | |

### A/C USED

| GALLONS | |
|---|---|
| TOTAL AC USED | 159411 |

### BEGINNING OF DAY
YARD /  PIER 36

COFFEE LOCATION /  E. 16st / 1 Ave
ARRIVAL TIME /  7:30

LUNCH LOCATION /
ARRIVAL TIME /  NL

DEPARTURE TIME  6:50  MILEAGE  55269

DEPARTURE TIME  7:40  MILEAGE  55273

DEPARTURE TIME  —  MILEAGE  —

SUPERVISOR SIGNATURE

### END OF DAY
YARD  PIER 36

ARRIVAL TIME  14:15

AREA LEVEL SIGNATURE  M. Mercado

...rrect and that the work was performed exclusively for the City of New York

**A220**

## MANHATTAN STREET MAINTENANCE

SUPERVISOR NAME: T. Blacknall

DATE: 8/23/17

SEE PG 2 for notes

| NOTES | DEFECT NUMBERS | LOCATION | DEFECT TYPE | ARRIVAL TIME | DEPARTURE TIME | ACTION ID | POTHOLES A | B | C | SQUARE YARDS |
|---|---|---|---|---|---|---|---|---|---|---|
| 2017 Brazilian American Cultural Street Festival | | 6 Ave w. 42 st (Inter) | POT | 8:10 | 8:30 | XCL | 6 | | | |
| | | 6 Ave w. 43 (Inter) | POT | 8:35 | 8:50 | XCL | 5 | 1 | | |
| | | 1120 6 Ave w. 43-44 st | POT | 9:00 | 9:15 | XCL | 2 | 3 | | |
| | | 1155 6 Ave w. 44-w.45st | POT | 9:20 | 9:30 | XCL | 2 | 1 | | |
| | | 1166 6 Ave w.45-w.46st | POT | 9:40 | 10:00 | XCL | 7 | 4 | | |
| | | 1177 6 Ave w.45-w.46st | POT | 10:05 | 10:15 | XCL | 3 | | | |
| | | 1180 6 Ave w.46 w.47st | POT | 10:20 | 10:35 | XCL | 2 | 4 | | |
| | | 1200 6 Ave w. 47-w.48st | POT | 10:40 | 10:55 | XCL | 6 | | | |
| | | 1221 6 Ave w.49 st (Inter) | POT | 11:00 | 11:10 | XCL | 3 | | | |
| | | 6 Ave w.49st | POT | 11:15 | 11:25 | XCL | 2 | | | |
| | | 1251 6 Ave w.49-w.50st | POT | 11:30 | 11:45 | XCL | 3 | 3 | | |
| | | 1250 6 Ave w. 56 st. | POT | 11:50 | 12:00 | XCL | 1 | | | |
| | | 1260 6 Ave w.50-w.51 st | POT | 12:05 | 12:15 | XCL | 2 | | | |
| | | 1270 6 Ave w.50-w.51 st | POT | 12:20 | 12:25 | XCL | 2 | | | |
| | | TOTAL HOLES AND SQUARE YARDS | | | | | 44 | 18 | | |

DMS COMPLETED - 0      SIEBELS COMPLETED - 0

TOTAL NUMBER OF HOLES AND SQUARE YARDS

COMMENTS - Left yard @ 6:50AM went to 35N4 to fill up Hotbox + Truck. Continued along Parade Route very heavy traffic congestion along parade route. No used of all jobs. Bathroom Stop/s throughout day.

ACTION I/D - (TOC) TOP OFF COMPLETED   (TON) TOP OFF NOT COMPLETED   (DPL) DUPLICATE   (EXC) EXCAVATION COMPLETE   (FRE) FOUND RESTORED
(MST) MADE SAFE TEMPORARILY  (RTB) REFERRED TO BRIDGES  (NAC) NOT ACCESSIBLE  (DNF) DEFECT NOT FOUND  (EGN) EXCAVATION NOT COMPLETE
(BAR) BARRICADED  (XCL) CLOSED DEFECT  (BFG) BACKFILL COMPLETED  (BFN) BACK FILL NOT COMPLETE

Case 1:20-cv-08668-VRB  Document 84-59  Filed 02/28/24  Page 5 of 21

**A221**

SUPERVISOR NAME: T. Bhagram

**MANHATTAN STREET MAINTENANCE**

DATE: 8/23/17

PG 2 OF 2

NOTES: 2017 Bklyn / Approved Cultural / Street - Joshua / continued... ↓

| DEFECT NUMBERS | LOCATION | DEFECT TYPE | ARRIVAL TIME | DEPARTURE TIME | ACTION ID | POTHOLES A | POTHOLES B | POTHOLES C | SQUARE YARDS |
|---|---|---|---|---|---|---|---|---|---|
| | 1290 6 ave w.51-w.52st | POT | 12:30 | 12:35 | XCL | | 1 | | |
| | 1301 6 ave w.52-w.53st | POT | 12:40 | 12:45 | XCL | 1 | | | |
| | 1325 6 ave w.53-w.54st | POT | 12:50 | 13:00 | XCL | 3 | | | |
| | 1340 6 ave w.55-w.56st | POT | 13:05 | 13:20 | XCL | 4 | 1 | | |
| | 560 w.76 st 5+6 ave | POT | 13:40 | 13:50 | XCL | | 1 | | |

TOTAL HOLES AND SQUARE YARDS: **8  3**

SIEBELS COMPLETED - 0

DMS COMPLETED - 0

COMMENTS: ONTQ I

TOTAL NUMBER OF HOLES AND SQUARE YARDS: 73

ACTION I/D -  (TOC) TOP OFF COMPLETED   (TON) TOP OFF NOT COMPLETED   (DPL) DUPLICATE   (EXC) EXCAVATION COMPLETE   (EXN) EXCAVATION NOT COMPLETE   (FRE) FOUND RESTORED
(DNF) DEFECT NOT FOUND

(MST) MADE SAFE TEMPORARILY  (RTB) REFERRED TO BRIDGES  (NAC) NOT ACCESSIBLE
(BAR) BARRICADED  (XCL) CLOSED DEFECT  (BFC) BACKFILL COMPLETED  (BFN) BACK FILL NOT COMPLETE

**Exhibit 6, January 2019 Report (Dkt. 87-6)**

# EXHIBIT 6

Case: 24-2682 01/13/2025 DktEntry: 24.1 Page 227 of 277

Case 1:20-cv-02666-NRB Document 88-10 Filed 02/28/24 Page 172 of 217

```
BOROUGH OF MANHATTAN                MOSAICS                    09/25/2020
MOSM322B            DEFECT DETAILS FOR DEFECT NO.: DM2019019002


DEFECT TYPE   : POT - POTHOLE                    MAINT SECTOR : 10
DEFECT STATUS : CLS - CLOSED WORK ORDER          REPAIR STATUS: XCL
LOCATION : BOROUGH CODE : M                  COMMUNITY DISTRICT: 5
          HOUSE NUMBER :
FROM :   6 AVENUE                        TO : WEST   53 STREET
DESCRIPTION OF CORNER
PRIORITY :   DEFECT URL: _
REPORTED DATE : 01/17/2019          REPORTED TIME : 00:12
CALLER:   NAME:
ADDRESS: STREET:
CITY:                              STATE :        ZIP:
E-MAIL:
SOURCE        : YRD - YARD
HANSEN TICKET NUM :          DEFECT COMPLAINT DETAILS : _
LENGTH :    WIDTH :
  ----CORNER----   -------DISTANCE--------   LANE
   F/T:  L/R:   STREET:    CURB:
                                    ORIGINAL DEFECT NUM:
Enter-PF1---PF2---PF3---PF4---PF5---PF6---PF7---PF8---PF9---PF10--PF11--PF12---
           QUIT  MAIN              HST              ESC
```

**A224**

Case: 24-2682 01/13/2025 DktEntry: 24.1 Page 228 of 277
Case 1:20-cv-02666-NRB Document 58-10 Filed 01/22/24 Page 183 of 227

```
MOSM0346              HISTORY OF DEFECT NO  : DM2019019002         09/25/2020
BOROUGH OF MANHATTAN           DEFECT TYPE: POT

                                                                       INIT
DATE        TIME   GENERATED FROM      ACTION-ID              CAR.NO    BY
----------  -----  -----------------   --------------------   --------- ---
01/17/2019 10:00 SYSTEM                REFERRED TO MAINTENANCE          YRD


01/18/2019 23:18 FITS                  CLOSE DEFECT
BELL/POT/01-18-2019/SHIFT:N/GRP:1




                                                              ....END
 Enter-PF1---PF2---PF3---PF4---PF5---PF6---PF7---PF8---PF9---PF10--PF11--PF12---
          QUIT  MAIN                   PREV  NEXT  ESC
```

A225

Case: 24-2682, 01/13/2025, DktEntry: 24.1, Page 229 of 277
Case 1:20-cv-02660-NRB Document 68-18 Filed 09/23/24 Page 94 of 97

BOROUGH: MANHATTAN
YARD:  DUGOUT

STREET MAINTENANCE DIVISION

HIGHWAYS MAINTENANCE CREW WORK ORDER ASSIGNMENT

CREW SUPERVISER: BELL        CREW TYPE: POT       DATE: 01-18-2019      SHIFT: N        GROUP NO.: 1

| WORK ORDER | HOUSE # | ON/FROM/TO STREETS | DEF. TYPE | DEF. STAT | LAN | FEET | CR | FEET | CB | P | ARR. TIME | DEP. TIME | NEW DEF | ACT ID | A | B | C | PHOLE | OTH REP | SQ. YARDS | CUBIC YARDS | SQ. FEET | LINEAR FEET |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| DM2019018017 | 2 AVENUE | | POT | XCL | DRV | 0 | | 0 | | | 2100 | 2110 | | XCL | 01 | 01 | | | | | | | |
| | | EAST 94 STREET | | | | | | | | | | | | | | | | | | | | | |
| | | EAST 95 STREET | | | | | | | | | | | | | | | | | | | | | |

SPEC LOC: MIDDLE LANE IN FRONT OF 1830 2ND AVE, SEWER COVER         A:   ,B:   ,C:
COMMENT :

| DM2019018023 | RIVERSIDE DRIVE | | POT | DNF | INT | 0 | | 0 | | | 2125 | 2130 | | DNF | | | | | | | | | |
| | | WEST 96 STREET | | | | | | | | | | | | | | | | | | | | | |

SPEC LOC:          A:   ,B:   ,C:
COMMENT :

| DM2019018016 | WEST 75 STREET | | POT | XCL | DRV | 0 | | 0 | | | 2230 | 2240 | | XCL | 01 | | | | | | | | |
| | | AMSTERDAM AVENUE | | | | | | | | | | | | | | | | | | | | | |
| | | COLUMBUS AVENUE | | | | | | | | | | | | | | | | | | | | | |

