# 24-2682

## United States Court of Appeals
## for the Second Circuit

FRANCIS PAUL QUINN, JR. and LORI ANN QUINN,

*Plaintiffs-Appellants*,

*against*

THE CITY OF NEW YORK and THE NEW YORK CITY
DEPARTMENT OF TRANSPORTATION,

*Defendants-Appellees,*

CONSOLIDATED EDISON, INC.,

*Third-Party-Defendant.*

On Appeal from the United States District Court
for the Southern District of New York

## BRIEF FOR APPELLEES

RICHARD DEARING
DEVIN SLACK
CHLOÉ K. MOON
*of Counsel*

April 14, 2025

MURIEL GOODE-TRUFANT
*Corporation Counsel
of the City of New York*
Attorney for Appellees
100 Church Street
New York, New York 10007
212-356-2611
cmoon@law.nyc.gov

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES...............................................................ii

PRELIMINARY STATEMENT.........................................................1

ISSUE PRESENTED.......................................................................3

STATEMENT OF THE CASE...........................................................3

    A. The Quinns' successive actions arising out of the trip-
       and-fall ..............................................................................4

    B. This action and the previous proceedings before this
       Court....................................................................................5

    C. The City's motion for summary judgment and the
       district court's dismissal of the Quinns' action.................7

SUMMARY OF ARGUMENT..........................................................9

ARGUMENT

    THE DISTRICT COURT CORRECTLY GRANTED THE
    CITY SUMMARY JUDGMENT ...........................................11

    A. The City had no prior written notice of the alleged
       defect. ...............................................................................12

    B. The Quinns failed to establish that the City caused or
       created the defect at issue...................................................16

    C. The district court did not abuse its discretion in granting
       summary judgment without further discovery................20

    D. The Quinns' notice of claim limits their suit to
       allegations related to an uneven gas cap. .........................21

CONCLUSION .................................................................................27

# TABLE OF CONTENTS (cont'd)

**Page**

CERTIFICATE OF COMPLIANCE .................................................28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*1077 Madison St., LLC v. Daniels,*
   954 F.3d 460 (2d Cir. 2020) ........................................................ 20

*Austin v. City of Yonkers,*
   243 A.D.2d 597 (2d Dep't 1998) ................................................. 23

*Barry v. Niagara Frontier Transit Sys., Inc.,*
   35 N.Y.2d 629 (1974) ................................................................. 12

*Brown v. City of New York,*
   95 N.Y.2d 389 (2000) ................................................................. 22

*Bruni v. City of New York,*
   2 N.Y.3d 319 (2004) ............................................................ 13, 14

*Burgess v. Fairport Cent. Sch. Dist.,*
   371 F. App'x 140 (2d Cir. 2010) ................................................ 21

*D'Onofrio v. City of New York,*
   11 N.Y.3d 581 (2008) ............................................................ 7, 14

*Figueroa v. City of New York,*
   210 A.D.3d 584 (2d Dep't 2022) ................................................ 15

*Figueroa v. New York City Hous. Auth.,*
   271 A.D.2d 238 (1st Dep't 2000) ............................................... 24

*Harper v. New York,*
   129 A.D.2d 770 (2d Dep't 1987) ................................................ 23

*Haulsey v. City of New York,*
   123 A.D.3d 606 (1st Dep't 2014) ............................................... 14

*Hyland v. City of New York,*
   32 A.D.3d 822 (2d Dep't 2006) .................................................. 19

*Jacobowitz v. City of New York,*
   222 A.D.3d 953 (2d Dep't 2023) ................................................ 24

*Jones v. Bryant Park Mkt. Events, LLC,*
   658 F. App'x 621 (2d Cir. 2016) ................................................ 20

*Katz v. City of New York,*
   87 N.Y.2d 241 (1995) ............................................................ 12, 14

iii

## TABLE OF AUTHORITIES (cont'd)

**Page(s)**

*Khemraj v. City of New York,*
37 A.D.3d 419 (2d Dep't 2007).........................................13

*Kushner v. City of Albany,*
27 A.D.3d 851 (3d Dep't 2006), *aff'd,* 7 N.Y.3d 726
(2006) ........................................................................19

*Leary v. City of Rochester,*
67 N.Y.2d 866 (1986) ..................................................15

*Lewis v. New York City Hous. Auth.,*
135 A.D.3d 444 (1st Dep't 2016)..............................25, 26

*Lopez v. Gonzalez,*
44 A.D.3d 1012 (2d Dep't 2007).................................13

*Mahase v. Manhattan & Bronx
Surface Transit Operating Auth.,*
3 A.D.3d 410 (1st Dep't 2004).....................................26

*Marshall v. City of New York,*
52 A.D.3d 586 (2d Dep't 2008).....................................13

*Oboler v. City of New York,*
8 N.Y.3d 888 (2007) ...................................................16

*Paddington Partners v. Bouchard,*
34 F.3d 1132 (2d Cir. 1994) ....................................20, 21

*Parise v. New York City Dep't of Sanitation,*
306 F. App'x 695 (2d Cir. 2009) ..................................25

