# 24-2682

# United States Court of Appeals
# for the Second Circuit

_____

FRANCIS PAUL QUINN, JR., and LORI ANN QUINN,

*Plaintiffs-Appellants,*

v.

THE CITY OF NEW YORK and
THE NEW YORK CITY DEPARTMENT OF TRANSPORTATION,

*Defendants-Third-Party-Plaintiffs-Appellees,*


CONSOLIDATED EDISON, INC.,

*Third-Party-Defendant.*

_____

On Appeal from the United States District Court
for the Southern District of New York

_____

## APPELLANTS' REPLY BRIEF

_____

**NAPOLI SHKOLNIK PLLC**
APARNA S. PUJAR
360 Lexington Avenue, 11th Floor
New York, NY 10017
Tel: (212) 397-1000
E-mail: APujar@NapoliLaw.com

*Attorneys for Plaintiffs-Appellants*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................ ii

PRELIMINARY STATEMENT ...........................................................1

ARGUMENT .....................................................................................3

    I.    THE CITY FAILED TO MEET ITS INITIAL RULE 56(c) BURDEN TO REFUTE PLAINTIFF'S AFFIRMATIVE CREATION THEORY, AND ITS BELATED CRITICISM OF THE FARAHNIK AFFIDAVIT CANNOT CURE THAT FAILURE ................................................................................3

    II.    INDEPENDENTLY, THE RECORD PRESENTS A TRIABLE ISSUE OF FACT AS TO WHETHER THE CITY'S NEGLIGENT REPAIR CREATED THE DEFECTIVE CONDITION ...................................................6

    III.    QUINN'S NOTICE OF CLAIM FULLY COMPLIED WITH GENERAL MUNICIPAL LAW § 50-e AND DID NOT PREJUDICE DEFENDANT AS IT PROVIDED AMPLE INFORMATION TO INVESTIGATE THE ACCIDENT .................11

          The City's Cited Cases Are Inapplicable ...........................17

CONCLUSION .................................................................................21

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Aurora Loan Services, Inc. v. Posner, Posner & Associates, P.C.*,
   513 F. Supp. 2d 1820 (S.D.N.Y. 2007) ..................................................5

*Austin v. City of Yonkers*,
   243 A.D.2d 597 (2d Dep't 1997) ........................................................19

*Bennett v. Bascom*,
   788 F. App'x 318 (6th Cir. 2019) .........................................................5

*Bielecki v. City of New York*,
   14 A.D.3d 301 (1st Dep't 2005) ..........................................................7

*Brown v. City of New York*,
   95 N.Y.2d 389 (2000) .......................................................... 15, 17, 18

*Bruni v. City of New York*,
   2 N.Y.3d 31926 (2004) ........................................................................4

*Carlucci v. Vil. of Scarsdale*,
   104 A.D.3d 797 (2d Dep't 2013) .........................................................4

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) .............................................................................5

*Cruz v. City of New York*,
   218 A.D.2d 546 (1st Dep't 1995) ........................................................6

*D'Alessandro v. NYCTA*,
   83 N.Y.2d (1994) ...............................................................................15

*Figueroa v. NYCHA*,
   271 A.D.2d 238 (1st Dep't 2000) ......................................................19

*Foster v. Herbert Slepoy Corp.*,
   76 A.D.3d 210 (2d Dep't 2010) ...........................................................4

*Gene Codes Forensics, Inc. v. City of New York*,
   812 F. Supp. 2d 295 (S.D.N.Y. 2011) ...............................................10

*Giannullo v. City of New York*,
   322 F.3d 139 (2d Cir. 2003) ..................................................... 3, 4, 5

*Gormley v. County of Nassau*,
   150 A.D.2d 342 (2d Dep't 1989) ........................................................................6

*Harper v. City of New York*,
   129 A.D.2d 770 (2d Dep't 1987) ......................................................................19

*Ingle v. NYCTA*,
   7 A.D.3d 574 (2d Dep't 2004) ........................................................................15

*Jacobowitz v. City of New York*,
   222 A.D.3d 953 (2d Dep't 2023) ......................................................................18

*Kushner v. City of Albany*,
   27 A.D.3d 851 (3d Dep't 2006) ..........................................................................9