SPEC LOC: ON W 75 ST CLOSER TO COLUMBUS AVE ON WEST SIDE         A:   ,B:   ,C:
COMMENT :

| DM2019019001 | WEST 80 STREET | | POT | XCL | | 0 | | 0 | | | 2250 | 2315 | | XCL | 07 | 01 | | | | | | | |
| | | AMSTERDAM AVENUE | | | | | | | | | | | | | | | | | | | | | |
| | | COLUMBUS AVENUE | | | | | | | | | | | | | | | | | | | | | |

SPEC LOC:          A:   ,B:   ,C:
COMMENT :

| DM2019019002 | 6 AVENUE | | POT | XCL | | 0 | | 0 | | | 2318 | 2321 | | XCL | | 01 | | | | | | | |
| | | WEST 53 STREET | | | | | | | | | | | | | | | | | | | | | |

SPEC LOC:          A:   ,B:   ,C:
COMMENT :

| DM2019019003 | WEST 54 STREET | | POT | XCL | | 0 | | 0 | | | 2325 | 0001 | | XCL | 06 | 03 | 01 | | | | | | |
| | | 5 AVENUE | | | | | | | | | | | | | | | | | | | | | |
| | | 6 AVENUE | | | | | | | | | | | | | | | | | | | | | |

SPEC LOC:          A:   ,B:   ,C:
COMMENT :

A226

Case: 24-2682, 01/13/2025, DktEntry: 24.1, Page 230 of 277
Case 1:20-cv-02666-NRB Document 34-10 Filed 01/13/24 Page 205 of 277

BOROUGH OF MANHATTAN
YARD: DUGOUT

BUREAU OF HIGHWAYS — STREET MAINENANCE DIVISION

MAINTENANCE PRODUCTION CREW SHEET

CREW SUPERVISOR: BELL          CREW TYPE: POT      DATE: 01-18-2019      SHIFT: N      GROUP NO.: 1

S.A.NO.  M20190180     START TIME: 21000     END TIME: 21100     LOCATION:
S.A.NO.  M20190180     START TIME: 21250     END TIME: 21300     LOCATION:
S.A.NO.  M20190180     START TIME: 22300     END TIME: 22400     LOCATION:

====================================================================================

| SIGNATURE | MEMBER NAME | | TITLE | START DATE | START TIME | END DATE | END TIME | ASSIGN | TOOK LUN | OVER TIME | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| _____ | BELL | M | SHR | 01182019 | 1830 | 01192019 | 0330 | SUP | Y | _____ | S.A.NO.: M20190180 |
| _____ | KENNY | D | HR | 01182019 | 1900 | 01192019 | 0330 | DRV | Y | _____ | REMARKS: |
| _____ | TOTA | E | HR | 01182019 | 1900 | 01192019 | 0330 | SHV | Y | _____ | |
| _____ | GRAY | E | HR | 01182019 | 1900 | 01192019 | 0330 | RKR | Y | _____ | |
| _____ | _____ _ | | ____ | 01182019 | _____ | 01192019 | _____ | ___ | Y | _____ | |
| _____ | _____ _ | | ____ | 01182019 | _____ | 01192019 | _____ | ___ | Y | _____ | S.A.NO.: M20190180 |
| _____ | _____ _ | | ____ | 01182019 | _____ | 01192019 | _____ | ___ | Y | _____ | |
| _____ | _____ _ | | ____ | 01182019 | _____ | 01192019 | _____ | ___ | Y | _____ | REMARKS: |
| _____ | _____ _ | | ____ | 01182019 | _____ | 01192019 | _____ | ___ | Y | _____ | |
| _____ | _____ _ | | ____ | 01182019 | _____ | 01192019 | _____ | ___ | Y | _____ | |
| _____ | _____ _ | | ____ | 01182019 | _____ | 01192019 | _____ | ___ | Y | _____ | |
| _____ | _____ _ | | ____ | 01182019 | _____ | 01192019 | _____ | ___ | Y | _____ | |
| _____ | _____ _ | | ____ | 01182019 | _____ | 01192019 | _____ | ___ | Y | _____ | |
| _____ | _____ _ | | ____ | 01182019 | _____ | 01192019 | _____ | ___ | Y | _____ | S.A.NO.: M20190180 |
| _____ | _____ _ | | ____ | 01182019 | _____ | 01192019 | _____ | ___ | Y | _____ | |
| _____ | _____ _ | | ____ | 01182019 | _____ | 01192019 | _____ | ___ | Y | _____ | REMARKS: |
| _____ | _____ _ | | ____ | 01182019 | _____ | 01192019 | _____ | ___ | Y | _____ | |
| _____ | _____ _ | | ____ | 01182019 | _____ | 01192019 | _____ | ___ | Y | _____ | |
| _____ | _____ _ | | ____ | 01182019 | _____ | 01192019 | _____ | ___ | Y | | |

====================================================================================

I CERTIFY THAT THE EMPLOYEE' TIME RECORDED ABOVE IS CORRECT AND THAT THE WORK WAS PERFORMED EXCLUSIVELY FOR THE CITY OF NEW YORK.
CREW SUPERVISOR'S SIGNATURE: _____     DISTRICT SUPERVISOR'S SIGNATURE: _____     FITCRW

**A227**

Case 1:20-cv-02666-NRB   Document 88-10   Filed 01/23/24   Page 16 of 22

A228

## MANHATTAN STREET MAINTENANCE POTHOLE SHEET

**CREW SUPERVISOR** M. Bell

**CREW TYPE** Pothole

**DATE** 1-18-19

| MEMBERS NAME | SIGNATURE | TITLE | START DATE | START TIME | END DATE | END TIME | LUNCH | TASK | O/T |
|---|---|---|---|---|---|---|---|---|---|
| M. Bell | | Sup | 1-18-19 | 18:30 | 1-19-19 | 3:30 | yes | sup | 1/2 |
| D. Kenny | | HX | | 19:00 | | | | Dr-V | |
| E. Toto | | HX | | | | | | sh.V | |
| E. Gray | | HX | | | | | | r.V | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |

| VEHICLE CHECK | PRE CHECK | DEFECT |
|---|---|---|
| CAB / ODOMETER | ✓ | |
| EXTERIOR / VISUAL | ✓ | |
| TIRES | ✓ | |
| STEERING | ✓ | |
| BRAKE SYSTEM | ✓ | |
| ELECT. SYSTEM | ✓ | |
| FUEL / GALLONS | ✓ | |
| TIME | | |

| EQUIPMENT USED | ID NUMBER | DOWN TIME |
|---|---|---|
| D - TRUCK | 6601 | |
| HOTBOX | 6447 | |
| COMPRESSOR | | |
| BACK-UP TRUCK | | |

### CREW MATERIAL

| PLANT: | TONNAGE |
|---|---|
| HAMILTON PLANT | 3.03 |
| HARPER ST. YARD | |
| TOTAL TONNAGE | 3.03 |

| A/C USED |
|---|
| GALLONS |
| 1.5 |
| TOTAL A/C USED  1.5 |

### BEGINNING OF DAY

| YARD / | Pier 36 | DEPARTURE TIME | 19:30 | MILEAGE | 6255 |
|---|---|---|---|---|---|
| COFFEE LOCATION / | Bwy W 96St | DEPARTURE TIME | 21:40 | MILEAGE | |
| ARRIVAL TIME / | 21:35 | | | | |
| LUNCH LOCATION / | 6 Ave W 56 St | DEPARTURE TIME | 02:40 | MILEAGE | |
| ARRIVAL TIME / | 00:10 | | | | |

### END OF DAY

| YARD | Pier 36 |
|---|---|
| ARRIVAL TIME | 3:00 |

AREA LEVEL SIGNATURE _____

...orrect and that the work was performed exclusively for the City of New York

SUPERVISOR SIGNATURE _____

Case 1:20-cv-02666-NRB   Document 88-19   Filed 01/22/24   Page 2 of 2

# MANHATTAN STREET MAINTENANCE

SUPERVISOR NAME: M. Bell     Pothole     DATE: 1-18-19

| NOTES | DEFECT NUMBERS | LOCATION | DEFECT TYPE | ARRIVAL TIME | DEPARTURE TIME | ACTION ID | POTHOLES A | B | C | SQUARE YARDS |
|---|---|---|---|---|---|---|---|---|---|---|
| | DM0090190107 | 2 Ave E96st E95st | PH | 21:00 | 21:10 | XCL | 1 | | | |
| | DM20190.0023 | R.S.D. W96st | PH | 21:25 | 21:30 | DNF | | | | |
| | DM20190180016 | W75st Amster - Columbus | PH | 22:30 | 22:40 | XCL | 1 | | | |
| | DM20190190001 | W8ost Amster - Columbus | PH | 22:50 | 23:15 | XCL | 7 | 1 | | |
| | DM20190190002 | 6 Ave W53st | PH | 23:18 | 23:21 | XCL | | 1 | | |
| | DM20190190003 | W5st bet5 & 6 Ave | PH | 23:25 | 23:21 | XCL | 4 | 3 | 1 | |
| | DM20190190004 | E42st & 5ave | PH | 00:50 | 1:00 | XCL | | | | |
| | DM20190190005 | E8st & Greenest | PH | 1:20 | 1:25 | XCL | | 1 | | |

**TOTAL HOLES AND SQUARE YARDS** — A: 16   B: 8

**TOTAL NUMBER OF HOLES AND SQUARE YARDS** — 25

**DMS COMPLETED:** 3    **SIEBELS COMPLETED:** -

**COMMENTS:** Heavy Traffic to Hamilton Plant. Had to return to Yard to move personal vehicle. 2145-22:30

**ACTION I/D –** (TOC) TOP OFF COMPLETED   (TON) TOP OFF NOT COMPLETED

(MST) MADE SAFE TEMPORARILY (RTB) REFERRED TO BRIDGES (NAC) NOT ACCESSIBLE (DNF) DEFECT NOT FOUND (DPL) DUPLICATE (EXC) EXCAVATION COMPLETE
(BAR) BARRICADED (XCL) CLOSED DEFECT (BFC) BACKFILL COMPLETED (BFN) BACK FILL NOT COMPLETE (EXN) EXCAVATION NOT COMPLETE (FRE) FOUND RESTORED

A229

**Defendants' Reply Memorandum of Law,
filed Mar. 15, 2024 (Dkt. 88)**

QWQUINUNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------x

FRANCIS PAUL QUINN JR. and LORI ANN QUINN,

                                          Plaintiffs,

               -against-

THE CITY OF NEW YORK and THE NEW YORK CITY
DEPARTMENT OF TRANSPORTATION,

                                     Defendants.