*Poirer v. City of Schenectady,*
85 N.Y.2d 310 (1995) ..................................................12

*Roldan v. City of New York,*
36 A.D.3d 484 (1st Dep't 2007)................................14, 15

*Schaum v. City of New York,*
216 A.D.3d 691 (2d Dep't 2023)...................................18

*Serrano v. New York,*
143 A.D.2d 652 (2d Dep't 1988)...................................23

*Setton v. City of New York,*
174 A.D.2d 723 (2d Dep't 1991)...................................23

iv

## TABLE OF AUTHORITIES (cont'd)

**Page(s)**

*Smith v. City of New York,*
210 A.D.3d 53 (2d Dep't 2023)................................................... 12, 16

*Spanos v. Town of Clarkstown,*
81 A.D.3d 711 (2d Dep't 2011)..................................................... 17

*Torres v. New York City Hous. Auth.,*
261 A.D.2d 273 (1st Dep't 1999).................................................. 24

*Wald v. City of New York,*
115 A.D.3d 939 (2d Dep't 2014).................................................. 17

*Washington v. City of New York,*
190 A.D.3d 1009 (2d Dep't 2021)................................................. 24

*Webster v. City of New York,*
No. 19-cv-5638, 2021 U.S. Dist. LEXIS 166112
(S.D.N.Y. Sept. 1, 2021)............................................................ 16, 17

*Wilson v. Inc. Vill. of Hempstead,*
120 A.D.3d 665 (2d Dep't 2014).................................................. 17

*Yankana v. City of New York,*
246 A.D.2d 645 (2d Dep't 1998).................................................. 23

*Yarborough v. City of New York,*
10 N.Y.3d 726 (2008) ................................................... 12, 16, 18, 19

*Zinz v. Empire City Subway Co., Ltd.,*
No. 13-cv-4415, 2014 U.S. Dist. LEXIS 147247
(S.D.N.Y. Oct. 14, 2014) ............................................................ 17

## Statutes and Other Authorities

Admin. Code § 7-201.................................................................1, 8, 9, 12

N.Y. Gen. Mun. Law § 50............................................................*passim*

34 RCNY § 2-07 ........................................................................ 3, 6

## PRELIMINARY STATEMENT

In this successive suit over the same trip-and-fall, the Quinns argue that the City of New York had prior written notice of the defect that they allege caused Francis Quinn's fall in 2019 and that the City caused and created the pothole on which Francis fell, an exception to the prior written notice requirement. The United States District Court for the Southern District of New York (Buchwald, J.) correctly rejected both of those arguments when it granted the City summary judgment.

This Court may affirm on two independent grounds. First, the City did not have prior written notice of the pothole, as required by state law. *See* N.Y.C. Admin. Code § 7-201(c). The Quinns' arguments on appeal—that repair orders and a map from 2002 revealed the defect—reflect a misunderstanding of both the records on which they rely and the prior written notice requirement. The repair orders establish completed repairs, not current defects, and the map, over 15 years old at the time of Francis's fall, identified no defects—let alone a pothole—at the location.

Perhaps because the absence of prior written notice is clear, the Quinns argue that the City caused or created the pothole, suggesting the City made inadequate repairs that caused the pothole. But there is no evidence that repairs even touched upon the pothole. More to the point, the Quinns must show that the repairs "immediately" caused a

hazardous condition. But the last repair occurred months before the incident—far from immediate under state law.

The Quinns thus fall back on an argument that they seek discovery. But they never filed a Rule 56(d) affidavit to that effect below, which is reason enough to reject their claim now. And, in any event, the Quinns rested on a bare assertion that further discovery would aid them. But the City provided a complete set of records reflecting any reported defects and repairs at the intersection where Francis fell for a full two-year period predating the incident. No amount of discovery will change the fact that the City lacked prior written notice and that any repair done by the City did not result in an immediately hazardous defect.

Second, this Court can also affirm on the alternative ground that the Quinns' allegations fall outside the scope of the notice of claim that they were required to serve before bringing suit against the City. *See* N.Y. Gen. Mun. Law § 50(e). The Quinns' notice of claim asserted that the relevant defect was an uneven gas cap—not a pothole. And because the gas cap is the responsibility of ConEd, which has already provided the Quinns with a $2.5 million settlement as the result of this trip-and-fall, the notice of claim failed to provide the City with an opportunity to investigate any potholes nearby. Because the City never received a notice of claim alerting it to a pothole, the complaint should be dismissed.

### ISSUE PRESENTED

Did the district court correctly grant summary judgment to the City, where (1) the City established it did not have prior written notice of the defect, (2) the Quinns failed to establish that the City caused and created the defect, (3) no further discovery was required or would have helped them, and (4) the Quinns' notice of claim limited their case to a different alleged defect?