*Lewis v. New York City Hous. Auth.*,
   135 A.D.3d 444 (1st Dep't 2016) ......................................................................20

*Mahase v. Manhattan & Bronx Surface Tr. Operating Auth.*,
   3 A.D.3d 410 (1st Dep't 2004) ........................................................................20

*Oboler v. City of New York*,
   8 N.Y.3d 888 (2007) ..........................................................................................7

*Parise v. New York City Dept. of Sanitation*,
   306 F. App'x 695 (2d Cir. 2009) ......................................................................20

*Purdy v. City of New York*,
   193 N.Y. 521 (1908) ........................................................................................16

*Romano v. Vil. of Mamaroneck*,
   100 A.D.3d 854 (2d Dep't 2012) ........................................................................4

*Schaum v. City of NY*,
   216 A.D.3d 691 (2d Dep't 2023) ........................................................................8

*Serano v. City of New York*,
   143 A.D.2d 652 (2d Dep't 1988) ......................................................................19

*Setton v. City of New York*,
   174 A.D.2d 723 (2d Dep't 1991) ......................................................................18

*Spanos v. Town of Clarkstown*,
   81 A.D.3d 711 (2d Dep't 2011) ..........................................................................7

*State v. Waverly Central School Dist.*,
   28 A.D.2d 628 (3d Dep't 1967) ........................................................................12

*Torres v. NYCHA*,
  261 A.D.2d 273 (1st Dep't 1999) .......................................................19

*Trebor Sportswear Co. v. The Limited Stores*,
  865 F.2d 506 (2d Cir. 1989) ............................................................10

*Wald v. City of New York*,
  115 A.D.3d 939 (2d Dep't 2014)..........................................................7

*Washington v. City of New York*,
  190 A.D.3d 1009 (2d Dep't 2021)........................................................15

*Webster v. City of New York*,
  2021 WL 3913556 (S.D.N.Y.)...............................................................6

*Wilson v. Incorporated Village of Hempstead*,
  120 A.D.3d 665 ..................................................................................8

*Yankana v. City of New York*,
  246 A.D.2d 645 (2d Dep't 1998).........................................................18

*Zinz v. Empire City Subway Co.*,
  2014 U.S. Dist. LEXIS 147247 ............................................................6

## Statutes & Other Authorities:

Fed R. Civ. P. 56(c)............................................................... 1, 3, 6, 21

Fed R. Civ. P. 56(c)(1)(B) .............................................................5

Fed R. Civ. P. 56(d) .................................................................. 2, 9, 10

GML § 50-e.................................................................................. *passim*

GML § 50-e(6) ..............................................................................15

GML § 50-h ...................................................................................19

## PRELIMINARY STATEMENT

The district court erred in granting summary judgment to Defendant-Appellee City of New York ("City") by accepting arguments that were procedurally and substantively flawed, most notably, by overlooking the City's complete failure to meet its Rule 56(c) burden on Quinn's affirmative creation theory. The City's summary judgment motion never even mentioned the affidavit of Quinn's expert, Joseph Farahnik, who opined that the defect was caused by a botched repair, one of the two recognized exceptions to the prior written notice requirement. Instead, the City waited until its reply to raise a superficial challenge to the affidavit's probative value, a tactic that was plainly improper under established summary judgment standards.

Apparently realizing that this Court is required to reverse the district court's grant of summary judgment due to its failure to meet its Rule 56(c) burden as movant, the City switches gears, and attempts to defend the result below on an alternative ground: that the entire case should be dismissed because Quinn's Notice of Claim was somehow faulty. In its brief, the City neglects to mention one important detail: this is not a situation in which the district court overlooked a ground for dismissal that is purely legal, based on which an appellee may urge affirmance (as this Court of course may affirm on any ground supported by the record). Rather, this is a situation in the City *argued and lost* on this ground in the district court. Further,

this is not a purely legal ground for dismissal; it is a ground for dismissal that required the district court to engage in fact-finding, and thus is subject to abuse-of-discretion review. In the district court, the City made this fact-bound argument, district court rejected the argument, and City then failed to cross-appeal from that ruling, so it is therefore barred from revisiting it on appeal.