Docket No:  20 CV 2666 (JGK)
File No:    2020-017559

ECF Case

------------------------------------------------------------------------
THE CITY OF NEW YORK and THE NEW YORK CITY
DEPARTMENT OF TRANSPORTATION,

                        Third-Party Plaintiffs,

               -against-

CONSOLIDATED EDISON, INC.,

                       Third-Party Defendants.

Third-Party Action

------------------------------------------------------------------------x

**MEMORANDUM OF LAW IN REPLY TO PLAINTIFFS' OPPOSITION TO
DEFENDANTS/THIRD-PARTY PLAINTIFFS' THE CITY OF NEW YORK AND THE
CITY OF NEW YORK S/H/A THE NEW YORK CITY DEPARTMENT OF
TRANSPORTATION MOTION FOR SUMMARY JUDGMENT**

*HON. SYLVIA O. HINDS-RADIX*
*Corporation Counsel for the City of New York*
*Attorney for Defendants/Third-Party Plaintiffs The City of New York and The City of New York*
*S/H/A The New York City Department of Transportation*

*Of Counsel*
*Alexandra Hastings, Esq.*
*Corporation Counsel of the City of New York*
*100 Church Street*
*New York, NY 10007*
*Tel: 212-356-7179*
*ahasting@law.nyc.gov*

**A231**

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................. ii

PRELIMINARY STATEMENT ........................................................................... iv

ARGUMENT ...................................................................................................... 2

    A.      PLAINTIFFS SHOULD BE PRECLUDED FROM
            ARGUING A POTHOLE CAUSED QUINN'S INJURY ............................ 1

    B.      THE CITY'S MOTION IS NOT PREMATURE ............................................ 1

    C.      THE CITY DID NOT HAVE PRIOR WRITTEN NOTICE ........................... 5

    D.      THE AFFIRMATIVE NEGLIGENCE EXCEPTION
            IS NOT APPLICABLE ................................................................................ 7

CONCLUSION ................................................................................................. 11

**A232**

## TABLE OF AUTHORITIES

**Cases**                                                                                                           **Pages**

Alexopoulos v. Metropolitan Transp. Auth., 37 A.D.3d 232 ([1st Dep't 2007)…………………..5

Amabile v. City of Buffalo, 93 N.Y.2d 417 (1999)…………………………………………….9

Andre v. Pomeroy, 35 N.Y.2d 361 (1974)…………………………………………………...7

Babenzien v. Town of Fenton, 67 A.D.3d 1236, 1238-1239 (3d Dep't 2009)……………..……...9

Ball v. United Artists Corp., 13 A.D.2d 133 (1st Dep't 1961)………………………...…………7

Belmonte v. Metro. Life Ins. Co., 304 A.D.2d 471 (1st Dep't 2003)……………….…………..6

Cruz v. City of New York, 218 A.D.2d 546 (1st Dep't 1995)…………………………………..4

Culbertson v. Triumph Constr. Corp., 2023 N.Y. Misc. LEXIS 5295
(Sup. Ct. New York County, August 31, 2023) (Hon. Judy H. Kim)…………………...……3, 4

Diaz v. N.Y. Downtown Hosp., 99 N.Y.2d 542, 544 (2002)……………………………….....8

D'Onofrio v. City of New York, 11 N.Y.3d 581 (2008)……………………………………..5

Elstein v. City of New York, 209 A.D.2d 186, 187 (1st Dep't 1994)……………………….…4

Epperson v. City of New York, 133 A.D.3d 522 (1st Dep't 2015)…………………………....5

Gonzalez v. New York City Hous. Auth., 181 A.D.2d 440 (1st Dep't 1992)………………….....1

Gray v. City of New York, 195 A.D.3d 538 (1st Dep't 2021)……………………………….3

Grullon v. City of New York, 297 A.D.2d 261 (1st Dep't 2002)………………………….…7

Heckel v. City of New York, 60 A.D.3d 812 (2d Dep't 2009)……………………………..…1

Hersko v. United States, 2017 U.S. Dist. LEXIS 71795, *20-21 (S.D.N.Y. May 11, 2017)……….8

Hualde v. Otis Elevator Company, 235 A.D.2d 269 (1st Dep't 1997)…………………………4

Katz v. City of New York, 87 N.Y.2d 241, 243 (1995)………………………………………7

Leary v. City of Rochester, 67 N.Y.2d 866 (1986)………………………………………....5

Lopez v. Gonzalez, 44 A.D.3d 1012, 1013 (2d Dep't 2007)………………………….………6

**A233**

McCarthy v. City of White Plains, 54 A.D.3d 828, 830 (2d Dep't 2008)……………………….…..6

Mikolajczyk v City of NY, 2020 NY Slip Op 30658[U] (Sup. Ct., Kings County 2020)…………..3

Oboler v. City of New York, 8 N.Y.3d 888, 889-890 (2007)…………………………………….....9

Pena v. New York City, Index No. 155333/2014
(Sup. Ct. New York County, December 12, 2015)………………………………………………4,5

Plaza v. New York Health & Hosps. Corp. (Jacobi Med. Ctr.), 97 A.D.3d 466 (1st Dep't 2012)…..2

Quinones v. City of New York, 16 Misc. 3d 1141(A)
(Sup. Ct. New York County, September 7, 2007)…………………………………………….....10

Smith v. Cohen, 24 A.D.3d 183 (1st Dep't 2005)……………………………………………...…..7

Spanos v. Town of Clarkstown, 81 A.D.3d 711, 713 (2d Dep't 2011)……………………………9

Torres v. City of New York, 39 A.D.3d 438 (1st Dep't 2007)………………………………….....10

Wald v. City of New York, 115 A.D.3d 939, 941 (2d Dep't 2014)………………………….…..9

Webster et al. v. City of New York, No. 19-cv-05638-KPF (S.D.N.Y. Sept. 1, 2021)………….....10

Wilson v. Incorporated Vil. Of Hempstead, 120 A.D.3d 665, 666 (2d Dep't 2014)……………....9

Yarborough v. City of New York, 10 N.Y.3d 726 (2008)…………………………………………7

Zinz v. Empire City Subway Co., Ltd., 2014 U.S. Dist. LEXIS 147247, *14
(S.D.N.Y. Oct. 14, 2014)………………………………………………………………..……..9

**Statutes**                                                                                         **Pages**

Administrative Code of the City of New York §7-201……………………………………2, 3, 5, 7, 9

Fed. R. Civ. P.56(c)(4)...........................................................................................................3

Gen. Municipal Law § 50-e………………………………………………………………………iv

Gen. Municipal Law § 50-i………………………………………………………………………iv

**A234**

## PRELIMINARY STATEMENT

In opposition to the City's motion for summary judgment, plaintiffs contend that the City's motion is premature, the City failed to meet its initial burden, the City had prior written notice of the alleged condition, and the City created an immediately apparent dangerous condition.

None of plaintiffs' arguments have merit. First, plaintiffs should be precluded from arguing that a pothole allegedly causing Quinn's injury as he did not file, as required, a timely notice of claim for this condition. See Gen. Municipal Law §§ 50-e and 50-i.

Second, the City's motion is not premature as all relevant records have been searched for and exchanged and the depositions that plaintiffs seek are not material or necessary to the prosecution of this action. The records were produced with accompanying affidavits that forecloses the need for depositions in this case.

Third, plaintiffs' insistence that the City had notice of the roadway defect that Quinn tripped on misapprehends both the law and the facts. Contrary to plaintiffs' unsupported arguments, the evidence demonstrates the absence of prior written notice.

Fourth, there are no applicable exceptions to the requirement that prior written notice exist. It is not the City's burden to show that it did not cause or create the condition. The City need only prove that it did not have prior written notice of the condition in its moving papers, which it did. Plaintiffs' expert report is wholly insufficient to meet the burden of proof required to defeat a motion for summary judgment and fails to create a question of fact. The record contains no evidence that the City caused or created an immediately apparent dangerous condition. Moreover, plaintiffs fail to even acknowledge, much less distinguish, case law holding that a municipality may not be liable where, as here, there was natural wear and tear of the roadway.

Accordingly, the City respectfully requests that the complaint be dismissed in its entirety.

**A235**

## ARGUMENT

### A.    PLAINTIFFS SHOULD BE PRECLUDED FROM ARGUING A POTHOLE CAUSED QUINN'S INJURY

As an initial matter, plaintiffs should be precluded from arguing that a pothole allegedly caused Quinn's injury as his notice of claim does not allege a pothole caused him to trip and fall. (Exhibit A.) see Gonzalez v. New York City Hous. Auth., 181 A.D.2d 440, 441 (1st Dep't 1992). Instead, plaintiffs' notice of claim provides that "the defect consists of an uneven, raised, depressed, mis-leveled *gas utility box.*" Id. (emphasis added.) Plaintiffs allege that the notice of claim provided information sufficient to enable the City to investigate as there are photographs attached to the notice of claim of the location, which "show the depression next to the utility box." (Opp. at 14.) However, the photographs attached to the notice of claim merely show a zoomed-in Con Ed utility box and do not reveal any other roadway condition. (Exhibit A.)

Additionally, plaintiffs' claim that a pothole allegedly caused Quinn to trip and fall is undercut by his own expert's report, Nicholas Belizzi, P.E., dated September 30, 2019. (Exhibit N.) Belizzi's report, which plaintiffs fail to address in opposition, attributes the cause of Quinn's trip and fall to "a depressed and sunken Con Edison metal valve box cover," which is consistent with plaintiffs' notice of claim. (Exhibit N.) Given this, plaintiffs should be precluded from arguing that a pothole allegedly caused Quinn's injury as plaintiffs are bound by their notice of claim. see Heckel v. City of New York, 60 A.D.3d 812, 813 (2d Dep't 2009).

### B.    THE CITY'S MOTION IS NOT PREMATURE

Notwithstanding plaintiffs' contradictions about what caused Quinn to fall, the records reveal that the City did not have notice of a pothole at the location of Quinn's accident. In its underlying motion, the City established prima facie that it is entitled to summary judgment on the grounds that it: (1) did not have prior written notice of the alleged defect, either a pothole or a

**A236**

sunken Con Ed utility box; and (2) did not cause and create the alleged defect, despite not having the burden to prove this exception in its underlying motion. Consequently, the burden shifted to plaintiffs to demonstrate that there is a question of fact as to whether the City had prior written notice or that an exception to Administrative Code § 7-201 applies in the instant action.[1] see, e.g., Plaza v. New York Health & Hosps. Corp. (Jacobi Med. Ctr.), 97 A.D.3d 466, 478 (1st Dep't 2012). As plaintiffs failed to meet this burden, the City's motion should be granted in its entirety.