### STATEMENT OF THE CASE

On July 3, 2019, plaintiff Francis Quinn tripped while crossing the street in New York City. According to Francis's testimony in this case and the Quinns' previous suit, he tripped in an area that was the responsibility of ConEd—a depression within 12 inches of a ConEd gas cap in the crosswalk (ECF Nos. 35-9, 35-19). *See* 34 RCNY § 2-07(b). Francis said his foot got stuck in the "hole up against that raised gas cap" (ECF No. 35-9), and that the cause of his fall was "due to a defective and hazardous utility box" (ECF No. 35-6; *see also* ECF Nos. 35-1, 35-3, 35-10).

Likewise, the Quinns' notice of claim, submitted to the City in September 2019, stated that Francis fell on "a defective and hazardous gas utility box ... located within the cross-walk of the Southside of 6th Avenue and its intersection with 53rd Street," specifying that the defect was "an uneven, raised, depressed, mis-leveled gas utility box" (*see* ECF No.

3

84-5).[1] The Quinns annexed three photos to the notice of claim, all of which were zoomed tightly into the gas utility cap and did not show any other portion of the crosswalk (*id.*).

## A. The Quinns' successive actions arising out of the trip-and-fall

The Quinns first brought suit against ConEd in the Southern District of New York. *Quinn v. Consolidated Edison Co., Inc.*, No. 19-cv-0638 (the "ConEd action"). The Quinns alleged that ConEd had negligently installed and failed to maintain the gas cap upon which Francis had tripped, claiming Francis's injuries were caused by his foot getting stuck against the gas cap (ECF Nos. 35-1, 35-10). Throughout that litigation, the Quinns maintained that ConEd was responsible for the gas cap and its surrounding area (*see* ECF Nos. 35-6, ¶ 4 (Francis Quinn "was caused to trip and fall due to a defective and hazardous utility box," and ConEd was "negligent in … causing a defective and hazardous gas utility box"); 35-10 at 8-9 ("[t]his defective crosswalk valve box cover's condition was caused and created by Con Edison's improper and

_____

[1] Because counsel for the Quinns failed to consult appellees on the creation of the appendix, *see* Fed. R. App. P. 30, the appendix omits the majority of the City's exhibits on its motion for summary judgment despite including the entirety of the Quinns' exhibits in opposition (*see* A10). Therefore, unless otherwise noted, the ECF references herein refer to the district court docket in this matter, *Quinn v. City of New York*, No. 20-cv-02666.

inadequate initial installation of the cover or the improper and inadequate replacement of the cover")). The City was not a party to this action. The Quinns and ConEd settled the case for $2.5 million (ECF No. 35-15). And the Quinns released ConEd from all claims in any way arising out of the incident; the case was then dismissed (*id.*; ECF No. 39-17).[2]

A month later, the Quinns filed another action in state court seeking recovery for the same incident—this time, against the City (ECF No. 35-16). But they voluntarily discontinued that case (ECF No. 39-16).

## B. This action and the previous proceedings before this Court

The Quinns then filed this third action in the Southern District of New York (ECF Nos. 1, 3). Again, the Quinns sought recovery for the same incident (*id.*). In this action, the Quinns alleged that Francis

---

[2] While the Quinns were still litigating their case against ConEd, they hid the fact that they had taken steps to preserve a future suit against the City by serving a notice of claim against the City (ECF No. 35-3). In the Quinns' interrogatory responses in the ConEd action, when asked whether they served a notice of claim "concerning any of the matters alleged in the Complaint" (ECF No. 35-6, ¶ 24), they responded "Not Applicable" (ECF No. 35-6, ¶ 24). Eventually, the Quinns disclosed the notice of claim, but during a deposition, the Quinns' counsel nonetheless denied knowing whether there was a notice of claim, and then claimed it had been done "prophylactically" (ECF No. 35-9). ConEd's counsel swore that, at no point during the ConEd action did the Quinns notify ConEd or the court of their "intention to pursue any claims against the City of New York in connection with that incident" (ECF No. 35-15). And, despite the fact that the settlement negotiations occurred just two weeks before Francis Quinn was scheduled for a pre-suit examination with the City, counsel for ConEd was never notified of that either (*id.*).

tripped due to defective conditions in the crosswalk—specifically a pothole, not the gas cap (ECF Nos. 3, 35-19). Given ConEd's responsibility for the maintenance of any area within 12 inches of a ConEd gas cap, the City filed a third-party complaint against ConEd (ECF No. 35-23). *See* 34 RCNY § 2-07. The City then filed a motion to dismiss, arguing that judicial estoppel barred the Quinns from pursuing this action (*see* ECF Nos. 35–37). The district court granted the City's motion, finding that the Quinns' conduct in bringing these successive suits was "contrary to the Federal Rules of Civil Procedure" and raising the question of whether the Quinns violated Rule 11 of the Federal Rules of Civil Procedure or the New York Rules of Professional Conduct. *Quinn v. City of New York*, No. 20-cv-2666, 2022 U.S. Dist. LEXIS 53604, at *20 (S.D.N.Y. Mar. 24, 2022). The court emphasized the Quinns' "failures to disclose" and "outright misrepresentations." *Id.* at *13, *20.