And in any event, the district court did not abuse its discretion in rejecting the City's argument. The Notice of Claim provided more than enough information to enable the City to investigate the incident: it identified the date, time, location, nature, and cause of the injury, and included photos of the hazardous condition. That the City then repaired the hazard shortly after receiving the notice proves that the notice was adequate to serve its purpose.

Equally meritless is the City's contention that Quinn was required to submit a formal Rule 56(d) affidavit to resist summary judgment. That rule is not intended to elevate form over substance. Quinn raised clear, specific, and timely objections to the premature filing of a dispositive motion before the close of discovery, identified what discovery was needed, and explained its relevance. These requests were preserved in multiple letters to the district court. Quinn was never afforded a fair opportunity to examine City witnesses, obtain documents related to repairs, or test the evidence cited in support of summary judgment. That alone warrants reversal.

The City's brief misstates the record, overlooks the City's failure to meet its burden under Rule 56(c), and attempts to distract from its own procedural defaults. Quinn's expert affidavit was exchanged with the City two years earlier and the City knew of him as a witness, so to meet its burden, it was required to show that Quinn would be unable to submit admissible evidence on affirmative creation, which it failed to do. The City did not address it in its motion and failed to even address the expert's conclusions. That failure should have ended the inquiry. Therefore, the judgment below must be reversed.

## ARGUMENT

### I. THE CITY FAILED TO MEET ITS INITIAL RULE 56(c) BURDEN TO REFUTE PLAINTIFF'S AFFIRMATIVE CREATION THEORY, AND ITS BELATED CRITICISM OF THE FARAHNIK AFFIDAVIT CANNOT CURE THAT FAILURE

The City's summary judgment motion was fatally defective because it never addressed Quinn's affirmative creation theory or the supporting expert affidavit of Quinn's expert, Joseph Farahnik, until its reply brief. As we previously argued (Appellant's brief ("AOB") at 14–18), this omission constitutes a failure to satisfy the City's burden under Rule 56(c), which requires a movant to "affirmatively demonstrate that no genuine issue of material fact exists." *Giannullo v. City of New York*, 322 F.3d 139, 141 (2d Cir. 2003). The prima facie showing that a defendant must make on a motion for summary judgment is governed by the allegations of

liability made by the plaintiffs in the pleadings. *See Carlucci v Vil. of Scarsdale,* 104 A.D.3d 797 (2d Dep't 2013); *Foster v Herbert Slepoy Corp.,* 76 A.D.3d 210 (2d Dep't 2010). Since Quinn alleged in his complaint that the City created the alleged defect, the City was obligated to establish, as part of its prima facie showing, both that it did not receive prior written notice of the alleged defect, and that it did not create the alleged defect through an affirmative act of negligence See *Romano v Vil. of Mamaroneck,* 100 A.D.3d 854 (2d Dep't 2012).

The City's motion for summary judgment made no mention of Mr. Farahnik, despite the fact that his affidavit was submitted nearly two years earlier. Nor did the City submit its own expert affidavit or conduct any expert discovery to challenge the basis of Mr. Farahnik's opinions. The City's silence left unaddressed Quinn's theory that the dangerous condition was affirmatively created by the City through a botched pothole repair, one of the two well-recognized exceptions to the prior written notice requirement. *Bruni v. City of New York*, 2 N.Y.3d 319, 326 (2004).

Instead of confronting that theory in its moving papers, the City raised its criticisms of Farahnik's affidavit for the first time in reply to motion for summary judgment (A-230), describing it as "speculative" and lacking "probative value." But by then it was too late. As the Second Circuit has made clear, a party opposing summary judgment "is not required to rebut an insufficient showing." *Giannullo*,

322 F.3d at 141. And as federal courts consistently recognize, arguments raised for the first time in a reply brief cannot be used to satisfy the moving party's initial burden. *See Aurora Loan Services, Inc. v. Posner, Posner & Associates, P.C.*, 513 F. Supp. 2d 18, 20 (S.D.N.Y. 2007) (cited at AOB at 18); *see also Bennett v. Bascom*, 788 F. App'x 318, 323 (6th Cir. 2019) (same).