Contrary to plaintiffs' claim, the City's motion is not premature. The City conducted searches for the relevant agency records and exchanged the search results. The City also attached affidavits from the record searchers stating the parameters of their searches, how the searches were conducted, and the results of their searches. In response, plaintiffs baldly assert that they need "to examine a clearer copy of the Big Apple Map." (Opp. at 9.) In the years since the Big Apple Map was exchanged, this was the very first time that plaintiffs alleged that they needed a "clearer copy." Despite needing a clearer copy, plaintiffs curiously argue that it provides prior written notice. Notably, a clear copy of the Big Apple Map was provided to plaintiffs, and it does not provide the City with prior written notice, which will be addressed below.[2]

Plaintiffs further allege that they need to conduct depositions of the City employees who signed the affidavits annexed to the City's motion, which they claim "will uncover admissible evidence of other written notice," will "determine if the defect was caused due to the repairs," and will provide evidence of whether the location of potholes "would come up on the Big Apple Map." (Opp. at 2, 9.) Plaintiffs utterly fail to explain how these depositions will allegedly uncover such

---

[1] As maintained in the City's underlying Memorandum, and which plaintiffs do not dispute, the special use exception is not implicated here as the complaint contains no such allegation. (Exhibit B.)

[2] While the City maintains that the Big Apple Map provided in discovery and annexed to the City's motion is legible (Exhibit G at 284-287. Exhibit I at 106-107), a zoomed in copy of the Big Apple Map of the location of Quinn's accident is annexed hereto as Exhibit O.

evidence. In fact, the City has already produced all relevant records as well as affidavits in the admissible form, explaining the searches and their results. Fed. R. Civ. P.56(c)(4). Notably, courts have held that this is sufficient for the City to prove a *prima facie* case. See Culbertson v. Triumph Constr. Corp., 2023 N.Y. Misc. LEXIS 5295 (Sup. Ct. New York County, August 31, 2023) (Hon. Judy H. Kim) (finding "the City has satisfied its prima facie burden, through the [DOT] affidavit and the DOT records attached thereto, which establish that it did not receive prior written notice of the defective condition as required by Administrative Code § 7-201 (see Gray v. City of New York, 195 A.D.3d 538 (1st Dep't 2021)).")  (Exhibit Q.)

As for the Big Apple Map, the City is not required to submit an affidavit from someone to interpret the symbols on the map in order to demonstrate the absence of prior written notice.  The symbols on the map are readily interpreted with the use of the accompanying legend. In fact, courts regularly grant the City summary judgment pursuant to Administrative Code § 7-201(c) without an accompanying affidavit interpreting the map's symbols.  see Mikolajczyk v City of NY, 2020 NY Slip Op 30658[U] (Sup. Ct., Kings County 2020) (finding "the City has established, prima facie, its entitlement to judgment as a matter of law by submitting affidavits of employees of the Department of Transportation for the City of New York stating that no corresponding… records of notices of defective conditions were found.") Depositions are unnecessary in this case and will not lead to additional admissible evidence. The depositions would merely be an improper and unnecessary delay as the record searchers repeat the information in their affidavits. Plaintiffs' arguments are nothing more than speculation and surmise, which are insufficient to defeat the City's prima facie entitlement to summary judgment.  Smith v. Cohen, 24 A.D.3d 183, 183 (1st Dep't 2005) ("Mere conclusory assertions, devoid of evidentiary facts, are insufficient [to defeat a well-supported summary judgment motion].").

**A238**

Plaintiffs additionally claim, without any legal or factual support, that post-accident records are needed to "justify [plaintiffs'] opposition to the summary judgment." (Opp. at 9.) As the First Department has held, post-incident documents including subsequent work or repairs are neither discoverable nor admissible in a negligence case. see Hualde v. Otis Elevator Company, 235 A.D.2d 269, 270 (1st Dep't 1997). Plaintiffs are not entitled to post-accident records, and these records would not change the City's liability in the instant action. This is just another attempt by plaintiffs to stave off summary judgment by relying on pure speculation.

Here, as the alleged condition was a pothole and/or Con Ed utility box in the roadway, the City conducted a two-year Department of Transportation (hereinafter "DOT") roadway and intersection search for the location of Quinn's accident. (Exhibits G and I.) It has consistently been held that a search of records for two years prior to and including the date of accident is sufficient to establish a prima facie case. see Elstein v. City of New York, 209 A.D.2d 186, 187 (1st Dep't 1994). Contrary to plaintiffs' claim, the results of the DOT searches included records of potholes and repairs, as is evidenced by the maintenance and repair records and gangsheets, which were found in the DOT searches and addressed in the City's Memorandum. (Exhibits G, H, and I.)

Despite plaintiffs' unsupported contention that the City "never laid a proper foundation for the records," the City provided an affidavit of a record searcher in support of its motion along with the DOT record search results. (Opp. at 7.) The DOT affidavits relied upon in this case comport with the requirements of an affidavit sufficient for the City to make out a *prima facie* case. (Exhibit Q); see also Cruz v. City of New York, 218 A.D.2d 546 (1st Dep't 1995).

Notably, motions for summary judgment are regularly granted prior to the City even appearing for depositions in situations where it is clear that the City was not liable, such as the instant case. see Pena v. New York City, Index No. 155333/2014 (Sup. Ct. New York County,

December 12, 2015) (Hon. James E. d'Auguste) (granting the City's motion for summary judgment in a trip-and-fall action before depositions were held) (Exhibit P); see also Epperson v. City of New York, 133 A.D.3d 522 (1st Dep't 2015) (holding the City was entitled to summary judgment pursuant to § 7-201 and finding "[t]he courts did not improvidently exercise their discretion in declining to direct additional depositions because each plaintiff failed to make a detailed showing of the necessity for taking additional depositions or the substantial likelihood that those sought to be deposed possessed information necessary and material to the prosecution of the case (see Alexopoulos v. Metropolitan Transp. Auth., 37 A.D.3d 232, 233 [1st Dep't 2007])"). As in Pena and Epperson, here, the City is entitled to summary judgment as the necessary discovery is complete, and the City's records demonstrated that the City is not liable for the plaintiffs' injuries. Consequently, the plaintiffs' argument is unavailing, and the City's motion for summary judgment must be granted.

## C.    THE CITY DID NOT HAVE PRIOR WRITTEN NOTICE

Plaintiffs curiously assert that the Big Apple Map is illegible; however, despite being unable to decipher the Map, plaintiffs allege, with absolutely no support, that it provides the City with prior written notice. (Opp. at 2.) Contrary to plaintiffs' contradictory claim, the Big Apple Map is legible and fails to provide the City with prior written notice of a pothole and/or Con Ed utility box. According to the accompanying legend to the Big Apple Map, a pothole or other hazard in the crosswalk is identified as a square box. (Exhibit G at 288.) Notably, here, there is no such symbol. (Exhibit G at 287. Exhibit O.) The Court of Appeals has emphatically ruled that precise notice on the map is required to satisfy the prior written notice requirement. D'Onofrio v. City of New York, 11 N.Y.3d 581 (2008). A nearby defect is insufficient to constitute prior written notice of another defect. Leary v. City of Rochester, 67 N.Y.2d 866 (1986). The notice must be

for the specific defect involved, and not a similar condition. Belmonte v. Metro. Life Ins. Co., 304 A.D.2d 471 (1st Dep't 2003). As there is no relevant symbol at the location of Quinn's incident, the Big Apple Map fails to provide the City with notice, and the City's motion should be granted.

Plaintiffs argue that two complaints logged on August 22, 2017-Defect No.: DM2017235027 and January 17, 2019-Defect No.: DM2019019002 provide the City with prior written notice, because "the City has acknowledged that there is a defect." (Opp. at 11.) Plaintiffs' arguments are well wide of the mark. As the City's moving papers demonstrated, any notice it may have had as of August 22, 2017 or January 17, 2019 was extinguished or cured by its corrective actions, namely the dispatch of a roadway crew and the filling of the potholes. (Exhibit J.) Notably, DM2017235027, which was generated by DOT on August 22, 2017, was repaired on August 23, 2017 and DM2019019002, which was generated by DOT on January 17, 2019, was repaired on January 18, 2019. (Exhibit J.) In support, the City cited case law that held that roadway repairs carried out in response to a complaint effectively expunge notice in the event the defect reappears or recurs. See McCarthy v. City of White Plains, 54 A.D.3d 828, 830 (2d Dep't 2008) (recurrence of a prior defect "does not abrogate the need for prior written notice"); Lopez v. Gonzalez, 44 A.D.3d 1012, 1013 (2d Dep't 2007) (granting dismissal of complaint and finding that "plaintiff failed to present any evidence that the City received prior written notice of the subject defect following the [previous] repair"). Thereafter, if there was a recurrence of the defect, the City cannot be held liable absent "prior written notice of the subject defect following the [previous] repair." Lopez, 44 A.D.3d at 1012. The evidence demonstrates that there was no prior written notice of a subsequent defect that formed at the location prior to Quinn's alleged accident.

Plaintiffs finally argue that the City had notice of the alleged defect, because the "City had summoned Con Ed to appear for a hearing on November 14, 2018 as Con Ed had opened the street

at 1301 6th Avenue." (Opp. at 11-12.) As maintained in the City's Memorandum, the notice of

violation and corresponding summons, which plaintiffs refers to, is for a different location and

condition than that alleged by Quinn, as evidenced by the photographs abutting the notice. (Exhibit

G at 225-241.) Additionally, plaintiffs fail to indicate how this notice and summons provides prior

written notice of a pothole and/or Con Ed sunken utility box in the crosswalk at the intersection of

6th Avenue and West 53rd Street to the City. Plaintiffs fail to provide any case law or evidence in

support of this baseless claim. Thus, as this record is for a different location and condition than

that alleged by plaintiffs, it does not constitute prior written notice to the City, and the City's

motion should be granted. § 7-201; see also Katz v. City of New York, 87 N.Y.2d 241, 243 (1995).

### D. THE AFFIRMATIVE NEGLIGENCE EXCEPTION IS NOT APPLICABLE

Finally, plaintiffs argue that the City has not met its burden because it "failed to show that

it did not cause or create the dangerous crosswalk condition" and failed to address "evidence by

an expert witness" "proving that Quinn was injured due to an improperly repaired pothole." (Opp.

at 7.) Contrary to plaintiffs' unsupported claim, although the City does not have the burden of

proving that it did not cause or create the alleged defect, the City addressed this in its underlying

Memorandum. As demonstrated in the City's Memorandum, none of the evidence exchanged

establishes that the City affirmatively created the subject condition. Yarborough v. City of New

York, 10 N.Y.3d 726 (2008). Any argument to the contrary is mere speculation.[3]

---

[3] Motions for summary judgment may not be defeated merely by surmise, conjecture or suspicion. Smith v. Cohen, 24 A.D.3d 183, 183 (1st Dep't 2005) ("Mere conclusory assertions, devoid of evidentiary facts, are insufficient [to defeat a well-supported summary judgment motion]." (quoting Grullon v. City of New York, 297 A.D.2d 261, 263-64 (1st Dep't 2002)). Rather, the party opposing the motion must establish the existence of material facts of sufficient import to create a triable issue. Lacking the appearance of a genuine and substantial issue of fact, the court "may and should" dispose of the matter upon the law, and direct judgment accordingly. Ball v. United Artists Corp., 13 A.D.2d 133 (1st Dep't 1961); see also Andre v. Pomeroy, 35 N.Y.2d 361, 364, (1974) ("[w]hen there is no genuine issue to be resolved at trial, the case should be summarily decided, and an unfounded reluctance to employ the remedy will only serve to swell the Trial Calendar and thus deny to other litigants the right to have their claims promptly adjudicated.").