On appeal, this Court held that the doctrine of judicial estoppel did not apply because the ConEd action was resolved through a settlement, and because the district court in that action therefore did not endorse the Quinns' inconsistent positions. *See Quinn v. City of New York*, No. 22-709, 2023 U.S. App. LEXIS 14396 (2d Cir. June 9, 2023) (summary order). This Court remanded for further proceedings.

## C. The City's motion for summary judgment and the district court's dismissal of the Quinns' action

Following remand, the City moved for summary judgment. The City performed a record search, including roadway records, permits, application for permits, Office of Construction Mitigation and Coordination files, corrective actions requests, notices of violation, notifications for immediate corrective action, inspections, contracts, maintenance and repair orders, complaints, gangsheets for roadway work, milling and resurfacing records, and Big Apple Maps[3] for the two years prior to Francis's fall (ECF Nos. 84-11, 84-12, 84-13, 84-14, 84-15, 84-17, 84-18). None of these records showed a defect where he had fallen.

This search returned multiple repair orders, inspections, and permits. The first repair order, dated August 22, 2017, showed a defect that was repaired on August 23, 2017 (Appendix ("A") 212-29; *see* ECF Nos. 84-15). The second repair order indicated another repair occurred on November 13, 2017 (A212-29; *see* ECF No. 84-18). And the third repair order reflected a repair was performed on January 18, 2019 (A212-29; *see* ECF No. 84-18). The record search returned no other repair orders,

---

[3] Big Apple Maps, the latest of which was created in the early 2000s, were created by litigators to make it easier for plaintiffs to satisfy prior written notice requirements. *See D'Onofrio v. City of New York*, 11 N.Y.3d 581, 584 (2008).

and none in the seven months before the incident. Though inspection reports were also returned, none showed the defect the Quinns alleged in their notice of claim or a hazardous condition in the crosswalk, as their complaint alleged (ECF Nos. 84-5, 84-6, 84-18; *see* A68-70). The City also searched for a defect listed in Big Apple Maps, but there were no defects like the one Francis claimed to have fallen on listed in the pedestrian crosswalk on the south side of 6th Avenue and 53rd Street (ECF No. 84-18; A208-09; *see* A72).

Thus, in its motion for summary judgment, the City argued that it had no prior written notice of the defect—a condition precedent for a suit like this against the City. Admin. Code § 7-201(c)(2). For the City to be liable, the City must have been provided with prior written notice of the specific defect, unless one of two narrow exceptions to the rule applies. And, as the City noted in its motion, even if it was provided with notice of a repaired defective condition, the Quinns were required to present additional written notice of a recurrence of the defect following the repair. But having completed the record search, and finding no record of the defect of which the Quinns complained, the City argued it had no prior written notice.

The City also argued it had not caused or created the condition, one of the two exceptions to the prior written notice requirement. The

8

burden to prove this exception rests on the plaintiff, but the Quinns never alleged that any of the repairs performed—in the years and months prior to Francis's fall—immediately resulted in a hazardous condition upon which he fell. So too, the City made clear that any allegations by the Quinns related to a pothole in the crosswalk could not be considered because their notice of claim was limited to an uneven gas cap, not a pothole, in the crosswalk.

The district court granted the City summary judgment, recognizing that the City had made a prima facie showing that it received no prior written notice of the defective condition—whether a pothole or an uneven gas cap—and that the Quinns failed to establish that any conduct by the City caused or created the defect (A268). The court did not rule on the City's argument that the Quinns were limited in their allegations to issues with the gas cap on the basis of their notice of claim (A269).

## SUMMARY OF ARGUMENT

This Court should affirm, and it may do so on two separate grounds. To begin, the City did not receive prior written notice of the defect that caused Francis Quinn's fall, a condition precedent to suing the City under Administrative Code § 7-201 ("the Pothole Law"), and the Quinns failed to establish any exception to that law. The only arguably relevant exception, the affirmative negligence exception, shifts the

9

burden to the plaintiffs to establish that the City caused or created the defect through an immediate act. But despite having a complete set of two years of records related to the roadway where Francis Quinn fell, including repair orders, inspection reports, and permits, the Quinns could not establish that the City caused or created the defect.

On appeal, the Quinns argue that the repair orders and the Big Apple Map established that the City either had prior written notice or caused the defect. But neither the repair orders—which showed repairs had been successfully completed in the general area more than six months prior—nor the Big Apple Map—which did not show any depressions or potholes where Francis Quinn claimed he fell—provided the City with written notice. And though the Quinns claim they need further discovery to establish that the City caused and created the defect, no repairs were performed for over six months before Francis fell, depriving the Quinns of any argument the City's work "immediately" created a hazardous condition, as the affirmative negligence exception requires.

The Quinns' failure to provide prior written notice, and their concomitant failure to show entitlement to any exception to that law, requires affirmance. But this Court could also affirm on another ground: the Quinns' notice of claim is expressly limited to a depressed gas utility cap. As evidenced by the photos they attached to their notice of claim,

the defect they believed caused Francis Quinn's fall was the gas cap—and *only* the gas cap. It was not a pothole nearby, as they now claim. Because the notice of claim limits the theory of liability they can now assert, this Court could affirm on this ground as well.