Furthermore, the City never submitted evidence establishing that Quinn would be unable to offer admissible proof at trial through Mr. Farahnik. This is what *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) (cited at AOB at 9), and Rule 56(c)(1)(B) require when a party moves for summary judgment before discovery is complete. It is not enough to simply call the opposing expert's opinion "conclusory." As this Court explained in *Giannullo*, if the movant does not meet its burden, summary judgment must be denied, even if the non-movant submits nothing.

The district court's reliance on the City's reply arguments to dismiss the affirmative creation claim was thus clear legal error. At the very least, summary judgment should have been denied, to permit the parties to complete expert discovery, particularly given that the evidence raised a triable issue as to whether the defect was affirmatively created by the City. The affidavit of a professional engineer attesting to visible characteristics of a defective condition, especially one the City itself repaired shortly after the incident, cannot be disregarded at the summary

judgment stage. *See Cruz v. City of New York*, 218 A.D.2d 546 (1st Dep't 1995) (AOB at 12); *Gormley v. County of Nassau*, 150 A.D.2d 342 (2d Dep't 1989) (same).

## II.   INDEPENDENTLY, THE RECORD PRESENTS A TRIABLE ISSUE OF FACT AS TO WHETHER THE CITY'S NEGLIGENT REPAIR CREATED THE DEFECTIVE CONDITION

Even setting aside the City's failure to meet its Rule 56(c) burden, reversal is required for a second, independent reason, which is that the evidentiary record, when viewed in the light most favorable to Quinn, raises a genuine dispute of material fact as to whether the City affirmatively created the hazardous condition that caused his injury.

The City argues that Quinn failed to demonstrate affirmative negligence because the January 2019 repair work was allegedly "too attenuated" from the July 2019 accident and that Quinn's expert affidavit is "speculative." These arguments are without merit and misstate both the evidentiary record and applicable legal standards.

The City's reliance on *Webster v. City of New York*, 2021 WL 3913556 (S.D.N.Y. Sept. 1, 2021), is misplaced, as the plaintiff in *Webster* was granted multiple extensions and a full opportunity to conduct discovery, unlike Quinn, who was denied even basic depositions and document production. Similarly, in *Zinz v. Empire City Subway Co.*, 2014 U.S. Dist. LEXIS 147247, the plaintiff deposed City

employees and accessed repair records; Quinn has had no such opportunity to develop his record.

*Wald v. City of New York*, 115 A.D.3d 939 (2d Dep't 2014), is procedurally distinct, as the record searcher had already been deposed and discovery was complete, unlike here where summary judgment was granted prematurely. *Spanos v. Town of Clarkstown*, 81 A.D.3d 711 (2d Dep't 2011), is likewise inapplicable, as the Note of Issue had been filed, confirming that discovery had concluded again, unlike in Quinn's case, where no depositions or meaningful discovery occurred.

The City cites *Oboler v. City of New York*, 8 N.Y.3d 888, 889 (2007), to emphasize the so-called "immediacy" test for affirmative negligence. While *Oboler* articulates the general rule, it does not define "immediate" with rigid temporal boundaries. Contrary to the City's suggestion, Quinn was not required to prove that the accident occurred mere days or weeks after the City's repair. The "immediacy" requirement is a qualitative standard focused on whether the work itself created a dangerous condition, not on the precise passage of time. *See Oboler*, 8 N.Y.3d at 889–90; *Bielecki v. City of New York*, 14 A.D.3d 301 (1st Dep't 2005) (triable issue of fact raised where dangerous conditions directly resulted from City's resurfacing work). Here, Quinn's expert opined that the hazardous condition resulted from the

City's improper repair methods, not from gradual deterioration, satisfying the qualitative standard.

Moreover, *Wilson v. Incorporated Village of Hempstead*, 120 A.D.3d 665 (2d Dep't 2014), is distinguishable because discovery there was complete and affidavits confirmed the defect reappeared in the *same* condition. Here, Quinn's experts opine that the City's repair worsened the condition, and no discovery has been permitted to confirm whether the repair exacerbated the defect.