Plaintiffs rely on the opinion of Joseph Faharanick, P.E., an engineer, who only reviewed a photograph of the alleged pothole on the date of Quinn's accident and a photograph of the pothole after it was repaired, in support of their claim that the City caused and created the alleged pothole condition. (Exhibit 2.) Faharanick's report is insufficient to overcome a motion for summary judgment as a matter of law as it relies on the wrong codes and standards, is conclusory, self-serving, lacks probative value, and speculative. see Hersko v. United States, 2017 U.S. Dist. LEXIS 71795, *20-21 (S.D.N.Y. May 11, 2017) ("An expert opinion offering only conclusory and speculative assertions is insufficient[.]"); Diaz v. N.Y. Downtown Hosp., 99 N.Y.2d 542, 544 (2002) ("Where the expert's ultimate assertions are speculative or unsupported by any evidentiary foundation. . .[the] opinion should be given no probative force and is insufficient to withstand summary judgment."). As such, Faharanick's report fails to create a question of fact.

Despite not being a biomechanical engineer or doctor, Faharanick is somehow able to opine on the proximate cause of Quinn's injury. Faharanick's report states that the "improperly patched/resurfaced section of the pothole [by the City], caused Mr. Quinn's accident." (Exhibit 2 at ¶ 12.) Notably, Faharanick's report is silent as to when, if ever, he inspected the location, how he obtained the measurements cited in his report, and how he is able to determine that the City previously made repairs to the subject location. (Exhibit 2.)  Faharanick's report fails to cite to any evidence regarding the City's alleged repair of the pothole at the subject location. Id. Faharanick also fails to attach the photographs that he allegedly reviewed in rendering his unsupported conclusion. Id. Faharnick additionally cites to codes in his report. Id. at ¶¶ 13-21. None of these codes were alleged to have been violated by the City in plaintiffs' complaint and should be disregarded. (Exhibit B.) Even if they were alleged, these are not the applicable codes governing

the City's liability.[4] Thus, Faharanick's contentions are entirely misplaced as he relies on inapplicable standards in rendering his conclusion. Finally, Faharanick's report is at odds with the report prepared by plaintiffs' other expert, Bellizi, who attributes Quinn's trip and fall to a "depressed square valve box cover," and not a pothole. (Exhibit N.) Faharanick fails to address Bellizi's findings in his conclusion. Thus, Faharanick's report must be disregarded by the Court.

Plaintiffs further argue, without any evidence or legal support, that the City worked at the location of Quinn's incident on August 22, 2017 and January 17, 2019, "which goes to show that the work by the City resulted in existence of dangerous condition." (Opp. at 13). Contrary to plaintiffs' speculative claim, there is no evidence that the City's conduct in repairing potholes in the area where Quinn's incident occurred gave rise to an immediately apparent defect. There are no photographs or documents that establish that the DOT pothole crew left behind an obvious tripping hazard when they departed from the area on January 18, 2019, which is the last time a DOT pothole crew was in the area before Quinn's incident allegedly occurred seven months later, and which Faharanick fails to even address in his report. (Exhibit J.) Crucially, "the affirmative negligence exception is limited to work by the City that *immediately* results in the existence of a dangerous condition." Oboler v. City of New York, 8 N.Y.3d 888, 889-890 (2007). Courts have routinely found that the passage of days, weeks or months bars application of the exception.[5]

---

[4] Pursuant to the Administrative Code of the City of New York §7-201(c)(2), in order for the City to be held liable for a roadway condition it must have been put on prior written notice of the alleged defective condition, unless the plaintiff can prove that the City created the defect or made a special use of the condition. See Amabile v. City of Buffalo, 93 N.Y.2d 417 (1999).

[5] See Zinz v. Empire City Subway Co., Ltd., 2014 U.S. Dist. LEXIS 147247, *14 (S.D.N.Y. Oct. 14, 2014) (a period of two months found "too attenuated to … constitute 'immediate results' for purposes of the affirmative negligence exception to the notice rule."); Wilson v. Incorporated Vil. Of Hempstead, 120 A.D.3d 665, 666 (2d Dep't 2014) (period of one month deemed not sufficiently immediate); Wald v. City of New York, 115 A.D.3d 939, 941 (2d Dep't 2014) (period of 10 weeks deemed not sufficiently immediate); Spanos v. Town of Clarkstown, 81 A.D.3d 711, 713 (2d Dep't 2011) (two-month lag between conduct and accident not sufficiently immediate); Babenzien v. Town of Fenton, 67 A.D.3d 1236, 1238-1239 (3d Dep't 2009) (municipal conduct one day before plaintiff's injury deemed not immediate).

Plaintiffs cannot establish grounds to apply the affirmative negligence exception. In response to the City's arguments and case law, plaintiffs neither acknowledge the cases cited by the City nor attempt to distinguish them. That is because, absent speculation, plaintiffs can point to no evidence that suggests, much less demonstrates, that a dangerous condition was "immediately apparent" upon the completion of the pothole crew's repairs on January 18, 2019—almost seven months before Quinn's trip and fall. Torres v. City of New York, 39 A.D.3d 438 (1st Dep't 2007). There is no evidence to indicate the pothole repairs posed a hazard in the hours or days following the pothole crew's work on January 18, 2019. In Webster et al. v. City of New York, No. 19-cv-05638-KPF (S.D.N.Y. Sept. 1, 2021), which plaintiffs' fail to address or distinguish, the court held that a repair of the pothole roughly two months before plaintiff's incident was insufficient to establish that the City caused or created the condition. (Exhibit L.) Here, as the City filled potholes almost seven months before Quinn's alleged trip and fall, it does not implicate the affirmative negligence exception. Id.

Finally, plaintiffs speculate that Street Opening Permits issued to Con Ed somehow implicate the affirmative negligence exception. (Opp. at 13.) Street opening permits issued to other entities, unrelated to the City, for those entities to perform work, fail to impute liability on the City. see Quinones v. City of New York, 16 Misc. 3d 1141(A) (Sup. Ct. New York County, September 7, 2007) (Hon. Paul G. Feinman) (finding whether "the City may have caused or created the defect is sheer speculation, given that the only records found by the City's search for work records and permits for work at that location, pertain to permits requested by Con Ed.") Thus, plaintiffs' argument that the City caused or create the alleged condition based on permits issued to Con Ed should be disregarded. In Opposition, plaintiffs rely on speculation in support of their baseless claims, which is insufficient to defeat the City's prima facie entitlement to summary judgment.

**A245**

**CONCLUSION**

For all of the foregoing reasons, the City respectfully requests that the Court grant its motion

for summary judgment and dismiss the complaint in its entirety with prejudice.

Dated: New York, New York
      March 15, 2024

                            HON. SYLVIA O. HINDS-RADIX
                            Corporation Counsel
                            *Attorney for Defendants/Third-Party Plaintiffs The*
                            *City of New York and The City of New York S/H/A*
                            *The New York City Department of Transportation*
                            100 Church Street
                            New York, New York 10007

                            _____
                      By:   Alexandra Hastings
                            Assistant Corporation Counsel
                            The City of New York Law Department
                            100 Church Street
                            New York, New York 10007-2601
                            Tel:  (212) 356-7179
                            ahasting@law.nyc.gov

TO (by ECF):

NAPOLI SHKOLNIK
*Attorneys for Plaintiffs*
*FRANCIS PAUL QUINN JR. and LORI ANN QUINN*
360 Lexington Avenue, 11th Floor
New York, New York 10017
Tel.#: (212) 397-1000
Fax#: (646) 843-7603

HEIDELL, PITTONI, MURPHY & BACH, LLP
*Attorneys for Third-Party Defendant*
*CONSOLIDATED EDISON, INC.*
99 Park Avenue
New York New York 10016
Tel.#: (212) 286-8585
Fax#: (212) 490-8966

Docket No:  20 CV 2666 (JGK)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

FRANCIS PAUL QUINN JR. and LORI ANN QUINN,

Plaintiffs,

- against -

THE CITY OF NEW YORK and THE NEW YORK CITY
DEPARTMENT OF TRANSPORTATION,

Defendant.

THE CITY OF NEW YORK and THE NEW YORK CITY
DEPARTMENT OF TRANSPORTATION,

Third-Party Plaintiffs,

- against -

CONSOLIDATED EDISON, INC.,

Third-Party Defendant.

**MEMORANDUM OF LAW IN REPLY TO PLAINTIFFS'
OPPOSITION TO DEFENDANTS/THIRD-PARTY PLAINTIFFS'
THE CITY OF NEW YORK AND THE CITY OF NEW YORK
S/H/A THE NEW YORK CITY DEPARTMENT OF
TRANSPORTATION MOTION FOR SUMMARY JUDGMENT**

HON. SYLVIA O. HINDS-RADIX
Corporation Counsel
Attorney for Defendants/Third-Party Plaintiffs The City of New York and
The City of New York S/H/A The New York City Department of
Transportation
By: ALEXANDRA HASTINGS
100 Church Street
New York, New York 10007
Tel. #: (212) 356-7179

Please refer to the following file number: **2020-017559**
and indicate the County in which the action is pending in all papers,
correspondence and other communications with respect thereto.

**A247**

**Memorandum and Order, filed Sept. 26, 2024 (Dkt. 89)**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------X
FRANCIS PAUL QUINN JR. and LORI
ANN QUINN,

             Plaintiffs,

      - against –

THE CITY OF NEW YORK and THE
NEW YORK CITY DEPARTMENT OF
TRANSPORTATION,

           Defendants.

------------------------------
THE CITY OF NEW YORK and THE
NEW YORK CITY DEPARTMENT OF
TRANSPORTATION,

    Third-Party Plaintiffs,

      - against –

CONSOLIDATED EDISON, INC.,

    Third-Party Defendant.

------------------------------X

**MEMORANDUM AND ORDER**
20 Civ. 2666 (NRB)

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

    Francis Paul Quinn Jr. and Lori Ann Quinn ("plaintiffs") bring this action against the City of New York and the New York City Department of Transportation (together, the "City defendants"), seeking damages arising from an accident they allege was caused by the negligence of the City defendants.  ECF No. 3 ("Compl.") ¶¶ 15-49.  Presently before the Court is the City defendants' motion

for summary judgment pursuant to Federal Rule of Civil Procedure 56.  ECF No. 84 ("Mot.").  For the following reasons, the City defendants' motion is granted.