The Quinns's assertion that this case should remanded to a different judge warrants no response (App. Br. 32-35). And no remand is necessary because the City is entitled to summary judgment.

## ARGUMENT

### THE DISTRICT COURT CORRECTLY GRANTED THE CITY SUMMARY JUDGMENT

As the district court rightly found, the City satisfied its prima facie burden on summary judgment that it had not received prior written notice, and the Quinns could not establish that the City caused or created the defect in response. No further discovery would aid their cause, where the City has already performed and produced an exhaustive record search for that area. And a separate basis for affirmance exists here: the Quinns' notice of claim was limited to a claimed gas cap defect, and so the entirety of their complaint focusing on a pothole defect should be precluded from consideration.

## A. The City had no prior written notice of the alleged defect.

The Pothole Law, *see* Admin. Code § 7-201(c)(2), limits a municipality's liability to only "those defects or hazardous conditions which its officials have actually been notified exist at a specific location." *Poirer v. City of Schenectady*, 85 N.Y.2d 310, 313-14 (1995); *see also Yarborough v. City of New York*, 10 N.Y.3d 726, 728 (2008); *Katz v. City of New York*, 87 N.Y.2d 241, 243 (1995). "[P]rior written notice of a defect is a condition precedent which a plaintiff is required to plead and prove to maintain an action against the City. Without more, the failure to demonstrate prior written notice leaves a plaintiff without legal recourse against the City." *Smith v. City of New York*, 210 A.D.3d 53, 61 (2d Dep't 2023) (cleaned up); *see also Barry v. Niagara Frontier Transit Sys., Inc.*, 35 N.Y.2d 629, 633-634 (1974).

But the Quinns can point to no prior written notice of the defect of which they complain. On appeal, they argue only that the repair orders and a Big Apple Map from 2002 provided the City with prior written notice of the defect. Setting to one side whether the notice had to identify a depressed gas cap or a pothole, *infra* at 21-26, neither the repair orders nor the map provided the City with prior written notice.

12

To begin, repair orders generally do not constitute prior written notice. *See, e.g.*, *Marshall v. City of New York*, 52 A.D.3d 586, 587 (2d Dep't 2008); *Lopez v. Gonzalez*, 44 A.D.3d 1012, 1012 (2d Dep't 2007); *Khemraj v. City of New York*, 37 A.D.3d 419, 420 (2d Dep't 2007). That repair orders themselves do not provide the City with notice makes sense: particularly here, where the repair orders indicate the repairs were completed (*see* ECF Nos. 84-15, 84-18), nothing in the record demonstrates that there was an unrepaired defect in existence on the day of Francis Quinn's fall. What's more, even if these repair orders did provide notice, because the City repaired the defects at issue in those orders, the Quinns were required to present evidence that the City received further notice following the repairs. *See Lopez*, 44 A.D.3d at 1012 ("[E]ven if the City had been provided with written notice of those prior defects, the plaintiff failed to present any evidence that the City received prior written notice of the subject defect following the repair"). But they haven't done that either.

Instead, the Quinns suggest that the repair orders constituted "written acknowledgement" that the City knew about the defect (App. Br. 20-21). But written acknowledgement requires that the City had "first-hand knowledge both of the existence and dangerous nature of the condition." *Bruni v. City of New York*, 2 N.Y.3d 319, 325 (2004). None

of the repair orders indicate such first-hand knowledge. *Id.* at 322, 326 (holding acknowledgement could be inferred where employees set up a "sawhorse and traffic cones around the hole"). As New York courts have consistently held, months-old repair orders regarding potholes in the vicinity of the accident do not constitute written acknowledgement. *See, e.g.*, *Haulsey v. City of New York*, 123 A.D.3d 606, 607 (1st Dep't 2014). Rightly so: if anything, repair orders, indicating that repairs were successfully completed, are the opposite—an acknowledgement that there are *no* defects in that area anymore.

Nor does the Big Apple Map provide a "solid basis" for prior written notice here (App. Br. 18-19). While true that Big Apple Maps may provide prior written notice in some cases, *Katz*, 87 N.Y.2d at 243, the specific defect of which the plaintiff complains must be listed on the map. *See D'Onofrio*, 11 N.Y.3d at 585; *Roldan v. City of New York*, 36 A.D.3d 484, 485 (1st Dep't 2007) ("the awareness of one defect in the area is insufficient to constitute notice of a different particular defect which caused the accident"). And there is no symbol anywhere on the south side crosswalk of 6th Avenue at its intersection with 53rd Street— let alone the specific symbol for a pothole or other hazardous depression there (A208-09).