The City's suggestion that Quinn's expert needed to provide a precise timeline or cite physical inspection records is contrary to law. It is sufficient if the expert identifies visible characteristics of the defect and explains why those characteristics are consistent with negligent repair, as opposed to ordinary wear and tear. *Schaum v City of NY*, 216 AD3d 691, 693 (2d Dep't 2023), is readily distinguishable from the present case. In *Schaum*, the plaintiff's expert offered a purely speculative opinion without identifying any excavation or repair work tied to the defect, and the defendants presented detailed deposition testimony and affidavits showing no relevant work occurred at the site. By contrast, in this case, here the expert identified a specific prior repair adjacent to the utility box and explained how that repair contributed to the hazardous condition. The affidavit was disclosed nearly two years before the City's summary judgment motion, putting the City on notice of Quinn's

liability theory. Rather than depose Mr. Farahnik or challenge his conclusions through expert discovery, the City did nothing, failing to meet its burden to show that Quinn could not offer admissible evidence on affirmative creation. Quinn, meanwhile, was denied access to essential discovery, including depositions and repair documentation, making it premature to dismiss the expert's opinion as unsupported. *Kushner v. City of Albany,* 27 A.D.3d 851 (3d Dep't 2006), is distinguishable because the court found the city's repair did *not* worsen the condition, the pothole simply re-emerged over time due to ordinary wear. Here, by contrast, Quinn's expert opined that the City's improper repair directly *created* a hazardous condition, not merely that the pothole returned gradually.

Accordingly, the record, when viewed in the light most favorable to Quinn as required on a motion for summary judgment, presents a genuine dispute of material fact as to whether the City's own negligent repair created the defective condition that caused Quinn's injuries. Summary judgment should be reversed.

The City also argues that the district court's denial of discovery should be upheld because Quinn did not submit a formal affidavit or declaration under Federal Rule of Civil Procedure 56(d). See Appellee's Br. at 20–21. This mischaracterizes both the operation of Rule 56(d) and the record below, and it elevates form over substance in a context where fundamental fairness was at stake.

While courts have recognized the utility of a formal Rule 56(d) affidavit, such an affidavit is not a rigid requirement where the need for discovery is clearly and consistently preserved in the record. *See Trebor Sportswear Co. v. The Limited Stores*, 865 F.2d 506, 511 (2d Cir. 1989) (reversing summary judgment where party had not had a fair opportunity to conduct discovery). This case is a textbook example. Quinn did not merely allude to discovery in passing. Well before the City's motion, Quinn expressly objected to the premature close of discovery and identified specific categories of material yet to be produced, including basic depositions, written responses, repair records, and a legible Big Apple Map. See A135–136; AOB at 13.

This is not a situation like *Gene Codes Forensics, Inc. v. City of New York*, 812 F. Supp. 2d 295 (S.D.N.Y. 2011), where a party mentioned discovery in vague terms or waited until summary judgment to seek relief. Here, Quinn timely raised detailed objections to moving forward without discovery, identifying precisely what was needed and why it was critical to developing the affirmative creation theory.

Moreover, the City never argued in its motion below that Quinn's discovery efforts were procedurally defective under Rule 56(d). Its belated attempt to do so for the first time on appeal is improper. City cannot cure its defects post hoc. Quinn was not required to anticipate an argument the City itself never made below.

10

Finally, the City's claim that it submitted a "complete record" and three affidavits does not cure the lack of discovery. Quinn had no opportunity to depose the affiants, test their statements, or confirm the timing and nature of the alleged repair. That discovery was critical to evaluating the affirmative creation theory and denying it while granting judgment on that very issue was reversible error.

## III.   QUINN'S NOTICE OF CLAIM FULLY COMPLIED WITH GENERAL MUNICIPAL LAW § 50-e AND DID NOT PREJUDICE DEFENDANT AS IT PROVIDED AMPLE INFORMATION TO INVESTIGATE THE ACCIDENT

As a threshold matter, which the City has failed to mention in its briefing, the City raised its Notice of Claim argument in the district court, which expressly *considered and rejected it*. The district court acknowledged the language cited by the City but found that, when read as a whole and in light of the 50-h testimony and regulatory framework, the Notice was *not* limited to a defect attributable solely to ConEd. While the City may defend the judgment on any ground under *de novo* review, it cannot recast a factual determination already resolved against it as an unaddressed legal issue. Having failed to challenge the district court's conclusion through a cross-appeal, the City's attempt to relitigate that fact-bound issue should be rejected.