### BACKGROUND[1]

On July 3, 2019, plaintiff Francis Paul Quinn Jr. ("Quinn") tripped and fell while crossing the intersection of West 53rd Street and the south side of Sixth Avenue.  Compl. ¶ 23.  Quinn alleges that he suffered "severe and permanent injuries" as a result of this accident.  Compl. ¶¶ 23, 40, 47.  Quinn's wife, co-plaintiff Lori Ann Quinn ("Lori Ann"), claims it also resulted in the loss of the "services, society, comfort, companionship, and consortium of her husband[.]"  Compl. ¶¶ 45-47.

Plaintiffs filed a series of suits following this accident.  Less than two weeks after Quinn's fall, on July 15, 2019, plaintiffs sued Consolidated Edison ("ConEd") in this District, alleging that Quinn "was caused to fall" due to the "defective and hazardous condition" of a ConEd gas utility box within the crosswalk.  Quinn v. Consolidated Edison Company of New York, Inc., No. 19 Civ. 6538 (LJL) (SDA) (S.D.N.Y. 2019) (the "ConEd Action"),

---

[1] Unless otherwise noted, the facts considered and recited for purposes of the instant motion for summary judgment are drawn from plaintiffs' complaint, Compl., the City defendants' Rule 56.1 statement, ECF No. 84-2, plaintiffs' Rule 56.1 response and counterstatement, ECF No. 87 at 1-6, and the prior action by plaintiffs in this Court, Quinn v. Consolidated Edison Company of New York, Inc., No. 19 Civ. 6538 (LJL) (SDA) (S.D.N.Y. 2019).

ECF No. 1 ¶ 17.  On September 24, 2019, while the ConEd Action was pending, plaintiffs served a notice of claim on the City defendants.  ECF No. 84-5.  On February 6, 2020, plaintiffs and ConEd attended a settlement mediation before Magistrate Judge Stewart D. Aaron, at which plaintiffs pursued their claim that ConEd was responsible for Quinn's accident.  See ConEd Action, ECF Nos. 36, 42.  Judge Aaron proposed that the parties settle for $2,499,000, and plaintiffs accepted this proposal.  See Quinn v. City of New York, No. 20 Civ. 2666 (NRB), 2022 WL 874852, at *5 (S.D.N.Y. Mar. 24, 2022).  The ConEd action was dismissed on February 20, 2020.  ConEd Action, ECF No. 42.

Approximately one month later, on March 31, 2020, plaintiffs commenced this action against the City defendants, seeking damages for the same accident.[2]  Plaintiffs' complaint in the instant action, filed on March 31, 2020, alleged that Quinn fell "due [to] the defective and hazardous conditions" of the crosswalk, which the City defendants "caused and created" through their "negligence . . . in the ownership, operation, management, supervision, maintenance, and control of the aforesaid crosswalk."  Compl. ¶¶ 23, 26-27.  On November 18, 2020, the City defendants filed a

---

[2] On March 21, 2020, before beginning this action, plaintiffs commenced a lawsuit against the City defendants in New York County Supreme Court.  Quinn v. City of New York, No. 153010/2020, NYSCEF Doc. No. 1; see also ECF No. 35-24 at 1. Plaintiffs voluntarily discontinued this lawsuit without prejudice on April 22, 2020.  ECF No. 39-16.

-3-

A251

third-party complaint against ConEd seeking contribution and
indemnification. ECF No. 21. At a conference on August 7, 2023,
this Court stayed the time for ConEd to answer or move until the
instant motion was decided. See ECF No. 76.

On May 10, 2021, the City defendants filed a motion to dismiss
plaintiffs' complaint, arguing that, given the inconsistencies
between plaintiffs' positions in the two lawsuits, the doctrine of
judicial estoppel applied to bar plaintiffs from bringing this
action against the City defendants. ECF Nos. 35–37. Specifically,
the City defendants identified factual inconsistencies between
plaintiffs' two lawsuits, noting that plaintiffs had previously
adopted the position that ConEd was subject to liability but were
now seeking to subject the City defendants to liability for the
same incident. See ECF No. 37 at 9-15. In the City defendants'
view, both versions of plaintiffs' story could not be true. Id.
at 12. After reviewing the parties' briefing, this Court granted
the City defendants' motion to dismiss, determining that judicial
estoppel was appropriate. Quinn, 2022 WL 874852, at *7.
Plaintiffs appealed this Court's Memorandum and Order on April 4,
2022. ECF No. 51. Without adopting either party's version of the
underlying facts, the Second Circuit found that the doctrine of
judicial estoppel did not apply in the context of the court's
limited involvement in the settlement conference, and, on June 9,

-4-

2023, issued a summary order vacating this Court's judgment and remanding for further proceedings. Quinn, No. 22-709, 2023 WL 3909798, at *2-*3 (2d Cir. June 9, 2023) (summary order).

Following remand, the City defendants filed this motion on January 25, 2024, seeking summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure on the basis that they had not received prior written notice of the defect alleged to have caused Quinn's accident. ECF No. 84-4 at 7-20. As will be described in detail below, the City's moving papers included three affidavits from City employees and more than 400 pages of records, including reports, notices, permits, and repair orders pertaining to the location of the accident over a period of two years before it occurred. ECF Nos. 84-11-84-20. Plaintiffs submitted an opposition brief on February 28, 2024, ECF No. 85 ("Opp."), and the motion was fully briefed on March 15, 2024, ECF No. 88 ("Reply").

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(a), summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine issue of material fact exists if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Nick's Garage, Inc.

**A253**

v. Progressive Cas. Ins. Co., 875 F.3d 107, 113-14 (2d Cir. 2017)
(quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248
(1986)).  "[I]n assessing the record to determine whether there is
a genuine issue as to a material fact, the court is required to
resolve all ambiguities and draw all permissible factual
inferences in favor of the party against whom summary judgment is
sought."  Sec. Ins. Co. of Hartford v. Old Dominion Freight Line
Inc., 391 F.3d 77, 83 (2d Cir. 2004).

On a motion for summary judgment, "[t]he moving party bears
the initial burden of demonstrating 'the absence of a genuine issue
of material fact.'"  F.D.I.C. v. Great Am. Ins. Co., 607 F.3d 288,
292 (2d Cir. 2010) (quoting Celotex Corp. v. Catrett, 477 U.S.
317, 323 (1986)).  Once the moving party satisfies this burden,
"the party opposing summary judgment . . . must set forth 'specific
facts' demonstrating that there is 'a genuine issue for trial'" to
defeat the motion.  Wright v. Goord, 554 F.3d 255, 266 (2d Cir.
2009) (quoting Fed. R. Civ. P. 56(e)).  The non-moving party "must
do more than simply show that there is some metaphysical doubt as
to the material facts . . . and may not rely on conclusory
allegations or unsubstantiated speculation."  Brown v. Eli Lilly
and Co., 654 F.3d 347, 358 (2d Cir. 2011) (internal quotation marks
and citations omitted).  "If no rational fact finder could find in
the non-movant's favor, there is no genuine issue of material fact,

-6-

**A254**

and summary judgment is appropriate." Citizens Bank of Clearwater v. Hunt, 927 F.2d 707, 710 (2d Cir. 1991) (citations omitted).

## DISCUSSION

The City defendants seek summary judgment on all counts, asserting that: (i) the City defendants had no prior written notice of the defect alleged to have caused Quinn's injuries, as required by law; (ii) there are no applicable exceptions to the prior written notice requirement; and (iii) in the absence of any genuine issue of material fact as to Quinn's negligence claims, Lori Ann's derivative claims must also be dismissed. The City defendants' motion for summary judgment is granted in full.

Separately, the City defendants advance a preclusion argument relating to the sufficiency of the information contained in plaintiffs' notice of claim. We address this argument in further detail below.

### A.  Negligence Claim

In a diversity case, this Court will "apply state substantive law and federal procedural law." Duguay v. City of New York, 861 F. Supp. 2d 236, 245 (S.D.N.Y. 2012) (quoting Gasperini v. Center for Humanities, Inc., 518 U.S. 415, 427 (1996)). "To establish a prima facie case of negligence under New York law, 'a plaintiff must demonstrate (1) a duty owed by the defendant to the plaintiff, (2) a breach thereof, and (3) injury proximately resulting

-7-

**A255**

therefrom.'"  <u>Duguay</u>, 861 F. Supp. 2d at 245 (quoting <u>Lerner v. Fleet Bank, N.A.</u>, 459 F.3d 273, 286 (2d Cir. 2006) (citation omitted)).

Although landowners in New York generally owe a duty of reasonable care to maintain their property in a safe condition, <u>Tagle v. Jakob</u>, 97 N.Y. 2d 165, 168 (2001), the New York City Administrative Code partially shields the City from liability for negligence claims. <u>Duguay</u>, 861 F. Supp. 2d at 246. Specifically, pursuant to New York City Administrative Code § 7-201(c)(2), commonly called the "Pothole Law":

> No civil action shall be maintained against the city for damage to property or injury to person or death sustained in consequence of any street, highway, bridge, wharf, culvert, sidewalk or crosswalk, or any part or portion of any of the foregoing including any encumbrances thereon or attachments thereto, being out of repair, unsafe, dangerous or obstructed, unless [i] it appears that written notice of the defective, unsafe, dangerous or obstructed condition, was actually given to the commissioner of transportation or any person or department authorized by the commissioner to receive such notice, or [ii] where there was previous injury to person or property as a result of the existence of the defective, unsafe, dangerous or obstructed condition, and written notice thereof was given to a city agency, or [iii] there was written acknowledgement from the city of the defective, unsafe, dangerous or obstructed condition, and there was a failure or neglect within fifteen days after the receipt of such notice to repair or remove the defect, danger or obstruction complained of, or the place otherwise made reasonably safe.

**A256**

Once the City establishes that it lacked prior written notice of a hazard, "the burden shifts to the plaintiff to demonstrate the applicability of one of two recognized exceptions to" the § 7-201 notice requirement. Zinz v. Empire City Subway Co., No. 13 Civ. 4415 (LGS), 2014 WL 5293603, at *5 (S.D.N.Y. Oct. 14, 2014) (quoting Yarborough v. City of New York, 10 N.Y.3d 726, 728 (2008)). These exceptions apply only where: (i) "a 'special use' confers a special benefit upon the locality"; or (ii) the City affirmatively caused or created the dangerous condition. Oboler v. City of New York, 8 N.Y.3d 888, 889 (2007) (citations omitted). The "affirmative negligence" exception requires a plaintiff to proffer admissible evidence that the municipality's actions "affirmatively" and "immediately resulted in the existence of a dangerous condition." Parente v. Metro Transp. Auth., No. 10 Civ. 5913 (LTS), 2012 WL 1813077, at *10 (S.D.N.Y. May 16, 2012); Yarborough, 10 N.Y.3d at 728.