And though other defects appear on the map elsewhere, including a nearby symbol for an uneven curb, a nearby defect is insufficient to constitute prior written notice. *See Leary v. City of Rochester*, 67 N.Y.2d 866, 867 (1986). To the extent that the Quinns now argue those symbols on the Big Apple Map represent "where the accident happened" (App. Br. 20), that argument must fail: either the uneven curb labeled on the map caused the Quinns fall, in which case it is precluded by the Quinns' notice of claim that noticed a different defect, *infra* at 21-26, or the Big Apple Map listed the wrong condition—an uneven curb instead of a pothole or depression—in which case the map did not provide the City with prior written notice of the condition of which the Quinns now complain, *Roldan*, 36 A.D.3d at 485. Either way, the Big Apple Map failed to provide the City with notice of the specific defect in the specific location where the Quinns claim the accident occurred.

And it bears noting: the Big Apple Map that the Quinns rely on here traces back to 2002, more than 15 years before the incident. And we know that, during just the two-year period immediately predating the incident, the City made multiple repairs at the intersection. *See, e.g.*, *Figueroa v. City of New York*, 210 A.D.3d 584, 584 (2d Dep't 2022) (Big Apple Map did not provide notice where City made numerous "pothole repairs to the roadway where plaintiff fell" after the date of the map).

15

Under these circumstances, it would require pure speculation—wildly implausible speculation, at that—to find that the map accurately reflected the state of this busy intersection in Midtown Manhattan many years later.

### B. The Quinns failed to establish that the City caused or created the defect at issue.

Because the City lacked prior written notice, the burden shifted to the Quinns to demonstrate that the City created or caused the defect. *See Yarborough*, 10 N.Y.3d at 728; *Smith*, 210 A.D.3d at 55. But this exception to the prior written notice requirement, called the affirmative negligence exception, is "limited to work by the City that *immediately* results in the existence of a dangerous condition." *Oboler v. City of New York*, 8 N.Y.3d 888, 889-90 (2007) (emphasis added). And the Quinns have not established that any of the City's work in that area immediately created the defect at issue.

The best the Quinns can do is point to a repair order from January 2019—more than six months before Francis Quinn fell. But both New York courts and courts within this Circuit have rejected even shorter amounts of time between work done and a fall as "too attenuated" to constitute immediate. *See, e.g.*, *Webster v. City of New York*, No. 19-cv-5638, 2021 U.S. Dist. LEXIS 166112, at *30 (S.D.N.Y. Sept. 1, 2021)

(repairs made three months before the accident insufficient to establish affirmative negligence); *Zinz v. Empire City Subway Co., Ltd*., No. 13-cv-4415, 2014 U.S. Dist. LEXIS 147247, at *15 (S.D.N.Y. Oct. 14, 2014) (repairs made two months before insufficient to show the required immediacy); *Wald v. City of New York*, 115 A.D.3d 939, 941 (2d Dep't 2014) (repairs made "more than 10 weeks" before the accident did not raise a triable issue of fact as to whether the City affirmatively created the condition); *Spanos v. Town of Clarkstown*, 81 A.D.3d 711, 713 (2d Dep't 2011) (repairs made two months before accident insufficient to raise an issue of fact as to whether the repair immediately resulted in the existence of a dangerous condition).[4]

What's more, the Quinns never alleged—nor demonstrated—that the repairs "exacerbated" the defect, a requirement for the affirmative negligence exception. *See, e.g.*, *Wilson v. Inc. Vill. of Hempstead*, 120 A.D.3d 665, 666 (2d Dep't 2014) (repair must make the defect "more dangerous than it was before"). And there is no indication in the record that the repairs were even ineffectual (which would not be enough to

---

[4] Though the Quinns object to the district court's reliance on *Webster* and *Zinz* because some testimony was elicited in those cases (App. Br. 23-24), that distinction is irrelevant here: both of those courts, like the one here, relied on the City's record search and expert reports in determining whether the plaintiffs had established that the City caused or created the defect. In those cases, as here, neither plaintiffs' expert nor the City's records indicated that the affirmative negligence exception applied.

17

impose liability), let alone that they resulted in a more dangerous condition.

The Quinns thus resort to an expert affidavit to suggest that Francis's injuries were caused by a "botched" repair (App. Br. 16). But their putative expert merely trades in speculation: though he suggests there was an improper repair done, he never explains *how* he came to that conclusion, neither attaching the photographs he relied on nor explaining his investigation of the site or his methodology (ECF No. 87-2). *See Schaum v. City of New York*, 216 A.D.3d 691, 693 (2d Dep't 2023). And even if those defects could be set to one side, the Quinns' putative expert offers no timeline for *when* those repairs were undertaken, much less establishes that the repairs "immediately result[ed] in the existence of a dangerous condition." *Yarborough*, 10 N.Y.3d at 728. The expert affidavit does not fill the evidentiary gap; it adds nothing to this case.

It is thus odd that the Quinns argue that the City's failure to mention *their* expert affidavit in its motion for summary judgment is "fatal" (App. Br. 15-18). The City was not obliged to preemptively explain how the affidavit—if plaintiffs were to rely on it in opposition to summary judgment—could not establish a genuine dispute of material fact. And that is especially true because it is the Quinns' burden to prove the affirmative negligence exception. *See Yarborough*, 10 N.Y.3d at 728.