The argument, in any event, is without merit; there is no basis for finding an abuse of discretion on this record.

11

The purpose of a Notice of Claim under General Municipal Law § 50-e is to enable the municipality to promptly investigate claims and preserve evidence. As New York Practice (6th Ed.) by David Siegel explains, "The purpose of the notice of claim is to enable the public corporation to investigate claims and obtain evidence promptly" (citing *State v. Waverly Central School Dist.*, 28 A.D.2d 628 (3d Dep't 1967)).

Section 50-e requires, in pertinent part, that the notice state the nature of the claim and the time, place, and manner in which it arose. Here, Quinn's Notice of Claim fully complied with these requirements. The Notice states:

> On July 3, 2019, while claimant FRANCIS QUINN, JR. was a lawful pedestrian on the crosswalk of the south side of 6th Avenue at its intersection with 53rd Street, in the County of New York, City and State of New York, he was caused to trip and fall due to a defective and hazardous gas utility box. The defect is located within the crosswalk of the south side of 6th Avenue and its intersection with 53rd Street... [and] consists of an uneven, raised, depressed, mis-leveled gas utility box.

Additionally, three photographs were attached to the Notice, depicting the defect and its surrounding condition. *See* ECF No. 84-5. The Notice further alleged the City's negligence in "carelessly and negligently failing to properly maintain said crosswalk and gas utility box; in allowing the crosswalk and gas utility box to become obstructed, cracked, uneven, raised, depressed, mis-leveled, deteriorated, and/or in a state of disrepair and/or improper repair" *See* ECF No. 84-5. The photographs attached with the Notice of Claim were the following:

12

These allegations clearly set forth the nature of the claim, and the time, place, and manner in which the incident arose. Quinn's theory that a hazardous crosswalk and utility box caused his fall was clearly presented from the outset.

Moreover, the City's own conduct confirms that it was not prejudiced: the City inspected and repaired the subject location on or about September 24, 2019, shortly after receiving the Notice of Claim *See* ECF No. 84-5. Thus, the City had ample opportunity to investigate the claim, fulfilling the very purpose of § 50-e. The photograph of the repair of the pothole is at A-203.

In the proceedings below, the City raised the notice issue only in a footnote (fn. 6) of its motion for summary judgment (A-71), and the district court correctly found:

> While we do not dispute the potential significance of this language, as well as Quinn's testimony at the 50-H hearing, we do not read the notice of claim as a whole as requiring the preclusion sought by the City. To be clear, the potential significance stems from the fact that the precise location of the accident impacts whether the City or ConEd has potential liability." (A-269).

Importantly, the City did not cross-appeal or otherwise challenge this aspect of the district court's decision. As such, the City is barred from now attempting to overturn the district court's conclusion that Quinn's Notice of Claim was sufficient.

The court further noted Quinn's testimony:

Q: What was the distance between the pothole and the utility box?

A: It was up against it, maybe - pretty much up against the lip of the utility box. (ECF No. 84-10 at 26).

Despite this, the City incorrectly claims that Quinn's testimony contradicted the Notice of Claim by introducing a "new" defect, the pothole. This mischaracterizes the record. Quinn consistently described, in lay terms, that his fall resulted from the uneven, deteriorated surface adjacent to the utility box completely consistent with the Notice of Claim.

First, Defendants selectively omit key language in the Notice that explicitly referenced not only the utility box but the surrounding crosswalk conditions.

Second, during his 50-H testimony, Quinn testified:

- He did not trip directly on the utility box but stepped into a pothole immediately adjacent to the box.

- The pothole was "up against the lip" of the utility box.

- The utility box appeared "raised" because the surrounding pavement was "eroded."

- He used "pothole" and "eroded area" interchangeably. (ECF No. 84-10)

Thus, Quinn's description at the 50-h hearing and deposition supplemented, not contradicted, the allegations in the Notice. His lay explanation clarified the specific physical condition that made the crosswalk hazardous.

Third, courts are not limited to the four corners of the Notice of Claim in evaluating its sufficiency. Courts may consider Quinn's 50-h testimony and other properly submitted evidence to correct technical mistakes, omissions, or irregularities made in good faith and without prejudice. *See D'Alessandro v. NYCTA*, 83 N.Y.2d 893 (1994); *Washington v. City of New York*, 190 A.D.3d 1009 (2d Dep't 2021).