### 1. Prior Written Notice

The City defendants attach to their motion more than 400 pages of records relating to the location of Quinn's accident over a period of two years, ECF Nos. 84-11-84-15, 84-17-84-18, as well as three affidavits from employees of the New York City Department of Transportation ("DOT"), ECF Nos. 84-16, 84-19, 84-20.

-9-

**A257**

In the first of these affidavits, DOT paralegal Henry Williams describes the comprehensive search he conducted for DOT records, including his review of all relevant electronic and paper "permits, applications for permits, OCMC files, CARs, NOVs, NICAs, inspections, contracts, maintenance and repair orders, complaints, gangsheets [sic] for roadway work, milling and resurfacing records, and Big Apple Maps for the roadway located at 6th Avenue between West 52nd Street and West 53rd Street [and the intersection of 6th Avenue and West 53rd Street] . . . [over] a period of two years prior to and including" the date of Quinn's accident.  ECF No. 84-16 ¶¶ 3-4.  As Mr. Williams notes in his affidavit, his search returned more than 100 documents, including three maintenance and repair orders issued by DOT to address potholes that had formed in the area prior to the accident.[3]

The other two affidavits submitted by the City defendants address and explain these maintenance and repair orders, which were issued approximately two years and seven months before the accident, respectively.  ECF Nos. 84-19, 84-20.  The affidavit

---

[3] In his affidavit, Mr. Williams states that his roadway segment search returned the following records: 25 permits, 25 hardcopy permits, 25 applications for permits, 1 OCMC file, 3 CARs, 2 NOVs, 14 inspections, 1 maintenance and repair order, 1 complaint, 1 gang sheet for roadway defects, and 1 handwritten gang sheet for roadway defects.  ECF No. 84-16 ¶ 3.  He also states that his roadway intersection search returned the following records: 8 permits, 8 hardcopy permits, 8 applications for permits, 3 NOVs, 12 inspections, 2 maintenance and repair orders, 1 complaint, and 2 gang sheets for roadway defects.  Id. ¶ 4.  Mr. Williams' search also returned 4 Big Apple Maps.  Id. ¶ 5.

A258

executed by Yelena Pasynkova, a DOT Principal Administrative
Assistant in the Division of Roadway Repair and Maintenance, ECF
No. 84-19 ¶¶ 1-7, discusses the August 22, 2017 and January 17,
2019 repair orders, while the affidavit executed by DOT Supervisor
Highway Repairer Mohammad Hoque, ECF No. 84-20 ¶¶ 1-5, discusses
the repair order dated November 13, 2017. Both Ms. Pasynkova and
Mr. Hoque attest that DOT responded promptly to each reported
defect, completing the requested repairs and closing each
maintenance and repair order within twenty-four hours. ECF Nos.
84-19 ¶¶ 4-7, 84-20 ¶¶ 4-5.

Aside from these maintenance and repair orders, which
demonstrate that any reported defects were repaired approximately
seven months prior to Quinn's accident, there is no indication in
any of the records submitted by the City defendants that they had
written notice of a defect within the crosswalk before the accident
occurred. Rather, the records and accompanying affidavits clearly
reflect that the City defendants addressed and properly remediated
all reported defects months — and, in some cases, years — prior to
Quinn's alleged accident. Records like those submitted by the
City defendants are more than sufficient to satisfy the City's
burden to establish that it did not receive prior written notice
of the purported defect prior to the accident. See Culbertson v.
Triumph Constr. Corp., No. 159608/2019, 2023 WL 5628204, at *2-*3

**A259**

(Sup. Ct. New York Cty. Aug. 31, 2023) (finding the City satisfied its prima facie burden under § 7-201 by submitting a "[DOT] affidavit and the DOT records attached thereto"); see also Webster v. City of New York, No. 19 Civ. 5638 (KPF), 2021 WL 3913556 (S.D.N.Y. Sept. 1, 2021). Plaintiffs' arguments to the contrary are both unsupported and unconvincing.

First, Plaintiffs claim that the City defendants "never laid a proper foundation for the records pursuant to the business records exception[.]" Opp. at 7. For a document to be considered a business record, it must be shown that: (i) the record was made "at or near the time by . . . someone with knowledge"; (ii) in the course "of regularly conducted [business] activity"; and (iii) that creating the record "was a regular practice of that activity." Fed. R. Evid. 803(6). The party presenting the record must also provide the certification or testimony of the custodian or another qualified witness. Id. Rule 803(6) "favors the admission of evidence rather than its exclusion if it has any probative value at all." U.S. v. Kaiser, 609 F.3d 556, 574 (2d Cir. 2010) (citation omitted). In Mr. Williams' affidavit, he attests that the records he searched were "maintained by DOT in the ordinary course of business[.]" ECF No. 84-16 ¶¶ 1-2. Further, both Mr. Hoque and Ms. Pasynkova state in their affidavits that they are familiar with the maintenance and repair orders they discuss "through the

-12-

ordinary course of [their] work." ECF Nos. 84-19 ¶ 2, 84-20 ¶ 2. These affidavits, executed by DOT employees to support the admission of records maintained in the course of DOT's regularly conducted business activities, are sufficient to establish that the documents at issue are admissible as business records.[4] See Major League Baseball Props., Inc. v. Salvino, Inc., 542 F.3d 290, 312-13 (2d Cir. 2008) (accepting sworn declaration at the summary judgment stage to establish admissibility as business records).

Plaintiffs further misapprehend the business records doctrine when they attempt to cast doubt on the reliability of the records submitted by the City defendants. First, plaintiffs argue that "the absence of records proving that the City repaired the pothole does not prove that the City did not repair the pothole [or] . . . repaired it properly." Opp. at 7. Such a proposition ignores the very nature of business records. "The hallmark of documents admitted under the business records exception is that they are trustworthy and reliable" because they were kept in the course of a regularly conducted activity and made contemporaneously with the events they concern. Saks Int'l, Inc. v. M/V "Export Champion",

---

[4] Note also that "material relied on at summary judgment need not be admissible in the form presented to the district court[.]" Smith v. City of New York, 697 Fed. App'x 88, 89 (2d Cir. 2017). "[S]o long as the evidence in question will be presented in admissible form at trial," it may be considered on summary judgment. Id. (citing Santos v. Murdock, 243 F.3d 681, 683 (2d Cir. 2001)) (internal quotations omitted).

-13-

817 F.2d 1011, 1013 (2d Cir. 1987).  Further, Federal Rule of
Evidence 803(7) specifically excepts from the rule against hearsay
the absence of a record of a regularly conducted activity where:
(i) "the evidence is admitted to prove the matter did not occur or
exist"; (ii) "a record was regularly kept for a matter of that
kind"; and (iii) "the opponent does not show that the possible
source of the information or other circumstances indicate a lack
of trustworthiness."  Accordingly, to the extent plaintiffs assert
that the absence of a record showing a defect cannot prove that
one did not exist, this approach is simply incorrect.

Finally, Rule 803(6)(e) permits the admission of business
records if an opponent fails to show that the "source of the
information or the method or circumstances of preparation indicate
a lack of trustworthiness."  While plaintiffs baldly claim that
"it is important and worthwhile to question Mr. Williams and the
other affiants regarding the sufficiency of their record searches,
Opp. at 9, they point to no evidence or case law to support this
contention, providing only vague and speculative reasons to do so.
"[O]nce [a] moving party has properly shown the absence of any
genuine issue as to a material fact, the motion will not be
defeated merely on the basis of conjecture or surmise, [or] by
reliance on conclusory statements[.]"  Arias v. Apple Cutting,
Inc., No. 96 Civ. 8272 (DLC) (NRB), 1998 WL 307388, at *2 (S.D.N.Y.

-14-

June 10, 1998) (citing Goenaga v. March of Dimes Birth Defects
Foundation, 51 F.3d 14, 18 (2d Cir. 1995)).  Mere speculation by
plaintiffs will not suffice to overcome the record submitted by
the City defendants.

Plaintiffs also assert that the City defendants "utterly
ignore[]" a declaration by expert witness Joseph Farahnik, which
they claim "prov[es] that Quinn was injured due to an improperly
repaired pothole."  Opp. at 7.  In this six-page declaration, Mr.
Farahnik states that a "pothole[] caused [Quinn]'s accident[,]"
and that this pothole was caused by the "combined effects of
inadequate repair and improper partial repair . . . by the City of
New York . . . which occurred prior to the accident."  ECF No. 87-
2 ¶ 12.  While Mr. Farahnik claims that he "reviewed relevant
documents and photographs . . . to determine the responsibilities
of the City of New York[,]" he fails to attach any such documents
or photographs to his declaration.  ECF No. 87-2 ¶ 4.  Crucially,
although Mr. Farahnik claims that Quinn's accident was caused by
an "improperly patched/resurfaced" pothole, ECF No. 87-2 ¶ 12, the
fact that a previous repair may have been inadequate does not alter
§ 7-201's requirement that the City receive prior written notice
of a pothole in order for liability to attach.  See Webster, 2021
WL 3913556, at *9 (declining to find written notice where
plaintiffs argued the defect recurred following repairs made

approximately two months before the alleged accident) (citing Capobianco v. Mari, 708 N.Y.S. 2d 428, 428 (2d Dep't 2000) (finding the mere "allegation of a subsequent recurrence of a condition does not abrogate the need for prior written notice")). Ultimately, Mr. Farahnik's declaration, which is both unsupported and speculative, fails to raise any genuine issue of material fact.[5]

Finally, plaintiffs claim, again without basis in the record, that various records produced by the City defendants did, in fact, provide adequate written notice of the alleged defect within the crosswalk. None of these arguments is availing. Although plaintiffs argue that the Big Apple Map provided by the City defendants is "blurry[,] illegible and cannot be read[,]" Opp. at 2, n. 1, they paradoxically assert that the same Big Apple Map "shows the defect that caused Quinn's accident" and demonstrates that "the City [defendants] did have prior written notice of the defect[.]" Opp. at 10. However, as the City defendants note, the Big Apple Map identifies no relevant pothole or hazard within the crosswalk at issue.[6] Reply at 5-6. The Court's inspection of the

---

[5] Although it is irrelevant to this motion, which addresses the sufficiency of the notice to the City defendants, we also note that Mr. Farahnik's May 9, 2022 declaration, ECF No. 87-2, which alleges that a pothole caused Quinn's accident, contradicts a September 30, 2019 report by Nicholas Bellizi submitted by plaintiffs in the earlier ConEd Action, ECF No. 88-2, which clearly places responsibility on the ConEd gas cap.