18

The Quinns thus turn to a different argument, in which they now suggest that perhaps the City caused or created the defect because there were multiple repairs to the area over the course of as many years (App. Br. 21-22). But the Quinns point to nothing to support such speculation and it is therefore insufficient to raise a genuine dispute of fact. *See Hyland v. City of New York*, 32 A.D.3d 822, 823-24 (2d Dep't 2006). Indeed, nothing in the record suggests that the City's completed repairs, months apart and months before Francis Quinn's fall, immediately created or exacerbated the alleged defect. If anything, the fact that multiple successful repairs were made over time suggests that the heavily trafficked area of Sixth Avenue and 53rd Street was subject to standard wear and tear that would make the affirmative negligence exception inapplicable. *Yarborough*, 10 N.Y.3d at 728; *Kushner v. City of Albany*, 27 A.D.3d 851, 852 (3d Dep't 2006) (a pothole that gradually becomes a pothole again is not an immediately created condition), *aff'd*, 7 N.Y.3d 726 (2006). Without more, the court was correct to conclude that the Quinns could not carry their burden to establish this exception.

### C. The district court did not abuse its discretion in granting summary judgment without further discovery.

The Quinns' claim on appeal that they require additional discovery has two primary flaws: first, they never submitted a Rule 56(d) affidavit, a requirement under the Federal Rules of Civil Procedure; and, second, they cannot show that any further discovery would substantiate their claims. The district court did not abuse its discretion in declining to permit further discovery. *Paddington Partners v. Bouchard*, 34 F.3d 1132, 1137 (2d Cir. 1994).

To begin, though the Quinns suggested they needed further discovery in their memorandum in opposition to summary judgment, they never filed the requisite affidavit for the district court's review. *See* Fed. R. Civ. P. 56(d). "A reference … to the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for [an] affidavit," and thus the Quinns' "failure to file an affidavit … is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate," as this Court has repeatedly held. *Paddington Partners*, 34 F.3d at 1137; *see also 1077 Madison St., LLC v. Daniels*, 954 F.3d 460, 463-64 (2d Cir. 2020); *Jones v. Bryant Park Mkt. Events, LLC*, 658 F. App'x 621, 626 (2d Cir. 2016).

In any event, the issue here is whether the City had prior written notice of the defect that caused Francis's fall or if the Quinns showed an applicable exception. None of the discovery they seek would have added anything to those claims, especially since the City produced a complete record search and the three affidavits explaining the search results. Crucially, those records showed that the last repair to the area was done over six months before Francis Quinn's fall. No deposition would change the fact that the six-month gap between the last repair and Francis's fall was not "immediate" under the law. The Quinns therefore cannot "substantiate[] their general belief that discovery would have produced facts relevant to their claims." *Burgess v. Fairport Cent. Sch. Dist.*, 371 F. App'x 140, 142 (2d Cir. 2010) (summary order). And the Quinns' "bare assertion" that evidence supporting their claims rests with the City is "insufficient to justify a denial of a motion for summary judgment." *Paddington Partners*, 34 F.3d at 1138.

### D. The Quinns' notice of claim limits their suit to allegations related to an uneven gas cap.

The Quinns' complaint can also be dismissed for failure to comply with the General Municipal Law. To enable authorities to investigate, collect evidence, and evaluate the merit of a claim, those seeking to recover in tort against a municipality are required, as a precondition to

suit, to serve a notice of claim. *See* N.Y. Gen. Mun. Law § 50-e(2); *Brown v. City of New York*, 95 N.Y.2d 389, 392-393 (2000). When determining whether a plaintiff has met the requirements of General Municipal Law § 50-e, courts "focus on the purpose served by a Notice of Claim: whether based on the claimant's description municipal authorities can locate the place, fix the time and understand the nature of the accident." *Brown*, 95 N.Y.2d at 393. The Quinns' notice of claim—stating the defect was an uneven gas cap—prevented the City from identifying and investigating a pothole that they now claimed caused Francis's fall.

By changing tack between their notice of claim and their complaint as to the defect at issue, the Quinns deprived the City of the ability to "promptly investigate." *Id.* at 394. Their notice of claim stated that the defect consisted of "an uneven, raised, depressed, mis-leveled gas utility box," and the photos attached to the notice of claim focus exclusively on the ConEd utility box (ECF No. 84-5). Indeed, the photos show *nothing but* the gas cap (*id.*).[5] On appeal and in their complaint, however, the Quinns lay the blame for Francis's fall on a pothole in the crosswalk. But a plaintiff complies with the General Municipal Law only when "the notice describes the accident with sufficient particularity so as to

---

[5] The Quinns' expert also attributed the cause of Francis Quinn's trip to the "depressed and sunken Con Edison metal valve box cover" (ECF No. 88-2).

enable the defendant to locate the defect, conduct a proper investigation, and assess the merits of the claim." *Yankana v. City of New York*, 246 A.D.2d 645, 646 (2d Dep't 1998). By changing the alleged defect between the time they filed the notice of claim and the time they filed their complaint, the Quinns run into two problems with the General Municipal Law: first, it prevented the City from investigating anything related to a pothole; and, as a consequence, the Quinns altered both their theory of causation and the nature of their claim.