General Municipal Law § 50-e(6) explicitly permits correction of any "mistake, omission, irregularity or defect" in a notice if made in good faith and absent prejudice to the municipality. *See D'Alessandro*, 83 N.Y.2d at 893; *Ingle v. NYCTA*, 7 A.D.3d 574, 575 (2d Dep't 2004)). Quinn's clarifications at the 50-h hearing describing the pothole immediately adjacent to the utility box fall squarely within the supplementation allowed by § 50-e(6).

Indeed, courts have long emphasized a "reasonableness" standard for notices of claim, not a technical or hyper-literal one. In *Brown v. City of New York*, 95 N.Y.2d 389, 393 (2000), the Court of Appeals reiterated that a notice is sufficient if it provides enough information to allow the municipality to locate the place, fix the

time, and understand the nature of the occurrence. As the Court said, "Nothing more may be required." *See also Purdy v City of New York,* 193 NY 521, 523-524 (1908).

Here, the Quinn's Notice of Claim did just that: it enabled the City to locate the precise crosswalk, understand the nature of the defect (a hazardous, uneven utility box and adjacent pavement), and preserve the necessary evidence. The City's own repair records show that it investigated and repaired the location, further demonstrating that the purpose of § 50-e was fully served and that no prejudice occurred.

Additionally, the City's mischaracterization of Quinn's expert reports also warrants correction. Both of Quinn's retained experts, Joseph Farahnik and Nicholas Bellizzi (ECF No. 88-2), addressed not just the valve box, but also the surrounding defective roadway condition.

Joseph Farahnik opined that, at the time of the accident, "a section of the asphalt roadway adjacent to this valve box was cracked, broken in chunks, uneven and partially missing, forming a long narrow pothole of an irregular rectangular-type shape estimated to be 8' x 30'." (A-195). This description clearly places blame not only on the valve box but also on the broken and dangerous condition of the adjacent crosswalk surface.

16

Similarly, Nicholas Bellizzi identified that the "depressed, sunken, uneven, non-flush, discontinuous, and irregular valve box cover defect was a crosswalk pavement surface irregularity and discontinuity and was dangerous, hazardous and unsafe." Bellizzi's report further described the surrounding pavement as "cracked, broken, & chipped with some segments missing," reinforcing that the defect extended beyond the box itself into the adjacent crosswalk area.

Thus, contrary to the City's assertion, Quinn's experts consistently attributed the cause of Quinn's fall to both the valve box and the defective surrounding pavement, a condition that was clearly described in the Notice of Claim and properly supplemented by the evidence developed in the case.

Accordingly, the City's attempts to manufacture inconsistencies between the Notice and Quinn's testimony are without merit. The Notice of Claim fully complied with General Municipal Law § 50-e and provided ample information for the City to conduct an investigation and defend itself.

**The City's Cited Cases Are Inapplicable**

The cases relied upon by the City are factually distinguishable and, in many instances, actually support Quinn's position. In *Brown v. City of New York*, 95 N.Y.2d 389, 393 (2000), the Court of Appeals emphasized that the sufficiency of a Notice of Claim turns on whether it provided the municipality with enough

information to locate the place, fix the time, and understand the nature of the accident—not whether it was described with "literal nicety or exactness." Far from supporting the City's argument, *Brown* reinforces that Quinn's Notice of Claim was sufficient to enable an effective investigation.

Similarly, *Jacobowitz v. City of New York*, 222 A.D.3d 953, 954 (2d Dep't 2023), is consistent with Quinn's argument, as it merely reiterates the principle that a plaintiff cannot substantively change the theory of liability through later filings. Here, Plaintiff has not introduced a new theory; the negligence alleged in the Notice of Claim stemming from the defective condition of the crosswalk and utility box has remained consistent throughout.

The City's reliance on *Yankana v. City of New York*, 246 A.D.2d 645, 646 (2d Dep't 1998), is misplaced. In *Yankana*, the Notice of Claim merely identified a broad intersection "Clarkson Avenue and Rogers Avenue," without specifying the defect or exact location. By contrast, Quinn's Notice of Claim precisely identified the crosswalk on the south side of 6th Avenue at its intersection with 53rd Street, clearly describing the defect and attaching corroborating photographs.