[6] As shown in the map legend, a hazard within a crosswalk is identified using a square box. ECF Nos. 87-4 at 3, 88-3 at 3. There are no square boxes on the Big Apple Map. ECF Nos. 87-4 at 2, 88-3 at 2.

map has confirmed the City's position.  No reasonable juror could conclude otherwise.  Plaintiffs also claim that the maintenance and repair orders dated August 22, 2017 and January 17, 2019 — nearly two years and seven months before Quinn's accident, respectively — constitute "written acknowledgment" of a defect pursuant to § 7-201(c)(2), sufficiently demonstrating that the City defendants "knew of the hazard and had an opportunity to remedy it."  Opp. at 11.  However, as plaintiffs themselves note, id., the City defendants promptly repaired the defects at issue in each complaint.  ECF Nos. 84-19 at ¶¶ 5-7, 84-20 at ¶¶ 4-5.  The written acknowledgment exception set forth in § 7-201(c)(2) applies only if there is "a written statement showing that the city agency responsible for repairing a condition had first-hand knowledge both of the existence and the dangerous nature of the condition[.]"  Bruni v. City of New York, 2 N.Y.3d 319, 325 (2004). Plaintiffs fail to demonstrate that the maintenance and repair orders they cite provide any evidence that any defect or "danger[]" remained after the City completed its repairs.  Webster, 2021 WL 3913556, at *10 (finding a gang sheet identifying potholes that were addressed and repaired did not constitute a "written acknowledgment" for purposes of §7-201(c)(2)).

Finally, plaintiffs note that the City defendants summoned ConEd to appear for a hearing on November 14, 2018, approximately

-17-

**A265**

seven months before Quinn's accident, because ConEd "had opened the street at 1301 6th Avenue between West 52nd Street and West 53rd Street without [a] City permit[.]"  Opp. at 11-12.  This summons did not relate to any hazard within the crosswalk at issue, instead addressing "an electric conduit . . . in temporary asphalt . . . without a valid NYC DOT permit" along the curb.  ECF No. 84-14 at 237.  Accordingly, it also fails to establish prior written notice of any defect relevant to the alleged defect at issue in Quinn's accident.

In sum, the City defendants have made a prima facie showing that they did not receive written notice of or affirmatively acknowledge any defective condition prior to Quinn's accident.  In response, plaintiffs have failed to provide any evidence establishing a genuine dispute of material fact.[7]

---

[7] Plaintiffs also assert that a ruling on summary judgment should be deferred under Federal Rule of Civil Procedure 56(d) until they are able to conduct further discovery.  Opp. at 3, 5.  However, plaintiffs have not "specified" any valid reasons why they "cannot present facts essential to justify [their] opposition" to the City defendants' motion, as required by Rule 56(d).  A "[b]are assertion that the evidence supporting a plaintiff's allegation is in the hands of the defendant is insufficient to justify a denial of a motion for summary judgment under" Rule 56(d).  Gene Codes Forensics, Inc. v. City of New York, 812 F. Supp. 2d 295, 304 (S.D.N.Y. 2011) (citing Lerwick v. Kelsey, 150 Fed. App'x 62, 65 (2d Cir. 2005)).  Given the voluminous record submitted by the City defendants and plaintiffs' failure to identify any genuine issue of material fact that might be resolved by deposing the affiants, plaintiffs' assertion is wholly without support.

-18-

## 2. Applicable Exceptions

Plaintiffs claim that, even if there was no written notice to the City defendants regarding the defect, "the instant case falls under an exception to the written notice requirement."  Opp. at 12.  We disagree.

In the absence of reliance by plaintiffs on the special use exception, only the affirmative negligence exception remains.  To support their argument that the affirmative negligence exception must apply, plaintiffs assert only that "[t]he City worked at the same location several times[,]" directing the Court's attention to the maintenance and repair orders dated August 22, 2017 — almost two years before Quinn's accident — and January 17, 2019 — almost seven months before the accident.[8]  Opp. at 13.  Plaintiffs provide no evidence that the repairs performed on either date resulted in the existence of a dangerous condition.  Nor do plaintiffs explain how any action taken by the City defendants in connection with either maintenance and repair order could have "immediately" resulted in the existence of a hazardous condition in the crosswalk at the time of Quinn's accident, which occurred nearly seven months

---

[8] Plaintiffs also point to Street Opening Permits granted to ConEd on December 12-13, 2018, January 2, 2019, January 23, 2019, February 12, 2019, April 2, 2019, and June 6, 2019.  Opp. at 13; ECF No. 84-17 at 21, 27, 32, 38, and 44.  However, the mere existence of these permits, issued to an independent entity, cannot provide a basis for asserting that the City defendants caused or created the condition at issue.

-19-

A267

after the final repair at that location. See Webster, 2021 WL 3913556, at *12 (finding repair of a pothole approximately two months before a trip and fall insufficient for purposes of the affirmative negligence exception); Zinz, 2014 WL 5293603, at *5-*6 (finding repair of a pothole approximately three months before a trip and fall insufficient for purposes of the affirmative negligence exception).

In summary, because the City defendants have advanced a fulsome prima facie showing that they received no written notice of a defective condition prior to Quinn's accident, as required by § 7-201, and plaintiffs have failed to establish that any conduct by the City defendants constituted an affirmative act of negligence sufficient to satisfy any exception to this rule, this Court finds no question as to whether the City defendants were negligent. Thus, the City defendants have shown that there is no genuine dispute as to any material fact and that they are entitled to summary judgment as a matter of law.

## B.  Derivative Claims

Having granted the City defendants' motion for summary judgment on Quinn's negligence claim, it follows that plaintiff Lori Ann's derivative claim must be dismissed.

-20-

**A268**

C.    **Plaintiffs' Notice of Claim**

The City defendants also argue that Quinn should be precluded from arguing that his injury was caused by a pothole, for which the City could be responsible, because the notice of claim should be read as placing the blame on a ConEd gas utility box.  Reply at 1.  Specifically, the City defendants cite the following language from the notice of claim: "[T]he defect consists of an uneven, raised, depressed, mis-leveled gas utility box."  Id. (quoting ECF No. 84-5 at 2-3).

While we do not dispute the potential significance of this language, as well as Quinn's testimony at the 50-H hearing,[9] we do not read the notice of claim as a whole as requiring the preclusion sought by the City.  To be clear, the potential significance stems from the fact that the precise location of the accident impacts whether the City or ConEd has potential liability.  See Quinn, 2022 WL 874852, at *3-*4 (citing 34 RCNY § 2-07(b) ("[O]wners of covers or gratings on a street are responsible for monitoring the condition of the covers and gratings and the area extending 12 inches outward from the perimeter of the hardware[.]")).  In light

---

[9] As plaintiffs note, Quinn testified to the following at the 50-H hearing:

> Q. What was the distance between the pothole and the utility box?
> A. It was up against it, maybe - pretty much up against the lip of the utility box.

Opp. at 15 (quoting ECF No. 84-10 at 26).

-21-

of our holding on the City defendants' motion for summary judgment, we need not reach any other issue related to liability.

CONCLUSION

For the reasons stated above, the City defendants' motion for summary judgment is granted in its entirety and plaintiffs' complaint is dismissed. Further, because there is no longer a predicate for any of the City defendants' claims against ConEd, ECF No. 21, which have been stayed pending the outcome of the City defendants' motion for summary judgment, ECF No. 76, those claims are also dismissed. The Clerk of the Court is respectfully directed to terminate all pending motions and enter judgment for the defendant.

**SO ORDERED.**

Dated:    September 26, 2024
          New York, New York

_____
     NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE

**Judgment, filed Sept. 26, 2024 (Dkt. 90)**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------X
FRANCIS PAUL QUINN JR. and LORI ANN QUINN,
                             Plaintiffs,

                                             20 **CIVIL** 2666 (NRB)

        -against-

THE CITY OF NEW YORK and THE NEW YORK CITY
DEPARTMENT OF TRANSPORTATION,
                             Defendants.
-------------------------------------------------------------------X
THE CITY OF NEW YORK and THE NEW YORK
CITY DEPARTMENT OF TRANSPORTATION,
                    Third-Party Plaintiffs,

                                   **JUDGMENT**

        -against-

CONSOLIDATED EDISON, INC.,
                    Third-Party Defendant.
-------------------------------------------------------------------X

        It is, **ORDERED, ADJUDGED AND DECREED:**  That for the reasons stated in the

Court's Memorandum and Order dated September 26, 2024,  the City defendants' motion for summary

judgment is granted in its entirety and plaintiffs' complaint is dismissed. Further, because there is no

longer a predicate for any of the City defendants' claims against ConEd, ECF No. 21, which have been

stayed pending the outcome of the City defendants' motion for summary judgment, ECF No. 76, those

claims are also dismissed. Judgment is entered for the defendant.

**Dated:**  New York, New York

        September 26, 2024                         **DANIEL ORTIZ**
                                      **Acting Clerk of Court**

                          **BY:**
                                  _____
                                       **Deputy Clerk**

**A272**

**Notice of Appeal, filed Oct. 8, 2024 (Dkt. 93)**

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

FRANCIS PAUL QUINN JR. and LORI ANN QUINN,

_____

(List the full name(s) of the plaintiff(s)/petitioner(s).)

20 CV 2666 ( NRB)

-against-

THE CITY OF NEW YORK and THE NEW YORK CITY

**NOTICE OF APPEAL**

_____

DEPARTMENT OF TRANSPORTATION

(List the full name(s) of the defendant(s)/respondent(s).)

Notice is hereby given that the following parties:   Plaintiffs FRANCIS PAUL QUINN JR. and
LORI ANN QUINN

_____

(list the names of all parties who are filing an appeal)

in the above-named case appeal to the United States Court of Appeals for the Second Circuit

from the  ☑ judgment  ☐ order   entered on:   September 26, 2024

(date that judgment or order was entered on docket)

that:   The City Defendants' motion for summary judgment is granted in its entirety and Plaintiff's

complaint is dismissed.

(If the appeal is from an order, provide a brief description above of the decision in the order.)

October 7, 2024

Dated

/s/Aparna Pujar
Attorney for Plaintiffs

Signature*

Pujar, Aparna, Sudhir

Name (Last, First, MI)

Napoli Shkolnik PLLC, 360 Lexington Avenue,  11th Floor;  New York City, New York 10017

Address          City          State          Zip Code

(212)-397-1000

Telephone Number

apujar@napolilaw.com

E-mail Address (if available)

*Each party filing the appeal must date and sign the Notice of Appeal and provide his or her mailing address and telephone number, EXCEPT that a signer of a pro se notice of appeal may sign for his or her spouse and minor children if they are parties to the case.  Fed. R. App. P. 3(c)(2).  Attach additional sheets of paper as necessary.

**A274**