Discrepancies in the description of the defect render "meaningful investigation" impossible, and therefore run afoul of notice-of-claim requirements. *Setton v. City of New York*, 174 A.D.2d 723, 724 (2d Dep't 1991); *see also Austin v. City of Yonkers*, 243 A.D.2d 597, 597 (2d Dep't 1998) (Supreme Court erred in allowing amendment to notice of claim where the amended notice "indicated a different accident site" than the original); *Serrano v. New York*, 143 A.D.2d 652, 653 (2d Dep't 1988) (plaintiff's "misdescription of the accident location" in the notice of claim deprived City of ability to investigate). And not only was the defect inadequately described, but the notice of claim was "materially contradicted" by the Quinns' complaint, rendering it obsolete. *See Harper v. New York*, 129 A.D.2d 770, 771 (2d Dep't 1987) (denying leave to amend notice of claim where plaintiff initially identified a "hole in the

23

street" as the defect but later alleged it was a "raised crack around a manhole"). By changing the defect to a pothole, the Quinns materially contradicted their notice of claim.

So too, the Quinns' change-in-defect altered the theory of their case. But "causes of action or legal theories may not be raised in the complaint that were not directly or indirectly mentioned in the notice of claim and that change the nature of the claim or assert a new one." *Jacobowitz v. City of New York*, 222 A.D.3d 953, 955 (2d Dep't 2023); *see Washington v. City of New York*, 190 A.D.3d 1009, 1011 (2d Dep't 2021). By submitting a notice of claim that focused exclusively on a gas cap and only later alleging the existence of a pothole in the crosswalk, the Quinns changed the nature of their claim and their "theory of causation." *Torres v. New York City Hous. Auth.*, 261 A.D.2d 273, 275 (1st Dep't 1999). And though the City had no prior written notice of either defect, as discussed above, the Quinns are precluded from altering "the nature of the claim" that they asserted in their notice of claim. *See, e.g., Figueroa v. New York City Hous. Auth.*, 271 A.D.2d 238, 239 (1st Dep't 2000). By failing to provide a notice of claim with respect to a pothole, the Quinns have changed their theory of the case and of Francis's fall.

And though the General Municipal Law allows some alterations to a notice of claim to be corrected or disregarded, this is far from the kind

24

of non-prejudicial, technical errors that General Municipal Law § 50-e(6) contemplates. Under the law, only mistakes and omissions made in good faith may be disregarded, at the court's discretion, so long as they do not prejudice the other party. N.Y. Gen. Mun. Law § 50-e(6). But, as this Court has held, those "good faith, non-prejudicial, technical mistakes, defects or omissions" cannot be "substantive changes in the theory of liability." *Parise v. New York City Dep't of Sanitation*, 306 F. App'x 695, 698 (2d Cir. 2009). But this change was both "substantive" and prejudicial: the City never received a notice of claim related to a pothole and so never knew to investigate a pothole it had no notice of.

And though the Quinns argued below that Francis Quinn's pre-suit testimony corrected that error (*see* A145), they cannot rely on such testimony. Testimony from a pre-suit hearing cannot "be used to amend the theory of liability set forth in the notice of claim where … amendment would change the nature of the claim." *Lewis v. New York City Hous. Auth.*, 135 A.D.3d 444, 445 (1st Dep't 2016) (cleaned up).[6] To the extent that Francis Quinn's testimony locates a pothole as the cause of his fall, that alters the theory of liability laid out in his notice of claim,

---

[6] As this Court has noted, pre-suit testimony primarily cures an initially defective notice of claim only where there was an initial failure to specify the "exact location of the incident." *Parise*, 306 F. App'x at 698. Here, the Quinns identified an exact location, they just changed that location upon filing their complaint.

which pinpointed the gas cap—and thus a different entity, ConEd—as the cause of his fall. As a result, any arguments pertaining to a pothole defect should be rejected and any evidence adduced with respect to their new theory precluded. *Id.*; *see also Mahase v. Manhattan & Bronx Surface Transit Operating Auth.*, 3 A.D.3d 410, 411 (1st Dep't 2004).

## CONCLUSION

This Court should affirm.

Dated:  New York, New York
April 14, 2025

Respectfully submitted,

MURIEL GOODE-TRUFANT
*Corporation Counsel*
*of the City of New York*
Attorney for Appellees

By: _____
CHLOÉ K. MOON
Assistant Corporation Counsel

100 Church Street
New York, New York 10007
212-356-2611
cmoon@law.nyc.gov

RICHARD DEARING
DEVIN SLACK
CHLOÉ K. MOON
*of Counsel*

27

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief was prepared using Microsoft Word, and according to that software, it contains 6,057 words, not including the table of contents, table of authorities, this certificate, and the cover.

CHLOÉ K. MOON