Likewise, *Setton v. City of New York*, 174 A.D.2d 723 (2d Dep't 1991), involved an incorrect location, where the plaintiff's notice sent the municipality to the wrong site, frustrating its ability to investigate. Here, no such error occurred; the

City located and inspected the correct site. The same distinction applies to *Austin v. City of Yonkers*, 243 A.D.2d 597 (2d Dep't 1997), which concerned prejudice resulting from investigating the wrong area, whereas here, the City conducted its inspection at the correct location and even located relevant repair records.

*Serano v. City of New York*, 143 A.D.2d 652 (2d Dep't 1988), and *Harper v. City of New York*, 129 A.D.2d 770 (2d Dep't 1987), are similarly unavailing. Both involved instances where plaintiffs either identified the wrong location or attempted, years later, to amend a deficient notice. Quinn's Notice of Claim, by contrast, accurately specified the accident location and consistently maintained the same theory of liability.

*Torres v. NYCHA*, 261 A.D.2d 273 (1st Dep't 1999), further underscores Quinn's argument, as the First Department held that a mistaken description is excusable provided the defendant is not prejudiced. Here, the City not only located the site but affirmatively used it to search for repair records, demonstrating a lack of any prejudice. Similarly, *Figueroa v. NYCHA*, 271 A.D.2d 238 (1st Dep't 2000), supports Plaintiff's position by recognizing that information provided during a § 50-h hearing can supplement and clarify a Notice of Claim without altering the underlying theory of liability, a precisely analogous situation to the case at bar.

The City's citation to *Parise v. New York City Dep't of Sanitation,* 306 Fed Appx 695 (2d Cir 2009), is also misplaced. In *Parise*, the plaintiff's Notice of Claim was facially deficient because it failed to identify any cause of the fall. Here, Quinn clearly described the defect involving the utility box and the surrounding crosswalk surface. Similarly, *Lewis v New York City Hous. Auth.,* 135 AD3d 444 (1st Dep't 2016), addressed a plaintiff who failed to plead a defective step and instead later tried to introduce a new witness theory which facts are wholly different from Quinn's consistent assertion of a defective crosswalk and utility box.

Finally, *Mahase v. Manhattan & Bronx Surface Tr. Operating Auth.*, 3 A.D.3d 410 (1st Dep't 2004), is inapplicable. There, the plaintiff introduced a brand-new theory not mentioned in the notice. Quinn's Notice of Claim, by contrast, specifically alleged negligence relating to both the crosswalk and the utility structure, and Plaintiff's pleadings and testimony merely elaborate upon, not change, that original theory. Accordingly, the City's citations fail to undermine the sufficiency of Quinn's Notice of Claim, and summary judgment on this ground should be reversed.

## CONCLUSION

The district court failed to apply the correct legal standards to the record before it and improperly granted summary judgment in favor of the City. The City did not meet its burden under Rule 56(c), so Quinn had no obligation to come forward with *any* evidence to defeat summary judgment. Further, the City failed to preserve for appeal its argument that the district court committed an abuse of rejection in finding Quinn's Notice of Claim sufficient under General Municipal Law § 50-e and, in any event, the district court did not abuse its discretion in so finding. Quinn was also denied a fair opportunity to conduct necessary discovery. Based upon the foregoing, it is respectfully requested that this Court reverse the Order of the district court, reinstate Quinn's Complaint, and remand the matter before a different judge for further proceedings on the merits, together with such other and further relief as this Court deems just and proper.

Dated: New York, New York
    May 5, 2025

                            Respectfully submitted,

                            **NAPOLI SHKOLNIK, PLLC**
                            */s/ Aparna Pujar*
                            Aparna Pujar
                            360 Lexington Avenue, Floor,
                            New York, New York 10017
                            Tel: (212) 397-1000
                            APujar@NapoliLaw.com

## CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B), the word limit of Local Rule 32.1(a)(4) (A) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f): this document contains 4,680 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because: this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point font Times New Roman.

Dated: New York, New York
     May 5, 2025